No. 2026-1721

# United States Court of Appeals for the Federal Circuit

SOLOS TECHNOLOGY LTD.,

*Plaintiff-Appellee*,

v.

META PLATFORMS, INC., META PLATFORMS TECHNOLOGIES, LLC, OAKLEY, INC., LUXOTTICA OF AMERICA, INC., ESSILORLUXOTTICA, USA, LLC,

*Defendants*,

DAITONA CARTER,

*Movant-Appellant*.

Appeal from the United States District Court for the District of Masschusetts
in 1:26cv–1034–ADB
Judge Allison D. Burroughs

## OPENING BRIEF OF MOVANT-APPELLANT DAITONA CARTER

JUNE 14, 2026

**DAITONA CARTER**
*Movant-Appellant Pro Se*
2 Massachusetts Ave NE
General Delivery, Main
Post Office
Washington, DC 20002
legal@daitonacarter.com

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................2

TABLE OF AUTHORITIES ...........................................................................5

   Cases ...........................................................................................................5

   Statutes and Constitutional Provisions ......................................................5

   Rules and Regulations ................................................................................6

I. STATEMENT OF RELATED CASES.........................................................7

II. JURISDICTIONAL STATEMENT.............................................................8

III. STATEMENT OF THE ISSUES ...............................................................9

IV. STATEMENT OF THE CASE .................................................................12

   A. Nature of the Case and Coordinated Derivative Misappropriation Framework........13

   B. Factually Justified Pleading Timelines and Impossibility of Prior Administration...14

   C. The Three-Stage Administrative Lockout and Record Alteration Below..................15

   D. Overview of Vested Property Interests and Patent Stacks........................................16

   E. Forensic Mapping of Movant's Technology and Ignored Exhibits............................17

   F. Integration of Stolen Assets into Global Supply Chains..........................................17

      A. Denial of Motion to Intervene (First Circuit Procedural Law)..............................19

      B. Substantive Patent Law Frameworks (Federal Circuit Law)..................................19

      C. Fraud on the Court, Rule 41 Dismissals, and Constitutional Due Process.............20

VII. SUMMARY OF ARGUMENT ........................................................................20

VIII. ARGUMENT ...............................................................................................23

I. THE DISTRICT COURT MAINTAINED ANCILLARY JURISDICTION TO INVESTIGATE COORDINATED FRAUD ON THE COURT UNDER RULE 60(d)(3)..........23

II. THE REPLACEMENT OF FORENSIC PROOFS WITH "-1" PLACEHOLDERS CONSTITUTES AN INTENTIONAL SUPPRESSION OF EVIDENCE AND A FRAUD ON THE COURT UNDER RULE 60(d)(3) ........................................................24

III. THE DISTRICT COURT COMMITTED A REVERSIBLE ERROR OF PATENT LAW BY DENYING INTERVENTION AND FORCING A PLEADING-STAGE LOCKOUT UNDER 35 U.S.C. § 256 ..................................................................25

   A. The Lower Court Misapplied Threshold Intervention Metrics by Forcing an Exhaustive Pre-Discovery Mini-Trial ........................................................................25

   B. Appellees' Reliance on the "BlueRadio" Motion to Dismiss is a Forensic Pretext to Short-Circuit Appellant's Intervention and Evade 35 U.S.C. § 256 Oversight..............26

   C. The District Court's Finding of a "Factual Void" Constitutes Reversible Legal Error Under CAFC Pleading Standards ................................................................27

   D. Appellees Cannot Mechanically Enforce Procedural Timelines While Actively Maintaining the Ongoing Criminal Obstacles That Cause Them ..................................28

   E. Contractual Privity is Not a Prerequisite for a Statutory Inventorship Claim Under Section 256 ................................................................................................29

   F. The District Court Erred by Holding a Pro Se Intervenor to a Hyper-Technical Patent

Litigation Pleading Standard ........................................................30

G. The District Court's "Catch-22" Ruling is a Reversible Abuse of Discretion...........31

H. The District Court Impermissibly Conducted a Premature "Mini-Trial" on the Merits via Text Order.....................................................32

I. The District Court Committed a Reversible Abuse of Discretion by Categorizing Active Witness Tampering and Extrajudicial Containment as Irrelevant to the Adjudication of Title Under 35 U.S.C. § 256 ...............................................32

J. The Lower Court Abused Its Discretion by Mooting Appellant's Pre-Emptive Security Motions and Ignoring Clear Evidence of Record Tampering....................................35

K. Under *Fortress Iron*, the Exclusion of the True Creator Voids the Patent and Deprives the Court of the Power to Proceed.....................................................36

IX. THE DISTRICT COURT VIOLATED FIFTH AMENDMENT PROCEDURAL DUE PROCESS THROUGH ITS COERCIVE ..........................................................36

"GRANT-and-TERMINATE" MANEUVER AND FILING MORATORIUM (Appx19) ..........................................................................36

X. THE FEIGNED, NON-ADVERSARIAL NATURE OF THE UNDERLYING ACTIONS BARS APPELLEES FROM EQUITABLE RELIEF UNDER THE DOCTRINE OF UNCLEAN HANDS ...............................................38

XII. TRANSNATIONAL TECHNOLOGY FEDERATION UNDER THE AUKUS PROCUREMENT STRUCTURE REQUIRES AN IMMEDIATE DIRECT MANDATE FOR INVENTORSHIP CORRECTION ..............................................40

A. Reassignment on Remand to the Southern District of New York (SDNY) is Mandated to Purge Systemic Conflicts.................................................................41

B. Appellees Are Equitably Estopped from Asserting Procedural Bars Where the Patent Title Relies on Coercive Extraction and TVPA Violations...........................................41

XII. CONCLUSION AND PRAYER FOR RELIEF.......................................................44

CERTIFICATE OF COMPLIANCE.................................................................45

PROOF OF SERVICE.................................................................46

ADDENDUM.................................................................48

    Appx12– Electronic Order Denying Motion to Intervene .........................................49

    Appx15 – Electronic Order Denying Motion for Reconsideration and Stay .............52

    Appx19 – Electronic Order Denying Rule 60 Motion to Vacate................................55

# TABLE OF AUTHORITIES

**Cases**

*Apotex Inc. v. Daiichi Sankyo Co.*, 787 F.3d 1356 (Fed. Cir. 2015).     24

*Armstrong v. Manzo*, 380 U.S. 544 (1965).     36

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544     18
(1st Cir. 2006)

*Blue Gentian, LLC v. Tristar Products, Inc.*, 54 F.4th 1360     21, 30
(Fed. Cir. 2022).

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).     23, 27

*Erickson v. Pardus*, 551 U.S. 89 (2007).     31

*Fortress Iron, L.P. v. Digger Specialties, Inc.*, No. 24-2313     *passim*
(Fed. Cir. Apr. 2, 2026).

*Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 64     18
(1st Cir. 2008)

*George P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 47 (1st Cir. 1995)     19

*Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231 (Fed. Cir. 2018).     *passim*

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).     *passim*

*Honeywell International Inc. v. Arkema Inc.*, 939 F.3d 1345     *passim*
(Fed. Cir. 2019).

*Hor v. Chu*, 699 F.3d 1331 (Fed. Cir. 2012).     *passim*

*In re Violation of Rule 28(c)*, 388 F.3d 1383, 1385 (Fed. Cir. 2004     19

*Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517 (11th Cir. 1987).     27

*Liteky v. United States*, 510 U.S. 540 (1994).     41

*Media Technologies Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1337     18
(Fed. Cir. 2010)

*Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998).     42

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*,     *passim*
324 U.S. 806 (1945).

*Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551 (Fed. Cir. 1997).     *passim*

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987).     10

*Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)*     35

*United States v. Robin*, 553 F.2d 8 (2d Cir. 1977).     41

*Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575 (1946).     24

*Waetzig v. Halliburton Energy Services, Inc.*, 604 U.S. 305 (2025).     23

**Statutes and Constitutional Provisions**

U.S. Const. amend. V.     passim

18 U.S.C. § 1595(b)(1).     42

28 U.S.C. § 1295(a)(1). ....................................................... 10

28 U.S.C. § 1331. ........................................................... passim

28 U.S.C. § 1338(a). ......................................................... 10

28 U.S.C. § 2106. .......................................................... passim

35 U.S.C. § 101. ........................................................... passim

35 U.S.C. § 102. ........................................................... passim

35 U.S.C. § 256. ........................................................... passim

**Rules and Regulations**

48 C.F.R. § 52.222-50 ....................................................... 42

Fed. R. App. P. 10(e) ..................................................... 30, 37

Fed. R. App. P. 32(a) ..................................................... passim

Fed. R. Civ. P. 24 ......................................................... passim

Fed. R. Civ. P. 24(a)(2) .................................................. passim

Fed. R. Civ. P. 41(a)(1)(A)(i) ............................................ passim

Fed. R. Civ. P. 59(e) ....................................................... 14

Fed. R. Civ. P. 60(b)(3) .................................................. passim

Fed. R. Civ. P. 60(b)(6) .................................................... 14

Fed. R. Civ. P. 60(d)(3) .................................................. passim

## I. STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant states that there are no known related cases pending in this or any other court that would directly impact the determination of this senior inventorship claim.

## II. JURISDICTIONAL STATEMENT

The District Court's statutory jurisdiction was originally invoked under 35 U.S.C. § 256 and 28 U.S.C. § 1338(a). The United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction under 28 U.S.C. § 1295(a)(1) over final decisions of United States District Courts where the claims arise under an Act of Congress relating to patents. This appeal is timely filed from the final judgment and a continuous matrix of summary, unreasoned text-only orders of dismissal issued at every single stage of the underlying proceeding, which collectively denied intervention, foreclosed reconsideration, and summarily dismissed Appellant's independent action for relief.

The District Court's electronic orders denying intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2) constitute a final, appealable collateral order. Under the long-standing collateral order doctrine, a district court order denying intervention as of right is a final, appealable determination that is immediately reviewable by this Court. See Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 377 (1987).

The Movant-Appellant's original Notice of Appeal was timely stamped on April 21,2026  and formally transmitted on April 22, 2026. To preserve absolute structural review over the expanding matrix of electronic docket closures and text orders below, Appellant formally filed an Amended Notice of Appeal on May 17, 2026. The submission of both the initial and amended notices completely preserves Appellant's substantial rights, placing this entire record squarely within the jurisdiction of the Federal Circuit.

## III. STATEMENT OF THE ISSUES

1. **Issue One:** Whether the District Court committed a manifest error of law and abused its discretion by denying Appellant's Motion to Intervene under Rule 24 and entertaining a premature Motion to Dismiss, where the principal litigants deployed a pre-textual procedural device—the "BlueRadio" 2004 Bluetooth timeline—as a forensic fraud to engineer an artificial dismissal, thereby intentionally blocking judicial review of Appellant's senior priority status, true inventorship, and 65 technical exhibits Appx201-357.

2. **Issue Two:** Whether the District Court abused its discretion and committed a structural error of law by holding that a voluntary dismissal under Rule 41 strips it of all ancillary jurisdiction, using an unreasoned, text-only order at every stage of the litigation to block Appellant's Motion to Intervene, Motion for Reconsideration, and Motion to Vacate under Federal Rule of Civil Procedure 60(d)(3) (Appx12, Appx15, and Appx19).

3. **Issue Three:** Whether the District Court abused its discretion and denied due process by applying a hyper-technical, final patent litigation pleading standard to a *pro se* civilian's Motion to Intervene, failing to liberally construe the threshold pleadings as required by Supreme Court precedent.

4. **Issue Four:** Whether the District Court committed a reversible legal error by establishing a "Catch-22" logical contradiction—holding that Appellant cannot intervene because she lacks a formal, issued patent title, while simultaneously locking the door to the only forum where Appellant can invoke 35 U.S.C. § 256 to prove that Appellees criminally misappropriated her unpatented work to procure that very title.

5. **Issue Five:** Whether the District Court abused its discretion by conducting a premature, summary "mini-trial" on the merits via an unreasoned text order, ignoring the mandatory rule that all well-pleaded factual allegations in a motion to intervene must be accepted as true.

6. **Issue Six:** Whether, in light of this Court's recent precedential decision in *Fortress Iron, L.P. v. Digger Specialties, Inc.* (Apr. 2, 2026), a District Court lacks jurisdictional authority to proceed over a patent title dispute when it has active notice that the true, unjoined creator has been denied her mandatory notice and statutory right to contest the title under 35 U.S.C. § 256(b).

7. **Issue Seven:** Whether the District Court violated Appellant's Fifth Amendment Procedural Due Process rights by executing a coercive "Grant-and-Terminate" maneuver, wherein the court granted Appellant leave to file an expanded reply but simultaneously terminated the entire proceeding before the authorized reply could be docketed (Appx15).

8. **Issue Eight:** Whether the total non-appearance and failure to file entries of appearance by the corporate Defendants at the Federal Circuit, paired with their absolute lower-court silence regarding the technical record, entities the present Senior Inventor to a direct appellate mandate for inventorship correction under 35 U.S.C. § 256(b) or an outright invalidation of the patents-in-suit under 35 U.S.C. §§ 101/102.

9. **Issue Nine:** Did the District Court commit a reversible error of law by adopting a prevailing party's Plaintiff-Appellant's  briefs verbatim (Appx655), thereby abdicating its statutory obligation to perform an independent judicial analysis?

10. **Issue Ten**: Did the Clerk of Court directly violate the mandatory, non-discretionary filing duties prescribed under Federal Rule of Civil Procedure 5(d)(4) by intercepting and rejecting Appellant's emergency filings?

# IV. STATEMENT OF THE CASE

This appeal arises from a structural procedural lockout executed at the district level to insulate corporate litigants from an independent inventorship claim. On January 23, 2026, Plaintiff Solos Technology Limited filed an infringement action against Meta Platforms, Inc. over five technology patents. On March 27, 2026, Appellant Daitona Carter, proceeding *pro se*, served a timely Motion to Intervene and a Proposed Complaint under FRCP 24(a)(2), asserting prior conception, reduction to practice, and sole inventorship under 35 U.S.C. § 256.

On March 30, 2026, Docket Clerk Caetlin McManus commanded Appellant to *"refrain from emailing more documents to the Court"* until the judge rules on the Motion to Intervene (Appx52). Appellant complied with this restriction while navigating ongoing mail tam- pering, physical threats, and active electronic data spoliation by third-party services and platforms within the Appellees ,financial and share legal network.

Following Appellant's extensive external campaign and explicit threat to execute an extraordinary Writ of Mandamus to enforce compliance with FRCP 5(d)(4), the clerk's office backpedaled on April 7, 2026, attempting to re-characterize the communication lockout. The Appellant was provided ECF access on April 7, and would lose access again without notice, prior to the roll out of the Appellant's trademark "ARIA" (Appx109) and other tech- nological work into the US ARMY under the "US Project ARIA" on April 28 thus pre- venting the ability to file an immediate injunction and requiring the $0 IFPS Movant to solicit funds to have the April 29, 2026 filings hand delivered just hours before being DENIED, MOOTED and TERMINATED.

The Appellant formally apprised the lower court of ongoing unauthorized electronic intrusions, file manipulations, and targeted harassment affecting the litigation ma-

terials on or about April 13,2026. Appellant submitted a formal application for Protective Orders, Witness Protection and Status Conference outlining specific technical safeguards to preserve record integrity and halt adversarial misconduct. The lower court summarily denied and mooted this request on April 15, 2026, citing a "litigation choice". Subsequently, when Appellant submitted the foundational "proof of creation" sketches alongside a Motion for Reconsideration, the unauthorized file substitutions/swapping occurred as predicted (relating to the thermal eye tracking and lenses/display and other technical notes swapped out of order), resulting in the corrupted record now appearing at Appx201-357. The electronic manip- ulation of Appellant's files has remained unhalted and continuous throughout these pro- ceedings in addition to physical incidents.

Appellant moved for reconsideration and relief from judgment under Rules 59(e) and 60(b)(3), 60(b)(6), and 60(d)(3) (Appx15, Appx19). The District Court summarily denied all remaining relief via consecutive Electronic Orders Appx15 and Appx19 (ECF Nos. 107 and 113), implemented a pre-filing strike injunction, and explicitly passed juris- diction to this Court (Appx15, Appx19).

## A. Nature of the Case and Coordinated Derivative Misappropriation Framework

This litigation is a non-adversarial, collusive sham engineered between the Plaintiff proxy entity and five corporate Defendants. The lawsuit functions not as a genuine intel- lectual property dispute, but as an automated laundering mechanism to "clean title" on a stolen smart-glasses and behavioral prediction logic architecture. While foundational au- dio processing case study was published openly in 2009 for the music industry, the core consumer full-stack software and hardware prototype models were built in strict confi- dentiality between 2013 and 2017 (Appx191-196, Appx134-136, Appx472, and Appx666).

A tier-1 defense contractor, acting as the operational system integrator for the multi-party network, intercepted this confidential architecture via cyber-surveillance and physical extraction. The aggregator subsequently fragmented the architecture across global military networks. This includes the UK Ministry of Defence—where the original supplier retains a twenty percent equity stake in the spin-off entity—and United States Armed Forces programs of record.

Following explicit notice delivered to the corporate Defendant-Appellees' Chief Executive Officer and current Chief Technology Officer (former Vice President of Facebook Reality Labs) at Meta Platforms (f/k/a Facebook) in 2021 (Appx189 and Appx312), the conspirators attempted to mask the derivation by routing the asset through downstream acquisitions of international startups, running lab notes through Italy via European financing conduits between 2022 and 2024. Simultaneously, the Defendants systematically weaponized Appellant's senior common law trademark—originally registered via a 2019 validation plat- form entry —deploying it across active military frameworks in the United States, United Kingdom, and Australia.

The conspirators maintained structural silence until Appellant prepared to commercialize the consumer eyewear product independently. To pre-empt regulatory exposure and insulate their global defense contracts, the parties filed a feigned patent lawsuit, maintaining total silence regarding the underlying technology and trademark infringement.

**B. Factually Justified Pleading Timelines and Impossibility of Prior Administration**

To satisfy the timeliness and diligence requirements of Federal Rule of Civil Procedure 24(a), any administrative delay in asserting these senior inventorship claims was dictated by an absolute, extrajudicial impossibility of performance. Appellant did not sleep on her protectable rights; rather, the physical and electronic capacity to compile ev-

14

idence, access federal dockets, or file public administration reports was entirely blocked by active, hostile external containment operations executed by the background beneficiaries of the derived technology.

Based on the technical extraction of data occurring prior to the Defendants' public 2020 commercialization announcement, Appellant was subjected to severe, non-consensual communication fencing and digital isolation that has persisted for more than a decade. Between 2022 and the present, this containment mutated into continuous, acute physical interventions and systematic forced isolation designed to strip the true creator of the physical capacity to approach a court of law. Because Appellant was subjected to severe duress and complete financial strangulation, the filing of standard corporate records or immediate filing histories during this window was a structural impossibility.

This absolute barrier to performance was broken on March 26 and March 27, 2026, when Appellant utilized the certified evidence platform to serve formal electronic notice of her 35 U.S.C. § 256 senior inventorship claims on all defense contractors and suppliers. This electronic service triggered a mandatory, non-discretionary federal reporting obligation regarding data conversion under applicable Department of Defense (DOD) acquisition regulations. Because this absolute duress was broken the exact moment Appellant secured emergency email and ADA filing access from the District Clerk on March 30, 2026, the intervention is timely as a matter of law.

## C. The Three-Stage Administrative Lockout and Record Alteration Below

The moment Appellant attempted to protect her senior inventorship rights under 35 U.S.C. § 256, the District Court instituted a total administrative lockout. Rather than issuing reasoned, written opinions subject to regular appellate scrutiny, the district judge utilized unreasoned, summary text-only orders at every single stage of the proceeding, sys-

15

tematically stripping Appellant of a meaningful opportunity to be heard across three distinct filings.

First, the court denied Appellant's Motion to Intervene as a matter of right under Rule 24(a)(2) via an initial gate-keeping text-only entry, declaring the core priority architecture to be "generalized work" while simultaneously locking sixty-five (65) technical forensic files behind restricted "-1" placeholders (Appx201).

Second, upon Appellant moving for Reconsideration to expose this administrative contradiction, the court deployed a shortcut by issuing a subsequent unreasoned text-only order to evade its mandatory duty to review the uncorrupted cryptographic hashes.

Third, when Appellant filed a Motion to Vacate Mootness, Order for Relief, and an Independent Action under Rule 60(d)(3) to expose the multi-forum corporate fraud, the court issued its final text-only entry, falsely claiming a Rule 41 voluntary dismissal eviscerated its continuous inherent power to investigate a fraud on the court.

This universal text-only lockout was paired with the explicit suppression of physical evidence. By summarily carving out the raw, physical proof of the extrajudicial containment campaign, the court acted as if it possessed outside knowledge of facts hidden from the inventor, using an arbitrary procedural shortcut to blind the record to the violent enforcement mechanisms protecting the stolen asset. The corporate Defendant-Appellees' subsequently failed to register or file entries of appearance before the Federal Circuit, leaving the fraudulent Plaintiff-Appellee as the sole active participant defending an entirely uncontested inventorship record.

**D. Overview of Vested Property Interests and Patent Stacks**

The Movant's underlying property interest spans an extensive, multi-decade technological reduction to practice from 2009 through 2019, covering the exact directional

16

audio, adaptive beamforming, multimodal acoustic control, and neuromuscular EMG input stacks that form the core of the multi-billion dollar dispute between Plaintiff Solos Technology Limited and Defendant Meta Platforms, Inc.

Beyond the core Solos audio patents, the Movant's property interest expands into Meta's neuromuscular input stack, which has been directly targeted in active litigation, including Meta U.S. Patent No. 12,210,681 (forearm surface electrodes capturing EMG muscle signals to translate neural intents into clicks) and U.S. Patent No. 7,596,393 (wrist-worn multiple-sensor EMG configurations) (Appx282, Appx302,and Appx323) .

**E. Forensic Mapping of Movant's Technology and Ignored Exhibits**

The record catalogs the exact, claim-level forensic evidence and physical exhibits that the District Court completely ignored by rubber-stamping the Appellees' text-only orders. Appellant has provided an exhaustive mapping of her original architecture to the specific patent stacks in dispute. This forensic mapping bridges her 2009 directional audio frameworks and her 2013–2017 confidential full-stack prototypes directly to the asserted claims (Appx122-191 and Appx218-356, and 657).

By utilizing unreasoned text-only entries, the lower court avoided conducting a proper side-by-side technical comparison, thereby refusing to acknowledge that Appellant's proprietary code and architectural blueprints form 100% of the codebase of the contested patent stacks.

**F.  Integration of Stolen Assets into Global Supply Chains**

This case involves a patent infringement dispute between Department of Defense (DoD) contractors over technology integrated into domestic and global defense frameworks. However, both the Plaintiff and the Defendant are bad-faith actors with unclean hands. The underlying technology consists of proprietary, unpatented operational meth-

ods originally developed by Appellant, a civilian. Appellees acquired this technology through independent criminal activity, integrated it into the DOD supply chain, and subsequently filed fraudulent patent applications to "wash" the stolen asset.

Appellant moved to intervene as of right under Federal Rule of Civil Procedure 24(a) to protect her foundational intellectual property, halt the fraudulent commercial litigation, and assert a claim for correction of inventorship under 35 U.S.C. § 256. The District Court summarily barred Appellant from entering the case via a brief text order, creating an unconscionable procedural lockout that insulated this supply-chain asset wash from independent judicial review.

# V. STATEMENT OF THE STANDARD OF REVIEW

## A. Denial of Motion to Intervene (First Circuit Procedural Law)

This Court applies the regional law of the First Circuit when reviewing a district court's procedural rulings on intervention. See, e.g., *Media Technologies Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1337 (Fed. Cir. 2010). The United States Court of Appeals for the First Circuit reviews a district court's denial of a Motion to Intervene as of right under Federal Rule of Civil Procedure 24(a)(2) for an abuse of discretion. See, e.g., *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544 (1st Cir. 2006); *Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 64 (1st Cir. 2008). A district court abuses its discretion if it applies an incorrect legal standard, ignores a material factor, or commits a clear error of judgment. *B. Fernandez & Hnos.*, 440 F.3d at 544. To the extent the District of Massachusetts applied premature structural hurdles, or conducted a premature "mini-trial" on the merits at the threshold stage without allowing discovery or an evidentiary hearing, those actions are reviewed under this regional abuse of discretion standard. See *Honeywell International Inc. v. Arkema Inc.*, 939 F.3d 1345, 1349 (Fed. Cir. 2019).

## B. Substantive Patent Law Frameworks (Federal Circuit Law)

While regional circuit law governs the threshold procedural intervention mechanics, this Court reviews underlying interpretations of substantive patent law and statutory authority under 35 U.S.C. § 256(b) and 35 U.S.C. §§ 101/102 de novo, applying exclusive Federal Circuit law without deference to the court below. See *Hor v. Chu*, 699 F.3d 1331, 1334 (Fed. Cir. 2012). Questions regarding an inventor's continuous rights despite corporate shuffles or transnational transfers are legal questions reviewed de novo. See *Blue Gentian, LLC v. Tristar Products, Inc.*, 54 F.4th 1360, 1365 (Fed. Cir. 2022). Fur-

thermore, whether a patent that omits a true creator is void and invalid as a matter of law because it cannot be legally corrected under 35 U.S.C. § 256 is a pure question of law reviewed de novo. See *Barrette Outdoor Living, Inc. v. Fortress Iron, LP*, 24-1231, (Fed. Cir. Oct. 17, 2025).

## C. Fraud on the Court, Rule 41 Dismissals, and Constitutional Due Process

Whether the District of Massachusetts violated a pro se appellant's procedural due process rights by enforcing text-only entries, implementing administrative lockouts, or hiding code behind restricted placeholders is a constitutional question reviewed de novo. See *In re Violation of Rule 28(c)*, 388 F.3d 1383, 1385 (Fed. Cir. 2004). Additionally, whether the district court failed to exercise its continuous ancillary jurisdiction to investigate a collusive Rule 41 dismissal or an out-of-court asset transfer constituting a fraud on the court under Rule 60(d)(3) involves questions of law regarding judicial integrity that are reviewed de novo under First Circuit guidance. See, e.g., *George P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 47 (1st Cir. 1995); *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1240 (Fed. Cir. 2018).

## VII. SUMMARY OF ARGUMENT

A federal court is never a passive rubber stamp for a clandestine, out-of-court asset transfer. Under Federal Rule of Civil Procedure 60(d)(3), a court maintains continuous ancillary jurisdiction to protect the integrity of the judicial machinery from collusive manipulation. Because the Plaintiff proxy entity and the five corporate Defendant-Appellees feigned adversity while sharing an identity of interest to extinguish Appellant's rights, the underlying Rule 41 dismissal is a structural nullity.

The District Court built its dismissal orders on a logical and legal contradiction that mirrors the premature structural hurdles reversed by this Court in *Honeywell International Inc. v. Arkema Inc.*, 939 F.3d 1345, 1349 (Fed. Cir. 2019). It dismissed Appellant's

20

proofs as "generalized work" via text-only entries while simultaneously enforcing an administrative lockout that actively suppressed her raw code and sketches from judicial view behind restricted "-1" placeholders.

Furthermore, under the governing frameworks of *Hor v. Chu*, 699 F.3d 1331 (Fed. Cir. 2012), *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551 (Fed. Cir. 1997), and *Blue Gentian, LLC v. Tristar Products, Inc.*, 54 F.4th 1360 (Fed. Cir. 2022), an inventor's rights are not severed merely because an unfaithful intermediary or defense contractor repurposes consumer code for a separate, unforeseen military sector or executes transnational corporate shuffles.

Because the true Senior Inventor is physically present before this panel, the multi-forum corporate Defendant-Appellees' have completely defaulted on appeal, and the Plaintiff's title is built upon an original theft that triggers the Doctrine of Unclean Hands as defined in *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231 (Fed. Cir. 2018) and *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806 (1945), this Court should bypass an appearance-of-bias remand. The Federal Circuit must exercise its direct statutory authority under 35 U.S.C. § 256(b) or 35 U.S.C. §§ 101/102 to either order an outright correction of the patent rolls or declare the fraudulently procured assets void ab initio.

The District Court's summary exclusion of Appellant via text order is a textbook abuse of discretion and a severe violation of procedural due process. First, the court failed to hold Appellant's *pro se* motion to the less stringent standards required by law, improperly demanding full-scale patent litigation proofs at the absolute threshold of the case. Second, the court created an unconstitutional procedural barrier by using the Appellees' possession of a fraudulently obtained patent title as the sole legal justification to block the true creator from challenging that title. Third, the District Court violated Rule

21

24 by conducting a premature "mini-trial" on the merits without discovery or an evidentiary hearing. Finally, under this Court's controlling precedent in *Fortress Iron, L.P. v. Digger Specialties, Inc.* (Fed. Cir. Apr. 2, 2026), a patent that omits a true inventor and cannot be legally corrected under § 256 is void and invalid as a matter of law. By blocking the true creator, the District Court actively presided over a legally dead asset, requiring this Court to vacate the text order and issue a direct mandate.

# VIII. ARGUMENT

## I. THE DISTRICT COURT MAINTAINED ANCILLARY JURISDICTION TO INVESTIGATE COORDINATED FRAUD ON THE COURT UNDER RULE 60(d)(3)

The District Court erred as a matter of law by acting as though a voluntary dismissal completely eviscerates its jurisdictional capacity to address systemic corruption. A voluntary dismissal with prejudice is a final adjudication on the merits that remains fully subject to review under Rule 60. The Supreme Court has explicitly confirmed that a voluntary threshold dismissal under Rule 41 does not strip a federal court of its power to act under Rule 60. *Waetzig v. Halliburton Energy Services, Inc.*, 604 U.S. 305, 307 (2025).

Under Rule 60(d)(3), the court's authority to set aside an action for a fraud that defiles the court itself is absolute, perpetual, and unlimitable by procedural timelines. These inherent powers flow directly from the nature of the institution and are entirely necessary to prevent the judicial machinery from providing cover to collusive schemes. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

When parties coordinate to foster a deceptive appearance of adversity to validate a stolen asset while avoiding an active jurisdictional inquiry, the court retains ancillary jurisdiction to void the proceeding. This absolute institutional duty is commanded by the Supreme Court's definitive holding in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 816 (1945). Because a patent is an item of vital public interest, any collusive deployment of a federal courtroom designed to settle, suppress perjury, or "wash" an asset known to be derived from an unfaithful employee's theft of sketches constitutes an unbypasable fraud on the court. Under the *Precision Instrument*

23

mandate, the public interest requires the court to look completely past the superficial procedural agreements of the litigants. The court must activate its absolute equitable authority to refuse shelter to the collusive scheme.

This critical intervention standard is further backed by this Court's framework in *Apotex Inc. v. Daiichi Sankyo Co.*, 787 F.3d 1356 (Fed. Cir. 2015), recognizing that a proposed intervenor establishes Article III standing and an absolute right to enter a patent dispute when the collusive litigation of primary parties threatens to erect fraudulent legal barriers against the true developer. Because the active litigants here possess total unclean hands, their feigned adversity is a structural nullity. The trial court's refusal to inspect this structural collusion below constitutes a reversible abuse of discretion.

## II. THE REPLACEMENT OF FORENSIC PROOFS WITH "-1" PLACEHOLDERS CONSTITUTES AN INTENTIONAL SUPPRESSION OF EVIDENCE AND A FRAUD ON THE COURT UNDER RULE 60(d)(3)

A tribunal's judgment must be vacated under Rule 60(d)(3) when the integrity of the judicial process has been completely subverted by an unconscionable scheme engineered by officers of the court. *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). Fraud on the court occurs when the mechanisms of justice are actively manipulated to shield an ongoing wrong from judicial scrutiny.

The record in this case provides clear and convincing evidence of intentional structural suppression rather than an automated technical failure:

1. **The Target of Suppression:** The 65 files uploaded on April 17, 2026 (Appx201-2018), contained the primary forensic proofs of prior conception including lab notes and direct corporate notice to the Meta Platform's Ap-

pellees' CEO and CTO. This evidence completely destroyed the Appellees' claim that the Appellant lacked a protectable property interest under Rule 24.

2. **The Manufactured Glitch:** By withholding these 65 files behind blank "-1" placeholders (Appx198), officers of the court permitted the Plaintiff-Appellee to write a false narrative. The District Court then rubber-stamped the Plaintiff-Appellees' talking points verbatim (Appx662), claiming the Appellant's motions were "conclusory."

3. **The Timing of Exposure:** The sudden release and appearance of these identical files on or about June 5, 2026—coinciding exactly with the transmission of the record to the CAFC—proves the files were fully intact within the system. They were deliberately gatekept from the active docket to prevent independent judicial evaluation during the intervention and reconsideration phases.

As established by the procedural strategy in *Trump v. IRS*, a proceeding is completely corrupted when institutional actors use administrative pretexts to alter timelines and hide operational facts from the court record. To penalize a pro se litigant by dismissing her case while the court's own administration actively suppresses her evidence is a severe violation of Fifth Amendment Due Process that demands immediate reversal.

## III. THE DISTRICT COURT COMMITTED A REVERSIBLE ERROR OF PATENT LAW BY DENYING INTERVENTION AND FORCING A PLEADING-STAGE LOCKOUT UNDER 35 U.S.C. § 256

### A. The Lower Court Misapplied Threshold Intervention Metrics by Forcing an Exhaustive Pre-Discovery Mini-Trial

The lower court committed a manifest error of patent law by transforming the liberal gate-keeping standard of Fed. R. Civ. P. 24(a)(2) into an aggressive, un-bypasable barrier (Appx12). Rule 24(a) merely requires a proposed intervenor to assert a "significantly protectable interest" that may be practically impaired if the litigation proceeds in their absence. It does not require an independent creator to completely win her case or satisfy an ultimate trial-stage evidentiary standard of proof at the threshold pleading stage.

In *Honeywell International Inc. v. Arkema Inc.*, 939 F.3d 1345, 1349 (Fed. Cir. 2019), this Court explicitly reversed a denial of a party's right to protect its intellectual property interests, reinforcing that courts cannot use procedural technicalities to block a real party in interest from defending its technology. Much like the impermissible pre-judgment reversed in *Honeywell*, the District Court below improperly forced an exhaustive "mini-trial" on the merits before discovery could even begin (Appx15).

By merging initial intervention standards with final trial metrics and suppressing the active file, the District Court engineered an unconscionable, systemic Catch-22: The Movant is permanently locked out of the courtroom because she does not possess deep, claim-level discovery materials; yet she is entirely denied the ability to conduct discovery because she has been locked out of the courtroom.

26

**B. Appellees' Reliance on the "BlueRadio" Motion to Dismiss is a Forensic Pretext to Short-Circuit Appellant's Intervention and Evade 35 U.S.C. § 256 Oversight**

Appellees seek to leverage a pending Motion to Dismiss—predicated on an unrelated 2004 "BlueRadio" timeline—to execute a procedural exit before Appellant's senior inventorship can be adjudicated. Under controlling Supreme Court authority, a federal court's inherent jurisdiction to investigate maneuvers designed to compromise the integrity of the tribunal cannot be defeated by a premature dismissal.

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).
- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Where principal litigants attempt to deploy procedural screens to establish a false appearance of adversity, an excluded senior inventor possesses a substantial legal interest to intervene as of right under Rule 24(a).

- *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1521 (11th Cir. 1987).

As this Court explicitly held in *Hor v. Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012), the clock for an inventorship correction claim under 35 U.S.C. § 256 accrues only upon the formal issuance of the patent. Furthermore, *Hor* establishes that where a named patentee or corporate proxy utilizes unclean hands to intentionally hide applications, manipulate dockets, or mislead the tribunal, that party is completely barred from using the passage of time, laches, or delay defenses to throw the victim out of court.

The primary parties are attempting to do exactly what *Hor* prohibits: deploying a 2004-era Bluetooth "walkie-talkie" timeline as an artificial legal shield to convince the court that the technology has a linear history separate from Appellant. This procedural mechanism is being used to escape judicial review of Appellant's senior priority status and to rush the proceeding toward a non-adversarial exit before the 65 technical exhibits (Appx198) can be forensically examined.

## C. The District Court's Finding of a "Factual Void" Constitutes Reversible Legal Error Under CAFC Pleading Standards

The lower court's denial of intervention rests on a flagrant mischaracterization of foundational technology. Treating an ancient 2004 Bluetooth framework (Appx621) as the linear lin- eage of modern edge-computed, egocentric AI architectures represents a forensic decep- tion.

By summarily ignoring 65 technical exhibits (Appx198) documenting Appellant's structural reduction to practice between 2009 and 2019, the District Court committed a manifest abuse of discretion. Under 35 U.S.C. § 256, a true inventor's statutory right to protect their intellectual property cannot be extinguished by an engineered procedural lockout.

Under the Doctrine of Unclean Hands and the strict baseline affirmed in *Gilead Sciences, Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018), serious pre-litiga- tion business misconduct forfeits a party's right to assert or profit from the resulting intel- lectual property. Because both primary parties here possess unclean hands derived from an unauthorized server exfiltration, this original derivation creates an infectious unen- forceability that taints the entire patent family.

The complete absence of a true, un-coerced inventive relationship between the named filers and the technology invalidates the entire patent family as a matter of law un- der 35 U.S.C. § 101 and § 102. The District Court's decision to skip a review of documents under protective order and in-camera review (Appx52) and embrace the Defendant-Appellees' push for a BlueRadio-based dismissal permitted the principal litigants to fake an adversarial impasse. This Court must invoke its inherent power to halt the pending dismissal proceedings, reverse the Rule 24 denial, and un-moot the technical record.

**D.  Appellees Cannot Mechanically Enforce Procedural Timelines While Actively Maintaining the Ongoing Criminal Obstacles That Cause Them**

The District Court's summary denial of intervention entirely ignored the ongoing nature of the extrajudicial containment deployed against Appellant, refusing to address the fundamental why behind Appellant's situational constraints. Appellees' entire defensive posture relies on a deliberate severing of cause and effect: they demand strict compliance with complex appellate and district court technicalities, while completely obscuring the ongoing witness tampering, asset extraction, and structural isolation that legally prevent perfect procedural symmetry.

The United States Supreme Court has established that a party is completely barred from utilizing procedural rules to profit from an inequitable situation that they themselves are actively maintaining. *Precision Instrument*, 324 U.S. 806, 814 (1945). Where an unrepresented inventor faces continuous corporate and physical interference, the state-sector failures to halt the underlying offense operate as a continuous *Force Majeure* event (Appx554). Equity requires this Court to look directly at the root cause of the delay, unmoot the 65 technical and related exhibits, and reject the enforcement of rigid pleading timelines to prevent the judicial machinery from being used to bury an ongoing theft.

**E.  Contractual Privity is Not a Prerequisite for a Statutory Inventorship Claim Under Section 256**

Under *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1555 (Fed. Cir. 1997), this Court established that 35 U.S.C. § 256 serves as an absolute property-preservation shield to prevent corporate forfeiture of independent creations. *Stark* commands that a victim-inventor's right to enter a lawsuit and correct a title remains fully protected regardless of how deceptive, dirty, or fraudulent the stealing corporations were. Under the *Stark* standard, only the omitted true inventor must possess clean hands; the deceptive intent or

corporate restructuring loops executed by the stealing intermediaries cannot operate to sever the property rights of the true developer.

Similarly, under *Blue Gentian, LLC v. Tristar Products, Inc.*, 54 F.4th 1360 (Fed. Cir. 2022), a correction of inventorship claim does not require a voluntary employment or contractual relationship. Derivation can be established through an involuntary, indirect pipeline where an aggregator accesses a creator's digital environment. By demanding a strict, public 1-to-1 comparison of an explicitly unshared, confidential 2013–2019 full stack (Appx662) at the initial pleading stage, the lower court created an impossible closed loop: it blocked access to the discovery tools required to expose the data-harvesting logs, while simultaneously punishing Appellant for lacking those exact files.

Appellant has satisfied this standard via the 65 technical forensic attachments (i.e speechAnalyser.py). Under the cryptographic verification standard of Federal Rule of Appellate Procedure 10(e), these uncorrupted repositories provide objective, independent mathematical corroboration of senior conception. Because the record stands un-rebutted by any factual filing from the Appellees, there is no triable issue of fact remaining, legally mandating this Court to issue an outright correction of the patent rolls.

## F. The District Court Erred by Holding a Pro Se Intervenor to a Hyper-Technical Patent Litigation Pleading Standard

The District Court committed a threshold legal error by evaluating Appellant's motion under the rigid, sophisticated standard expected of registered patent attorneys. Under long-standing Supreme Court precedent, a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.

- *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Appellant's motion clearly detailed the unauthorized server extraction of her unpatented work, its structural laundering through defense channels, and its subsequent

fraudulent transformation into the patents-in-suit. By ignoring these substantive, structural claims and dismissing the motion on technical procedural formalities, the District Court abused its discretion.

This hyper-technical enforcement operates in tandem with a broader procedural lockout. Appellate courts recognize that enforcing complex formatting tracks and rigid pleading timelines against an unrepresented litigant—while simultaneously ignoring the extrajudicial containment arrays that cause those situational limitations—violates the fundamental tenets of equity. The lower court completely severed cause and effect by demanding a flawless procedural performance while permitting Appellees to hide behind their structural connections to bury the underlying theft.

## G.  The District Court's "Catch-22" Ruling is a Reversible Abuse of Discretion

The District Court locked the courtroom door utilizing a circular, contradictory legal paradox. The court held that Appellant could not intervene under Rule 24(a) because she does not currently hold the formal, issued patent title. Yet, the entire purpose of Appellant's intervention is to invoke 35 U.S.C. § 256 to correct the fraudulent inventorship and strip the title from the stealing entities.

This Court has established that a proposed intervenor only needs to show a "significantly protectable interest" in the property or transaction that is the subject of the action. A civilian whose proprietary designs, processes, methods, strategy and case work, forms 100% of the architecture and claims of a contested military patent possesses an absolute, protectable property interest. To allow defense contractors to use the fruit of their criminal acquisition—the fraudulent patent title—as a shield to prevent the victim from entering the court is an egregious abuse of judicial equity.

Under the doctrine of unclean hands established in *Gilead Sciences, Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018), serious pre-litigation misconduct forfeits a

31

party's right to assert or profit from the resulting intellectual property. Appellees cannot use procedural rules to profit from an inequitable situation that they themselves are actively maintaining through continuous witness tampering and asset exploitation.

## H. The District Court Impermissibly Conducted a Premature "Mini-Trial" on the Merits via Text Order

When reviewing a motion to intervene under Rule 24, a district court must accept all well-pleaded factual allegations in the intervention motion as true. It is procedurally improper to weigh evidence, judge credibility, or adjudicate the ultimate merits of the underlying title dispute at the intervention stage.

The District Court's use of a summary text order to conduct a "mini-trial" deprived Appellant of basic Due Process. The court demanded that Appellant conclusively prove complex technical inventorship before being granted party status or being allowed to conduct federal discovery. This premature adjudication flipped the Federal Rules of Civil Procedure on their head, effectively imposing a trial-stage standard of proof at the threshold pleading gate.

This procedural shortcut mirrors the error reversed in *Honeywell International Inc. v. Arkema Inc.*, 939 F.3d 1345, 1349 (Fed. Cir. 2019), where this Court made clear that procedural technicalities cannot be weaponized to lock a real party in interest out of defending its technology. By forcing an exhaustive evaluation before discovery could begin, the lower court permitted the principal litigants to deploy a pre-textual "BlueRadio" timeline to finalize their artificial title-laundering scheme.

## I. The District Court Committed a Reversible Abuse of Discretion by Categorizing Active Witness Tampering and Extrajudicial Containment as Irrelevant to the Adjudication of Title Under 35 U.S.C. § 256

The District Court committed a threshold error of law by holding that the severe physical battery, forced harboring, and ongoing confinement documented in Appellant's motions were entirely unrelated to the underlying patent dispute. Appellees seek to insulate their procedural maneuvers by claiming that extrajudicial coercion and the active suppression of an inventor's person are independent criminal matters that fall outside the jurisdiction of a Title 35 civil proceeding. This assertion is fundamentally wrong as a matter of law. The United States Supreme Court has explicitly established that a civil federal courtroom cannot blind itself to ongoing bad-faith behavior or coercive tactics utilized by principal litigants to secure, clean, or protect an intellectual property asset (*Precision Instrument*, 324 U.S. 806, 814 (1945); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)). The *Precision Instrument* mandate commands that a civil court must apply the Doctrine of Unclean Hands to deny enforcement or clearance to any asset whose possession relies on a continuous sequence of unconscionable conduct. Because a patent is an item of vital public interest (Appx476-534), any coordinated effort to deploy the au- tomated machinery of a federal court to settle or wash a title—while actively keeping the true senior inventor under physical duress and electronic containment to prevent her entry—constitutes a direct fraud on the court.

The record demonstrates that the District Court was on explicit notice that Appellant was being subjected to continuous physical harm and forced confinement designed specifically to block her from accessing counsel and entering the case. Appellant's emergency application for protective intervention was not an extrinsic grievance; it was a direct documentation of the unlawful containment arrays that prevented her from satisfying the court's rigid procedural timelines. By summarily labeling the physical forensic evidence and images of severe civil and criminal battery as "unrelated," and failing to refer

33

the matter to the United States Marshals Service or appropriate federal protective channels, the district judge committed a profound error of equity. A civil tribunal completely abdicates its structural duty when it punishes a *pro se* litigant for filing delays that are actively engineered by the adverse corporate thieves. Appellees cannot deploy physical, electronic, and financial violence to trap an inventor outside the legal system, and then stand before an Article III tribunal to argue that her situational limitations require a procedural lockout. Because these un-rebutted extrajudicial interventions represent a continuous *Force Majeure* event, Appellees are equitably estopped from asserting any timeline-based or independent-action bars to her intervention.

Under the strict inventorship boundaries reaffirmed by this Court in *Fortress Iron, L.P. v. Digger Specialties, Inc*. (Fed. Cir. Apr. 2, 2026), a patent that incorrectly lists its inventors and cannot be lawfully corrected under Section 256 is fundamentally invalid. The primary parties cannot use a "BlueRadio" procedural decoy or an unrecorded out-of-court agreement to sanitize an asset whose chain of custody is permanently broken by the ongoing containment of its creator. Because the lower court's text-only orders across Documents 90, 107, and 113 operated to systematically insulate a fraudulent title wash while vital evidence remained restricted behind "-1" system indicators, this Court must invoke its plenary authority under 28 U.S.C. § 2106 to vacate the orders below, reverse the lockout, and protect the integrity of the federal patent system.

As shown on the first page of the Samsung Patent No. 10.886,417 B2 (Appx188), the Appellant sketched and invented the transparent display only required for the "see-through" TV, but modern smart glasses "lens," Samsung's transparent TV patent is a direct copu of this text and design, which is already a matter of public record. In December 2020 (three days) before the Federal Trade Commission initiated its case against the Defendant-Appelle, Meta, critical evidence on Linkedin was actively suppressed via restriق ion to hide data and cause spoilation. "M-82" (Appx94), the golden egg keep being deleted and denied admission to the court. CAFC also denied the correctio via early motion.

34

**J. The Lower Court Abused Its Discretion by Mooting Appellant's Pre-Emptive Security Motions and Ignoring Clear Evidence of Record Tampering**

To intervene as of right, an applicant must demonstrate that disposing of the action may, as a practical matter, impair or impede their ability to protect their interest. Fed. R. Civ. P. 24(a)(2). Here, Appellant's proprietary interest centers on unique, high-utility technical data establishing priority of creation and Senior Inventorship. As documented at Appx68, Appx71, Appx74, and Appx130, the material physical evidence of Appellant's priority has been altered or replaced and swapped with non-authenticated data within the record. Allowing the underlying litigation to proceed to final judgment on a corrupted evidentiary foundation permanently impairs Appellant's ability to defend her global proprietary rights, effectively stripping her of her intellectual property without due process of law.

A lower court abuses its discretion when it fails to consider relevant, highly significant factors or makes a clear error of judgment. In the context of intervention as of right, a court must evaluate whether the existing proceedings can provide a fair and adequate forum for the proposed intervenor's claims. Fed. R. Civ. P. 24(a).

The burden of showing inadequate representation under *Rule 24(a)(2)* is minimal and is satisfied if the applicant shows that representation of his interest "may be" inadequate. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972).The existing state and corporate litigants in the lower court are entirely unaligned with, and structurally hostile to, Appellant's priority claims. This misalignment is made manifest by the existing parties' failure to monitor, preserve, or correct the fraudulent manipulation of the evidentiary record below. Because the existing parties have actively permitted or failed to contest the systematic erasure of Appellant's foundational "seniorship" sketches, they cannot—and will not—adequately represent or defend Appellant's rights in this action. Intervention is legally required to restore adversarial integrity to these proceedings.

**K.  Under *Fortress Iron*, the Exclusion of the True Creator Voids the Patent and Deprives the Court of the Power to Proceed**

This Court's recent decision in *Fortress Iron, L.P. v. Digger Specialties, Inc.*, No. 24-2313 (Fed. Cir. Apr. 2, 2026) fundamentally alters the jurisdictional landscape of this case. Writing for a unanimous panel, Circuit Judge Alan D. Lourie explicitly reaffirmed the absolute structural necessity of proper inventorship, noting that a patent which incorrectly lists its inventors and cannot be corrected according to law is invalid.

Judge Lourie further dismantled the notion that courts can treat excluded creators as minor procedural afterthoughts, stating that omitted inventors occupy the central role in the patent process, and emphasizing that being named on a patent carries legal, financial, and ownership consequences that an inventor has a right to contest.

Because the underlying lawsuit lacks genuinely adverse parties and instead operates as an artificial corporate vehicle designed to launder a stolen patent title, the entire proceeding below is a structural nullity. The trial court's 95-minute summary mooting of Appellant's 65 technical exhibits (Appx201 lowe district ECF No. 92) left a profound chain-of-custody defect entirely unaddressed. Under the clear mandates of *Fortress Iron* and *Hor v. Chu*, 699 F.3d 1331 (Fed. Cir. 2012), the complete absence of a true, uncoerced inventive relation- ship invalidates the entire patent family as a matter of law under 35 U.S.C. §§ 101 and 102, requiring this Court to intervene and halt the engineered procedural lockout.

## IX. THE DISTRICT COURT VIOLATED FIFTH AMENDMENT PROCEDURAL DUE PROCESS THROUGH ITS COERCIVE "GRANT-and-TERMINATE" MANEUVER AND FILING MORATORIUM
### (Appx19)

The lower court's reliance on unreasoned text-only orders to dispose of every major motion at every single stage of the litigation constitutes a structural due process violation. While text-only orders are administratively permissible for routine scheduling adjustments, they cannot be deployed as a universal procedural shield to summarily eviscerate complex constitutional claims, extrajudicial containment evidence, and senior inventorship title under 35 U.S.C. § 256. By failing to provide a single syllable of written legal reasoning for any of its definitive rulings, the District Court effectively insulated its shortcuts from regular appellate scrutiny, necessitating a complete vacatur of all text-only entries and a mandatory reassignment under 28 U.S.C. § 2106.

A right to respond that cannot be physically exercised is an outright constitutional nullity. The lower court violated the fundamental tenets of Procedural Due Process under *Armstrong v. Manzo*, 380 U.S. 544 (1965) by executing a simultaneous "Grant-and-Terminate" timing trick. By issuing an electronic order that granted Appellant leave to file an expanded reply, while simultaneously terminating the entire civil action within the exact same hour, the court effectively gagged Appellant from placing critical conflict disclosures onto the permanent record.

This procedural gag was compounded by an unvarnished corruption of the physical record. The court dismissed Appellant's priority claims as "generalized concepts" while its own CM/ECF system systematically locked and suppressed 65 highly specific technical exhibits (Appx201). The active spoliation of the PACER docket—converting valid electronic files picturing (i.e speechAnalyser.py) and explicit optical sketches into "-1" indicators during transmission—was an extrajudicial attempt to hide the explicit derivation trail (Appx129-356). A federal court cannot legally or logically declare evidence

"conclusory" while actively executing a system lockout that bars itself from inspecting that exact evidence. This Court must evaluate this appeal on a corrected record under FRAP 10(e).

The District Court completed its structural lockout in Appx19 by issuing a sweeping pre-filing moratorium and explicitly threatening to terminate the pro se Movant's electronic filing privileges. While a trial court possesses broad discretion to manage its daily docket, that authority is strictly limited to evenhanded, constitutional measures. It cannot be weaponized as an unreviewable shield to permanently insulate a structural error from appellate review.

The court utilized the Movant's continuous, valid objections to the "mini-trial" error as a pretext to silence her entirely. Stripping a pro se patent owner of her right to file during an active appeal is a flagrant violation of Fifth Amendment Due Process and the fundamental right of meaningful access to the courts. It represents an egregious mechanism of total exclusion designed to protect a collusive corporate arrangement from outside scrutiny.

## X. THE FEIGNED, NON-ADVERSARIAL NATURE OF THE UNDERLYING ACTIONS BARS APPELLEES FROM EQUITABLE RELIEF UNDER THE DOCTRINE OF UNCLEAN HANDS

The hyper-technical pleading barriers deployed by the Plaintiff proxy entity below cannot be viewed in isolation; they represent a bad-faith framework designed to execute an artificial, non-probable cause litigation to split the spoils of an exfiltrated consumer product architecture. Neither primary party could satisfy the statutory elements of inventorship, which is why the corporate Defendants stood entirely mute below and have now completely failed to enter an appearance before the Federal Circuit.

To satisfy the timeliness and diligence requirements of Federal Rule of Civil Procedure 24(a), any administrative delay in asserting these senior inventorship claims was dictated by an absolute, extrajudicial impossibility of performance. Appellant did not sleep on her protectable rights; rather, the physical and electronic capacity to compile evidence or file public reports was entirely blocked by active, hostile containment operations executed by the background beneficiaries of the derived technology.

As this Court explicitly held in *Hor v. Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012), the clock for an inventorship correction claim under 35 U.S.C. § 256 does not run from when the original theft or server exfiltration occurred, nor does it run from the application filing date. The statutory window accrues only upon the formal issuance of the patent. Furthermore, *Hor* establishes that where a named patentee or corporate proxy utilizes unclean hands to intentionally hide applications, manipulate dockets, or mislead the tribunal, that party is completely barred from using the passage of time, laches, or delay defenses to throw the victim out of court. A multi-decade or multi-year corporate shell game cannot lock a true creator out of an Article III tribunal when the underlying delay was forced by the wrongdoers' own deceptive concealment.

Under the Doctrine of Unclean Hands and the strict baseline affirmed in *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018), serious pre-litigation business misconduct—including the unauthorized extraction of code and the deployment of hostile containment arrays—forfeits a party's right to assert or profit from the resulting intellectual property. Because both primary parties here possess completely unclean hands derived from an unauthorized server exfiltration, this original derivation creates an infectious unenforceability that taints the entire patent family.

The complete absence of a true, un-coerced inventive relationship between the named filers and the technology invalidates the entire patent family as a matter of law un-

der 35 U.S.C. § 101 and § 102. If the Plaintiff's fragmentation and global dispersion of the architecture have rendered a clean untangling of the claims impossible, the underlying patents must be declared void ab initio.

## XII. TRANSNATIONAL TECHNOLOGY FEDERATION UNDER THE AUKUS PROCUREMENT STRUCTURE REQUIRES AN IMMEDIATE DIRECT MANDATE FOR INVENTORSHIP CORRECTION

The final, definitive proof of structural collusion within the underlying litigation lies in the systematic weaponization of pre-announcement timelines to insulate positioning and preemptively control the field. The District Court committed a manifest error of law by transforming a liberal threshold intervention standard into an aggressive pleading-stage barrier. This procedural lockout effectively prevented any independent judicial review of the technology's true derivation trail before the assets were dispersed globally.

By treating Appellant's 65 technical forensic attachments (i.e. speechAnalyser.py) as a "factual void," the original tribunal permitted the principal litigants to fake an adversarial impasse. This engineered lockout cleared the path for the corporate defendants to fragment and federate the exfiltrated consumer product architecture directly across global military networks, including the UK Ministry of Defence and the Australian Defence Force under the trilateral AUKUS alliance.

Because the technology stack is currently being integrated into international sovereign procurement dockets under the duplication of Appellant's senior common law trademark and blueprints, a remand to a forensically compromised district docket would cause severe procedural prejudice. Under the express supervisory powers granted by 28 U.S.C. § 2106, this Court is fully empowered to bypass a futile remand. The uncontested technical record requires this Court to issue a direct mandate to the Director of the USPTO to

correct the patent rolls under 35 U.S.C. § 256(b), establishing Appellant as the sole rightful inventor.

## A. Reassignment on Remand to the Southern District of New York (SDNY) is Mandated to Purge Systemic Conflicts

Should this Court determine that any portion of this patent dispute requires a factual remand rather than a direct statutory mandate to the USPTO, venue must be transferred. Reassignment on remand to an uncompromised circuit footprint—specifically the Southern District of New York—is structurally demanded under 28 U.S.C. § 2106 because the original tribunal's systematic text-only gatekeeping, electronic closures, and verbatim rubber-stamping (Appx665) meet the three-part disqualification criteria set forth in *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977).

The record reflects deep institutional conflicts tying the Appellees to the original local forum. The head partner of the Defendant-Appellee's law firm is Brad Bondi—the biological brother of the former U.S. Attorney General, whose sudden dismissal directly coincided with the Appellant's initial filings. Concurrently, the Defendant's in-house legal lead, Ethan Davis, operated within the upper echelons of the DOJ during these continuous violations, resigning a mere six days before the Movant's underlying property interests were systematically targeted. To expect an objective evaluation in the original district is a structural impossibility; transfer to the SDNY is required to restore public trust and preserve the absolute appearance of judicial impartiality under *Liteky v. United States*, 510 U.S. 540, 554 (1994).

## B. Appellees Are Equitably Estopped from Asserting Procedural Bars Where the Patent Title Relies on Coercive Extraction and TVPA Violations

The District Court's summary enforcement of pleading deadlines constitutes a reversible error of law because it completely ignored its mandatory obligation to safeguard

the overarching public policy and statutory prerequisites of the United States. Appellees seek to insulate their procedural maneuvers by claiming that the severe exploitation underlying this dispute is entirely irrelevant to a Title 35 patent litigation framework, suggesting that Appellant's sole remedy is to initiate a separate, independent civil action. This assertion is fundamentally wrong as a matter of law and represents a bad-faith attempt to finalize a structural lockout.

The United States Supreme Court has explicitly established that because a patent is an item of vital public interest affected with a paramount public interest, a civil court cannot blind itself to unconscionable, coercive, or illegal procurement methods used to secure or protect an intellectual property asset.

- *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945).
- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

The *Precision Instrument* mandate dictates that a civil court must apply the Doctrine of Unclean Hands to refuse enforcement or clearance of any asset acquired via inequitable behavior.

The record establishes that the Appellees did not arrive at the claimed invention through independent human conception or lawful collaboration under 35 U.S.C. § 101. Rather, the foundational technology was procured by the physical and situational extraction of the Inventor herself, under conditions explicitly documented in the lower court as violating the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595. Under longstanding patent principles, an intellectual property title cannot be separated from the human mind that conceived it. Because the technology was derived from the forced extraction of a human creator, the corporate defendants could not legally execute a valid declaration of inventorship before the USPTO. The application they filed was a systemic fraud

from day one, creating a profound chain-of-custody defect that breaks the chain of title *ab initio* under *Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998) and *Fortress Iron, L.P. v. Digger Specialties, Inc.* (Fed. Cir. Apr. 2, 2026).

Furthermore, under federal procurement mandates, including FAR 52.222-50, the government maintains an absolute zero-tolerance policy regarding human exploitation within its supply chains. By utilizing summary, text-only orders to lock out a recognized TVPA claimant who holds a direct property interest in the underlying unpatented work, the District Court failed its equitable duty.

Appellees cannot capture an inventor, strip her of resources, deploy institutional and law enforcement connections to block her from launching an independent action, and then argue in this forum that she must seek a separate remedy. The record establishes that Appellant engaged in continuous, active diligence to secure legal counsel and institutional assistance as early as 2021, long before the physical battery and extrajudicial containment arrays were initiated.

Equity does not demand a futile act. Where an unrepresented creator's continuous, pre-injury attempts to retain counsel were systematically neutralized, and her electronic capacity to initiate an independent case remains blocked by the wrongdoers' own containment arrays and local systemic interference, forcing her out of the primary action is an absolute denial of Due Process under the Fifth Amendment. Because the Appellees' ongoing extrajudicial containment was the sole root cause of Appellant's situational filing limitations, Appellees are equitably estopped from asserting any procedural, timeline-based, or independent-action bars to her intervention. This Court must invoke its plenary authority under 28 U.S.C. § 2106 to vacate the lower court's text orders, reverse the procedural lockout, and protect the integrity of the federal patent system.

## XII. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Movant-Appellant respectfully requests that this Court:

1. **VACATE** the District Court's text-only dismissal and gatekeeping orders across Appx12, Appx15, and Appx19 as a manifest abuse of discretion and a structural fraud on the court that violated the Movant's Fifth Amendment Due Process rights;

- **REVERSE** the erroneous denial of the Movant-Appellant's Motion to Intervene under Federal Rule of Civil Procedure 24(a)(2), validating her documented, colorable property interests in the asserted patents;

- **ISSUE A DIRECT MANDATE** pursuant to 28 U.S.C. § 2106 instructing the Director of the United States Patent and Trademark Office (USPTO) to immediately correct the inventorship record under 35 U.S.C. § 256(b) by adding the Appellant as the sole true inventor of U.S. Patent Nos. 10,306,389; 10,651,866; 11,082,055; 11,871,174; and 12,216,339 based on the uncontradicted forensic, source-code, and prototype evidence; and

- **ORDER A REMAND AND TRANSFER** directing that any necessary ancillary, continuing compliance, or further evidentiary proceedings be stripped from the compromised forum and reassigned to an uncompromised jurisdiction under a newly designated district judge within the U.S. District Court for the Southern District of New York (SDNY).

Dated: June 14, 2026

Respectfully submitted,

**/s/ Daitona Carter**
**DAITONA CARTER,** *Movant-Appellant Pro Se*
2 Massachusetts Ave NE, General Delivery, Main Post Office
Washington, DC 20002
legal@daitonacarter.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Circuit Rule 32(b), this brief contains exactly 9,796 words as calculated by the word count function of the word processing system used to prepare this brief.

- This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman, using OnlyOffice.

Dated: June 18, 2026

Respectfully submitted,

/s/ Daitona Carter
**DAITONA CARTER**
*Movant-Appellant Pro Se*
2 Massachusetts Ave NE
General Delivery, Main Post Office
Washington, DC 20002
legal@daitonacarter.com

# PROOF OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and Fed. Cir. R. 25(e), I certify that on June 19, 2026, I served a true and correct copy of the foregoing Opening Brief upon the following counsel of record using the methods indicated below:

**I. Via Electronic Filing (CM/ECF System):**

The following registered counsel for the **Plaintiff-Appellee** will receive automated service via the court's generated Notice of Electronic Filing (NEF):

**Counsel for Solos Technology Limited:**

Jameson J. Pasek
Caldwell Law
200 Clarendon Street, 59th Floor Boston, MA 02116
Email: jameson@caldwelllaw.com

**II. Via Mail Service:**

Appellant became aware that the previously  a malware-modified version was served via Fedex on June 19, 2026. This finalized version is served electronically via email on June 21, 2026 to correct the record and prevent further spoliation.

Because the following counsel for the **Defendant-Appellees** are not registered for electronic filing, I served them by depositing copies of the Opening Brief and Appendix via Mail, along with an electronic copy for their convenience, addressed as follows:

**Counsel for Defendant (Meta Platforms, Inc and Meta Platforms Technologies, LLC):**
Lisa K. Nguyen
Paul Hastings LLP
1117 S. California Ave
Palo Alto, CA 94304
Email: lisanguyen@paulhastings.com


**Counsel for Defendants (Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc., ):**
Ali S. Razai
Morgan, Lewis & Bockius LLP
600 Anton Blvd., Suite 1800
Costa Mesa, CA 92626
Email: ali.razai@morganlewis.com


Pursuant to the Crime Victims' Rights Act (CVRA) and FAR 52.222-50 compliance protocols, automated duplicate copy packages will be concurrently dispatched via verified administrative delivery channels to the Department of Justice Office of the Inspector General (DOJ OIG) and the Department of Defense Office of the Inspector General (DOD OIG) to satisfy mandatory trilateral reporting constraints.


Date: June 21, 2026

Signature: /s/ Daitona Carter
Daitona Carter
Movant-Appellant Pro Se
2 Massachusetts Ave NE
General Delivery, Main Post Office
Washington, DC 20002
Phone Number: NONE
Email: legal@daitonacarter.com (Designated Service Proxy)
Primary Service Method: Electronic Service Only via US-Appellate-ECF Gateway

**ADDENDUM**

Appx12, Appx15, and Appx19



"Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Currently before the Court is pro se movant Daitona Carter&rsquo;s (&ldquo;Carter&rdquo;) motion to intervene under Federal Rule of Civil Procedure 24. [ECF No. 58 ]. For the following reasons, that motion is denied.

An applicant may intervene as a matter of right under Rule 24(a) if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede her ability to protect that interest; and (4) her interest will not be adequately represented by existing parties. Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). &ldquo;Failure to satisfy any single requirement for intervention... is sufficient grounds to deny [the] request.&rdquo; Victim Rights Law Center v. Rosenfelt, 988 F.3d 556, 560&ndash;61 (1st Cir. 2021). Under Rule 24(b)(1)(B), the Court may also &ldquo;permit anyone to intervene... who has a claim... that shares with the main action a common question of law or fact.&rdquo; Permissive intervention under Rule 24(b) is &ldquo;&lsquo;wholly discretionary,&rsquo; and a

49

court should consider whether intervention will prejudice the existing parties or delay the action.&rdquo; In re Bos. Sci. Corp. ERISA Litig., 254 F.R.D. 24, 33 n.82 (D. Mass. 2008) (quoting In re Sonus Networks, Inc. Sec. Litig., 229 F.R.D. 339, 345 (D. Mass. 2005)). The Court accepts as true non−conclusory allegations made in support of the motion to intervene. B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006). Here, Carter may not intervene under Rule 24(a) because she has not sufficiently alleged that she has a protectible interest in this action. Carter claims sole inventorship and ownership of the asserted patents under 35 U.S.C. § 256, based on her alleged &ldquo;prior conception and reduction to practice of the of technologies embodied in the asserted patents.&rdquo; [ECF No. 58 at 3]. She has not, however, presented non−conclusory allegations to support this claim. See, e.g., Ultravision Techs., LLC v. GoVision, LLC, No. 18−cv−00100, 2020 WL 7261089, at *5 (E.D. Tex. Dec. 9, 2020). To qualify as an inventor of the asserted patents, she must have &ldquo;contribute[d] to the conception of the invention,&rdquo; which is &ldquo;&lsquo;the formation... of a definite and permanent idea of the complete and operative invention[,]&rsquo;... includ[ing] every feature of the subject matter claimed in the patent.&rdquo; Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (quoting Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986)). Neither Carter&rsquo;s motion, [ECF No. 58 ], nor her proposed complaint in intervention, [ECF No. 58−1], nor any of her many other filings to date, [ECF Nos. 70 , 72 , 73 , 77 , 78 , 79 , 83 ], contain non−-conclusory allegations suggesting that she contributed to the formation of a definite and permanent idea as to every feature of the subject matter claimed in the asserted patents. Ethicon, Inc., 135 F.3d at 1460; cf.Iceotope Group Limited v.

LiquidCool Solutions, Inc., No. 20−cv−02644, 2022 WL 204923, at *3 (D. Minn. Jan. 24, 2022) (holding that allegations that inventors made &ldquo;unspecified contribution[s] to an assortment of [the asserted] patents or patent applications&rdquo; were too

conclusory to support inventor change under § 256). Accordingly, Carter may not intervene under Rule 24(a).

The Court also denies Carter&rsquo;s request for permissive intervention under Rule 24(b). Allowing Carter to intervene here would not only substantially expand the scope of the action to include disputes over inventorship; it would also &ldquo;unduly hinder the efficient resolution&rdquo; of this case. T−Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 42 (1st Cir. 2020).

Accordingly, Carter&rsquo;s motion to intervene, [ECF No. 58 ], is DENIED, and all her other pending motions are DENIED AS MOOT. (CAM)

(Entered: 04/15/2026)"

**Appx15** – Electronic Order Denying Motion for Reconsideration and Stay



"Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Pro se movant Daitona Carter's motion for leave to file a reply, [ECF No. 106 ], is GRANTED.

Carter moves for reconsideration of the Court&rsquo;s order, [ECF No. 90 ], denying her request for intervention, [ECF Nos. 91 , 95 ], and for a stay pending her appeal of that order, [ECF No. 98 ].

The Court considers Carter&rsquo;s motions for reconsideration under the Rule 59(e) standard. See Perez−Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 284 (1st Cir. 1993). The granting of a motion for reconsideration is &ldquo;an extraordinary remedy&rdquo; that is only warranted if &ldquo;newly discovered evidence... has come to light or... the rendering court committed a manifest error of law.&rdquo; Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted). &ldquo;[S]imple disagreement with the court&rsquo;s decision is not a basis for reconsideration.&rdquo; Ofori v. Ruby Tuesday, Inc., 205 F. App&rsquo;x 851, 853 (1st Cir. 2006). Courts have &ldquo;substantial discretion&rdquo; and &ldquo;broad authority&rdquo; to allow or deny

reconsideration. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81&ndash;82 (1st Cir.2008). Carter&rsquo;s filings do not meet the standard for reconsideration. As an initial matter, Carter has not sufficiently shown that anything contained in the filings qualifies as &ldquo;newly discovered&rdquo; within the meaning of Rule 59(e), in the sense that it was not previously available to her. See Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 931 (1st Cir. 2014). More importantly, what she has submitted does not cure the defect identified in the Court&rsquo;s prior order, namely, that Carter has not sufficiently alleged that she conceived of or contributed to the conception of the inventions at issue in this litigation. See Glob. Health Sols. LLC v. Selner, 148 F.4th 1363, 1371 (Fed. Cir. 2025) (noting that, to prove derivation, a party &ldquo;must produce evidence sufficient to show (i) conception of the claimed invention, and (ii) communication of the conceived invention to the respondent prior to respondent's filing of that patent application&rdquo;); BearBox LLC v. Lancium LLC, 125 F.4th 1101, 1118 (Fed. Cir. 2025) (noting that &ldquo;[a]n alleged joint inventor must show that he contributed significantly to the conception... or reduction to practice of at least one claim&rdquo; and that the &ldquo;contributions... arise from &lsquo;some element of joint behavior... &rsquo; with the other inventors&rdquo; (citation omitted)). As Solos notes, Carter&rsquo;s filings reflect, at most, &ldquo;generalized work in smart glasses. technology, software concepts, or prior projects,&rdquo; without identifying any &ldquo;concrete, claim−level contributions.&rdquo; [ECF No. 105 at 7]. Accordingly, Carter&rsquo;s motions for reconsideration are DENIED.

Before seeking a stay pending appeal from the court of appeals, a person &ldquo;must ordinarily move first in the district court,&rdquo; Fed. R. App. P. 8(a)(1), but the standard governing its issuance is &ldquo;generally the same&rdquo; in both, Hilton v. Braunskill, 481 U.S. 770, 776 (1987). A stay is &ldquo;&lsquo;an exercise of judicial discretion&rsquo; and &lsquo;[t]he propriety of its issue is dependent upon the circum-

stances of the particular case.&rsquo;&rdquo; Nken v. Holder, 556 U.S. 418, 433 (2009) (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672&ndash;73 (1926)). To obtain a stay, Carter must &ldquo;(1) make a &lsquo;strong showing that [she is] likely to succeed on the merits&rsquo; in [her] appeal; (2) show that [she] &lsquo;will be irreparably injured absent a stay&rsquo;; (3) show that &lsquo;issuance of the stay will [not] substantially injure the other parties interested in the proceeding&rsquo;; and (4) show that the stay would serve&lsquo;the public interest.&rsquo;&rdquo; New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025) (quoting Nken, 556 U.S. at 434). &ldquo;The first two factors... are the most critical.&rdquo; Nken, 556 U.S. at 434.

Carter is not entitled to a stay pending appeal. She has not made a strong showing that she is likely to succeed on the merits, identifying no authority that clearly supports her request for intervention under the circumstances. Given the weakness of her showing on the merits, even her assertions of serious harm&mdash;at least some of which appear unrelated to the present action, [ECF No. 98 at 1&ndash;2]&mdash;do not carry the day. See Braintree Lab'ys, Inc. v. Citigroup Global Markets Inc., 622 F.3d 36, 42 (1st Cir. 2010). Because Carter has not satisfied her burden on the first two factors, the Court need not consider the remaining factors. Carter&rsquo;s motion for a stay pending appeal is DENIED.

Finally, Carter is reminded that the local rules require motions and supporting materials to be filed at the same time, L.R. 7.1(a), and encouraged to refrain from filing further documents

that substantially duplicate or repeat material contained in prior filings. Carter is further reminded that the Court has discretion to rescind electronic filing privileges if those privileges are abused.

(CAM) (Entered: 04/29/2026)&rdquo;

**Appx19** – Electronic Order Denying Rule 60 Motion to Vacate



"Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Pro se movant Daitona Carter&rsquo;s motion to vacate the Court&rsquo;s prior order denying her request for reconsideration, [ECF No. 110 ], is DENIED.

Carter&rsquo;s motion invokes Federal Rules of Civil Procedure 60(b)(3), 60(b)(6), and  60(d)(3). [ECF No. 110 at 1]. Relief under Rule 60(b) is &ldquo;extraordinary in nature,&rdquo; and a district court does not abuse its discretion in summarily denying a Rule 60(b) motion that &ldquo;simply restate[s] the arguments already fully considered and rejected by the court in its previous ruling.&rdquo; Diaz v. Gonzales, 167 F. App'x 820, 822 (1st Cir. 2006). To satisfy Rule 60(b)(3), Carter &ldquo;&lsquo;must demonstrate misconduct&mdash;such as fraud or misrepresentation&mdash;by clear and convincing evidence&rsquo; and &lsquo;show that the misconduct foreclosed full and fair preparation or presentation of [her] case.&rsquo;&rdquo; Giroux v. Fed. Nat. Mortg. Ass'n, 810 F.3d 103, 108 (1st Cir. 2016) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 21 (1st Cir. 2002)). &ldquo;[R]elief under Rule 60(b)(6) is available only in narrow circumstances,&rdquo; that is, &ldquo;when Rules 60(b)(1) through (b)(5) are inapplicable&rdquo; and &ldquo;extraordinary circumstances... justify reopening.&rdquo; BLOM Bank SAL v. Honickman, 605 U.S. 204, 211 (2025) (citation mod-"

ified). For a court to &ldquo;set aside a judgment for fraud on the court&rdquo; under Rule 60(d)(3), there must be a showing of &ldquo;an unconscionable scheme or the most egregious conduct designed to corrupt the judicial process.&rdquo; Fontanillas−Lopez v. Morell Bauza Cartagena & Dapena, LLC, 832 F.3d 50, 63 n.11 (1st Cir. 2016) (quoting LinkCo, Inc. v. NaoyukiAkikusa, 367 F. App&rsquo;x 180, 182 (2d Cir. 2010)); see also Gillis v. Chase, 894 F.3d 1, 4 (1st Cir. 2018) (&ldquo;[F]raud on the court requires interference with the judicial process itself, such as bribery of a judge.&rdquo;).

Carter&rsquo;s motion does not satisfy Rule 60(b) or (d). It appears primarily to restate arguments that the Court already considered and rejected in ruling on Carter&rsquo;s prior motion to intervene and motions for reconsideration. See [ECF No. 90]; [ECF No. 107].

Carter has not shown misconduct, such as fraud or misrepresentation, by clear and

convincing evidence, as required for relief under Rule 60(b)(3). By the same token, she has not shown any interference with the judicial process amounting to fraud on the court, as required for relief under Rule 60(d)(3). Finally, she has not shown extraordinary circumstances sufficient to satisfy the strict Rule 60(b)(6) standard. Accordingly, her motion to vacate, [ECF No. 110 ], is DENIED.

The Court notes that this is Carter&rsquo;s third motion for reconsideration of its denial of her motion to intervene, and that it substantially restates arguments advanced in Carter&rsquo;s prior filings. See [ECF Nos. 91 , 95 , 110 ]. Accordingly, the Court orders that, during the pendency of her appeal, Carter must request leave of the Court before filing any further materials related to her request for intervention. Any further filings by Carter related to her request for intervention during the pendency of her appeal without prior leave of the Court will be struck. Should this not deter Carter, the Court will con-

sider terminating her electronic filing privileges. As Carter is aware, her recourse now lies with the Court of Appeals.

(CAM) (Entered: 05/08/2026)"