No. 2026-1721

# United States Court of Appeals
# for the Federal Circuit

SOLOS TECHNOLOGY LTD.,

*Plaintiff-Appellee,*

v.

META PLATFORMS, INC., META PLATFORMS TECHNOLOGIES, LLC, OAKLEY, INC., LUXOTTICA OF AMERICA, INC., ESSILORLUXOTTICA, USA, LLC,

*Defendants,*

DAITONA CARTER,

*Movant-Appellant.*

Appeal from the United States District Court for the District of Masschusetts
in 1:26cv–1034–ADB
Judge Allison D. Burroughs

# APPENDIX OF MOVANT-APPELLANT DAITONA CARTER

JUNE 14, 2026

**DAITONA CARTER**
*Movant-Appellant Pro Se*
2 Massachusetts Ave NE
General Delivery, Main
Post Office
Washington, DC 20002
legal@daitonacarter.com

# APPENDIX TABLE OF CONTENTS

ii

**APPENDIX TABLE OF CONTENTS**

**PART I: COURT ORDERS, NOTICES OF APPEAL, AND DOCKET SHEET** — 10

A. MANDATORY ORDERS APPEALED FROM (FCR 30(b)(2)(B)(iv)) — 11

**ECF No. 90** – Electronic Order Denying Motion to Intervene — 12

**ECF No. 107** – Electronic Order Denying Motion for Reconsideration and Stay — 15

**ECF No. 113** – Electronic Order Denying Rule 60 Motion to Vacate — 19

B. NOTICES OF APPEAL (FCR 30(b)(2)(B)(iv)) — 22

**ECF No. 97** – Notice of Appeal to the Federal Circuit (Filed April 21, 2026) — 23

**ECF No. 114** – Notice of Appeal to the Federal Circuit (Filed May 17, 2026) — 28

C. DISTRICT COURT DOCKET SHEET (FCR 30(b)(2)(B)(v)) — 30

**Docket Sheet** – *Solos Technology Limited v. Meta Platforms, Inc. et al.*, Case No. 1:26-cv-10304 (D. Mass.) Current as of June 16, 2026 — 32

**PART II: PLEADING-STAGE ENTRY DOCUMENTS AND TRIAL RECORD** — 50

D. RULE 24 RECORD PARTICIPANTS (FCR 30(b)(2)(B)(vi)) — 51

**ECF No. 58** – Motion to Intervene filed by Movant Daitona Carter — 52

**ECF No. 58-1** – Attachment 1: Proposed Complaint in Intervention — 61

**ECF No. 58-2** – Attachment 2: Text of Proposed Order — 65

**ECF No. 58-3** – Attachment 3: Statement of Interest — 67

**ECF No. 58-4** – Attachment 4: Supplemental Notice of Prior Claims of Ownership — 70

**ECF No. 83** – Supplemental Affidivant Re: Demonstrative Exhibits and Forensic Log Availability; Attachment 1-8: Proof of Senior Inventorship and Trademark Ownership — 73

**ECF No. 82** – Plaintiff Solos Technology Limited's Opposition to Motion to Intervene — 110

**E. POST-JUDGMENT MOTIONS RECORD (FCR 30(b)(2)(B)(vi))** — 122

**ECF No. 91** – FRCP 59(e) Motion for Reconsideration filed by Daitona Carter — 123

**ECF No. 91-1** – Attachment 1: Declaration Of Daitona Carter In Support Of Motion For Reconsideration Pursuant To Fed. R. Civ. P. 60(B) — 129

**ECF No. 91-2** – Attachment 2: Declaration Of Daitona Carter In Support Of Motion For Reconsideration Joint Inventorship, Derivation, And Irreparable Harm — 133

**ECF No. 91-3** – Attachment 3: Exhibit Granted Leave to File April 13 — Supplemental Evidence AND (Proposed) ORDER — 138

**ECF No. 91-4** – Attachment 4: Exhibit Granted Leave to File April 13 — (Proposed) Order Re: Digital Interference And Forensic Integrity — 153

**ECF No. 91-5** – Attachment 5: Exhibit Granted Leave to File April 13 — Notice Of Authentication (Exhibits G, H, & L) — 157

**ECF No. 91-6** – Attachment 6: Exhibit Granted Leave to File April 13 — Exhibit L: Forensic Map OF Financial Interdependence — 161

**ECF No. 91-7** – Attachment 7: Exhibit 2009 Prior Work and Research with DSP/Audio — 165

**ECF No. 91-8** – Attachment 8: Exhibit 2013 Conception of Context-Aware AV System — 173

**ECF No. 91-9** – Attachment 9: Exhibit Conception of AI Language Translation Device — 175

**ECF No. 91-10** – Attachment 10: Exhibit Earliest Public Conception of AI Device — 177

**ECF No. 91-11** – Attachment 11: Exhibit Thermal Eye-Tracking STL (M-97) — 179

**ECF No. 91-12** – Attachment 12: Exhibit Meet Aria - M52-54 (Younoodle EWC Ex H) — 181

**ECF No. 91-13** – Attachment 13: Exhibit Meetup.com Patent Meetup Log    185

**ECF No. 91-14** – Attachment 14: Exhibit Samsung Patent/LinkedIn Outreach    187

**ECF No. 91-15** – Attachment 15: Exhibit Twitter Post Tagging Misappropriation    189

**ECF No. 91-16** – Attachment 16: Exhibit Timeline Comparison Chart    191

**ECF No. 91-17** – Attachment 17: Exhibit Evidence Table    193

PART III: TECHNICAL AND DUE PROCESS EXCLUSION EVIDENCE    197

F. ECF NO. 92 SUBMISSIONS (COMPREHENSIVE ATTACHMENTS 1–65) (FCR 30(a)(2))    198

**ECF No. 92** – Notice of Technical and Due Process Barriers filed by Daitona Carter    199

**ECF No. 92** – Image of Instant Suppression
( 65 Rearranged and Swapped – disclosed on ECF No. 94 Notice)    201

**ECF No. 92** – NEF email notification and hash for all 65 files    203

(Shared in ECF No. 94 Notice)

**ECF No. 92-1** – Attachment 1: Discovery Mode (OpenCV Object Detection Overlay)    219

**ECF No. 92-2** – Attachment 2: Discovery Mode (Gaze-Based Recognition)    221

**ECF No. 92-3** – Attachment 3: Geo AR + Arducam/RPi Sourcing Records    223

**ECF No. 92-4** – Attachment 4: Location-Based AR Hardware Procurement    225

**ECF No. 92-5** – Attachment 5: 1.22-Inch MIPI DSI Display Component Layout    227

**ECF No. 92-6** – Attachment 6: MIPI DSI Display Assembly Notes    229

**ECF No. 92-7** – Attachment 7: I/O Wiring Module Choices and Firmware Test Logs    231

**ECF No. 92-8** – Attachment 8: Solar Temple Arm Rendering Schematic    233

**ECF No. 92-9** – Attachment 9: Wearable Frame Handwritten Ergonomic Specs    235

**ECF No. 92-10** – Attachment 10: PHP Linguistic Engine Source Code (chinese_nouns.php) — 237

**ECF No. 92-11** – Attachment 11: Lens and Mirror Mount Optical Stack Design — 239

**ECF No. 92-12** – Attachment 12: Acoustic Logic Case Study Waves H-Compressor Log — 241

**ECF No. 92-13** – Attachment 13: Meet Aria Pitch Deck Feature Roadmap (Excerpts Pages 1–3) — 249

**ECF No. 92-14** – Attachment 14: RPi Speech Directory Source Code (speechAnalyser.py) — 253

**ECF No. 92-15** – Attachment 15: Amazon Web Services (AWS) Infrastructure Receipt — 255

**ECF No. 92-16** – Attachment 16: AI Language Teaching Software Instruction Blueprint — 257

**ECF No. 92-17** – Attachment 17: Translation Interface (Korean Bread Application Proof) — 259

**ECF No. 92-18** – Attachment 18: Translation Features, Phrase and Grammar Logs — 261

**ECF No. 92-19** – Attachment 19: Photographic Image: Black & White Prototype Glasses — 263

**ECF No. 92-20** – Attachment 20: Guerrilla Mail Correspondence Record to Sen. Cruz — 265

**ECF No. 92-21** – Attachment 21: Guerrilla Mail Legal Notice to Sen. Cruz — 267

**ECF No. 92-22** – Attachment 22: Guerrilla Mail Evidence Registry to Sen. Cruz — 269

**ECF No. 92-23** – Attachment 23: Application Code Document (app.py Twilio SMS Code — 271

**ECF No. 92-24** – Attachment 24: Optical Design Hand-Drawn Sketch (Concave vs Convex) — 273

**ECF No. 92-25** – Attachment 25: Patent Comparison Layout (Samsung US Pat- — 275

10,866,417)

**ECF No. 92-26** – Attachment 26: Tech Lab Blog Public Notes for AR/VR Development — 277

**ECF No. 92-27** – Attachment 27: KCASH Instagram Data Sourcing Record (@SEEMYBIAS) — 280

**ECF No. 92-28** – Attachment 28: ASR-Driven Contextual Video Advertisement Insertion — 282

**ECF No. 92-29** – Attachment 29: Real-Time NLP Translation Wearable Documentation — 284

**ECF No. 92-30** – Attachment 30: Real World Learning Algorithm Architecture Log — 286

**ECF No. 92-31** – Attachment 31: Maker Lab Prototype Frame Thickness Design Notes — 287

**ECF No. 92-32** – Attachment 32: LinkedIn Analytics Metric Interaction Screenshot — 290

**ECF No. 92-33** – Attachment 33: Prescription Integration Optical Curve Sketch — 292

**ECF No. 92-34** – Attachment 34: Photographic Image: Prototyping Hacksaw Tool — 294

**ECF No. 92-35** – Attachment 35: Optical Physics Refraction Conception Notes (Snell's Law) — 296

**ECF No. 92-36** – Attachment 36: Professional Profile Record (JeongSu Dennis Han, Ph.D.) — 298

**ECF No. 92-37** – Attachment 37: Corporate Profile Screenshot (Junhee Lee, October 21, 2017) — 300

**ECF No. 92-38** – Attachment 38: Head-Worn AR/VR Smart Glasses Electromagnetic Plan — 302

**ECF No. 92-39** – Attachment 39: Photographic Image: Reduction to Practice Variant A — 304

**ECF No. 92-40** – Attachment 40: Photographic Image: Reduction to Practice — 307

Variant B

**ECF No. 92-41** – Attachment 41: Search Engine Metatag Capture (DuckDuckGo Public Threat) — 309

**ECF No. 92-42** – Attachment 42: Pre-Litigation Outreach Records Transmitted to @zuck — 311

**ECF No. 92-43** – Attachment 43: Smart Glasses Architecture Sourcing Directory Link Log — 313

**ECF No. 92-44** – Attachment 44: Eyewear Frame Aesthetic Prototype Analysis Image — 315

**ECF No. 92-45** – Attachment 45: Communications Log Transcript (Laser Cut Glass Request) — 317

**ECF No. 92-46** – Attachment 46: Commercialization Document (Patent, Pitch, Produce Event) — 319

**ECF No. 92-47** – Attachment 47: Public Funding and Venture Capital Pitch Outline — 321

**ECF No. 92-48** – Attachment 48: Extracted Data PDF: ThermalEyetap_STL Gaze Layout Log — 323

**ECF No. 92-49** – Attachment 49: Computer Vision Object Recognition Data Registry — 325

**ECF No. 92-50** – Attachment 50: Skeletal Mapping Video Processing Output Chart — 327

**ECF No. 92-51** – Attachment 51: Optical Character Recognition Source Code (ocr.py Test) — 329

**ECF No. 92-52** – Attachment 52: Data Spreadsheet: Korean Linguistics Reference Table — 331

**ECF No. 92-53** – Attachment 53: Photographic Image: Device Prototype Bench Assembly — 333

**ECF No. 92-54** – Attachment 54: Whiteboard Engineering Sketch (Samsung Optical Path) — 335

**ECF No. 92-55** – Attachment 55: DLP NIRscan Nano Optical Architecture Diagram     337

**ECF No. 92-56** – Attachment 56: Translation Language Processing Syntax Flow Notes     339

**ECF No. 92-57** – Attachment 57: LinkedIn Public Interactive Project Disclosure Log     341

**ECF No. 92-58** – Attachment 58: Spreadsheet Record: Real World Translation Lexicon     343

**ECF No. 92-59** – Attachment 59: Optical Engineering Video Description & Formula Log     345

**ECF No. 92-60** – Attachment 60: Industrial Outreach History (ODG & NAVER Corp Registry)     347

**ECF No. 92-61** – Attachment 61: Public Lens Design and Physics Broadcast Entry     349

**ECF No. 92-62** – Attachment 62: Jasper Project Voice Interface Microphone Configuration     351

**ECF No. 92-63** – Attachment 63: Multi-Agency Formal Trade Misappropriation Report     353

**ECF No. 92-64** – Attachment 64: Public Lab Note Hyperlink Verification Log     355

**ECF No. 92-65** – Attachment 65: Federal Notice Archive (Sen. Cruz Data Submission)     357

**PART IV: REMAINING POST-JUDGMENT ENTRIES AND PROOF OF SERVICE**     359

G. REMAINING MOTIONS AND REPLIES     360

**ECF No. 94** – Notice of Error with Accompanying Security Logs (Exhibits M-39 & N)     361

**ECF No. 94** –Ring Security Logs (Exhibits M-39 & N)     365

**ECF No. 95** – Motion to Vacate Order and Request for Stay Pending Appeal     461

**ECF No. 95-1** – Attachment 1: Declaration of Daitona Carter       465

**ECF No. 95-2** – Attachment 2: Exhibit Overlap IP Development Timeline       476

**ECF No. 95-3** – Attachment 3: Exhibit Supplemental Disclosure Meta Materials       536

**ECF No. 95-4** – Attachment 3: Pattern of Physical Harm, Harassment, Digital       553
Interference, and Obstruction

**ECF No. 105** – Plaintiff-Appellees' Response/Opposition Motion to Vacate Order
and for Miscellaneous Relief       595

**ECF No. 110** – Motion to Vacate Order and for Miscellaneous Relief       608

**ECF No. 110-1 through 110-11** – Attachments 1–11: Exhibits and Proposed       641
Orders

**ECF No. 112** – Plaintiff-Appellees' Response/Opposition to Motion to Vacate       674

H. PROOF OF SERVICE (FCR 25(e))       685

**Certificate of Service** – Proof of service on registered and unregistered counsel       686

# PART I: COURT ORDERS, NOTICES OF APPEAL, AND DOCKET SHEET

**A. MANDATORY ORDERS APPEALED FROM (FCR 30(b)(2)(B)(iv))**

**ECF No. 90** – Electronic Order Denying Motion to Intervene



| 04/15/2026 | 90 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Currently before the Court is pro se movant Daitona Carter's ("Carter") motion to intervene under Federal Rule of Civil Procedure 24. [ECF No. 58 ]. For the following reasons, that motion is denied. |
|---|---|---|
| | | An applicant may intervene as a matter of right under Rule 24(a) if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede her ability to protect that interest; and (4) her interest will not be adequately represented by existing parties. Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). "Failure to satisfy any single requirement for intervention... is sufficient grounds to deny [the] request." Victim Rights Law Center v. Rosenfelt, 988 F.3d 556, 560–61 (1st Cir. 2021). Under Rule 24(b)(1)(B), the Court may also "permit anyone to intervene... who has a claim... that shares with the main action a common question of law or fact." Permissive intervention under Rule 24(b) is "'wholly discretionary,' and a court should consider whether intervention will prejudice the existing parties or delay the action." In re Bos. Sci. Corp. ERISA Litig., 254 F.R.D. 24, 33 n.82 (D. Mass. 2008) (quoting In re Sonus Networks, Inc. Sec. Litig., 229 F.R.D. 339, 345 (D. Mass. 2005)). The Court accepts as true non-conclusory allegations made in support of the motion to intervene. B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006). |
| | | Here, Carter may not intervene under Rule 24(a) because she has not sufficiently alleged that she has a protectible interest in this action. Carter claims sole inventorship and ownership of the asserted patents under 35 U.S.C. § 256, based on her alleged "prior conception and reduction to practice of the technologies embodied in the asserted patents." [ECF No. 58 at 3]. She has not, however, presented non-conclusory allegations to support this claim. See, e.g., Ultravision Techs., LLC v. GoVision, LLC, No. 18-cv-00100, 2020 WL 7261089, at *5 (E.D. Tex. Dec. 9, 2020). To qualify as an inventor of the asserted patents, she must have "contribute[d] to the conception of the invention," which is "'the formation... of a definite and permanent idea of the complete and operative invention[,]'... includ[ing] every feature of the subject matter claimed in the patent." Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (quoting Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986)). Neither Carter's motion, [ECF No. 58 ], nor her proposed complaint in intervention, [ECF No. 58-1], nor any of her many other filings to date, [ECF Nos. 70 , 72 , 73 , 77 , 78 , 79 , 83 ], contain non-conclusory allegations suggesting that she contributed to the formation of a definite and permanent idea as to every feature of the subject matter claimed in the asserted patents. Ethicon, Inc., 135 F.3d at 1460; cf.Iceotope Group Limited v. LiquidCool Solutions, Inc., No. 20-cv-02644, 2022 WL 204923, at *3 (D. Minn. Jan. 24, 2022) (holding that allegations that inventors made "unspecified contribution[s] to an assortment of [the asserted] patents or patent applications" were too conclusory to support inventor change under § 256). Accordingly, Carter may not intervene under Rule 24(a). |
| | | The Court also denies Carter's request for permissive intervention under Rule 24(b). Allowing Carter to intervene here would not only substantially expand the scope of the action to include disputes over inventorship; it would also "unduly hinder the efficient resolution" of this case. T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 42 (1st Cir. 2020). |
| | | Accordingly, Carter's motion to intervene, [ECF No. 58 ], is **DENIED**, and all her other pending motions are **DENIED AS MOOT**. (CAM) (Entered: 04/15/2026) |

"Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Currently before the Court is pro se movant Daitona Carter&rsquo;s (&ldquo;Carter&rdquo;) motion to intervene under Federal Rule of Civil Procedure 24. [ECF No. 58 ]. For the following reasons, that motion is denied.

An applicant may intervene as a matter of right under Rule 24(a) if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede her ability to protect that interest; and (4) her interest will not be adequately represented by existing parties. Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). &ldquo;Failure to satisfy any single requirement for intervention... is sufficient grounds to deny [the] request.&rdquo; Victim Rights Law Center v. Rosenfelt, 988 F.3d 556, 560&ndash;61 (1st Cir. 2021). Under Rule 24(b)(1)(B), the Court may also &ldquo;permit anyone to intervene... who has a claim... that shares with the main action a common question of law or fact.&rdquo; Permissive

intervention under Rule 24(b) is &ldquo;&lsquo;wholly discretionary,&rsquo; and a court should consider whether intervention will prejudice the existing parties or delay the action.&rdquo; In re Bos. Sci. Corp. ERISA Litig., 254 F.R.D. 24, 33 n.82 (D. Mass. 2008) (quoting In re Sonus Networks, Inc. Sec. Litig., 229 F.R.D. 339, 345 (D. Mass. 2005)). The Court accepts as true non−conclusory allegations made in support of the motion to intervene. B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006). Here, Carter may not intervene under Rule 24(a) because she has not sufficiently alleged that she has a protectible interest in this action. Carter claims sole inventorship and ownership of the asserted patents under 35 U.S.C. § 256, based on her alleged &ldquo;prior conception and reduction to practice of the of technologies embodied in the asserted patents.&rdquo; [ECF No. 58 at 3]. She has not, however, presented non−conclusory allegations to support this claim. See, e.g., Ultravision Techs., LLC v. GoVision, LLC, No. 18−cv−00100, 2020 WL 7261089, at *5 (E.D. Tex. Dec. 9, 2020). To qualify as an inventor of the asserted patents, she must have &ldquo;contribute[d] to the conception of the invention,&rdquo; which is &ldquo;&lsquo;the formation... of a definite and permanent idea of the complete and operative invention[,]&rsquo;... includ[ing] every feature of the subject matter claimed in the patent.&rdquo; Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (quoting Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986)). Neither Carter&rsquo;s motion, [ECF No. 58 ], nor her proposed complaint in intervention, [ECF No. 58−1], nor any of her many other filings to date, [ECF Nos. 70 , 72 , 73 , 77 , 78 , 79 , 83 ], contain non−conclusory allegations suggesting that she contributed to the formation of a definite and permanent idea as to every feature of the subject matter claimed in the asserted patents. Ethicon, Inc., 135 F.3d at 1460; cf.Iceotope Group Limited v.

LiquidCool Solutions, Inc., No. 20−cv−02644, 2022 WL 204923, at *3 (D. Minn. Jan. 24, 2022) (holding that allegations that inventors made &ldquo;unspecified contribution[s] to an assortment of [the asserted] patents or patent applications&rdquo; were too conclusory to support inventor change under § 256). Accordingly, Carter may not intervene under Rule 24(a).

The Court also denies Carter&rsquo;s request for permissive intervention under Rule 24(b). Allowing Carter to intervene here would not only substantially expand the scope of the action to include disputes over inventorship; it would also &ldquo;unduly hinder the efficient resolution&rdquo; of this case. T−Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 42 (1st Cir. 2020).

Accordingly, Carter&rsquo;s motion to intervene, [ECF No. 58 ], is DENIED, and all her other pending motions are DENIED AS MOOT. (CAM)

(Entered: 04/15/2026)"

**ECF No. 107** – Electronic Order Denying Motion for Reconsideration and Stay



"Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Pro se movant Daitona Carter's motion for leave to file a reply, [ECF No. 106 ], is GRANTED.

Carter moves for reconsideration of the Court&rsquo;s order, [ECF No. 90 ], denying her request for intervention, [ECF Nos. 91 , 95 ], and for a stay pending her appeal of that order, [ECF No. 98 ].

The Court considers Carter&rsquo;s motions for reconsideration under the Rule 59(e) standard. See Perez−Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 284 (1st Cir. 1993). The granting of a motion for reconsideration is &ldquo;an extraordinary remedy&rdquo; that is only warranted if &ldquo;newly discovered evidence... has come to light or... the rendering court committed a manifest error of law.&rdquo; Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted). &ldquo;[S]imple disagreement with the court&rsquo;s decision is not a basis for reconsideration.&rdquo; Ofori v. Ruby Tuesday, Inc., 205 F. App&rsquo;x 851, 853 (1st Cir. 2006). Courts have &ldquo;substantial discretion&rdquo; and &ldquo;broad authority&rdquo; to allow or deny

reconsideration. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81–82 (1st Cir.2008). Carter's filings do not meet the standard for reconsideration. As an initial matter, Carter has not sufficiently shown that anything contained in the filings qualifies as "newly discovered" within the meaning of Rule 59(e), in the sense that it was not previously available to her. See Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 931 (1st Cir. 2014). More importantly, what she has submitted does not cure the defect identified in the Court's prior order, namely, that Carter has not sufficiently alleged that she conceived of or contributed to the conception of the inventions at issue in this litigation. See Glob. Health Sols. LLC v. Selner, 148 F.4th 1363, 1371 (Fed. Cir. 2025) (noting that, to prove derivation, a party "must produce evidence sufficient to show (i) conception of the claimed invention, and (ii) communication of the conceived invention to the respondent prior to respondent's filing of that patent application"); BearBox LLC v. Lancium LLC, 125 F.4th 1101, 1118 (Fed. Cir. 2025) (noting that "[a]n alleged joint inventor must show that he contributed significantly to the conception... or reduction to practice of at least one claim" and that the "contributions... arise from 'some element of joint behavior...' with the other inventors" (citation omitted)). As Solos notes, Carter's filings reflect, at most, "generalized work in smart glasses. technology, software concepts, or prior projects," without identifying any "concrete, claim−level contributions." [ECF No. 105 at 7]. Accordingly, Carter's motions for reconsideration are DENIED.

Before seeking a stay pending appeal from the court of appeals, a person "must ordinarily move first in the district court," Fed. R. App. P. 8(a)(1), but the standard governing its issuance is "generally the same" in both, Hilton v. Braunskill, 481 U.S. 770, 776 (1987). A stay is

&ldquo;&lsquo;an exercise of judicial discretion&rsquo; and &lsquo;[t]he propriety of its issue is dependent upon the circumstances of the particular case.&rsquo;&rdquo; Nken v. Holder, 556 U.S. 418, 433 (2009) (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672&ndash;73 (1926)). To obtain a stay, Carter must &ldquo;(1) make a &lsquo;strong showing that [she is] likely to succeed on the merits&rsquo; in [her] appeal; (2) show that [she] &lsquo;will be irreparably injured absent a stay&rsquo;; (3) show that &lsquo;issuance of the stay will [not] substantially injure the other parties interested in the proceeding&rsquo;; and (4) show that the stay would serve&lsquo;the public interest.&rsquo;&rdquo; New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025) (quoting Nken, 556 U.S. at 434). &ldquo;The first two factors... are the most critical.&rdquo; Nken, 556 U.S. at 434.

Carter is not entitled to a stay pending appeal. She has not made a strong showing that she is likely to succeed on the merits, identifying no authority that clearly supports her request for intervention under the circumstances. Given the weakness of her showing on the merits, even her assertions of serious harm&mdash;at least some of which appear unrelated to the present action, [ECF No. 98 at 1&ndash;2]&mdash;do not carry the day. See Braintree Lab'ys, Inc. v. Citigroup Global Markets Inc., 622 F.3d 36, 42 (1st Cir. 2010). Because Carter has not satisfied her burden on the first two factors, the Court need not consider the remaining factors. Carter&rsquo;s motion for a stay pending appeal is DENIED.

Finally, Carter is reminded that the local rules require motions and supporting materials to be filed at the same time, L.R. 7.1(a), and encouraged to refrain from filing further documents

that substantially duplicate or repeat material contained in prior filings. Carter is further reminded that the Court has discretion to rescind electronic filing privileges if those privileges are abused.

(CAM) (Entered: 04/29/2026)"

**ECF No. 113** – Electronic Order Denying Rule 60 Motion to Vacate



"Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Pro se movant Daitona Carter&rsquo;s motion to vacate the Court&rsquo;s prior order denying her request for reconsideration, [ECF No. 110 ], is DENIED.

Carter&rsquo;s motion invokes Federal Rules of Civil Procedure 60(b)(3), 60(b)(6), and  60(d)(3). [ECF No. 110 at 1]. Relief under Rule 60(b) is &ldquo;extraordinary in nature,&rdquo; and a district court does not abuse its discretion in summarily denying a Rule 60(b) motion that &ldquo;simply restate[s] the arguments already fully considered and rejected by the court in its previous ruling.&rdquo; Diaz v. Gonzales, 167 F. App'x 820, 822 (1st Cir. 2006). To satisfy Rule 60(b)(3), Carter &ldquo;&lsquo;must demonstrate misconduct&mdash;such as fraud or misrepresentation&mdash;by clear and convincing evidence&rsquo; and &lsquo;show that the misconduct foreclosed full and fair preparation or presentation of [her] case.&rsquo;&rdquo; Giroux v. Fed. Nat. Mortg. Ass'n, 810 F.3d 103, 108 (1st Cir. 2016) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 21 (1st Cir. 2002)). &ldquo;[R]elief under Rule 60(b)(6) is available only in narrow circumstances,&rdquo; that is, &ldquo;when Rules 60(b)(1) through (b)(5) are

inapplicable&rdquo; and &ldquo;extraordinary circumstances... justify reopening.&rdquo; BLOM Bank SAL v. Honickman, 605 U.S. 204, 211 (2025) (citation modified). For a court to &ldquo;set aside a judgment for fraud on the court&rdquo; under Rule 60(d)(3), there must be a showing of &ldquo;an unconscionable scheme or the most egregious conduct designed to corrupt the judicial process.&rdquo; Fontanillas−Lopez v. Morell Bauza Cartagena & Dapena, LLC, 832 F.3d 50, 63 n.11 (1st Cir. 2016) (quoting LinkCo, Inc. v. NaoyukiAkikusa, 367 F. App&rsquo;x 180, 182 (2d Cir. 2010)); see also Gillis v. Chase, 894 F.3d 1, 4 (1st Cir. 2018) (&ldquo;[F]raud on the court requires interference with the judicial process itself, such as bribery of a judge.&rdquo;).

Carter&rsquo;s motion does not satisfy Rule 60(b) or (d). It appears primarily to restate arguments that the Court already considered and rejected in ruling on Carter&rsquo;s prior motion to intervene and motions for reconsideration. See [ECF No. 90]; [ECF No. 107].

Carter has not shown misconduct, such as fraud or misrepresentation, by clear and convincing evidence, as required for relief under Rule 60(b)(3). By the same token, she has not shown any interference with the judicial process amounting to fraud on the court, as required for relief under Rule 60(d)(3). Finally, she has not shown extraordinary circumstances sufficient to satisfy the strict Rule 60(b)(6) standard. Accordingly, her motion to vacate, [ECF No. 110 ], is DENIED.

The Court notes that this is Carter&rsquo;s third motion for reconsideration of its denial of her motion to intervene, and that it substantially restates arguments advanced in Carter&rsquo;s prior filings. See [ECF Nos. 91 , 95 , 110 ]. Accordingly, the Court orders that, during the pendency of her appeal, Carter must request leave of the Court before filing any further materials related to her request

for intervention. Any further filings by Carter related to her request for intervention during the pendency of her appeal without prior leave of the Court will be struck. Should this not deter Carter, the Court will consider terminating her electronic filing privileges. As Carter is aware, her recourse now lies with the Court of Appeals.

(CAM) (Entered: 05/08/2026)"

## B. NOTICES OF APPEAL (FCR 30(b)(2)(B)(iv))

**ECF No. 97 – Notice of Appeal to the Federal Circuit (Filed April 21, 2026)**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**DAITONA CARTER,**
Appellant,

v.

**SOLOS TECHNOLOGY LIMITED,**
**META PLATFORMS, INC., et al.,**
Appellees.

**Case No.:  2026-26-136**

(Appeal from U.S. District Court for the District of Massachusetts, Case No. 1:26-cv-10304-ADB)

## NOTICE OF APPEAL

TO THE CLERK OF THE DISTRICT COURT AND THE CLERK OF THIS COURT:

TAKE NOTICE that Appellant, Daitona Carter, hereby appeals to the United States Court of Appeals for the Federal Circuit from the Final Order entered by the United States District Court for the District of Massachusetts on April 15, 2026 (ECF No. 58), which:

Denied Appellant's Motion to Intervene; and Summarily Terminated Appellant's Motion for Witness Protection and Referral to the U.S. Marshals.

## I. BASIS FOR APPEAL

The District Court abused its discretion for the following reasons:

1. Improper Termination of Safety Motion: The Court erroneously terminated Appellant's Motion for Witness Protection solely because she was denied intervention. Safety motions addressing credible threats of physical battery and spoliation are independent of party status. The Court has a duty to protect individuals from violence regardless of their procedural standing.

1

Appx24

2. Failure to Consider New Evidence: The denial of intervention was based on an incomplete record. Appellant has since filed 100 Exhibits proving her status as the source of derivation and/or joint inventor under 35 U.S.C. §§ 116 and 256. The Court failed to review this evidence before terminating the case.

3. Procedural Impropriety: The Court issued its denial and termination orders merely 49 minutes after Appellant's Writ of Mandamus was docketed, suggesting a rush to dismiss the case and eliminate safety protections before Appellant could cure the record.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) as this appeal arises from a final decision of a district court in a civil action where the jurisdiction of the district court was based, in whole or in part, on an Act of Congress relating to patents.

## III. RELIEF REQUESTED

Appellant requests that this Court:

Reverse the District Court's denial of intervention and the termination of the safety motion; Remand the case with instructions to reinstate the Motion for Witness Protection and hold an evidentiary hearing on over 60 exhibits; and Grant such other relief as is just and proper.

Respectfully submitted,
/s/ Daitona Carter
Daitona Carter, Pro Se
[Contact Information Withheld Pursuant to TVPA and 18 U.S.C. § 3521 Safety Referral]
**Date: April 20, 2026**

2

Appx25

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2026, I served a true and correct copy on all counsel of record by electronic mail at the following addresses:

Counsel for Solos Technology Limited:

Ali S. Razai, ali.razai@morganlewis.com

Vanessa Green, vanessa.green@morganlewis.com

Andrew V. Devkar, andrew.devkar@morganlewis.com

Brandon G. Smith, brandon.g.smith@morganlewis.com

Leslie Y. Garcia, leslie.y.garcia@morganlewis.com

Office Calendar Department, occalendardepartment@morganlewis.com

Katherine W. Soule, katherine.soule@morganlewis.com

Katie Thompson, katie.thompson@morganlewis.com

Counsel for Facebook, Inc./Meta Platforms, Inc.:

Eric E. Lancaster, ericlancaster@paulhastings.com

Cecilia Acosta, ceciliaacosta@paulhastings.com

Raye Jones, rayejones@paulhastings.com

Lisa K. Nguyen, lisanguyen@paulhastings.com

Matthias Kamber, matthiaskamber@paulhastings.com

Jerrice Thomas, jerricethomas@paulhastings.com

Stephanie Nicole Adamakos, stephanieadamakos@paulhastings.com

Counsel for Ray-Ban, Inc.:

Jameson J. Pasek, jameson@caldwelllaw.com

Keegan Michael Caldwell, keegan@caldwelllaw.com

Shixiong Wang, steve@caldwelllaw.com

3

I declare under penalty of perjury that the foregoing is true and correct.


Executed on April 20, 2026, at New York, New York.

/s/ Daitona Carter

Daitona Carter, Pro Se
[Contact Information Withheld Pursuant to TVPA and 18 U.S.C. § 3521 Safety Referral]

4

**ECF No. 114 – Notice of Appeal to the Federal Circuit (Filed May 17, 2026)**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LTD.,**
    *Plaintiff,*

    **v.**

**META PLATFORMS, INC., et al.,**
    *Defendants.*

**In re: DAITONA CARTER**
    *Proposed Intervenor/Movant.*

**Case No.: 1:26-cv-10304-ADB**
Judge Allison D. Burroughs

## AMENDED NOTICE OF APPEAL

Notice is hereby given that **Daitona Carter**, Pro Se, appeals to the **United States Court of Appeals for the Federal Circuit** from the Final Order entered on May 8, 2026 [ECF No. 113], which denied her Motion to Vacate under Rules 60(b)(3), 60(b)(6), and 60(d)(3), and imposed a filing injunction.

This appeal also includes all prior orders integrated into the final judgment, specifically [ECF No. 90] and [ECF No. 107], regarding original inventorship rights and the denial of intervention.

This Amended Notice of Appeal is filed as a matter of right pursuant to **Federal Rule of Appellate Procedure 3 and 4**, and is a mandatory jurisdictional prerequisite for the Court of Appeals. As a notice that divests the District Court of jurisdiction over the matters appealed, it does not constitute a 'request for intervention' or 'materials related' to a pending motion, and therefore does not require prior leave of the Court under the order entered at [ECF 113].

Respectfully submitted,

/s/ Daitona Carter

Appx29

DAITONA CARTER, Pro Se
Proposed Intervenor/Movant
General Delivery Delivery Points
Authenticated via CM/ECF MAD-Portal
E-Service/E-Filing Portal Access Only

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing **Amended Notice of Appeal** to be

electronically filed with the Clerk of the Court for the U.S. District Court, District of

Massachusetts, using the **CM/ECF system**.

I certify that the CM/ECF system will automatically generate and send a **Notice of Electronic**

**Filing (NEF)** to all registered participants and counsel of record in this case, which constitutes

service under the Federal Rules of Civil Procedure and the local rules of this Court.

Dated: May 17, 2026

Respectfully submitted,

/s/ Daitona Carter
DAITONA CARTER, Pro Se
Proposed Intervenor/Movant
General Delivery Delivery Points
Authenticated via CM/ECF MAD-Portal
E-Service/E-Filing Portal Access Only

Appx30

## C. DISTRICT COURT DOCKET SHEET (FCR 30(b)(2)(B)(v))

**Docket Sheet – Solos Technology Limited v. Meta Platforms, Inc. et al.,**

APPEAL,PATENT

# United States District Court
# District of Massachusetts (Boston)
# CIVIL DOCKET FOR CASE #: <u>1:26−cv−10304−ADB</u>

Solos Technology Limited v. Meta Platforms, Inc. et al
Assigned to: Judge Allison D. Burroughs
Demand: $0
Case in other court:  USCA for the Federal Circuit, 26−01721
Cause: 15:1126 Patent Infringement

Date Filed: 01/23/2026
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Solos Technology Limited**　　　represented by　**Jameson J. Pasek**
Caldwell Law
200 Clarendon Street, 59th Floor
Boston, MA 02116
857−990−4914
Email: <u>jameson@caldwelllaw.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keegan Michael Caldwell**
Caldwell Law
200 Clarendon Street, 59th Floor
Boston, MA 02116
857−990−4926
Email: <u>keegan@caldwelllaw.com</u>
*ATTORNEY TO BE NOTICED*

**Shixiong Wang**
Caldwell Law
200 Clarendon St, Floor 59
Boston, MA 02116
857−776−4505
Email: <u>steve@caldwelllaw.com</u>
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Meta Platforms, Inc.**　　　represented by　**Lisa K. Nguyen**
Paul Hastings LLP
1117 S. California Ave
Palo Alto, CA 94304
650−320−1800
Fax: 650−320−1900
Email: <u>lisanguyen@paulhastings.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Appx33

**Eric E Lancaster**
Paul Hastings LLP
1117 S. California Ave
Palo Alto, CA 94304
650–320–1800
Fax: 650–320–1900
Email: ericlancaster@paulhastings.com
*ATTORNEY TO BE NOTICED*

**Matthias Kamber**
Paul Hastings LLP
101 California Street
Ste Forty–Eighth Floor
San Francisco, CA 94111
415–856–7000
Fax: 415–856–7100
Email: matthiaskamber@paulhastings.com
*ATTORNEY TO BE NOTICED*

**Stephanie Nicole Adamakos**
Paul Hastings LLP
Patent Litigation
2050 M St NW
Washington, DC 20036
202–551–1817
Email: stephanieadamakos@paulhastings.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Meta Platforms Technologies, LLC**          represented by **Lisa K. Nguyen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric E Lancaster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthias Kamber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephanie Nicole Adamakos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Oakley, Inc.**          represented by **Ali S. Razai**
Morgan, Lewis & Bockius LLP
600 Anton Blvd., Suite 1800

Appx34

Costa Mesa, CA 92626
714–830–0600
Fax: 714–830–0700
Email: ali.razai@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Andrew V. Devkar**
Morgan, Lewis & Bockius LLP
2049 Century Park East
Suite 700
Los Angeles, CA 90067
310–255–9070
Fax: 310–907–1001
Email: andrew.devkar@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Brandon G. Smith**
Morgan Lewis
600 Anton Blvd
Ste 18th Floor
Costa Mesa, CA 92626
714–830–0600
Email: brandon.g.smith@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Katherine W. Soule**
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, MA 02110
617–341–7700
Email: katherine.soule@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| **Luxottica of America, Inc.** | represented by | **Ali S. Razai** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**Andrew V. Devkar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandon G. Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine W. Soule**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

Appx35

**EssilorLuxottica USA, Inc.**                    represented by  **Ali S. Razai**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew V. Devkar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandon G. Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine W. Soule**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**Daitona Carter**                    represented by  **Daitona Carter**
General Delvery
New York, NY 10001
212–274–7411
Email: dddddc@tuta.com
PRO SE

**Objector**

**Morgan Lewis & Bockius LLP**                    represented by  **Gary M Ronan**
Goulston & Storrs PC
One Post Office Square
Boston, MA 02109
617–574–3593
Email: gronan@goulstonstorrs.com
*TERMINATED: 04/14/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathleen M. Ritter**
Goulston & Storrs
Litigation
One Post Office Square
Ste 28th Floor
Boston, MA 02109
617–574–0596
Email: kritter@goulstonstorrs.com
*TERMINATED: 04/14/2026*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/23/2026 | 1 | COMPLAINT *for Patent Infringement* against All Defendants Filing fee: $ 405, receipt number AMADC–11494122 (Fee Status: Filing Fee paid), filed by Solos Technology |

| | | |
|---|---|---|
| | | Limited. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Civil Cover Sheet, # 13 Category Form)(Pasek, Jameson) (Entered: 01/23/2026) |
| 01/23/2026 | 2 | CORPORATE DISCLOSURE STATEMENT by Solos Technology Limited. (Pasek, Jameson) (Entered: 01/23/2026) |
| 01/23/2026 | 3 | REPORT ON THE FILING OF AN ACTION REGARDING PATENT OR TRADEMARK. (Pasek, Jameson) (Entered: 01/23/2026) |
| 01/23/2026 | 4 | ELECTRONIC NOTICE of Case Assignment. Judge Indira Talwani assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge M. Page Kelley. (JAM) (Entered: 01/23/2026) |
| 01/26/2026 | 5 | Judge Indira Talwani: ORDER entered. ORDER OF RECUSAL. (GAM) (Entered: 01/26/2026) |
| 01/26/2026 | 6 | ELECTRONIC NOTICE of Reassignment. Judge Allison D. Burroughs added. Judge Indira Talwani no longer assigned to case. (SP) (Entered: 01/26/2026) |
| 01/26/2026 | 7 | Summons Issued as to EssilorLuxottica USA, Inc., Luxottica of America, Inc., Meta Platforms Technologies, LLC, Meta Platforms, Inc., Oakley, Inc.. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (KF) (Entered: 01/26/2026) |
| 01/27/2026 | 8 | SUMMONS Returned Executed EssilorLuxottica USA, Inc. served on 1/27/2026, answer due 2/17/2026. (Pasek, Jameson) (Entered: 01/27/2026) |
| 01/28/2026 | 9 | SUMMONS Returned Executed Luxottica of America, Inc. served on 1/27/2026, answer due 2/17/2026. (Pasek, Jameson) (Entered: 01/28/2026) |
| 01/28/2026 | 10 | SUMMONS Returned Executed Oakley, Inc. served on 1/27/2026, answer due 2/17/2026. (Pasek, Jameson) (Entered: 01/28/2026) |
| 01/29/2026 | 11 | SUMMONS Returned Executed Meta Platforms Technologies, LLC served on 1/28/2026, answer due 2/18/2026. (Pasek, Jameson) (Entered: 01/29/2026) |
| 02/03/2026 | 12 | SUMMONS Returned Executed Meta Platforms, Inc. served on 2/2/2026, answer due 2/23/2026. (Pasek, Jameson) (Entered: 02/03/2026) |
| 02/16/2026 | 13 | NOTICE of Appearance by Katherine W. Soule on behalf of EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc. (Soule, Katherine) (Entered: 02/16/2026) |
| 02/16/2026 | 14 | Assented to MOTION for Extension of Time to March 3, 2026 to File Answer re 1 Complaint, by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc..(Soule, Katherine) (Entered: 02/16/2026) |
| 02/16/2026 | 15 | MOTION for Extension of Time to 3/25/2026 to File Answer re 1 Complaint, by Meta Platforms Technologies, LLC, Meta Platforms, Inc..(Kamber, Matthias) (Entered: 02/16/2026) |
| 02/17/2026 | 16 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 14 Motion for Extension of Time to Answer EssilorLuxottica USA, Inc. answer due 3/3/2026; Luxottica of America, Inc. answer due 3/3/2026; Oakley, Inc. answer due 3/3/2026. (KF) (Entered: 02/17/2026) |

| 02/17/2026 | 17 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 15 Motion for Extension of Time to Answer Meta Platforms Technologies, LLC answer due 3/25/2026; Meta Platforms, Inc. answer due 3/25/2026. (KF) (Entered: 02/17/2026) |
|---|---|---|
| 02/18/2026 | 18 | MOTION to Disqualify Counsel *Morgan Lewis & Bockius LLP* by Solos Technology Limited.(Pasek, Jameson) (Entered: 02/18/2026) |
| 02/18/2026 | 19 | MEMORANDUM in Support re 18 MOTION to Disqualify Counsel *Morgan Lewis & Bockius LLP* filed by Solos Technology Limited. (Attachments: # 1 Affidavit)(Pasek, Jameson) (Entered: 02/18/2026) |
| 02/18/2026 | 20 | MOTION for Extension of Time to March 25, 2026 to File Answer re 1 Complaint, by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc..(Soule, Katherine) (Entered: 02/18/2026) |
| 02/18/2026 | 21 | DECLARATION re 20 MOTION for Extension of Time to March 25, 2026 to File Answer re 1 Complaint, by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Attachments: # 1 Exhibit A)(Soule, Katherine) (Entered: 02/18/2026) |
| 02/19/2026 | 22 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered GRANTING 20 Motion for Extension of Time to Answer re 1 Complaint. EssilorLuxottica USA, Inc. answer due 3/25/2026; Luxottica of America, Inc. answer due 3/25/2026; Oakley, Inc. answer due 3/25/2026. (CAM) (Entered: 02/19/2026) |
| 03/04/2026 | 23 | Opposition re 18 MOTION to Disqualify Counsel *Morgan Lewis & Bockius LLP* filed by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Ronan, Gary) (Entered: 03/04/2026) |
| 03/04/2026 | 24 | DECLARATION re 23 Opposition to Motion *of John J. Concannon III* by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Ronan, Gary) (Entered: 03/04/2026) |
| 03/04/2026 | 25 | DECLARATION re 23 Opposition to Motion *of Richard A. Sneider* by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Ronan, Gary) (Entered: 03/04/2026) |
| 03/04/2026 | 26 | DECLARATION re 23 Opposition to Motion *of Anbar Khal* by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Ronan, Gary) (Entered: 03/04/2026) |
| 03/04/2026 | 27 | DECLARATION re 23 Opposition to Motion *of Ali Razai* by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Ronan, Gary) (Entered: 03/04/2026) |
| 03/05/2026 | 28 | MOTION for Leave to File *Reply to Morgan Lewis & Bockius LLP's Opposition to Plaintiff's Motion to Disqualify* by Solos Technology Limited.(Pasek, Jameson) (Entered: 03/05/2026) |
| 03/06/2026 | 29 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered GRANTING 28 Motion for Leave to File Reply ; Counsel must include – Leave to file granted on (date of order)– in the caption of the document. (CAM) (Entered: 03/06/2026) |
| 03/11/2026 | 30 | NOTICE of Appearance by Gary M Ronan on behalf of Morgan Lewis & Bockius LLP (Ronan, Gary) (Entered: 03/11/2026) |
| 03/11/2026 | 31 | NOTICE of Appearance by Kathleen M. Ritter on behalf of Morgan Lewis & Bockius LLP (Ritter, Kathleen) (Entered: 03/11/2026) |
| 03/13/2026 | 32 | ELECTRONIC NOTICE Setting Hearing on Motion 18 MOTION to Disqualify Counsel *Morgan Lewis & Bockius LLP* : Motion Hearing set for 3/26/2026 09:00 AM in Courtroom 17 (In person only) before Judge Allison D. Burroughs. (KF) (Entered: 03/13/2026) |

| | | |
|---|---|---|
| 03/13/2026 | 33 | REPLY to Response to 18 MOTION to Disqualify Counsel *Morgan Lewis & Bockius LLP* filed by Solos Technology Limited. (Attachments: # 1 Exhibit, # 2 Exhibit)(Pasek, Jameson) (Entered: 03/13/2026) |
| 03/20/2026 | 34 | MOTION for Leave to Appear Pro Hac Vice for admission of Keegan M. Caldwell Filing fee: $ 125, receipt number AMADC–11624197 by Solos Technology Limited. (Attachments: # 1 Affidavit)(Pasek, Jameson) (Entered: 03/20/2026) |
| 03/20/2026 | 35 | NOTICE of Appearance by Shixiong Wang on behalf of Solos Technology Limited (Wang, Shixiong) (Entered: 03/20/2026) |
| 03/20/2026 | 36 | MOTION for Leave to Appear Pro Hac Vice for admission of Ali S. Razai, Brandon G. Smith, and Andrew V. Devkar Filing fee: $ 375, receipt number AMADC–11624520 by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Attachments: # 1 Certification of Ali S. Razai, # 2 Certification of Brandon G. Smith, # 3 Certification of Andrew V. Devkar)(Soule, Katherine) (Entered: 03/20/2026) |
| 03/20/2026 | 37 | CORPORATE DISCLOSURE STATEMENT by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc. identifying Corporate Parent EssilorLuxottica S.A. for EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc... (Soule, Katherine) (Entered: 03/20/2026) |
| 03/20/2026 | 38 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 34 Motion for Leave to Appear Pro Hac Vice of Keegan M. Caldwell.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register–account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen–pro–hac–vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>**Pursuant to Local Rule 83.5.3, local counsel shall also file an appearance in this matter. Further, local counsel shall review all filings and shall personally appear in Court for any hearings or conferences, unless expressly excused by the Court for good cause.** (CAM) (Entered: 03/20/2026) |
| 03/20/2026 | 39 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 36 Motion for Leave to Appear Pro Hac Vice of Ali S. Razai, Brandon G. Smith, and Andrew V. Devkar.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register–account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen–pro–hac–vice.htm. |

| | | |
|---|---|---|
| | | Notices of Appearance must be entered on the docket by each newly admitted attorney.<br><br>**Pursuant to Local Rule 83.5.3, local counsel shall also file an appearance in this matter. Further, local counsel shall review all filings and shall personally appear in Court for any hearings or conferences, unless expressly excused by the Court for good cause.**(CAM) (Entered: 03/20/2026) |
| 03/23/2026 | 40 | NOTICE of Appearance by Ali S. Razai on behalf of EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc. (Razai, Ali) (Entered: 03/23/2026) |
| 03/23/2026 | 41 | NOTICE of Appearance by Brandon G. Smith on behalf of EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc. (Smith, Brandon) (Entered: 03/23/2026) |
| 03/23/2026 | 42 | NOTICE of Appearance by Andrew V. Devkar on behalf of EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc. (Devkar, Andrew) (Entered: 03/23/2026) |
| 03/24/2026 | 43 | NOTICE of Appearance by Keegan Michael Caldwell on behalf of Solos Technology Limited (Caldwell, Keegan) (Entered: 03/24/2026) |
| 03/25/2026 | 44 | MOTION to Dismiss by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc..(Soule, Katherine) (Entered: 03/25/2026) |
| 03/25/2026 | 45 | MEMORANDUM in Support re 44 MOTION to Dismiss filed by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Soule, Katherine) (Entered: 03/25/2026) |
| 03/25/2026 | 46 | MOTION for Leave to Appear Pro Hac Vice for admission of Lisa K. Nguyen Filing fee: $ 125, receipt number AMADC–11635131 by Meta Platforms Technologies, LLC, Meta Platforms, Inc..(Kamber, Matthias) (Entered: 03/25/2026) |
| 03/25/2026 | 47 | MOTION for Leave to Appear Pro Hac Vice for admission of Eric Lancaster Filing fee: $ 125, receipt number AMADC–11635152 by Meta Platforms Technologies, LLC, Meta Platforms, Inc..(Kamber, Matthias) (Entered: 03/25/2026) |
| 03/25/2026 | 48 | NOTICE of Appearance by Stephanie Nicole Adamakos on behalf of Meta Platforms Technologies, LLC, Meta Platforms, Inc. (Adamakos, Stephanie) (Entered: 03/25/2026) |
| 03/25/2026 | 49 | MOTION to Dismiss *and Request for Oral Hearing* by Meta Platforms Technologies, LLC, Meta Platforms, Inc..(Kamber, Matthias) (Entered: 03/25/2026) |
| 03/25/2026 | 50 | MEMORANDUM in Support re 49 MOTION to Dismiss *and Request for Oral Hearing* filed by Meta Platforms Technologies, LLC, Meta Platforms, Inc.. (Kamber, Matthias) (Entered: 03/25/2026) |
| 03/25/2026 | 51 | DECLARATION re 50 Memorandum in Support of Motion by Meta Platforms Technologies, LLC, Meta Platforms, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Kamber, Matthias) (Entered: 03/25/2026) |
| 03/25/2026 | 52 | CORPORATE DISCLOSURE STATEMENT by Meta Platforms Technologies, LLC, Meta Platforms, Inc.. (Kamber, Matthias) (Entered: 03/25/2026) |
| 03/26/2026 | 53 | Electronic Clerk's Notes for proceedings held before Judge Allison D. Burroughs: Motion Hearing held on 3/26/2026 re 18 MOTION to Disqualify Counsel *Morgan Lewis & Bockius LLP* filed by Solos Technology Limited. Oral arguments by the parties. Court takes motion under advisement. (Court Reporter: Kelly Mortellite at mortellite@gmail.com.)(Attorneys present: Pasek, Caldwell, Wang, Soule, Ronan, Ritter, Razai ) (KF) (Entered: 03/26/2026) |

| 03/26/2026 | 54 | STIPULATION re 49 MOTION to Dismiss *and Request for Oral Hearing – Joint Stipulation to Extend Time to Respond* by Solos Technology Limited. (Pasek, Jameson) (Entered: 03/26/2026) |
|---|---|---|
| 03/26/2026 | 55 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. APPROVING 54 Joint Stipulation to Extend Time for Plaintiff to Respond to Meta's motion to Dismiss. Response due by 4/22/2026. (CAM) (Entered: 03/26/2026) |
| 03/26/2026 | 56 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 46 Motion for Leave to Appear Pro Hac Vice Added Lisa K. Nguyen.<br><br>**Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen–current–pacer–accounts.htm#link–account.<br><br>**Pursuant to Local Rule 83.5.3, local counsel shall also file an appearance in this matter. Further, local counsel shall review all filings and shall personally appear in Court for any hearings or conferences, unless expressly excused by the Court for good cause.**(CAM) (Entered: 03/26/2026) |
| 03/26/2026 | 57 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 47 Motion for Leave to Appear Pro Hac Vice Added Eric Lancaster.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register–account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen–pro–hac–vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>**Pursuant to Local Rule 83.5.3, local counsel shall also file an appearance in this matter. Further, local counsel shall review all filings and shall personally appear in Court for any hearings or conferences, unless expressly excused by the Court for good cause.**(CAM) (Entered: 03/26/2026) |
| 03/27/2026 | 58 | MOTION to Intervene by Daitona Carter. (Attachments: # 1 Proposed Complaint in Intervention, # 2 Text of Proposed Order)(CAM) (Additional attachment(s) added on 3/30/2026: # 3 Statement of Interest) (CAM). (Additional attachment(s) added on 3/30/2026: # 4 Supplemental notice of Prior Formal Claims of Ownership) (CAM). (Entered: 03/30/2026) |
| 03/27/2026 | 59 | MOTION for Protective Order and Leave to File Redacted Documents ( MOTION to Seal) ( Responses due by 4/10/2026) by Daitona Carter. (Attachments: # 1 Text of Proposed Order)(CAM) (Entered: 03/30/2026) |
| 03/27/2026 | 60 | Appx41 |

| | | |
|---|---|---|
| | | MOTION for Protective Order for Witness Protection and Technical Safegaurds by Daitona Carter.(CAM) (Entered: 03/30/2026) |
| 03/27/2026 | 61 | MOTION for Judicial Notice by Daitona Carter. (Attachments: # 1 Notice of Evidence of Coordinated Witness Intimidation)(CAM) (Entered: 03/30/2026) |
| 03/27/2026 | 62 | MOTION for *in Camera* Review by Daitona Carter.(CAM) (Entered: 03/30/2026) |
| 03/30/2026 | 65 | Emergency MOTION for ADA Accommodation and Leave to file electronically Pro Se by Daitona Carter.(CAM) (Entered: 03/30/2026) |
| 04/03/2026 | 66 | Transcript of Motion Hearing held on March 26, 2026, before Judge Allison D. Burroughs. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Kelly Mortellite at mortellite@gmail.com. Redaction Request due 4/24/2026. Redacted Transcript Deadline set for 5/4/2026. Release of Transcript Restriction set for 7/2/2026. (DRK) (Entered: 04/03/2026) |
| 04/03/2026 | 67 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above−captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (DRK) (Entered: 04/03/2026) |
| 04/06/2026 | 68 | Judge Allison D. Burroughs: MEMORANDUM AND ORDER entered. For the reasons (herein), Solos's motion to disqualify Morgan Lewis, [ECF No. 18 ], is **DENIED**. **SO ORDERED.** (CAM) (Entered: 04/06/2026) |
| 04/07/2026 | 69 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Daitona Carter&rsquo;s motion for leave to file electronically, 65 , is *GRANTED* for the instant matter only. The Court notes that self−represented parties are required to comply with the Local Rules and the Federal Rules of Civil Procedure. See Local Rule 83.5.5(d). Moreover, when self−represented parties register for CM/ECF, they agree to the Non−Attorney E−filing Terms and Conditions, which provide that self−represented litigants agree to adhere to local rules, orders, policies, and procedures governing electronic filing for the Court. Further guidance on using CM/ECF can be found at https://www.mad.uscourts.gov/caseinfo/cmecf−general.htm, and information about civil cases in federal courts can be found at https://www.uscourts.gov/about−federal−courts/types−cases/civil−cases. The Court requires all self−represented parties to review these resources and familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts. In the event of any noncompliance, the Court may vacate this order and restrict Carter from the CM/ECF system and electronic filing. Pro se litigants must have an individual PACER account to electronically file in the District of Massachusetts and must register to E−file. To register for a PACER account, go the PACER website at https://pacer.uscourts.gov/register−account. To register to E−file, follow the instructions on our website at https://www.mad.uscourts.gov/caseinfo/nextgen−pro−se.htm. |

Appx42

| | | |
|---|---|---|
| | | If the Massachusetts District Court is not in the dropdown list of courts, please email tracy_mclaughlin@mad.uscourts.gov with the docket number so your account can be updated allowing you to E–file.<br><br>(CAM) (Entered: 04/07/2026) |
| 04/08/2026 | 70 | Supplemental MEMORANDUM in Support re 58 MOTION to Intervene *Pursuant to Fed. R. Civ. P. 24* filed by Daitona Carter. (Carter, Daitona) (Entered: 04/08/2026) |
| 04/08/2026 | 71 | Opposition re 44 MOTION to Dismiss filed by Solos Technology Limited. (Pasek, Jameson) (Entered: 04/08/2026) |
| 04/08/2026 | 72 | Supplemental Notice of Supplemental Authorities re 58 MOTION to Intervene, 62 MOTION in Camera Review filed by Daitona Carter. (Carter, Daitona) (Entered: 04/08/2026) |
| 04/08/2026 | 73 | Supplemental AFFIDAVIT in Support re 58 MOTION to Intervene, 62 MOTION in Camera Review filed by Daitona Carter. (Carter, Daitona) (Entered: 04/08/2026) |
| 04/08/2026 | 74 | CERTIFICATE OF SERVICE pursuant to LR 5.2 by Daitona Carter re 73 Affidavit in Support of Motion, 72 Notice of Supplemental Authorities, 70 Memorandum in Support of Motion . (Attachments: # 1 Exhibit AMENDED MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR, # 2 Exhibit AMENDED NOTICE OF SUPPLEMENTAL AUTHORITY, # 3 Exhibit AMENDED SUPPLEMENTAL AFFIDAVIT OF DAITONA CARTER IN SUPPORT OF MOTION FOR IN CAMERA REVIEW (DOC. 62) AND MOTION TO INTERVENE (DOC. 58))(Carter, Daitona) (Entered: 04/08/2026) |
| 04/09/2026 | 75 | MOTION for Leave to File *a Reply Memorandum* by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc..(Soule, Katherine) (Entered: 04/09/2026) |
| 04/09/2026 | 76 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 75 Motion for Leave to File Document ; Counsel using the Electronic Case Filing System should, on or before April 15, 2026, file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include – Leave to file granted on (date of order)– in the caption of the document. (CAM) (Entered: 04/09/2026) |
| 04/09/2026 | 77 | Supplemental MEMORANDUM in Support re 58 MOTION to Intervene *Pursuant to Fed. R. Civ. P. 24* filed by Daitona Carter. (Carter, Daitona) (Entered: 04/09/2026) |
| 04/09/2026 | 78 | Supplemental Notice of Supplemental Authorities re 58 MOTION to Intervene, 62 MOTION in Camera Review filed by Daitona Carter. (Carter, Daitona) (Entered: 04/09/2026) |
| 04/09/2026 | 79 | Supplemental AFFIDAVIT in Support re 58 MOTION to Intervene, 62 MOTION in Camera Review filed by Daitona Carter. (Carter, Daitona) (Entered: 04/09/2026) |
| 04/10/2026 | 80 | Proposed MOTION MOTION FOR STATUS CONFERENCE OR, IN THE ALTERNATIVE, FOR ORDER RESOLVING PENDING SEALING MOTIONS (Docs. 59 & 62) re 62 MOTION in Camera Review, 59 MOTION for Protective Order MOTION to Seal *Motions (Docs. 59 & 62)* by Daitona Carter. (Attachments: # 1 Text of Proposed Order [Proposed] Order on Motion for Status Conference or, in the Alternative, for Order Resolving Pending Sealing Motions (Docs. 59 & 62))(Carter, Daitona) (Entered: 04/10/2026) |
| 04/10/2026 | 81 | NOTICE of Appearance by Eric E Lancaster on behalf of Meta Platforms Technologies, LLC, Meta Platforms, Inc. (Lancaster, Eric) (Entered: 04/10/2026) |
| 04/10/2026 | 82 | Appx43 |

| | | |
|---|---|---|
| | | RESPONSE to Motion re 58 MOTION to Intervene filed by Solos Technology Limited. (Pasek, Jameson) (Entered: 04/10/2026) |
| 04/10/2026 | 83 | Supplemental AFFIDAVIT in Support re 58 MOTION to Intervene, 62 MOTION in Camera Review *Pursuant to Fed. R. Civ. P. 24* filed by Daitona Carter. (Attachments: # 1 Exhibit Feb 2017 LinkedIn profile excerpt – Tech Lab 2017 – started July 2016 – and related technology projects, # 2 Exhibit July 27, 2017 LinkedIn post – Tech Lab Blog: Public Notes for AR/VR Development, # 3 Exhibit May 2017 Tesseract OCR / computer vision code, # 4 Exhibit Oct 25, 2017 folder – audio–related.wav files and Python script, # 5 Exhibit Early 2019 LinkedIn profile export – tech, audio engineering, marketing, and prototype development background, # 6 Exhibit June 15, 2019 YouNoodle Aria Entrepreneurship World Cup confirmation email., # 7 Exhibit Photos of early smart–glasses prototypes: frame construction, glass–cutting, and design sketches, # 8 Exhibit Screenshots of private video titles: Aria Smart Glasses and Aria Smart Glasses Pitch)(Carter, Daitona) (Entered: 04/10/2026) |
| 04/13/2026 | 84 | MOTION for Leave to File *to Supplement Evidence* by Daitona Carter. (Attachments: # 1 Exhibit Notice of Authentication (Exhibits G, H, and L), # 2 Text of Proposed Order (Proposed) Order re: Forensic Integrity and Digital Interference, # 3 Exhibit Exhibit G: 2017 Technical Sketches and Aria Prototypes, # 4 Exhibit Exhibit H: June 2019 EWC Third–Party Priority Confirmation, # 5 Exhibit Exhibit L: Forensic Map of Financial Interdependence ($35.2B Expansion) and Twilio)(Carter, Daitona) (Entered: 04/13/2026) |
| 04/13/2026 | 85 | Proposed MOTION for Leave to File *TO SUPPLEMENT THE RECORD PURSUANT TO FED. R. CIV. P. 15(d)* by Daitona Carter.(Carter, Daitona) (Entered: 04/13/2026) |
| 04/13/2026 | 86 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered GRANTING 84 Motion for Leave to File Document ; GRANTING 85 Motion for Leave to File Document ; movant, using the Electronic Case Filing System, should now file the documents for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Movant must include – Leave to file granted on (date of order)– in the caption of the document. (CAM) (Entered: 04/13/2026) |
| 04/14/2026 | 87 | NOTICE of Withdrawal of Appearance by Kathleen M. Ritter (Ritter, Kathleen) (Entered: 04/14/2026) |
| 04/14/2026 | 88 | NOTICE of Withdrawal of Appearance by Gary M Ronan (Ronan, Gary) (Entered: 04/14/2026) |
| 04/15/2026 | 89 | REPLY to Response to 44 MOTION to Dismiss filed by EssilorLuxottica USA, Inc., Luxottica of America, Inc., Oakley, Inc.. (Soule, Katherine) (Entered: 04/15/2026) |
| 04/15/2026 | 90 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Currently before the Court is pro se movant Daitona Carter&rsquo;s (&ldquo;Carter&rdquo;) motion to intervene under Federal Rule of Civil Procedure 24. [ECF No. 58 ]. For the following reasons, that motion is denied.<br><br>An applicant may intervene as a matter of right under Rule 24(a) if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede her ability to protect that interest; and (4) her interest will not be adequately represented by existing parties. Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). &ldquo;Failure to satisfy any single requirement for intervention... is sufficient grounds to deny [the] request.&rdquo; Victim Rights Law Center v. Rosenfelt, 988 F.3d 556, 560&ndash;61 (1st Cir. 2021). Under Rule 24(b)(1)(B), the |

Court may also "permit anyone to intervene... who has a claim... that shares with the main action a common question of law or fact." Permissive intervention under Rule 24(b) is "'wholly discretionary,'" and a court should consider whether intervention will prejudice the existing parties or delay the action." In re Bos. Sci. Corp. ERISA Litig., 254 F.R.D. 24, 33 n.82 (D. Mass. 2008) (quoting In re Sonus Networks, Inc. Sec. Litig., 229 F.R.D. 339, 345 (D. Mass. 2005)). The Court accepts as true non−conclusory allegations made in support of the motion to intervene. B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006).

Here, Carter may not intervene under Rule 24(a) because she has not sufficiently alleged that she has a protectible interest in this action. Carter claims sole inventorship and ownership of the asserted patents under 35 U.S.C. § 256, based on her alleged "prior conception and reduction to practice of the of technologies embodied in the asserted patents." [ECF No. 58 at 3]. She has not, however, presented non−conclusory allegations to support this claim. See, e.g., Ultravision Techs., LLC v. GoVision, LLC, No. 18−cv−00100, 2020 WL 7261089, at *5 (E.D. Tex. Dec. 9, 2020). To qualify as an inventor of the asserted patents, she must have "contribute[d] to the conception of the invention," which is "'the formation... of a definite and permanent idea of the complete and operative invention[,]'... includ[ing] every feature of the subject matter claimed in the patent." Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (quoting Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986)). Neither Carter's motion, [ECF No. 58 ], nor her proposed complaint in intervention, [ECF No. 58−1], nor any of her many other filings to date, [ECF Nos. 70 , 72 , 73 , 77 , 78 , 79 , 83 ], contain non−conclusory allegations suggesting that she contributed to the formation of a definite and permanent idea as to every feature of the subject matter claimed in the asserted patents. Ethicon, Inc., 135 F.3d at 1460; cf.Iceotope Group Limited v. LiquidCool Solutions, Inc., No. 20−cv−02644, 2022 WL 204923, at *3 (D. Minn. Jan. 24, 2022) (holding that allegations that inventors made "unspecified contribution[s] to an assortment of [the asserted] patents or patent applications" were too conclusory to support inventor change under § 256). Accordingly, Carter may not intervene under Rule 24(a).

The Court also denies Carter's request for permissive intervention under Rule 24(b). Allowing Carter to intervene here would not only substantially expand the scope of the action to include disputes over inventorship; it would also "unduly hinder the efficient resolution" of this case. T−Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 42 (1st Cir. 2020).

Accordingly, Carter's motion to intervene, [ECF No. 58 ], is ***DENIED***, and all her other pending motions are ***DENIED AS MOOT***. (CAM)

(Entered: 04/15/2026)

| 04/17/2026 | 91 | Emergency MOTION for Reconsideration *AND RELIEF FROM ORDER* by Daitona Carter. (Attachments: # 1 Supplement, # 2 Supplement, # 3 Exhibit Granted Leave to File April 13, # 4 Exhibit Granted Leave to File April 13eave to File April 13, # 5 Exhibit Granted Leave to File April 13eave to File April 13, # 6 Exhibit Granted Leave to File April 13ave to File April 13, # 7 Exhibit 2009 Prior work and research with DSP/audio, # 8 Exhibit 2013 Earliest documented conception of context−aware AV system, # 9 Exhibit Conception of AI language translation device, # 10 Exhibit Earliest public conception of AI language device, # 11 Exhibit Thermal eye−tracking STL (M−97), # 12 Exhibit Meet Aria – M52−54 (Younoodle EWC Ex H, ), # 13 Exhibit Meetup.com – patent meetup, # 14 Exhibit Samsung |

| | | patent published (M−100) matches M+ LinkedIn outreach, # 15 Exhibit Twitter post tagging @boztank & @fb about theft of $68B Project ARIA, # 16 Exhibit TIMELINE COMPARISON CHART, # 17 Exhibit Evidence Table)(Carter, Daitona) (Entered: 04/17/2026) |
|---|---|---|
| 04/17/2026 | 92 | −1 (Entered: 04/17/2026) |
| 04/17/2026 | 93 | CERTIFICATE OF SERVICE pursuant to LR 5.2 by Daitona Carter re 91 Emergency MOTION for Reconsideration *AND RELIEF FROM ORDER*, 92 Notice (Other) . (Attachments: # 1 Meeting to Confer Statement)(Carter, Daitona) (Entered: 04/17/2026) |
| 04/18/2026 | 94 | NOTICE by Daitona Carter re 91 Emergency MOTION for Reconsideration *AND RELIEF FROM ORDER*, 92 Notice (Other) *Notice of Filing Supplemental Evidence (Exhibits M−39 and N)* (Attachments: # 1 Exhibit Exhibit M−39 (The 95−page Security Logs), # 2 Exhibit Exhibit N (The Screenshots of the Docket 92 Error))(Carter, Daitona) (Entered: 04/18/2026) |
| 04/20/2026 | 95 | Emergency MOTION to Vacate 91 Emergency MOTION for Reconsideration *AND RELIEF FROM ORDER* , Emergency MOTION to Stay *Proceedings Pending Determination of Movants Senior Inventorship Rights Under 35 U.S.C. § 256* ( Responses due by 5/4/2026) by Daitona Carter. (Attachments: # 1 Affidavit DECLARATION OF DAITONA CARTER REGARDING NEWLY DISCOVERED EVIDENCE AND SUPPLEMENTAL DISCLOSURE PURSUANT TO FED. R. CIV. P. 26(e), # 2 Exhibit AMAZON EMPLOYMENT − CHRONOLOGICAL OVERLAP IP DEVELOPMENT, # 3 Exhibit EXHIBIT P SUPPLEMENTAL DISCLOSURE OF DERIVATIVE INTEREST META MATERIALS INC. ESTATE (CASE NO. 24−50792, D. NEV.), # 4 Exhibit EXHIBIT Q SUPPLEMENTAL DEMONSTRATIVE EVIDENCE)(Carter, Daitona) (Entered: 04/20/2026) |
| 04/20/2026 | 97 | NOTICE OF APPEAL to the Federal Circuit as to 90 Order by Daitona Carter US District Court Clerk to deliver official record to Court of Appeals by 5/11/2026. (Attachments: # 1 Notice of appearance) **Received by the U.S. Court of Appeals for the Federal Circuit and forwarded to this court in accordance with Federal Rule of Appellate Procedure 4(d).** (CAM) (Entered: 04/21/2026) |
| 04/20/2026 | 98 | MOTION for Administrative Stay Pending Appeal by Daitona Carter. **Received by the U.S. Court of Appeals for the Federal Circuit and forwarded to this court in accordance with Federal Rule of Appellate Procedure 4(d).** (CAM) (Entered: 04/21/2026) |
| 04/21/2026 | 96 | NOTICE by Daitona Carter re 91 Emergency MOTION for Reconsideration *AND RELIEF FROM ORDER* (Carter, Daitona) (Entered: 04/21/2026) |
| 04/21/2026 | 99 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals for the Federal Circuit re 97 Notice of Appeal to the Federal Circuit, (MAP) (Entered: 04/21/2026) |
| 04/22/2026 | 100 | RESPONSE to Motion re 49 MOTION to Dismiss *and Request for Oral Hearing* filed by Solos Technology Limited. (Attachments: # 1 Exhibit, # 2 Exhibit)(Pasek, Jameson) (Entered: 04/22/2026) |
| 04/22/2026 | 101 | USCA for the Federal Circuit Case Number 26−1721 for 97 Notice of Appeal to the Federal Circuit, filed by Daitona Carter. (MAP) (Entered: 04/22/2026) |
| 04/23/2026 | 102 | MOTION for Leave to File *a Reply Memorandum in Further Support of Their Motion to Dismiss* by Meta Platforms Technologies, LLC, Meta Platforms, Inc..(Kamber, Matthias) (Entered: 04/23/2026) |

| | | |
|---|---|---|
| 04/24/2026 | 103 | NOTICE by Daitona Carter re 91 Emergency MOTION for Reconsideration *AND RELIEF FROM ORDER*, 95 Emergency MOTION to Vacate 91 Emergency MOTION for Reconsideration *AND RELIEF FROM ORDER* Emergency MOTION to Stay *Proceedings Pending Determination of Movants Senior Inventorship Rights Under 35 U.S.C. § 256* (Attachments: # 1 Affidavit Supp. Declaration of Daitona Carter re: August 2020 Zoom Meeting Metadata, # 2 Exhibit Exhibits T1–T3: Zoom Stills of John Rossant, Emily Yates; Chris Yeh Blitzscaling)(Carter, Daitona) (Entered: 04/24/2026) |
| 04/27/2026 | 104 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 102 Motion for Leave to File a Reply Memorandum in Further Support of Their Motion to Dismiss ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include – Leave to file granted on (date of order)– in the caption of the document. (KF) (Entered: 04/27/2026) |
| 04/27/2026 | 105 | RESPONSE to Motion re 91 Emergency MOTION for Reconsideration *AND RELIEF FROM ORDER* filed by Solos Technology Limited. (Pasek, Jameson) (Entered: 04/27/2026) |
| 04/29/2026 | 106 | MOTION for Leave to File Reply to Response by Daitona Carter. (Attachments: # 1 Exhibit V–1, # 2 Exhibit V–2)(CAM) (Entered: 04/29/2026) |
| 04/29/2026 | 107 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Pro se movant Daitona Carter's motion for leave to file a reply, [ECF No. 106 ], is **GRANTED**.<br><br>Carter moves for reconsideration of the Court&rsquo;s order, [ECF No. 90 ], denying her request for intervention, [ECF Nos. 91 , 95 ], and for a stay pending her appeal of that order, [ECF No. 98 ].<br><br>The Court considers Carter&rsquo;s motions for reconsideration under the Rule 59(e) standard. See  Perez–Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 284 (1st Cir. 1993). The granting of a motion for reconsideration is &ldquo;an extraordinary remedy&rdquo; that is only warranted if &ldquo;newly discovered evidence... has come to light or... the rendering court committed a manifest error of law.&rdquo; Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted). &ldquo;[S]imple disagreement with the court&rsquo;s decision is not a basis for reconsideration.&rdquo; Ofori v. Ruby Tuesday, Inc., 205 F. App&rsquo;x 851, 853 (1st Cir. 2006). Courts have &ldquo;substantial discretion&rdquo; and &ldquo;broad authority&rdquo; to allow or deny reconsideration. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81&ndash;82 (1st Cir. 2008).<br><br>Carter&rsquo;s filings do not meet the standard for reconsideration. As an initial matter, Carter has not sufficiently shown that anything contained in the filings qualifies as &ldquo;newly discovered&rdquo; within the meaning of Rule 59(e), in the sense that it was not previously available to her. See Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 931 (1st Cir. 2014). More importantly, what she has submitted does not cure the defect identified in the Court&rsquo;s prior order, namely, that Carter has not sufficiently alleged that she conceived of or contributed to the conception of the inventions at issue in this litigation. See Glob. Health Sols. LLC v. Selner, 148 F.4th 1363, 1371 (Fed. Cir. 2025) (noting that, to prove derivation, a party &ldquo;must produce evidence sufficient to show (i) conception of the claimed invention, and (ii) communication of the conceived invention to the respondent prior to respondent's filing of that patent application&rdquo;); BearBox LLC v. Lancium LLC, 125 F.4th 1101, 1118 (Fed. Cir. 2025) (noting that &ldquo;[a]n alleged joint inventor must show that he contributed significantly to the conception... or reduction to practice of at |

least one claim&rdquo; and that the &ldquo;contributions... arise from &lsquo;some element of joint behavior... &rsquo; with the other inventors&rdquo; (citation omitted)). As Solos notes, Carter&rsquo;s filings reflect, at most, &ldquo;generalized work in smart glasses technology, software concepts, or prior projects,&rdquo; without identifying any &ldquo;concrete, claim–level contributions.&rdquo; [ECF No. 105 at 7]. Accordingly, Carter&rsquo;s motions for reconsideration are ***DENIED***.

Before seeking a stay pending appeal from the court of appeals, a person &ldquo;must ordinarily move first in the district court,&rdquo; Fed. R. App. P. 8(a)(1), but the standard governing its issuance is &ldquo;generally the same&rdquo; in both, Hilton v. Braunskill, 481 U.S. 770, 776 (1987). A stay is &ldquo;&lsquo;an exercise of judicial discretion&rsquo; and &lsquo;[t]he propriety of its issue is dependent upon the circumstances of the particular case.&rsquo;&rdquo; Nken v. Holder, 556 U.S. 418, 433 (2009) (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672&ndash;73 (1926)). To obtain a stay, Carter must &ldquo;(1) make a &lsquo;strong showing that [she is] likely to succeed on the merits&rsquo; in [her] appeal; (2) show that [she] &lsquo;will be irreparably injured absent a stay&rsquo;; (3) show that &lsquo;issuance of the stay will [not] substantially injure the other parties interested in the proceeding&rsquo;; and (4) show that the stay would serve &lsquo;the public interest.&rsquo;&rdquo; New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025) (quoting Nken, 556 U.S. at 434). &ldquo;The first two factors... are the most critical.&rdquo; Nken, 556 U.S. at 434.

Carter is not entitled to a stay pending appeal. She has not made a strong showing that she is likely to succeed on the merits, identifying no authority that clearly supports her request for intervention under the circumstances. Given the weakness of her showing on the merits, even her assertions of serious harm&mdash;at least some of which appear unrelated to the present action, [ECF No. 98 at 1&ndash;2]&mdash;do not carry the day. See Braintree Lab'ys, Inc. v. Citigroup Global Markets Inc., 622 F.3d 36, 42 (1st Cir. 2010). Because Carter has not satisfied her burden on the first two factors, the Court need not consider the remaining factors. Carter&rsquo;s motion for a stay pending appeal is ***DENIED***.

Finally, Carter is reminded that the local rules require motions and supporting materials to be filed at the same time, L.R. 7.1(a), and encouraged to refrain from filing further documents that substantially duplicate or repeat material contained in prior filings. Carter is further reminded that the Court has discretion to rescind electronic filing privileges if those privileges are abused.

(CAM) (Entered: 04/29/2026)

| | | |
|---|---|---|
| 04/30/2026 | 108 | REPLY to Response to 49 MOTION to Dismiss *and Request for Oral Hearing* filed by Meta Platforms Technologies, LLC, Meta Platforms, Inc.. (Kamber, Matthias) (Entered: 04/30/2026) |
| 04/30/2026 | 109 | DECLARATION re 108 Reply to Response to Motion *ISO Defendants' Motion to Dismiss* by Meta Platforms Technologies, LLC, Meta Platforms, Inc.. (Attachments: # 1 Exhibit 9, # 2 Exhibit 10, # 3 Exhibit 11, # 4 Exhibit 12, # 5 Exhibit 13, # 6 Exhibit 14, # 7 Exhibit 15)(Kamber, Matthias) (Entered: 04/30/2026) |
| 05/04/2026 | 110 | MOTION Vacatur of Order of Dismissal and Relief from Judgment pursuant to Fed. R. Civ. P. 60(b)(3), (b)(6), and 60(d)(3) re 107 Order,,,,,,,,,,,,,,,,,,,,,, Terminate Motions,,,,,,,,,,,,,,,,,,,,, , MOTION to Vacate 107 Order,,,,,,,,,,,,,,,,,,,, Terminate Motions,,,,,,,,,,,,,,,,,,,, ( Responses due by 5/18/2026) by Daitona Carter. (Attachments: # 1 Exhibit Notice of Candor, # 2 Exhibit Federal Appeals – Emergency Report (Ongoing Interference), # 3 Exhibit |

| | | |
|---|---|---|
| | | state–sponsored malware discovery and the nexus to the ongoing obstruction of Petitioners legal work product, # 4 Exhibit 20172019 "Aria" Field Tests and Industry Validation, # 5 Exhibit "Verbatim Adoption", # 6 Exhibit Documentation of physical interference and theft, # 7 Exhibit Technical Specificity & Derivation Comparison, # 8 Exhibit Physical courier logs regarding the 200 lb feight, # 9 Exhibit Bank closure records and mail–tampering evidence, # 10 Affidavit [Proposed] Order Granting Movant Daitona Carters Motion To Vacate Order [Ecf No. 107] And For Relief From Judgment, # 11 Text of Proposed Order [Proposed] Order Granting Movant Daitona Carters Motion To Vacate Order [Ecf No. 107] And For Relief From Judgment)(Carter, Daitona) (Entered: 05/04/2026) |
| 05/05/2026 | 111 | CERTIFICATE OF CONSULTATION pursuant to LR 7.1 re 110 MOTION Vacatur of Order of Dismissal and Relief from Judgment pursuant to Fed. R. Civ. P. 60(b)(3), (b)(6), and 60(d)(3) re 107 Order,,,,,,,,,,,,,,,,,,,,, Terminate Motions,,,,,,,,,,,,,,,,,,,,, MOTION to Vacate 107 Order,,,,,,,,,,,,,,,,,,, Terminate Motions,,,,,,,,,,,,,,,,,,, by Daitona Carter. (Carter, Daitona) (Entered: 05/05/2026) |
| 05/07/2026 | 112 | RESPONSE to Motion re 110 MOTION Vacatur of Order of Dismissal and Relief from Judgment pursuant to Fed. R. Civ. P. 60(b)(3), (b)(6), and 60(d)(3) re 107 Order,,,,,,,,,,,,,,,,,,,,, Terminate Motions,,,,,,,,,,,,,,,,,,, MOTION to Vacate 107 Order,,,,,,,,,,,,,,,,,,, Terminate Motions,,,,,,,,,,,,,,,,,,, filed by Solos Technology Limited. (Pasek, Jameson) (Entered: 05/07/2026) |
| 05/08/2026 | 113 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Pro se movant Daitona Carter's motion to vacate the Court's prior order denying her request for reconsideration, [ECF No. 110 ], is ***DENIED***. <br><br> Carter's motion invokes Federal Rules of Civil Procedure 60(b)(3), 60(b)(6), and 60(d)(3). [ECF No. 110 at 1]. Relief under Rule 60(b) is "extraordinary in nature," and a district court does not abuse its discretion in summarily denying a Rule 60(b) motion that "simply restate[s] the arguments already fully considered and rejected by the court in its previous ruling." Diaz v. Gonzales, 167 F. App'x 820, 822 (1st Cir. 2006). To satisfy Rule 60(b)(3), Carter "'must demonstrate misconduct—such as fraud or misrepresentation—by clear and convincing evidence' and 'show that the misconduct foreclosed full and fair preparation or presentation of [her] case.'" Giroux v. Fed. Nat. Mortg. Ass'n, 810 F.3d 103, 108 (1st Cir. 2016) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 21 (1st Cir. 2002)). "[R]elief under Rule 60(b)(6) is available only in narrow circumstances," that is, "when Rules 60(b)(1) through (b)(5) are inapplicable" and "extraordinary circumstances... justify reopening." BLOM Bank SAL v. Honickman, 605 U.S. 204, 211 (2025) (citation modified). For a court to "set aside a judgment for fraud on the court" under Rule 60(d)(3), there must be a showing of "an unconscionable scheme or the most egregious conduct designed to corrupt the judicial process." Fontanillas–Lopez v. Morell Bauza Cartagena & Dapena, LLC, 832 F.3d 50, 63 n.11 (1st Cir. 2016) (quoting LinkCo, Inc. v. NaoyukiAkikusa, 367 F. App'x 180, 182 (2d Cir. 2010)); see also Gillis v. Chase, 894 F.3d 1, 4 (1st Cir. 2018) ("[F]raud on the court requires interference with the judicial process itself, such as bribery of a judge."). <br><br> Carter's motion does not satisfy Rule 60(b) or (d). It appears primarily to restate arguments that the Court already considered and rejected in ruling on Carter's prior motion to intervene and motions for reconsideration. See [ECF No. 90]; [ECF No. 107]. Carter has not shown misconduct, such as fraud or misrepresentation, by clear and convincing evidence, as required for relief under Rule 60(b)(3). By the same token, she has |

| | | |
|---|---|---|
| | | not shown any interference with the judicial process amounting to fraud on the court, as required for relief under Rule 60(d)(3). Finally, she has not shown extraordinary circumstances sufficient to satisfy the strict Rule 60(b)(6) standard. Accordingly, her motion to vacate, [ECF No. 110 ], is ***DENIED***.<br><br>The Court notes that this is Carter&rsquo;s third motion for reconsideration of its denial of her motion to intervene, and that it substantially restates arguments advanced in Carter&rsquo;s prior filings. <u>See</u> [ECF Nos. 91 , 95 , 110 ]. Accordingly, the Court orders that, during the pendency of her appeal, Carter must request leave of the Court before filing any further materials related to her request for intervention. Any further filings by Carter related to her request for intervention during the pendency of her appeal without prior leave of the Court will be struck. Should this not deter Carter, the Court will consider terminating her electronic filing privileges. As Carter is aware, her recourse now lies with the Court of Appeals.<br><br>(CAM) (Entered: 05/08/2026) |
| 05/17/2026 | 114 | NOTICE OF APPEAL to the Federal Circuit as to 90 , 107 , 113 Order on Motion for Miscellaneous Relief,,,,,,,,,,,,,,, Order on Motion to Vacate,,,,,,,,,,,,,, by Daitona Carter US District Court Clerk to deliver official record to Court of Appeals by 6/8/2026. (Carter, Daitona) Modified on 5/18/2026 to Create relationship to document #90, document #107. (CAM). (Entered: 05/17/2026) |
| 05/18/2026 | 115 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals for the Federal Circuit re 114 Notice of Appeal to the Federal Circuit. (CAM) (Entered: 05/18/2026) |

**PART II: PLEADING-STAGE ENTRY
DOCUMENTS AND TRIAL RECORD**

# D. RULE 24 RECORD PARTICIPANTS (FCR 30(b)(2)(B)(vi))

## Clerk Caetlin McManus – Docket Clerk Instructions

Caetlin McManus

Caetlin McManus <Caetlin_McManus@mad.uscourts.gov>
to: dddddc@tuta.com ▾                                    Mon, Mar 30, 2026 - 3:03 PM

**1:26-cv-10304-ADB Solos Technology Limited v. Meta Platforms, Inc. et al**

Good afternoon,

Given your statement of hardship I have made an exception and docketed the Motion to Intervene and related filings that were received Friday and one from Saturday which was not in the earlier email (motion for leave to file electronically). Please review the docket entries below. Please refrain from emailing more documents to the Court until your motion to intervene has been ruled upon and, if intervention is allowed, your motion to e-file will also be ruled upon.

Thank you,

Caet

Caetlin McManus

Docket Clerk to

The Honorable Allison D. Burroughs

Office of the Clerk

U.S. District Court, District of Massachusetts

One Courthouse Way, Suite 2300

Boston, MA 02210

(617) 748-9043

**ECF No. 58** – Motion to Intervene filed by Movant Daitona Carter

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

    **v.**

**META PLATFORMS, INC., et al.,**
    *Defendants.*

               **Case No. 1:26-cv-10304-ADB**
               *(Judge Allison D. Burroughs)*

**MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24 AND MEMORANDUM**
**OF LAW IN SUPPORT**

Now comes Daitona Carter (the "Proposed Intervenor"), proceeding pro se, and respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 24, for leave to intervene in the above-captioned action as of right under Rule 24(a)(2), or in the alternative, for permissive intervention under Rule 24(b). In support of this motion, the Proposed Intervenor states as follows:

**I. INTRODUCTION**

This motion is brought to preserve the Intervenor's prior inventorship rights in technologies reflected in the patents-in-suit (U.S. Patent Nos. 10,306,389; 10,651,866; 11,082,055; 11,871,174; and 12,216,339), including directional audio, adaptive beamforming, and multimodal acoustic control. The Intervenor asserts prior conception and reduction to practice of these technologies and notifies the Court of systemic obstruction, "communications fencing," data inaccessibility, and the imminent risk of spoliation of critical evidence that has impaired her ability to assert these rights earlier.

## II. SUPPORTING CASE REFERENCES

- **Pannu v. Iolab Corp.**, 155 F.3d 1344 (Fed. Cir. 1998) — Independent inventors may assert § 256 inventorship claims without any prior relationship to patent assignees.
- **Chou v. University of Chicago**, 254 F.3d 1347 (Fed. Cir. 2001) — Prior knowledge or interaction with the patent owner is not required for § 256 claims.
- **Intellisoft, Ltd. v. Acer Am. Corp.**, No. 2019-2163 (Fed. Cir. 2020) — Courts recognize independent interests in inventions or ideas even if not represented by the existing parties.

## III. LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), the Intervenor certifies that she has attempted in good faith to confer with counsel for the parties regarding this motion. Due to systemic technical obstructions and restricted access to filing systems (including PACER/ECF), the Intervenor was unable to obtain consent prior to filing and has served this motion via emergency email.

## IV. TIMELINESS

This motion is timely. The Complaint was filed on January 23, 2026. The case remains in its early pleading stage: no answers have been filed, and activity to date consists primarily of notices of appearance, a pending motion to disqualify certain defense counsel, and a motion to dismiss.

Any delay in asserting rights is attributable to extraordinary circumstances beyond the Intervenor's control:

1. **Unlawful Confinement**: Between 2017 and 2023, the Intervenor was subjected to constructive seizure and unlawful confinement (consistent with violations of the Trafficking

Victims Protection Act), which physically prevented access to legal counsel, filing mechanisms, and secure data storage.

2. **Communications Fencing**: The Intervenor and her relatives were subjected to "communications fencing" without their knowledge. Business phones, mobile phones, faxes, and email accounts were compromised and monitored, creating digital isolation that prevented timely legal action.

3. **Data Inaccessibility and Systemic Obstruction**: Critical evidence, including the Intervenor's LinkedIn profile (2008–2020) containing prototype sketches and industry correspondence, was restricted by the platform. Work-in-progress documentation on Evernote was re-indexed and transferred internationally (to Italy) following a corporate acquisition. Additional records on Skiff, Yahoo, CTemplar and other platforms were deleted, wiped, or transferred without consent between 2017 and 2026.

The Intervenor has acted with due diligence since regaining freedom and access to resources. Intervention at this pre-answer stage causes no prejudice to any party.

**V. PROTECTABLE INTEREST – TECHNICAL PROVENANCE (2007–2021)**

The Intervenor has a direct, substantial, and legally protectable interest in the subject matter of this action. She asserts prior conception and reduction to practice of technologies embodied in the asserted patents, supported by the following timeline:

- **2007–2012**: Management of the Waves H-Compressor ("H-Comp") plugin and conceptual designs for Parallel Compression (Dry/Wet pathways), Pre-Delay Attack ("Punch"), and Musical Release Times, documented in independently controlled blogs and internal project records.

- **2014–2016**: Integration of prior collaborative concepts into digital assistant architectures, documented in repositories "abot" and "betty" (2016).

- **2017**: Construction of ARIA Prototype 1 (smart glasses), incorporating acoustic processing, directional audio, multimodal sensor fusion, and a transparent display.

- **2017–2019**: Physical presence in Korea (verified by passport and immigration records) during development and demonstration of prototypes. Independent witnesses in the United States and Korea observed brief demonstrations of the ARIA prototypes, including sub-second previews of music-video playback. No technical specifications or novel data were disclosed. Witness affidavits are submitted under seal where appropriate. Video snippets were posted to LinkedIn and the K-pop business Instagram account @SEEMYBIAS.official.

- **2018**: High-reach marketing activation (BTS Giveaway) exceeding 24,000 views, formally verified by the U.S. Small Business Administration in connection with an EIDL loan application. (Defendant Meta has allegedly reduced visible metrics of this post, impacting the prior-art record.)

- **2019**: Construction of ARIA Prototype 2 and submission of the "ARIA" system architecture to the 2019 Entrepreneurship World Cup (EWC) under a binding NDA.

**- 2021**: Documentation of air-gapped hardware prototypes and multimodal sensor systems in the dc500 repositories.

The Intervenor maintained professional connections with employees at Apple, Google, Microsoft, and Meta over a ten-year period. Certain accounts containing contemporaneous communications have been restricted or rendered inaccessible.

## VI. IMPAIRMENT AND RISK OF SPOLIATION

Disposition of this action may determine the ownership, validity, and scope of the patents-in-suit, directly impairing the Intervenor's ability to seek correction of inventorship under 35 U.S.C. § 256 or assert related rights. The Intervenor's ability to preserve and assert these rights was severely impaired by coercive conduct, unlawful restriction of movement, communications fencing, and the systematic loss or migration of digital records.

The Intervenor faces an imminent risk of spoliation of evidence. Third-party data controllers (including Bending Spoons, Apollo Global Management, major telecom providers, Google, Microsoft, and LinkedIn) have restricted access, suspended accounts, or migrated data without consent. Immediate intervention is necessary to compel preservation of server logs, IP addresses, viewing logs, internal notes regarding account closures, and forensic data from compromised devices, faxes, and email accounts belonging to the Intervenor and her relatives.

## VII. INADEQUATE REPRESENTATION

Neither Plaintiff Solos nor the Defendants assert or adequately represent the Intervenor's claim of prior independent inventorship. The interests of the existing parties do not encompass the

Appx58

Intervenor's position. Evidence also suggests unauthorized access to "ARIA" precursor materials via administrative or platform-level credentials prior to 2020.

## VIII. PROPOSED PLEADING

The Intervenor submits as **Exhibit A** a Proposed Complaint in Intervention asserting claims for declaratory judgment and correction of inventorship under 35 U.S.C. § 256.

## IX. NOTICE REGARDING EXHIBITS

Due to ongoing technical obstructions, restricted access to hardware, and interference with PACER/ECF filing systems, supporting Exhibits (A, B, and C) are being provided concurrently via emergency email or will be supplemented as soon as technical access is restored. The Intervenor requests leave to file additional exhibits under seal as appropriate.

## X. PRAYER FOR RELIEF

WHEREFORE, the Proposed Intervenor respectfully requests that the Court:

1. Grant the Motion to Intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), or alternatively, for permissive intervention under Rule 24(b);

2. Deem the Proposed Complaint in Intervention filed;

3. Grant leave to supplement the record with full exhibits once access to restricted records is resolved, or to file such exhibits under seal; and

4. Grant any other relief the Court deems just and proper.

Respectfully submitted,

/s/ Daitona Carter
Daitona Carter, Pro Se  Intervenor

 CONTACT INFO REDACTED FOR VICTIM SAFETY

**VERIFICATION**

I, Daitona Carter, declare under penalty of perjury under the laws of the United States that the facts stated in this Motion are true and correct to the best of my knowledge. Executed on: **March 26, 2026.**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2026, a copy of the foregoing was served via email upon counsel for all parties of record.

**ECF No. 58-1** – Attachment 1: Proposed Complaint in Intervention

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

                                        **Case No. 1:26-cv-10304-ADB**

    **v.**                                        *(Judge Allison D. Burroughs)*

**META PLATFORMS, INC., et al.,**
    *Defendants.*

**PROPOSED COMPLAINT IN INTERVENTION**
**(for Declaratory Judgment and Correction of Inventorship under 35 U.S.C. § 256)**

**COMPLAINT IN INTERVENTION**

Proposed Intervenor Daitona Carter, proceeding pro se, respectfully submits this Complaint in Intervention pursuant to the accompanying Motion to Intervene under Fed. R. Civ. P. 24.

**I. PARTIES**

1. Proposed Intervenor Daitona Carter is an individual residing in the United States, and is the real party in interest asserting prior inventorship rights.

2. Plaintiff and Defendants are as set forth in the original Complaint.

**II. JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 256. Supplemental jurisdiction exists under 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and because the original action is pending here.

**III. CLAIM FOR CORRECTION OF INVENTORSHIP (35 U.S.C. § 256)**

5. Proposed Intervenor asserts prior conception and reduction to practice of technologies embodied in U.S. Patent Nos. 10,306,389; 10,651,866; 11,082,055; 11,871,174; and 12,216,339 (the "Asserted Patents"), including but not limited to directional audio,

Appx62

1

adaptive beamforming, multimodal acoustic control, sensor fusion, and related smart-glasses architectures.

6.  The detailed technical provenance and corroborating timeline (2007–2021) are set forth in the Motion to Intervene (incorporated by reference) and supporting exhibits, including prototype records, repositories (abot, betty, dc500), NDA submissions, witness observations, and contemporaneous documentation.

7.  The named inventors on the Asserted Patents do not include the Proposed Intervenor, despite her prior independent contributions that correspond to specific claim elements.

8.  This error in inventorship occurred through error (as broadly defined under § 256), and correction is necessary to reflect the true inventorship. The error does not invalidate the patents if corrected.

## IV. DECLARATORY JUDGMENT (28 U.S.C. § 2201)

9.  An actual controversy exists regarding the inventorship and ownership rights in the Asserted Patents. A declaratory judgment is necessary and appropriate to determine the Proposed Intervenor's rights and to prevent future impairment of those rights.

## V. PRAYER FOR RELIEF

WHEREFORE, Proposed Intervenor respectfully requests that the Court:

a. Grant intervention and deem this Complaint in Intervention filed;

b. Order correction of inventorship on the Asserted Patents pursuant to 35 U.S.C. § 256 to name Daitona Carter as an inventor (or joint inventor, as appropriate);

c. Issue a declaratory judgment confirming the Proposed Intervenor's prior inventorship rights;

d. Preserve all evidence and issue any necessary orders compelling third parties (including data controllers such as LinkedIn, Evernote/Bending Spoons, Google, Microsoft, Meta/Instagram, and telecom providers) to retain server logs, viewing logs, IP data, and related records;

Appx63

2

e. Grant leave to supplement with additional exhibits under seal as technical access is restored;

and

f. Grant such other and further relief as the Court deems just and proper.

**VERIFICATION**

I, Daitona Carter, declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct to the best of my knowledge. Executed on March 26, 2026.

/s/ Daitona Carter
Daitona Carter, Pro Se
CONTACT INFO REDACTED FOR VICTIM SAFETY


**CERTIFICATE OF SERVICE** I certify that on March 26, 2026, a copy was served via email
upon counsel for all parties.

**ECF No. 58-2** – Attachment 2: Text of Proposed Order

Case No. 1:26-cv-10304-ADB                                    Page 1 of 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

                           **Case No. 1:26-cv-10304-ADB**

    **v.**                       *(Judge Allison D. Burroughs)*

**META PLATFORMS, INC., et al.,**
    *Defendants.*


**[PROPOSED] ORDER GRANTING MOTION TO INTERVENE**

Upon consideration of Proposed Intervenor Daitona Carter's Motion to Intervene as of Right

pursuant to Fed. R. Civ. P. 24(a)(2) (or alternatively under Rule 24(b)), and for good cause

shown, it is hereby **ORDERED** that:

1.    The Motion to Intervene is **GRANTED**;

2.    Daitona Carter is permitted to intervene in this action;

3.    The Proposed Complaint in Intervention (Exhibit A to the Motion) is deemed filed as of

       the date of this Order;

4.    Proposed Intervenor is granted leave to supplement the record with additional exhibits

       (including under seal where appropriate) once technical access issues are resolved; and

5.    The Clerk shall docket this Order and the intervening pleadings accordingly.

**SO ORDERED.**

Allison D. Burroughs

United States District Judge

Dated: _____

Appx66

**ECF No. 58-3** – Attachment 3: Statement of Interest

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

    **v.**

                       **Case No. 1:26-cv-10304-ADB**
                       *(Judge Allison D. Burroughs)*

**META PLATFORMS, INC., et al.,**
    *Defendants.*

### PRO SE STATEMENT OF INTEREST IN PATENT SUBJECT MATTER

The Proposed Intervenor, Daitona Carter, respectfully submits this Statement of Interest to clarify the technical and legal nexus between her original intellectual property and the patents currently at issue in *Solos Technology Limited v. Meta Platforms, Inc.*:

**1. Original Architecture of Project Aria/Orion:** The Intervenor is the original architect of the foundational software and hardware framework now branded as Project Aria and Project Orion (commercialized as Meta smart glasses). This includes the proprietary execution environments and multimodal sensing architecture developed between 2016 and 2020.

**2. Technical Nexus (Python/AI Integration):** The patents asserted by Solos (e.g., U.S. Patent Nos. 11,835,703; 10,955,683) involve the integration of audio, visual, and AI-driven data processing. The Intervenor developed the original Python-based integration for these specific multimodal systems. The documented attempt to discredit the Intervenor's knowledge of Python during a "staged" 2025 evaluation in Florida was a bad-faith effort to suppress her as the source of this specific code.

**3. Direct Interest in Litigation:** If Solos and Meta reach a settlement or judgment regarding the ownership or licensing of these technologies, the Intervenor's original rights to her birthed framework will be irreparably harmed. As the source of the foundational architectural sketches that did not publicly expose or share novel details – the "how-to" (previously posted to LinkedIn in 2017 and utilized in corporate renders by 2019), the Intervenor has a "Significant Protectable Interest" under Fed. R. Civ. P. 24.

Appx68

**4. Necessity of Intervention:** Because the Intervenor's financial and technological "Autonomy" has been stripped through a coordinated blockage, this intervention is the only venue to prevent the laundering of her intellectual property through this litigation.

Respectfully submitted,

/s/ Daitona Carter
Daitona Carter, PRO SE
CONTACT INFO REDACTED FOR VICTIM SAFETY

Appx69

**ECF No. 58-4 – Attachment 4: Supplemental Notice of Prior Claims of Ownership**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SOLOS TECHNOLOGY LIMITED,
    *Plaintiff,*

    **v.**

                             **Case No. 1:26-cv-10304-ADB**
                             *(Judge Allison D. Burroughs)*

META PLATFORMS, INC., et al.,
    *Defendants.*

### SUPPLEMENTAL NOTICE OF PRIOR FORMAL CLAIMS OF OWNERSHIP

The Proposed Intervenor, Daitona Carter, respectfully notifies the Court of the following documented timeline of her attempts to assert ownership of the technology currently at issue:

**1. 2021 Formal Notice (Instagram/Meta):** In 2021, immediately following the unauthorized rebranding of the Intervenor's life's work as "Project Aria," the Intervenor utilized public social media channels to provide direct notice to Meta Platforms (then Facebook) and its CEO, Mark Zuckerberg. At that time, the Intervenor identified the misappropriation of the "Aria" name and the foundational architectural framework she birthed.

**2. Notification of Infringement (Ray-Ban/X):** The Intervenor has further attempted to provide formal notice of her ownership to Ray-Ban, Meta and alleged General Counsel for Meta (her branded account) via the social media platform X (formerly Twitter). These notifications were issued to alert the parties that the smart glasses products—specifically the Ray-Ban Meta and Oakley Meta lines—utilize the Intervenor's proprietary multimodal sensing architecture.

**3. Verification of Ownership via Product Release:** While the Intervenor initially suspected misappropriation based on the use of the "Aria" name in 2021, the subsequent public release of the actual product features, marketing materials, and specific partnership deals (e.g., Luxottica/EssilorLuxottica) has provided forensic confirmation that the technology is the Intervenor's original work.

**4. Relevance to Intervention:** These prior attempts to assert ownership demonstrate that the Intervenor has acted with diligence to protect her rights. The current "Blockade" and technical "fencing" are retaliatory measures intended to silence these documented claims as this litigation progresses.

Respectfully submitted,

/s/ Daitona Carter
Daitona Carter, PRO SE
CONTACT INFO REDACTED FOR VICTIM SAFETY

**ECF No. 83 –** Supplemental Affidavit RE: Demonstrative Exhibits And Availability Of Forensic Logs For In Camera Review

*Attachment 1-8: Proof Of Senior Inventorship; Linkedin Excerpts, Code, Audio, Video, Proof Of Trademark And Slideshow PDF*

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

    **v.**

**META PLATFORMS, INC., et al.,**
    *Defendants.*

**Case No. 1:26-cv-10304-ADB**
Judge Allison D. Burroughs

**In re: DAITONA CARTER**
    *Proposed Intervenor.*

**SUPPLEMENTAL AFFIDAVIT RE: DEMONSTRATIVE EXHIBITS AND
AVAILABILITY OF FORENSIC LOGS FOR IN CAMERA REVIEW**

In Support of Motion to Intervene (ECF 58) and Motion for In Camera Review (ECF 62)

I, Daitona Carter, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the

following is true and correct:

1. I am the Proposed Intervenor in this action.

2. The materials attached hereto and labeled **Demonstrative Exhibit A through**

   **Demonstrative Exhibit K** are true and accurate reproductions of publicly accessible (or

   previously publicly accessible on now-suppressed accounts) online content, records, and

   physical prototype images. These include:

   • **Demonstrative Exhibit A:** February 2017 LinkedIn profile excerpt listing "My First

   Tech Lab Opening 2017" (started July 2016) and related technology projects.

Appx74

• **Demonstrative Exhibit B:** July 27, 2017 LinkedIn post titled "Tech Lab 'Blog' ~ Public Notes for AR/VR Development".

• **Demonstrative Exhibit C:** May 2017 Tesseract OCR / computer vision code.

• **Demonstrative Exhibit D:** October 25, 2017 folder showing audio-related .wav files and Python scripts.

• **Demonstrative Exhibit E**: Early 2019 LinkedIn profile export showing professional background in technology, audio engineering, marketing, and prototype development.

• **Demonstrative Exhibit F**: June 15, 2019 YouNoodle "Aria" Entrepreneurship World Cup confirmation email.

• **Demonstrative Exhibit G:** Photographs of early physical smart-glasses prototypes, including frame construction, glass-cutting experiments, melting attempts, and hand-drawn design sketches.

• **Demonstrative Exhibit H:** Screenshots of private video titles "Aria Smart Glasses" and "Aria Smart Glasses Pitch".

• **Demonstrative Exhibit I:** October 21, 2017 YouTube video titled "AR VR Smart Glasses and BTS DNA" by Daitona Carter / 데이토나 / METADAi since 2010 (151 views), showing early smart glasses lens and optical system development.

• **Demonstrative Exhibit K:** December 24, 2021 YouTube video titled "Aria Smart Glasses Prototype 2 (2018/9) - Lens before I cut it to fit frame" by Daitona Carter (19 views). Video includes note: "Proof of Smart Glasses from Instagram." Video music: Jay Park 'Dank'.

These materials are submitted **solely as demonstrative exhibits** for contextual and illustrative purposes — to show the existence and approximate timing of certain publicly

Appx75

visible materials and hands-on prototype work related to my independent development activities in 2016–2019. They are not offered as primary or substantive evidence of inventorship, reduction to practice, technical specifications, or any element of my claims.

3. I am also in possession of APT forensic logs and related technical records from the March 21–23, 2026 incident. These logs document unauthorized access, data exfiltration, and tampering that occurred during that period. Because previous attempts to access my own accounts have triggered immediate deletion or relocation of records, I cannot safely retrieve or preserve additional corroborating evidence without risk of further spoliation.

4. I respectfully request that the Court permit submission of the APT forensic logs and any unredacted original source materials for **in camera review only** (or under seal/Attorneys' Eyes Only if the Court grants a protective order). These materials are offered solely to assist the Court in evaluating the risk of spoliation and my protectable interest in prior independent inventorship under **35 U.S.C. § 256.**

5. Granting this request prior to April 22, 2026 (the current deadline for Plaintiff's response to Defendants' Motion to Dismiss) will allow the Court to have a complete record while protecting sensitive and safety-related information.

6. For the convenience of the Court, the public URLs corresponding to **Demonstrative Exhibits I and K** are as follows:

• **Demonstrative Exhibit I:** https://youtu.be/kPFy83KTJ-o

• **Demonstrative Exhibit K:** https://youtu.be/uxqbX5i4QHw

Executed on April 10, 2026.

/s/ Daitona Carter
Daitona Carter
Pro Se Proposed Intervenor

Contact Information: (REDACTED PURSUANT TO PENDING MOTION TO SEAL (DOC. 59) AND MOTION FOR PROTECTIVE ORDER (DOC. 60) FOR VICTIM SAFETY; CURRENT INFORMATION PROVIDED PRIVATELY TO THE CLERK)

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2026, a copy of the foregoing was served through the Court's CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

/s/ Daitona Carter
Daitona Carter
Pro Se Proposed Intervenor

# Daitona Carter (## ####)

(mobility + fluidity)10^2 = (inventing + launching)10 (Solution: Daitona)

daitona.linkedin@gmail.com

## Languages

| | |
|---|---|
| **English** | (Native or bilingual proficiency) |
| **Korean** | (Limited working proficiency) |
| **Spanish** | (Limited working proficiency) |
| **Chinese** | (Elementary proficiency) |
| **Japanese** | (Elementary proficiency) |

## Summary

1. MILLENNIAL.

2. First brick and mortar business in grade school.

3. I've been marketing since high school.

4. Became an "official" entrepreneur before freshman year.

5. #Bloomberg Businessweek.com featured my marketing deck# :-) Kind of cool...


MARKETING SKILLS

# Information Architecture: Wireframes, Mockups, Prototypes, User Personas, User Centered Design


# Consumer Strategy: Brand Awareness, Customer Acquisition, Relationship Programs, CRM
 / Database Management

# Outpost Marketing: Lead Development, Influence Outreach, Build Loyalty, Drive Conversions


# Online Communities: Community Development, Engagement Tactics, Community Platforms

# Social Media: Presence Management, Audit/Strategy, Presence Management, Branded Content,
 Conversations, Sentiment Analysis/Actionable Insights


# Content: Analysis & Strategy: Taxonomy, Metadata/Keywords, Search/SEO, Email Marketing

# Mobile Marketing: Concept Design, Location Based Services

# Data Analysis / Web Metrics: ComScore, Hitwise, Hootsuite, Google Analytics, Next Big Sound, Adobe
 Marketing Cloud, Omniture Insight, Webtrends, CoreMetrics, DoubleClick


TECHNOLOGY/ COMPUTER SCIENCE/ MANAGEMENT INFORMATION SYSTEMS:

# Languages: PHP, JavaScript, Node.js, HTML, XML, CSS, Perl, Python, ASP/VBScript,, C#, C++

Appx79

\# VCS: Subversion, CVS, Github

\# Stacks/ Web: Cloud/AWS, Apache,

\# DB: MySQL, SQLite, PostgreSQL, Microsoft SQL Server, Access, FileMaker Pro Dev, FoxPro

\# Graphics: GIMP, Photoshop, InDesign, Muse

\# Design Techniques: wireframes, storyboards,  rapid, iterative prototyping

\# Report Tools: ActiveReport, Crystal Reports

\# Business Intelligence: SAS Enterprise Miner, RapidMiner, Excel

DATA SCIENCE

\# Predictive Modeling, Exploratory Data Analysis, Data Mining & Text Mining, Data extraction

---

Skills & Expertise

**SEO**
**E-commerce**
**Social Media**
**Digital Marketing**
**Mobile Marketing**
**WordPress**
**Public Relations**
**Online Marketing**
**Dreamweaver**
**Digital Media**
**Online Advertising**
**PHP**
**Music Industry**
**Facebook**
**Digital Strategy**
**Music Production**
**Marketing Strategy**
**Event Planning**
**Event Management**
**Mobile Applications**
**Microsoft Office**
**CMS**
**Media & Entertainment**
**Microsoft Excel**
**PowerPoint**
**User Experience**
**XML**
**Advertising Sales**
**Microsoft Word**
**Pinterest**
**Administration**

Appx80

**Web Applications**
**SQL**
**Travel Management**
**HTML + CSS**
**HTML5**
**DART**
**Travel Logistics**
**Social Media Marketing**
**Ruby**
**Information Systems**
**Agile Web Development**
**Scrum**
**New Media**
**Search Engine Optimization (SEO)**

---

## Volunteer Experience

**Technologist (Database Administration and Tech Trainer) + Special Event Planner  at   NYC Department of Education**

2015  -  Present

Technical Training and Leadership

• Establish regular communication with staff, principals, district administrators, and local        committees to disseminate information and gain feedback on technology integration and  needs of staff, volunteers and parents.

• Train volunteers and Corps members to use Google Apps and Microsoft Office Suite.

Database Design and Management

• Developed and implemented multiple Access databases containing a large number of records.

• Redesigned flat files (spreadsheets) to a relational database.

• Updated and restructured company web pages for more efficient use.

• Provided technical support for users

Data Acquisition

• Performed data entry, research, and utilized Excel formulas such as VLOOKUP to clean   school data and  ensure accuracy to prepare  for system importing.

Technology Mentor

• Lending my technical know-how to teach digital literacy to an unserved community.

Public Relations / Event Planning

• Event planning and leadership for Asian Studies event.

---

## Projects
**My First Tech Lab Opening 2017**

Appx81

July 2016 to Present

Members:Daitona Carter (##  ####)

#1. Mil Ro  –  Personal Robot for people who live alone (or lazy people).

#2. AI Parents  – Will teach you things like a new language using all that we know about the psychology of learning. One feature/component of this product taps into a $80B market.

#3. I hacked my iPhone and MBP to teach me Korean in an annoying way.

#4. Retail/Medical device  – I used digital technology to create a consumer/healthcare product for women (and possibly men). This accessory solves a problem many women have when wearing generic last shoes. I've way a way to prevent corns, callus, rigid hammertoes from forming + resolving the issue of keeping on high heels.

#5 AI Personal Research Assistant and Editor – "Studies" the topic for you and helps your edit the final paper.

#6 Digital Professor – Mashup of #2 and #5. The goal of the Digital Professor is to create a learning environment that meets the needs of digital natives. "Digital immigrants" sometimes find it hard to adjust to new generations of learners. Digital Professor will fill in the gap.  Additionally, Universities can use it to help minimize the workload of online teachers.

#7  Wellness Tech Company – Provides wellness opportunities to startups in NYC, SF, and LA. Anticipated profits from NYC is 1.9M in the first year (excludes add-ons). For the cost and services provided to start-up executives and all of its employees, I can't see anyone saying no.

#8 Non-Profit – I have an idea. It creates a "sub-economy" in underserved communities while providing small businesses with affordable ways to manage technology and business communications. Think e-commerce, web design, marketing, etc. The result creates entrepreneurs AND provides the community with the opportunity to receive non-taxable funds (a check with no taxes) in which they can use to start their business. Ages 12+

**Withheld - The Ultimate Language Learning System**

July 2016 to Present

Members:Daitona Carter (##  ####)

What is it?  A learning system that teaches the user to speak ANY foreign language within seven days.

How: Yeah right.

Appx82

Is there a demand? The global language industry is an $80+ billion market, and language learning is a subset of that industry.

In which stage is the project? Stage one; concept, design, and technology are mapped out.

I submitted an application to Asian incubator because I need mentoring, an active network and the money to build a prototype. If I don't get selected for the incubator (hard to believe but * happens), I'm going to build the prototype in my living room. At that point, the highest bidder wins.

## Software Developer

July 2016 to Present

Members:Daitona Carter (## ####)

Project: "Startup in a Box" - I will provide more details later. I may use it for an incubator competition.

Technologies (so far): Bootstrap, jQuery, jsPDF  and Telize

## Telephony Developer (SIP/Linux/VoIP/PBX)

Members:Daitona Carter (## ####)

Project: Affordable phone system and SMS gateway for marketing agency

Developed virtual / cloud-based PBX and IVR messaging ran on AWS EC2.

Migrated critical infrastructure to cloud-based infrastructure.

Reduced marketing agencies telecom expenses by 82%.

Technologies: SOAP XML, RESTful services, Entity-Relationship Modeling, Database Design, Amazon S3, Amazon EC2,  IVR, SMS, MYSQL, JSON, technical architecture and design, UML.

## Software Tester- Performance Testing

Members:Daitona Carter (## ####)

Project:

#1  Web Application for national online grocer

#2  Well-known online accounting software with over 1,600,000+ users*

Made recommendations and provided solutions.

Implemented enterprise-level testing application and conducted analysis.

Conducted troubleshooting of business and production issues.

Conducted testing procedures and wrote reports for presentation to teams.

Implemented business solutions and provided support.

Engaged in constant communication with stakeholders and senior management.

Appx83

Leveraged knowledge of object-oriented programming to help validate, verify, communicate and resolve
software issues through careful, thoroughly documented testing to maximize return on investment (ROI).


*pretty much told them how to fix a major problem.

**Amazon Web Services (AWS) Developer**
Members:Daitona Carter (##  ####)

Project: Music library (Web App) for Music Publisher


Created new buckets per client / record label.
Used IAM Policies to Control Access client / record label.
Designed GUI (dashboard) to minimize need for the user to code or run command lines; upload, download,
view/listen.


Technologies: Amazon S3, Amazon EC2, Amazon RDS with Amazon S3, JSON, HTML5, technical
architecture and design, UML.

**Getting Things Done (GTD) Web App**
Members:Daitona Carter (##  ####)

Draggable To-do-list


Functions:
1. Add task with or without description and select from deadline from pop-up calendar.
2. User can drag from pending to in process to complete.
3. To delete, the User  must drag to the trash area.
4. Text and Voice reminders*
5. Sync with email*
*feature coming


Environment: Runs locally. If needed, data can easily be retrieved or extracted.


Technology: HTML5, CSS, JQuery and Bootstrap.


Tools: Linux (Mac OS) and Sublime Text, Browser (Chrome)

**Database Designer / Analyst**
2015 to Present
Members:Daitona Carter (##  ####)

Designed and deployed  IRS compliant Management Information System that allows taxpayers to manage tax
deductible expenses such as those related food allergies and dietary restrictions.


Design:

Appx84

Reviewed data requirements

Designed Conceptual, Logical and Physical data models

Performed Data analysis/Profiling to evaluate data and underlying data structures.

Documented and published the data dictionaries/Metadata, data models to ensure their correct implementation

Analyst:

Studied user requirements

Maintains data dictionary by revising and entering definitions

Ensures operation of equipment by completing preventive maintenance requirements; following manufacturer's instructions; troubleshooting malfunctions; calling for repairs; evaluating new equipment and techniques

Skills/Qualifications: Database Performance Tuning, Database Management, Requirements Analysis, Software Development Fundamentals, Problem Solving, Documentation Skills, Verbal Communication, Data Maintenance, Database Security, Promoting Process Improvement, System Administration

Technologies: MS Access, Google SQL, ASP.net, HTML, etc.

**USDA FNS - PRO BONO**

November 2016 to Present

Members:Daitona Carter (## ####)

I'll never forget when I looked into franchising a Whole Foods Market. I had a conversation with "someone" who in a straightforward way told explained why I would never see a WFM in Harlem (opening), the Bronx or other "hood" areas missed by gentrification. That got me thinking. I developed a healthy food tech biz, but never acted on it. So, today I saw another opportunity to get real food to those who need it the most. I prototyped an e-commerce platform with the goal of allowing millions of SNAP recipients order their groceries online. I offered it to USDA FNS for free. #Giveback2America

If you are interested in helping me improve my design, shoot me a message.

---

## Experience

**Marketing (Digital + Social Media + Internet), Public Relations, Business Development Consultant  at Consultant for Multiple Companies**

2005  -  Present (12 years)

Digital Marketing and Public Relations Consultant

Advise and assist celebrity clientele, businesses and non-profit organizations with digital marketing, brand management, media coordination, and creative direction and web technologies.

Appx85

Projects/Clients: City Of New York, NY Department of Health, Atlantic Records, American Apparel, MTVN, Wachovia Securities, Rihanna, Turner Classic Movies, Be Sickle Smart, Hillary Rodham Clinton, PEPSI, Save the Children, Armand de Brignac (Ace of Spades), Abyssinian Baptist Church, SkullCandy, UPS, Burger King, Dannon, Clear Channel, International Home Furnishing Store, National Online Grocers and other white label projects.

Titles: Sales and Marketing Manager, Business Development and Digital Strategist, VP of Sales and Marketing, Community Manager, Marketer and Public Relations Practitioner, Assistant E-Commerce Marketing Manager, Amazon Web Services Administrator / Programmer, Junior Software Engineer (Web and Mobile Apps)

Accomplishments:
• Lead aggressive media outreach efforts for new product launches and brand announcements; secured global placements
• Increased search marketing sales by 19% with a reduced budget of 10%
• Generated over $8MM in revenue for boutique business consultancy
• Marketing deck drove $6MM business deal between client and national retailer
• Responsible for leading edge digital campaigns driving $2MM+ in yearly revenue
• Established and implemented a digital marketing strategy and as a direct result grew sales in 18-months from $10k to $150k
***Own 6 US businesses. Looking to launch three in South Korea by Summer 2017.

**STEM + AP Teacher  at  Thoth Academics**
September 2011  -  Present (5 years 6 months)
I have to do something with all the knowledge I've acquired over the years. I'm back to teaching part-time.

STEM
Math, Science (Physical + Bio), and Computer Tech for ages ten to googol. Ensured that each of my middle school students earned acceptance into top ranking High Schools in the U.S.

AP
Accelerated AP Courses for Gifted, IB, and Homeschooled Students -  Psychology, United States History, Government and Politics: United States and Computer Science Principles.

**Ethical Hacker  at  HackerOne (Member)**
May 2016  -  October 2016  (6 months)
I help companies protect their users and brand by finding common security holes.

Appx86

Backstory - I got tired of doing it for free for businesses that had no interest in hiring anyone (especially me). HackerOne lets me rid myself of boredom, thus allowing me to get paid for what I know and enjoy. #sidehustle

## Business Analyst / Information System Analyst / Computer Hacking Forensic Investigator  at   Bits and Bytes NY

April 2015  -  July 2015  (4 months)

Business  Analyst / Information System Analyst

- Provide ROI Analysis of marketing campaigns and sales activities.
- Work on research projects that answer specific business questions.
- Applied data mining techniques using SAS and SQL to perform marketing campaign.
- Develop and produce physical design of databases based upon logical data models by employing program and business requirements and analysis.
- Information system strategies are aligned with the needs of stakeholders and internal team.
- Research  and develops database administration; coordinate and align information systems with user objectives; develops and reviews standards and procedures
- Monitor and report to management any deviation from procedures or policy; oversees and manages multiple concurrent projects.
- Support internal operations, budget management, and project planning.
- Manage efficient workflow while planning and preparing correspondence related to the position.
- Developed and presented hardware and software prototype solutions for possible development.
- Researched information technology to apply to new prototypes.
- Developed client/server application using SQL
- Evaluated Internet Web servers and developed dynamic database-driven HTML and PHP pages.
- Served as systems designer, technical lead, principal architect for  third party IRS tax compliance technology prototype.

-----

Computer Hacking Forensic Investigator

Background: Business of Information Security, Cybercrime, Computer and Network Security, Forensic Technology, Database Design and Management and more.

Skills: Disk Imaging, Integrity Verification, Forensic Memory Analysis, Resurrecting Deleted Files, Metadata Analysis, Steganography and Covert Channels, Encryption, Network Forensics and Anti-forensics.

Tools: EnCase Imager, WinHex, P2 Commander, FTK Imager, Helix, Process, Explorer, FavoritesView, IECacheView, IECookiesView, BrowsingHistoryView, and MyLastSearch.

## Marketing and PR | Independent Contractor  at   Edelman

2008  -  2009  (1 year)

Multicultural Pitches and Outreach

Appx87

- Wrote and edited pitch letters and press releases
- Initiated implementation of media events, press conferences/briefings, media tours, etc.
- Developed and executed global media relations and blogger outreach programs
- Pitched biggest idea and gained largest contract for multicultural department
- Provided one-on-one social media training and digital coaching to account executives
- Assisted with new business development and outreach, assist in client budgeting, daily media monitoring, client correspondence and event planning / execution.

Attending professional development training and workshops: Social Media, Press Release Writing, How to Pitch, etc.

### C-Level Executive Assistant (Senior Management) via Insight Staffing  at   Warner Music Group
2005 - 2007  (2 years)

Multiple Positions at Warner Music Group  and Atlantic Records

C-level Executive Assistant, Warner Music Group:
CEO, SVP Legal Affairs, SVP Taxation and Finance, SVP Corporate Communications
(Conway, Tanos, Bronfman, Stockdale and others.)

Assistant A&R Manager, Atlantic Records, New York, NY

A&R Assistant (Part-time), Atlantic Records, New York, NY

Marketing Assistant (Part-time), Atlantic Records, New York, NY

### Senior Level Executive Assistant + Freelancer - In-House Temp and via PeopleFinders  at   MTV Networks
2002 - 2007  (5 years)

Multiple positions over a period of five years including assistance to the General Manager and VP at LOGO (TV network.)

### Assistant Ecommerce Marketing Manager via Randstad  at   The Metropolitan Museum of Art
2004 - 2005  (1 year)

- Focused on customer retention; developing and implementing loyalty-building and usage-driving retention programs
-  Implemented and managed new and existing email communication programs
- Evaluated and analyzing current marketing efforts
- Determined consumer behavior/usage; creating analytical reports /presentations for senior management

Appx88

• Identified change in markets and proposed a solution to the Manager

• Analyzed sales results; develop sales strategies based on analysis of market research

• Scheduled, wrote and managed page placements including graphics, text, video and links

**Marketing Assistant  at   Randstad USA**
2000  -  2005  (5 years)

   Key Temp Assignments: Wachovia Securities  and  PriceWaterCooper

**Constituent Affairs | Media Relations Intern  at   United States Senator Hillary Rodham Clinton**
2000  -  2001  (1 year)

**Junior Executive Assistant to VP of Finance | CO-OP  at   Arthur Andersen LLP**
1997  -  1998  (1 year)

---

## Education

**Yonsei University**
Korean Language and Literature

**Western New Mexico University**
Master of Business Administration (M.B.A.), International Business + Digital Technology
Grade:  A Student (no minus grade given at institution)

**Western New Mexico University**
Instructional Technologies and Design

**Cornell University - Johnson Graduate School of Management**

**University of Pennsylvania - The Wharton School**

**Syracuse University**
Applied Data Science

**Harvard Business School**
Non-Degree HBR Courses, Spreadsheet Modeling

**Western New Mexico University**
Master's degree

**Western New Mexico University**
Computer Hacking Forensic Investigator (CHFI investigator)

**Stanford University**
MOCC + Certificate Program

**City University of New York**
Bachelors

**Northeastern University**
Marketing/Marketing Management

**Dartmouth College - The Tuck School of Business at Dartmouth**
Bridge Program, Economics, Marketing, Finance, Financial Accounting

**Harvard University**

Appx89

**University of New England College of Osteopathic Medicine (UNECOM)**

Post Baccalaureate Sequence, Pre-Medicine/Pre-Medical Studies

**ABC Training Center**

Nursing Assistant/Aide and Patient Care Assistant/Aide

Grade:  GPA 4.0

**City University of New York-Herbert H. Lehman College**

Electrocardiograph Technology/Technician

Grade:  GPA 4.0

**City University of New York-Herbert H. Lehman College**

Phlebotomy Technician/Phlebotomist

Grade:  GPA 4.0

**Rutgers University**

Spanish Language and Literature Courses

## Interests

new technologies, neuroscience, neuropsychology, physics (Geophysics, astrophysics, quantum-physics),
 astronomy, archaeology geodetics, and economics

## Organizations

**National Recording Academy of Arts and Sciences**
**American Bar Association**
**Association of National Advertisers**
**American Geophysical Union**
**U.S. Capitol Historical Society**
**New-York Historical Society**
**Psi Chi Honor Society**
**Marketing Research Association**

## Certifications

**Accredited Travel Agent**
IATA
**Accredited Travel Agent**
CLIA
**Basic Life Support (BLS) for Healthcare Providers**
American Heart Association
**HIPAA For Health Care Providers**

## Honors and Awards

**Deans List**
**Psi Chi**

Appx90

# Daitona Carter (## ####)

(mobility + fluidity)10^2 = (inventing + launching)10 (Solution: Daitona)

daitona.linkedin@gmail.com

---



## 9 person has recommended Daitona

"Daitona Carter is a new media professional with an old soul. In the ever-evolving worlds of marketing, PR and social media, she not only knows the fundamentals, but also how to successfully apply those fundamentals on behalf of clients looking to properly capitalize in a new-school world. Daitona's business acumen and forward thinking ability to navigate a changing technological landscape are commendable and her confident personality is equally inspiring. I recommend Daitona."

— **Michael Conforti**, was with another company when working with Daitona at Consultant for Multiple Companies

"I would recommend Daitona Carter for any and all SEO needs. She is a consummate professional and extremely knowledgable in this area. My business was brought to new heights with the help of her expertise and I can't wait to work with her again."

— **Iyobosa Enpho**, *Songwriter, Enpho Music Publishing*, was Daitona's client

"Daitona is very knowledgeable in her field and is very punctual and detailed as well as professional at all times in what she does."

— **JIMI KENDRIX**, was Daitona's client

"Daitona is an innovative individual who possesses a wealth of knowledge and experience. She's an expert in tactical action, forecasting, and stimulating communication. I welcome working on projects with Daitona, it's always an welcome experience."

— **Garnette C.**, reported to Daitona at Consultant for Multiple Companies

"Daitona is by far one of the very best PR and SEO people out there. She's gotten me great results and has a great personality."

— **Koen Heldens**, was Daitona's client

""I've had the pleasure of knowing and working with Daitona for two years. Daitona has always been a key player when it came to creating and executing innovative marketing, advertising and public relations

Appx91

campaigns for clients of all industries. Daitona's marketing skills had a major impact on projects for international-super stars such as Rihanna and Fortune 500 companies like Edelman, Burger King and UPS. She is also very skilled at building strong relationships with both internal and external customers.""

— **Soraya Burrell**, was Daitona's client

"I've worked with Daitona before and she is very concise. I love that she knows what she wants and not afraid to take risks. I'd love to work with her again in regards to actually marketing my company and see where that takes me because I do plan on doing a lot more work via the 'net until I relocate and I need more contacts on the East Coast. I look forward to reconnecting with her."

— **Ovie Oghenekevbe, MLA**, was Daitona's client

"I have seen Daitona's schedule and it is quite hectic, so when she asked for my assistance I had no problem jumping in, She is great with details and turnaround times that would otherwise crush people. She is very focused and goal oriented and very articulate she can tell you as a client what she wants, and how she wants it done. Something I greatly appreciate. She is also a dedicated friend , very honest , hold no punches type of young lady. She will tell you why something doesn't work for her, or in general with facts and proof to back it up."

— **Alexis Tai**, was a consultant or contractor to Daitona at Consultant for Multiple Companies

"Daitona is a very good business woman and knows how to handle ideas from the core to make them work and become successful in the industry.do not pass her up if you want to become successful he has the tools indeed"

— **8off  Agallah**, was with another company when working with Daitona at Consultant for Multiple Companies

Contact Daitona on LinkedIn

Appx92

## Contact

daitona.linkedin@gmail.com

www.linkedin.com/in/daitonacarter (LinkedIn)
github.com (Other)
bit.ly (Other)
daitonacarter.com (Personal)

## Top Skills

SEO
Social Media
Digital Marketing

## Languages

English (Native or Bilingual)
Korean (Limited Working)
Spanish (Limited Working)

## Certifications

Accredited Travel Agent
Accredited Travel Agent
HIPAA For Health Care Providers
Basic Life Support (BLS) for Healthcare Providers

## Honors-Awards

Deans List
Psi Chi Honor Society
GLO-BUS Global Top 100 Overall Game-To-Date Score (Global Strategy)
Delta Mu Delta International Honors Society

# Daitona (데이토나) Carter (카터)

New Businesses / Research & Development - creating new business ops + R&D activities to bring about innovations. (In US right now = Media/Ent projects).
Korea

## Summary

1. MILLENNIAL.
2. First brick and mortar business in grade school (partnered w adult).
3. Marketing since high school.
4. Became an "official" entrepreneur before freshman year.
5. ☞Bloomberg Businessweek.com featured my marketing deck✉ :-) Kind of cool...

MARKETING SKILLS
■ Information Architecture: Wireframes, Mockups, Prototypes, User Personas, User Centered Design

■ Consumer Strategy: Brand Awareness, Customer Acquisition, Relationship Programs, CRM
/ Database Management
■ Outpost Marketing: Lead Development, Influence Outreach, Build Loyalty, Drive Conversions

■ Online Communities: Community Development, Engagement Tactics, Community Platforms
■ Social Media: Presence Management, Audit/Strategy, Presence Management, Branded Content, Conversations, Sentiment Analysis/ Actionable Insights

■ Content: Analysis & Strategy: Taxonomy, Metadata/Keywords, Search/SEO, Email Marketing
■ Mobile Marketing: Concept Design, Location Based Services
■ Data Analysis / Web Metrics: ComScore, Hitwise, Hootsuite, Google Analytics, Next Big Sound, Adobe Marketing Cloud, Omniture Insight, Webtrends, CoreMetrics, DoubleClick

Appx 93

TECHNOLOGY/ COMPUTER SCIENCE/ MANAGEMENT INFORMATION SYSTEMS:
■ Languages: PHP, JavaScript, Node.js, HTML, XML, CSS, Perl, Python, ASP/VBScript, C#, C++, GO
■ VCS: Subversion, CVS, Github
■ Stacks/ Web: Cloud/AWS, Apache,
■ DB: MySQL, SQLite, PostgreSQL, Microsoft SQL Server, Access, FileMaker Pro Dev, FoxPro
■ Graphics: GIMP, Photoshop, InDesign, Muse
■ Design Techniques: wireframes, storyboards,  rapid, iterative prototyping
■ Report Tools: ActiveReport, Crystal Reports
■ Business Intelligence: SAS Enterprise Miner, RapidMiner, Excel

DATA SCIENCE
■ Predictive Modeling, Exploratory Data Analysis, Data Mining & Text Mining, Data extraction

─────────

## Experience

Undisclosed Holding Company
President
February 2016 - Present
United States

저는 미국의 사업가이자 컨설턴트입니다. 저의 주 업종은 엔터테인먼트, 기술, 교육 파트 입니다. 현재 저는 한국에서의 두가지 프로젝트건이 있습니다. 첫째는 인공지능쪽 기술 스타트업이고, 두번째는 글로벌 셀럽들이 관심있어하는 한국의 사업에 대해 컨설팅 서비스를 제공하고 있습니다. 추가로 더 알고 싶으시다면 메세지 회신바랍니다.

Organization 1
- Personalized concert/tour experiences within the Korean Music (kMusic) space which includes KPOP, kHipHop, knB, and kRock.
- kMusic promotion
- kInfluencers + local business partnerships
*Due to increased demand, we created an in-house KPOP "clothing line" with matching concert merchandise. Countries: United States, Canada, Brazil,

Appx94

Mexico, Malaysia, United Kingdom, France, Japan, South Korea, Hong Kong, Singapore, and the Philippines.

Organization 2

An intimate global community of loyal and registered kMusic fans to artists like BTS, NCT127, Twice, Jay Park, Day6, EXO, Monsta X, SIK-K, etc.
- Philanthropic activities within the KPOP community in over 20 countries.

Organization 3

- Consultant to music managers, Grammy-nominated producers and platinum recording artists seeking opportunities in Korea; market research and leads, communication with South Korean entertainment professionals and acting booking agent.
- Investor to Korean<>American ventures.
- Acting Manager to two Korean American entertainers- artist music campaigns; global release schedules, promo, social media, press, marketing and touring + tour support.

Organization 4

- Fan engagement and activation technologies. (Developmental stage)

*I could not find an APAC MBA internship that focused on my interest and strongest skill, "global strategy", so I had to create one. I ended up with a few unexpected business opportunities and hundreds of customers. I am very grateful for the real-time learning experience and look forward to working with executives within the region. As of January 2020, businesses 1 and 2 will be run by the "community" (they are pretty much automated thanks to AI) and I will continue on with networking and seeking out new opportunities in the Asia-Pacific region.

Undisclosed Multinational Tech Start-up
Founder and Engineer
July 2016 - Present

Think, create, test...
Wearables, edtech, and other consumer electronics. 2020 ~ revising design + updating patents.

Consultant to Multiple Companies
Social Media Marketing | Digital PR | Business Development
2005 - Present

Appx95

94

Case 26-17214-ABA    Document 29-1    Page 96    Filed 06/27/2026    Page 4 of 6

Inclusive list of projects: City Of New York, NY Department of Health, American Apparel, Rihanna, Turner ClassicMovies, Be Sickle Smart, PEPSI, Save the Children, Armand de Brignac (Ace of Spades), Abyssinian Baptist Church,SkullCandy, UPS, Burger King, Dannon, Clear Channel, Home Goods, FreshDirect, over 50 well-known media executives, professional NBA/NFL athletes, and celebrities.

Thoth Academics
STEM + AP Teacher
2011 - 2017 (6 years)

Edelman
Marketing and PR | Independent Contractor
2008 - 2009 (1 year)

Warner Music Group
C-Level Executive Assistant (Senior Management)/Atlantic A&R and Marketing Dept
2005 - 2007 (2 years)

Multiple Positions at Warner Music Group  and Atlantic Records

C-level Executive Assistant, Warner Music Group:
CEO, SVP Legal Affairs, SVP Taxation and Finance, SVP Corporate Communications
(Conway, Tanos, Bronfman, Stockdale and others.)

Assistant A&R Manager, Atlantic Records, New York, NY

A&R Assistant, Atlantic Records, New York, NY

Marketing Assistant, Atlantic Records, New York, NY

Viacom
Senior Level Executive Assistant + Freelancer + In-House Temp
2002 - 2007 (5 years)

Multiple positions over a period of five years including assistance to the General Manager and VP at LOGO (TV network.)

The Metropolitan Museum of Art
Assistant Ecommerce Marketing Manager via Randstad
2004 - 2005 (1 year)

Appx96

Randstad USA
Marketing Assistant
2000 - 2005 (5 years)

Key Temp Assignments: Wachovia Securities  and  PriceWaterCooper

Hal Leonard LLC
Assistant (Book Editor and Public Relations)
May 2002 - September 2003 (1 year 5 months)
Greater New York City Area

Hal Leonard/Cherry Lane Music/ Applause Theate & Cinema Books
Hal Leonard is the world's largest music publisher. In its catalog of more than 1 million available titles, Hal Leonard represents many of the world's best known and most respected publishers, artists, songwriters, arrangers and musical instrument manufacturers. Its products are sold in more than 65 countries throughout the world through Hal Leonard offices and a large network of distributors. Domestically, the company markets to more than 7,500 music stores in the United States and Canada through a team of 50 in-house sales representatives.

Cherry Lane Music developed a wide range of high-quality sheet music, DVDs, and educational tools for musicians. In March 2010, Cherry Lane was acquired by BMG Rights Management, which had been formed in 2008 jointly by Bertelsmann AG and Kohlberg Kravis Roberts & Co. BMG operated Cherry Lane as a subsidiary.

Applause is America's foremost publisher of theatre and cinema books. Books range from biographies of film and theatre luminaries, to play scripts, librettos, monologue books, and explorations of film and theatre history.

United States Senate
Constituent Affairs | Media Relations Intern
2000 - 2001 (1 year)

Hillary Rodham Clinton

Arthur Andersen & Co.
Junior Executive Assistant to VP of Finance  | CO-OP (High School: Sophomore)
1997 - 1998 (1 year)

Appx97

_____

## Education

Yonsei University
Korean Language

USC Gould School of Law
Business Law

Western New Mexico University
Master of Business Administration (M.B.A.), International Business + Digital
Technology

Western New Mexico University
Instructional Technologies and Design

Johnson Graduate School of Management at Cornell

Appx98

## Daitona (데이토나) Carter (카터)

**165**
Who viewed
your profile

**1,114**
Post views

**26**
Search
appearances

**Career interests**
Connect with recruiters and relevant
opportunities

**Saved items (46)**
Save interesting articles and jobs for later

## Your Articles

1,899 Followers | **Manage followers**



**Tech Lab "Blog" ~ Public Notes for AR/
VR Development + Women's Retail Pr**
Daitona (데이토나) Carter (카터) on Linke…
July 27, 2017

 Home   My Network   Messaging   Notifications   Jobs

Case 6:26-17304-AD Document 83 Page: Filed 04 Filed: 06/24/2026 of 1



### Smart Glasses - lens

No views · 13 seconds...

0:18



### Aria Smart Glasses Pitch

w · 1 year ago

1:56



### Aria Smart Glasses

s · 1 year ago

1:55

Appx100





```
tesseract_exe_name = 'tesseract' # Name of executable to be called at
command line
scratch_image_name = "temp.bmp" # This file must be .bmp or other Tesseract-
compatible format
scratch_text_name_root = "temp" # Leave out the .txt extension
cleanup_scratch_flag = True  # Temporary files cleaned up after OCR
operation

def call_tesseract(input_filename, output_filename):
    """Calls external tesseract.exe on input file (restrictions on types),
    outputting output_filename+'txt'"""
    args = [tesseract_exe_name, input_filename, output_filename]
    proc = subprocess.Popen(args)
    retcode = proc.wait()
    if retcode!=0:
        errors.check_for_errors()

def image_to_string(im, cleanup = cleanup_scratch_flag):
    """Converts im to file, applies tesseract, and fetches resulting text.
    If cleanup=True, delete scratch files after operation."""
    try:
        util.image_to_scratch(im, scratch_image_name)
        call_tesseract(scratch_image_name, scratch_text_name_root)
```









Appx106







Daitona Carter (카터 데이토나):

Congratulations. Your application -- ███████ 'Aria" -- has been successfully submitted to Entrepreneurship World Cup on June 15, 2019 ██ am (UTC).

You are now officially entered into your country's Entrepreneurship World Cup competition where you will be competing for national prizes and a shot to represent your country at the Global Finals in November at the Misk Global Forum during Global Entrepreneurship Week.

To view your application, follow the secure link below:
http://platform.younoodle.com/client/entry-rounds/entrepreneurship_world_cup/entries/████████████/checklist

Note: Your application documents are private, secure, and can only be accessed by the relevant program judges and organizers.

Good luck!

Top Tips:

For any questions regarding the process of Entrepreneurship

Appx109

**ECF No. 82 – Plaintiff Solos Technology Limited's Opposition
to Motion to Intervene**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SOLOS TECHNOLOGY LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:26-cv-10304-ADB |
| META PLATFORMS, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF'S OPPOSITION TO PROPOSED INTERVENOR'S MOTION TO INTERVENE AND ANCILLARY MOTIONS

Plaintiff Solos Technology Limited ("Plaintiff") submits this opposition to the filings of Daitona Carter ("Movant"), who moves for intervention pursuant to Federal Rule of Civil Procedure 24 while also seeking a range of ancillary relief, including witness protection, protective orders, judicial notice of unrelated matters, *in camera* review of immaterial information, and emergency accommodations. These filings reflect an attempt by a non-party to improperly insert itself into a patent infringement action while simultaneously requesting relief unrelated to the claims, parties, or subject matter before the Court.

As a preliminary matter, Movant's initial filings were marked as filed on March 27, 2026, although Plaintiff did not receive ECF notice of those filings until March 30, 2026. Plaintiff initially intended to submit its response on Monday, April 13, 2026, but, out of an abundance of caution and to avoid any potential waiver, submits this response within fourteen days of the marked filing date. Plaintiff further notes that, on April 8, 2026, and again on April 9, 2026, Movant filed a Supplemental Memorandum in Support of the Motion to Intervene ("Supplemental Memorandum"), a Notice of Supplemental Authority, and a Supplemental Affidavit without leave

Appx111

of Court. On April 10, 2026, Movant then filed a Motion for Status Conference or, in the alternative, for an Order regarding certain ancillary motions.

Although Plaintiff addresses portions of the Supplemental Memorandum and Motion for Status Conference herein to the extent practicable given their timing, Plaintiff respectfully reserves the right to submit a more complete response within fourteen days of any order indicating that the Court intends to consider the Supplemental Memorandum, Notice of Supplemental Authority, Supplemental Affidavit, or Motion for Status Conference. If the Court denies the Motion to Intervene outright, however, no further response would be necessary.

## ARGUMENT

### 1. The Motion to Intervene Fails to Identify a Legally Protectable Interest

The Motion to Intervene fails as a matter of law because Movant has not demonstrated a legally protectable interest in the subject matter of this litigation. As the Federal Circuit has explained, "[c]onception is the touchstone of inventorship." *Siemens Gamesa Renewable Energy A/S v. Gen. Electric Co.*, 617 F. Supp. 3d 55, 63 (D. Mass. 2022) (quoting *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009)). Conception exists only when "a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented, is formed in the mind of the inventor." *CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*, 57 F. Supp. 3d 118, 122 (D. Mass. 2014) (emphasis added) (internal citations omitted).

To qualify as a joint inventor, an individual must contribute to the conception of the claimed invention, and that contribution must be significant when measured against the full invention. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1361–62 (Fed. Cir. 2004) (joint inventorship requires a specific contribution); *U. of Utah v. Max-Planck-Gesellschaft Zur Foerderung Der*

*Wissenschaften e.V.*, 134 F. Supp. 3d 576, 584–85 (D. Mass. 2015). Joint inventorship also requires collaboration among the inventors. *See Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 916–17 (Fed. Cir. 1992); *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010). The joint inventor must propose an idea that becomes "an essential feature of the claimed invention" to have made a sufficient contribution to inventorship. *See Dana-Farber Cancer Institute, Inc. v. Ono Pharmaceutical Co., Ltd.*, 379 F. Supp. 3d 53, 81–83 (D. Mass. 2019) (quoting *In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018), as amended (May 7, 2018)). A person who merely assists in reduction to practice, provides well-known principles, or explains the state of the art does not qualify as a joint inventor. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998); *Murdock Webbing Co. v. Dalloz Safety, Inc.*, 213 F. Supp. 2d 95, 99 (D.R.I. 2002).

Here, Movant asserts that she conceived technology which overlaps with the Asserted Patents but fails to identify any specific contribution to the claimed inventions—this alone provides a sufficient basis for denial. *See CardiAQ Valve*, 57 F. Supp. 3d at 122 (requiring formation of every feature of the subject matter sought to be patented). Movant merely recites a generalized chronology of alleged prior technical activities, prototype development, marketing efforts, and professional associations spanning from 2007 through 2021. These allegations, even if accepted as true, at most describe familiarity with or work within the general technological field and purported development of certain products. They do not identify which patent claims allegedly embody Movant's contributions, what claim limitations Movant purportedly conceived, or how Movant contributed to the conception of any complete or essential feature of the claimed inventions. Thus, to the extent Movant claims sole inventorship, she fails to allege sufficient facts. *Id.*

To the extent Movant contends that she was a joint inventor, the above-referenced deficiencies likewise defeat any such allegation. An alleged joint inventor must identify specific contributions to the conception of the claimed invention. *See Eli Lilly*, 376 F.3d at 1361–62 (joint inventorship requires a specific contribution). Movant fails to identify any such contribution. In addition, joint inventorship requires some degree of collaboration among the alleged inventors. Yet Movant concedes that she had no employment, contractual, or assignment relationship with Plaintiff and no collaboration or connection with the named inventors. *See Kimberly-Clark*, 973 F.2d at 916–17 (requiring some quantum of collaboration or joint conception). Accordingly, Movant fails to plausibly allege sole or joint inventorship.

Next, assuming arguendo that the Court considers Movant's Supplemental Memorandum, it simply reiterates broad and conclusory assertions, without identifying any specific contributions to the claimed subject matter. Movant appears to rely primarily on arguments concerning reduction to practice rather than contributions at the time of conception. *See Siemens*, 617 F. Supp. 3d at 63–64 (explaining that conception is the touchstone of inventorship and that reducing an inventor's idea to practice does not qualify one as a joint inventor). The Supplemental Memorandum also references generalized categories of purported evidence, including independent witnesses, passport records, and technical repositories, but fails to describe the substance of any such evidence, its relevance to the Asserted Patents, or how it substantiates conception of any claimed invention. It also expands upon allegations of purported confinement, communications fencing, and other extraordinary circumstances that are unrelated to the legal question of inventorship.

For example, in support of alleged inventorship, Movant states "that federal authorities were aware of certain unlawful activities involving her work prior to her own awareness." That statement is nonsensical and does not explain how such alleged knowledge is relevant to

conception. Even if accepted as true, such allegations do not establish that Movant contributed to the conception of any relevant claim. In sum, Movant's  allegations bear no meaningful relationship to the parties, inventorship issues, or infringement claims before the Court. Rather, they inject collateral and extraneous matters into the proceedings, substantially expanding the scope of the litigation and prejudicing the existing parties. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 301 F. Supp. 3d 272, 274 (D.P.R. 2017) (denying motion where intervention would unduly prejudice existing parties by substantially expanding the scope of litigation). Thus, even if Movant had articulated an interest, intervention would be improper because it would needlessly complicate and obscure this litigation.

Furthermore, Movant's cited authorities do not alter this analysis. Movant's reliance on *Pannu*, for instance, is misplaced. *Pannu* does not hold that independent inventors may assert inventorship claims absent any relationship to the patent holder. Rather, *Pannu* addresses the requirements for joint inventorship and whether an omitted inventor contributed to conception of the claimed invention. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) (requiring significant contribution to conception of the invention). Second, *Chou* addressed whether an omitted inventor had standing to pursue a correction-of-inventorship claim despite having assigned ownership rights to their employer, not the substantive sufficiency of allegations required to establish inventorship. *See Chou v. Univ. of Chi.*, 254 F.3d 1347, 1358–59 (Fed. Cir. 2001) (holding that a putative inventor had standing to pursue a § 256 claim despite assignment obligations). Finally, *Intellisoft* involved whether a declaratory inventorship counterclaim created federal jurisdiction sufficient to support removal, not the substantive requirements for pleading inventorship or intervention. *See Intellisoft, Ltd. v. Acer Am. Corp.*, 955 F.3d 927, 930–31 (Fed.

Cir. 2020)[1] (addressing removal and patent jurisdiction based on asserted inventorship counterclaim).

In sum, Movant fails to allege any specific contribution to the relevant patent claims, and her cited case law is inapposite. Accordingly, the Motion to Intervene should be denied.

### 2. The Motion for a Protective Order Is Procedurally Improper and Unsupported

These same deficiencies extend to Movant's additional requests for relief. The Motion for a Protective Order fails because Movant is a non-party and therefore lacks standing to invoke Federal Rule of Civil Procedure 26(c). *See Commonwealth of Massachusetts v. Mylan Laboratories, Inc.*, 246 F.R.D. 87, 91–92 (D. Mass. 2007) (holding that the proper means for a third party to seek protection is first through intervention); *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783–87 (1st Cir. 1988) (a non-party must first intervene before seeking relief relating to a protective order). After seeking to intervene, a movant remains a prospective intervenor unless and until intervention is granted. *See Mutual Produce, Inc. v. Penn Central Transportation Co.*, 119 F.R.D. 619, 620–21 (D. Mass. 1988) (holding that intervenors are not parties until their motions to intervene are granted and that filing does not confer party status). Because Movant has not been granted intervenor status, she lacks standing to seek any of the ancillary relief requested.

Even if Movant had standing, the type of relief sought further underscores the deficiencies of the request. Movant asks the Court to permit filings under seal purportedly based on alleged personal safety concerns and "constructive seizure" of her family and business assets. That request is untethered to any discovery obligation, confidentiality dispute, or any issue properly before the Court. Rule 26(c) does not provide a mechanism for a non-party to obtain sealing or redaction

---

[1] Although Movant cites a 2020 Federal Circuit matter under Case No. 2019-1522, the cited proposition appears to relate to *Intellisoft, Ltd. v. Acer America Corp.*, 955 F.3d 927 (Fed. Cir. 2020), which corresponds to Case No. 2019-2163.

relief based on generalized personal circumstances, particularly where Movant has not been granted intervention. *Mutual Produce*, 119 F.R.D. at 620–21. Nor does the motion identify any confidential information whose disclosure would cause harm within the meaning of Rule 26. Accordingly, the Motion for Protective Order should be denied.

### 3. The Motion for Witness Protection and Technical Safeguards Seeks Relief Outside the Scope of This Action

The lack of any connection to this case is even more apparent when considering Movant's request[2] for witness protection and technical safeguards. Movant seeks an "emergency protective order" directing Defendants to cease alleged "electronic signal emissions" and unspecified technological interference, to restore access to family and business bank accounts and educational funds, and to prohibit alleged "retaliatory discrediting" through unspecified proceedings. These requests are not grounded in any claim in this action, do not relate to the Asserted Patents, and instead concern alleged personal, financial, and technological grievances that are extraneous to this litigation.

Moreover, the requested orders are extraordinary in nature and far beyond the scope of relief available in a patent infringement action, including attempts to regulate alleged electronic activity and financial account access. *See Smith v. Sununu*, 2025 WL 2627984, at *2–3 (D.N.H. Aug. 18, 2025) (denying requests for witness protection and other relief unrelated to the case and outside the court's authority). Because the Motion for Witness Protection provides no legitimate basis for such relief and seeks relief outside the Court's authority, it should be denied.

---

[2] Movant's initial request was transmitted to counsel by email on March 26, 2026. Movant provided, but did not file, a document styled as a motion for a temporary restraining order. That submission sought relief similar to the present Motion for Witness Protection and included allegations of personal threats, financial account interference, and travel-related issues, as well as requests for intervention by the United States Marshals. It further sought to regulate private financial activity and impose protective measures unrelated to this action.

### 4.  The Motion for Judicial Notice Is Improper and Irrelevant

Movant's request for judicial notice fares no better. Judicial notice is limited to facts that are not subject to reasonable dispute and are relevant to the matters before the Court. In the motion, Movant asks the Court to take notice of a series of unrelated matters, including filings in a separate Florida state court action allegedly involving "electronic interference and denial of due process," the purported "suppression" of another case in Broward County, Florida involving a "Jane Doe," and regulatory enforcement actions involving third-party financial institutions, including FINRA fines against Alpaca Securities and an SEC fine against Citadel Securities. None of these materials constitute undisputed adjudicative facts properly subject to judicial notice, nor do they bear any relevance to the patents or claims before the Court. *See Jones v. Bank of New York*, 542 F. Supp. 3d 44, 51 n.3 (D. Mass. 2021) (judicial notice is limited to facts that are not subject to reasonable dispute); *see also Mitchell v. United States*, 2020 WL 130578, at *1 n.1 (D. Me. Jan. 10, 2020) (denying request for judicial notice because the matters identified were not adjudicative facts subject to notice under Rule 201); Fed. R. Evid. 201 (limiting judicial notice to adjudicative facts). Because the request is irrelevant, improper, and unrelated to any issue before the Court, it should be denied.

### 5.  The Motion for *In Camera* Review Is Improper and Unsupported

*In camera* review is not a vehicle for presenting unrelated allegations or extraneous materials outside the scope of the litigation. Movant seeks to submit for private review purported "suppressed legal documents" from a Broward County "Jane Doe" matter, as well as alleged evidence of "real-time hacking," including drafts and logs reflecting the purported deletion of her legal work. Movant asserts that such review is necessary to demonstrate a "multi-state pattern of witness intimidation and case suppression," but these references concern proceedings unrelated to

this case as well as alleged external conduct that has no connection to the Asserted Patents, the parties in this case, or the issues raised by the Motion to Intervene. *See Hydron Laboratories, Inc. v. Environmental Protection Agency*, 560 F. Supp. 718, 722 n.5 (D.R.I. 1983) (*in camera* inspection is to be avoided unless it appears reasonably required). Because the request is unsupported, there is no justification (let alone reasonable requirement) for such review. Accordingly, the Motion for *In Camera* Review should be denied.

### 6. The Remaining ADA Accommodation Requests Are Unclear, and Electronic Access Has Already Been Granted

The Court has already addressed Movant's request for access to the Court's electronic filing system. ECF No. 69 (granting leave to file electronically for this matter only, subject to compliance with applicable rules). Movant's request for additional accommodations appears to rest on alleged physical injury, financial hardship, mail interference, and other technological issues.

These assertions, however, concern personal circumstances and alleged external conditions that are unrelated to the Asserted Patents, the parties, or any issue presented by the Motion to Intervene. *See Calderia, LLC v. City of Claremont*, 768 F. Supp. 3d 261, 269–70 (D.N.H. 2025) (requiring a showing that the requested accommodation is reasonable and necessary to afford meaningful access to the relevant proceeding). Movant has not shown, however, that any additional accommodations are reasonably necessary or relevant to the matters before the Court. Accordingly, any remaining relief requested in the Motion for ADA Accommodation should be denied.

### 7. Failure to Meet and Confer Under Rule 7.1(a)(2)

Movant certifies that she attempted to confer with counsel regarding the Motion to Intervene. Movant asserts that, due to alleged systemic technical obstructions and restricted access

to filing systems, she was unable to obtain consent prior to filing and therefore served her motion via emergency email. Although Movant transmitted an email to counsel on March 26, 2026, attaching the materials she intended to file, she did not request a conference, propose discussion, or otherwise seek to engage opposing counsel regarding the substance of the motion or the relief requested. Movant nevertheless appears to understand the conferral requirement, as she signed a certification representing that she attempted to confer with counsel; however, the March 26 email merely provided notice of filing. Thus, Movant's Rule 7.1(a)(2) certification is improper.

**8.  The Motion for Status Conference Should Be Denied**

Movant's request for a status conference or expedited ruling on her pending motions should be denied. Movant seeks a conference to facilitate submission of purported confidential evidence in support of her Motion to Intervene; however, as explained above, Movant has failed to establish a legally cognizable basis for intervention and lacks standing to seek additional relief. *See Mutual Produce*, 119 F.R.D. at 620–21 (intervenors are not parties until their motions to intervene are granted). Nor does Movant identify any authority entitling a non-party proposed intervenor to expedited consideration of motions or special scheduling accommodations. Accordingly, the Motion for Status Conference should be denied.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion to Intervene in its entirety, deny the ancillary motions, and deny all other requested relief.

Respectfully submitted,

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)
CALDWELL
200 Clarendon Street, 59th Floor
Boston, MA 02116

10

Appx120

jameson@caldwelllaw.com
Tel: (857) 990-4914

*Counsel for Plaintiff Solos Technology Limited*

Dated: April 10, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the Court's CM/ECF system on April 10, 2026, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Jameson J. Pasek
Jameson J. Pasek (BBO# 692924)

## E. POST-JUDGMENT MOTIONS RECORD (FCR 30(b)(2)(B)(vi))

**ECF No. 91 – FRCP 59(e) Motion for Reconsideration filed by Daitona Carter**

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
*Plaintiff,*

**v.**

**Case No. 1:26-cv-10304-ADB**
Judge Allison D. Burroughs

**META PLATFORMS, INC., et al.,**
*Defendants.*

**In re: DAITONA CARTER**
*Proposed Intervenor.*

## MOTION FOR RECONSIDERATION AND RELIEF FROM ORDER
(Fed. R. Civ. P. 59(e) and 60(b)(2))

**I. INTRODUCTION** Movant, Daitona Carter, respectfully requests that the Court reconsider its Order denying intervention (ECF No. 58) entered on April 15, 2026, or, in the alternative, grant relief from that judgment under Federal Rules of Civil Procedure 59(e) and 60(b)(2).

This request is grounded in newly discovered evidence establishing that Movant is either the source of the derivation of the Defendants' inventions or an omitted co-inventor who contributed to the conception of essential features. Under 35 U.S.C. §§ 116 and 256, Movant is entitled to correction of inventorship to be named as a co-inventor. Even if the Court declines immediate correction, Movant has a direct, protectable interest in the validity of the patents as an omitted inventor, entitling her to intervene.

Crucially, Movant faces irreparable harm if denied intervention. Solos Technology Limited is suing Meta Platforms, Inc. over intellectual property that Movant likely owns (via derivation or joint inventorship). Furthermore, Solos's own IP claims are derivative of Movant's prior work. If the Court allows Solos to proceed without Movant, it risks validating a patent that is invalid due to the omission of the true inventor, thereby permanently stripping Movant of her rights and allowing Solos to profit from stolen technology.

Appx124

On April 13, 2026, the Court granted Movant Leave to File evidence but did not set a specific deadline. Between the granting of this leave and the present, Movant was subjected to severe external interference that rendered her unable to access, compile, or submit the evidence. Furthermore, Movant's pending motions for In Camera Protective Orders—essential to submitting evidence containing Trade Secrets—were never ruled upon, rendering them moot upon the denial of intervention. This procedural deadlock, combined with active spoliation of evidence, constitutes a clear error of law.

## II. LEGAL STANDARD

•**Rule 59(e) & 60(b)(2):** Permit relief for "clear error of law" or "newly discovered evidence" that could not have been discovered with due diligence.

•**35 U.S.C. § 116:** Requires that all joint inventors apply for a patent. If an inventor is omitted, the patent may be corrected.

•**35 U.S.C. § 256:** Provides that a patent with an omitted inventor is invalid unless the error is corrected. An omitted inventor has a direct, protectable interest in the patent's validity and is entitled to intervene to assert that interest.

•**Irreparable Harm:** Denial of intervention causes irreparable harm because the outcome of this litigation (validating a patent derived from Movant's work) will permanently extinguish Movant's rights to her own invention.

## III. FACTUAL BACKGROUND: PROCEDURAL ERROR AND ACTIVE SPOILATION

**A. The "Non-Stated" Deadline and Leave to File** On April 13, 2026, the Court issued an Order granting Movant **Leave to File** evidence to support her intervention. Crucially, no deadline was specified in this Order. Movant was actively preparing to submit this evidence when she encountered insurmountable barriers. The Court's subsequent denial of intervention was based on the assumption that Movant had failed to file, ignoring the fact that no deadline had been set and that Movant was actively prevented from filing by external forces.

**B. Mootness of Protective Motions and Trade Secret Risk** Movant had filed pending motions for In Camera Protective Orders to ensure that the submission of her technical evidence (containing Trade Secrets and specific IP locations) would not result in public disclosure or further spoliation. These motions were never ruled upon. When the Court denied intervention, these protective motions effectively became moot, stripping Movant of the legal shield required to submit her evidence safely. This created an impossible situation: Movant could not submit the evidence without exposing her Trade Secrets to the Defendants, nor could she withhold it without losing her right to intervene.

Appx125

**C. Active Spoliation and Inaccessibility** Since the April 13 Order, Movant has faced escalating interference:

1.**Digital Lockout (April 16-17, 2026):** Movant's primary evidence repository (Evernote) became inaccessible. The dashboard failed to load entirely, preventing access to thousands of pages of documentation.

2.**Historical Spoliation (Oct 21, 2024):** Movant recently discovered they suffered a catastrophic loss of data during a staged evaluation and four hour unlawful detention on October 21, 2024, at the Camden Brickell apartment. During this incident, she was questioned about her technical knowledge (specifically regarding Python), and critical backup data was subsequently lost. This event is documented in the related proceeding involving the same premises and parties, Carter v. Camden Brickell, Case No. 24-CA-XXXXX (Fla. Cir. Ct.), in which Movant was an affected party.

3.**Current Inaccessibility:** While Movant retains the original copies of the evidence, they are currently held in an offsite location. Due to Movant's limited mobility and the ongoing interference, she is physically unable to retrieve these originals to submit them to the Court.

**IV. NEWLY DISCOVERED EVIDENCE: DERIVATION OR OMITTED INVENTORSHIP** Despite the spoliation and access issues, Movant has recovered a significant portion of the evidence from legacy storage. This evidence proves Movant is either the source of derivation or a Joint Inventor who was Omitted.

**A. Derivation or Joint Inventorship** The evidence proves that the Defendants **derived** the claimed inventions from Movant's prior work. Alternatively, even if derivation is not found, Movant contributed to the conception of at least one essential feature of the asserted claims:

•**Essential Feature 1:** The specific **optical architecture** (transparent mirrors, LCD mounts, DLP optics,  the "lens" used by  modern smart glasses) described in the current Exhibits M-10 through M-22 and previously provided Exhibit E, G, I, and K.

•**Essential Feature 2:** The **"Discovery Mode"** logic for real-time object detection and translation overlay, described in Exhibits M-11, M-17, M-88.

•**Essential Feature 3:** The **audio/visual synchronization** for real-time translation, described in Exhibits M-51, M-93, M-95.

Under 35 U.S.C. § 116, contribution to the conception of a single claim element establishes joint inventorship. Movant did not merely suggest an idea; she reduced it to practice with detailed code, prototypes, and public disclosures years before the Defendants' filings.

Appx126

**B. Irreparable Harm and Derivative Standing Movant will suffer irreparable harm if denied intervention.**

1.**Ownership of the IP:** Solos is suing Meta over IP that Movant likely owns. If Solos's claims are derived from Movant's work, Solos has no standing to enforce them.

2.**Derivative Nature of Solos's IP:** Solos's own IP is **derivative** of Movant's prior work. Allowing Solos to proceed without Movant risks the Court validating a patent that is invalid due to the omission of the true inventor (Movant).

3.**Permanent Loss of Rights:** If the Court rules in favor of Solos or Meta without Movant's participation, Movant will be permanently barred from asserting her rights to her own invention, as the patent will be deemed valid (or invalid) without her input. This constitutes irreparable harm.

**V. MATERIALITY** The Court denied intervention because Movant failed to show a protectable interest. The newly discovered evidence directly cures this deficiency by establishing Movant as either the source of derivation or a Joint Inventor who was Omitted. This status grants her a statutory right to intervene and seek correction of the patent under 35 U.S.C. § 256.

**VI. EQUITABLE CONSIDERATIONS** Denying reconsideration would uphold a judgment based on a **judicial error** (the belief that no evidence existed or that a deadline was missed) and reward the external interference that suppressed that evidence. The delay was not due to a lack of diligence, but to a temporary incapacitation caused by the very interference Movant seeks to address, compounded by the Court's failure to rule on protective motions.

**VII. CONCLUSION** For the foregoing reasons, Movant respectfully requests that the Court:

1.**Grant** the Motion for Reconsideration under Rule 59(e) and/or Relief under Rule 60(b)(2);

2.**Vacate** the Order denying intervention (ECF No. 58) due to the judicial error of relying on an incomplete record and failing to rule on protective motions;

3.**Allow** Movant to file the newly discovered evidence (Exhibits M-1 through M-104) under an **In Camera Protective Order** to prevent further spoliation;

4.**Recognize** Movant's status as **either the source of derivation or a Joint Inventor** under 35 U.S.C. §§ 116 and 256;

5.**Acknowledge** that denial of intervention causes **irreparable harm** by allowing Solos to litigate over IP that Movant owns or co-owns, and by risking the validation of a patent derived from Movant's work;

6.**Order** the correction of inventorship to include Movant as a named inventor on the relevant patents; and

Appx127

7.**Grant** such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Daitona Carter

Daitona Carter Pro Se Proposed Intervenor

legal@daitonacarter.com

Dated: April 17, 2026

Appx128

**ECF No. 91-1 – Attachment 1**

*Declaration Of Daitona Carter In Support Of Motion For Reconsideration*
*Pursuant To Fed. R. Civ. P. 60(B)*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

    **v.**

**META PLATFORMS, INC., et al.,**
    *Defendants.*

**Case No. 1:26-cv-10304-ADB**
Judge Allison D. Burroughs

**In re: DAITONA CARTER**
    *Proposed Intervenor.*

### DECLARATION OF DAITONA CARTER IN SUPPORT OF MOTION FOR RECONSIDERATION PURSUANT TO FED. R. CIV. P. 60(b)

I, Daitona Carter, declare as follows:

1. I am the Movant in this matter. I submit this declaration in support of my Motion for Reconsideration and related requests for relief concerning the denial of intervention.

2. The statements in this declaration are based on my personal knowledge, review of records in my possession, and familiarity with the development of the materials referenced herein.

3. The exhibits referenced in the Master Evidence Index (Exhibit M-71) consist of materials created, collected, or maintained by me in connection with my technical and research activities spanning approximately 2009 through 2019.

4. Procedural Error and Mootness: On April 13, 2026, the Court granted me Leave to File evidence but did not set a specific deadline. I was actively preparing to submit this evidence when I was blocked by external interference. Furthermore, my pending motions for In Camera Protective Orders— necessary to submit evidence containing Trade Secrets and IP locations without public exposure—were

Appx130

never ruled upon. The denial of intervention rendered these motions moot, leaving me with no legal mechanism to submit the evidence safely. This procedural failure directly contributed to the inability to present the evidence.

5. **Active Spoliation and Inaccessibility:**

• **Current Event:** On April 16-17, 2026, my primary evidence repository (Evernote) became inaccessible. The dashboard failed to load, preventing access to the files.

• **Historical Event:** I suffered a catastrophic loss of data during a staged evaluation and unlawful detention for reporting this exact crime and others on October 21, 2024, at the Camden Brickell apartment. During this incident, I was questioned about my technical knowledge (specifically regarding **Python**), and critical backup data was subsequently lost. This event is documented in the related proceeding involving the same premises and parties, Carter v. Camden Brickell, Case No. 24-CA-XXXXX (Fla. Cir. Ct.), in which I was an affected party.

• **Current Status:** While I retain the original copies of the evidence, they are currently held in an offsite location. Due to my limited mobility and the ongoing interference, I am physically unable to retrieve these originals to submit them to the Court at this time.

6. **Basis for Intervention and Irreparable Harm:** The recovered evidence demonstrates that I am either the source of the derivation of the Defendants' inventions or an omitted co-inventor who contributed to the conception of essential features (specifically the optical architecture and real-time translation logic). Under 35 U.S.C. § 256, my omission from the patent claims renders the patents invalid unless corrected, giving me a direct protectable interest in this case.

• **Irreparable Harm:** If I am not allowed to intervene, I will suffer irreparable harm. Solos is suing Meta over IP that I likely own. Furthermore, Solos's IP is derivative of my work. If the Court allows Solos to proceed without me, it risks validating a patent that is invalid because it omits the true inventor. This would permanently strip me of my rights and allow Solos to profit from stolen technology.

Appx131

7.I have organized the materials into **Evidence Table** to provide a chronological index, and **Timeline Comparison Chart** to provide a technical mapping between my documented work and the features described in the asserted systems.

8.I respectfully submit that this evidence was not fully accessible at the time of my earlier submissions and that its inclusion is necessary for the Court's complete understanding of the record and to correct the judicial error.

9.I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: April 17, 2026

Signature: /s/ Daitona Carter

Daitona Carter Pro Se Proposed Intervenor

legal@daitonacarter.com

Appx132

**ECF No. 91-2 – Attachment 2**

*Declaration Of Daitona Carter In Support Of Motion For Reconsideration*

*Joint Inventorship, Derivation, And Irreparable Harm*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
 *Plaintiff,*

 **v.**
             **Case No. 1:26-cv-10304-ADB**
               Judge Allison D. Burroughs
**META PLATFORMS, INC., et al.,**
 *Defendants.*

 **In re: DAITONA CARTER**
 *Proposed Intervenor.*

## DECLARATION OF DAITONA CARTER IN SUPPORT OF MOTION FOR RECONSIDERATION JOINT INVENTORSHIP, DERIVATION, AND IRREPARABLE HARM

I, Daitona Carter, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am the movant in this action and the originator of the smart wearable technology at issue.

2. Between 2009 and 2019, I conceived, documented, and publicly disclosed core features of smart wearable AR/VR glasses and AI language-teaching devices. These include real-time bidirectional/object-aware translation, lens-based object detection with name/translation overlay, voice/speech interfaces, store/shopping assistance scenarios, and physical optical prototyping.

3. **Claim of Derivation or Joint Inventorship:** I am either the source of the derivation of the Defendants' inventions or a Joint Inventor who contributed to the conception of at least one essential feature:

• **Optical Architecture:** I conceived the specific arrangement of transparent mirrors, LCD mounts, and DLP optics (see Exhibits M-10 through M-22).

• **Discovery Mode Logic:** I conceived the specific algorithm for object detection and translation overlay (see Exhibits M-11, M-17, M-88).

•**Audio/Visual Sync:** I conceived the method for synchronizing audio and visual data for real-time translation (see Exhibits M-51, M-93, M-95).

Under 35 U.S.C. § 116, contribution to the conception of a single claim element establishes joint inventorship. I did not merely suggest an idea; I reduced it to practice with detailed code, prototypes, and public disclosures years before the Defendants' filings.

4.**Omitted Inventor Status:** Because I am a joint inventor who was not named in the patent applications, I am an Omitted Inventor under 35 U.S.C. § 256. The law mandates that such an error be corrected. Until corrected, the patents are invalid. This gives me a direct, protectable interest in the litigation, as I have a statutory right to seek correction of the inventorship.

5.**Irreparable Harm if Denied Intervention:**

•**Solos's Standing:** Solos is suing Meta over IP that I likely own. If Solos's claims are derived from my work, Solos has no standing to sue.

•**Derivative Nature of Solos's IP:** Solos's own IP is derivative of my prior work. Allowing Solos to proceed without me risks the Court validating a patent that is invalid due to the omission of the true inventor.

•**Permanent Loss:** If the Court rules in favor of Solos or Meta without my participation, I will be permanently barred from asserting my rights to my own invention. This constitutes irreparable harm.

6.**Newly Discovered Evidence:** The following exhibits, recovered after the April 16, 2026 access disruption, demonstrate this derivation, joint inventorship, and omitted status:

•**Audio Foundation (2009):** Exhibit M-51 (MirrorMixing audio compressor).

•**Context-Aware Systems (2013):** Exhibit M-1 (ASR-driven ad-insertion).

•**AI Language Conception (2016):** Exhibits M-76, M-77, M-75 (Public posts and translation demos).

•**Reduction to Practice (2017):** Exhibits M-93, M-92, M-95, M-96, M-88, M-89, M-90, M-102, M-32, M-83 (Source code, prototype photos, assembly logs).

•**Prior "Aria" Branding (2019):** Exhibits M-52, M-53, M-54 (Pitch deck).

7.**Feature Comparison (Derivation/Inventorship):** The table below compares the specific features I documented in my recovered evidence against the features now appearing in Solos products and Meta/Project Aria. The similarity in specific implementation details confirms my status as a Joint Inventor or the source of derivation.

| Feature | Movant's Prior Conception (2009–2019) | Solos Smart Glasses | Meta/Project Aria | Derivation/ Inventorship Indicator |
|---|---|---|---|---|
| **Real-time Bidirectional/Object-Aware Translation** | Yes – Lens/camera object/word detection + translation (store/shopping scenarios). *See Exhibits M-02, M-08, M-09, M-11 (Discovery Mode).* | Yes – Live translation + "Listen mode". | Yes – Speech recognition + object perception. | Identical "Discovery Mode" logic and use-case scenarios. |
| **Lens-Based Object Detection & Overlay** | Yes – "Discovery mode" via lens + OpenCV-style detection and overlay. *See Exhibit M-11.* | Yes – Camera integration for translation. | Yes – RGB/SLAM cameras for object tracking. | Specific overlay logic matches my 2017 code. |
| **Voice/Speech Interface & AI Teaching** | Yes – Optional wearable earpiece, bi-directional and cardioid microphones TTS/NLP for daily dialogue and teaching. *See Exhibits M-08, M-15.* | Yes – Open-ear speakers + voice commands. | Yes – Spatial microphones + ASR. | Specific "AI teaching" pedagogy matches my 2016 docs. |
| **Optical/See-Through Hardware Prototyping** | Yes – Transparent mirrors, LCD mounts, curved frames, DLP optics, physical lens/glass work. *See Exhibits M-10 through M-22.* | Yes – See-through or camera-based AR elements. | Yes – Advanced sensors for AR perception. | Specific optical stack design (M-81) matches Defendants' patents. |
| **Branding** | Yes – "Aria" name and pitch deck (2019). *See Exhibits M-52, M-53, M-54.* | N/A | Yes – "Project Aria" (2020). | Defendants adopted my specific project name. |

8.The evidence recovered (specifically Exhibits M-51, M-1, M-3, M-76, M-93, M-92, M-95, M-96, M-88, M-89, M-90, M-102, M-32, M-83, M-52, M-53, M-54) demonstrates that Movant's work on these specific features predates the defendants' public disclosures and product launches, and that I am **either the source of derivation or a Joint Inventor** who was **Omitted** from the patent applications.

Appx136

9.This evidence was not presented in the initial motion solely because it was rendered inaccessible by the external interference, the procedural deadlock regarding protective orders, and the physical inaccessibility of the original offsite copies.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 17, 2026

Signature: /s/ Daitona Carter

Daitona Carter, Proposed Intervenor

legal@daitonacarter.com

**ECF No. 91-3 – Attachment 3: Exhibit Granted Leave to File April 13 —**
*Supplemental Evidence AND (Proposed) ORDER*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
*Plaintiff,*

    **v.**

**META PLATFORMS, INC., et al.,**
*Defendants.*

**Case No. 1:26-cv-10304-ADB**
Judge Allison D. Burroughs

**In re: DAITONA CARTER**
*Proposed Intervenor.*

Leave to file granted on April 13, 2026

## SUPPLEMENTAL EVIDENCE AND (PROPOSED) ORDER

Holding a Master's Degree in Interdisciplinary Studies (Psychology and Management Information Systems) and a Graduate Certificate in Digital Forensics, Proposed Intervenor Daitona Carter ("Movant") respectfully moves this Court for leave to file supplemental evidence (Exhibits G, H, and L) and a Proposed Order regarding forensic integrity, commercial misappropriation, and digital interference.

## I. Statement Of Necessity & Forensic Qualifications

The '2009 BlueRadios Theory' is inextricably linked to Movant's 2019 priority evidence. Movant asserts that the Defendants, upon accessing the Proprietary Audio Research notes on her stolen hardware (March 23, 2026), performed a reactive search for legacy anchors—specifically the 2009 BlueRadios contract—to obscure the fact that the Aria technology originated with Movant's 2019 EWC submission. The Court must review the 2019 EWC Anchor to see that the

Appx139

technology Meta currently sells as 'Project Aria' was commercially documented by Movant a year before Meta's own launch.

Movant is filing this Motion for Leave following the Plaintiff's April 10, 2026 Opposition (Doc. 82) to ensure the Court has the Forensic Priority Evidence (Exhibits G, H, and L) necessary to address the standing defects and digital interference claims before the Movant's formal Reply is submitted.

### II.   Notice Of MITM Attacks And Digital Interference

Movant alerts the Court to active Man-In-The-Middle (MITM) **attacks** and malware that have inverted exhibit sequences and removed Court headers. These are deliberate manipulations, not user errors. These attacks, combined with ongoing physical harassment and collusion between the parties, are designed to create a false narrative of incompetence to "box out" Movant's superior 2019 priority claims.

### III.   Request For Forensic Preservation

Given the documented tampering, Movant requests the preservation of all internal metadata and communication logs related to the Defendants' April 2026 filings. Movant's forensic qualifications enable her to assist the Court in identifying these digital traces to ensure the accuracy of the judicial record.

### IV.   Interference With Federal Reporting (Ic3)

Movant attempted to report the March 21–23 hardware theft and subsequent digital interference to the FBI's Internet Crime Complaint Center (IC3). However, upon attempting to submit the report, Movant encountered a technical block—receiving a message that the "request cannot be made"—which prevented the establishment of a formal federal record.

As an expert in Digital Forensics, Movant identifies this as a "Digital Barrier" and potential evidence of Electronic Filing Tampering. This interference shares characteristics with documented threat actor activity aimed at spoofing IC3 protocols to misdirect victims. Movant requests the Court recognize this failed reporting attempt as further evidence of the Information Laundering scheme used to manufacture the "2009 BlueRadios" defense.

### V. Documented History Of Federal Reporting (2023–Present)

Movant has been actively reporting findings of digital interference, IP theft, and unauthorized access to the FBI's IC3 and other state and federal agencies since 2021. These prior reports establish a consistent, multi-year record of the harassment and misappropriation that culminated in the March 21–23, 2026, hardware capture.

The recent failure of the IC3 submission portal on March 25—returning an error message of 'request cannot be made'—stands in direct contrast to Movant's successful reporting history. As a Digital Forensics professional, Movant identifies this anomaly as a targeted escalation of the 'Digital Barrier' designed to prevent the establishment of a forensic record regarding the Defendants' 2009 BlueRadios pivot."

### VI. Regulatory Corroboration And Market Integrity

Plaintiff characterizes Movant's forensic leads as "immaterial" (p. 1); however, these leads directly align with active federal oversight. On March 20, 2026—just 24 hours prior to the documented theft of Movant's hardware—FINRA issued a $300,000 fine against Alpaca Securities for systemic failures in maintaining Electronic Communication logs (FINRA Case #2020068800101).

Appx141

Movant's proprietary research connects the misappropriated "Aria" technology to these regulatory failures, as well as to systemic market irregularities involving Citadel, GameStop (GME), and the MMTLP U3 halt. The Plaintiff's awareness of these specific leads confirms unauthorized access to Movant's digital work product. To deny intervention now would allow the parties to finalize a "Standing Trap" based on theories harvested from these documented forensic leads, constituting a permanent deprivation of Movant's property rights.

**VII. Forensic Evidence Of Data Laundering And Corporate Collusion**

Movant, a forensics professional, alerts the Court to a documented web of strategic financing that connects the misappropriation of her Proprietary Audio Research to the primary parties. Apollo Global Management and BNP Paribas (Opera Tech Ventures) have established a $5 billion strategic collaboration for capital markets and credit origination.

This partnership is currently being utilized to fund Meta Platforms via a $35 billion data center package and to facilitate Bending Spoons' $2.8 billion acquisition of AOL. Movant's R&D data—including 2019 Aria priority evidence on Evernote and Meetup—was transferred to a foreign jurisdiction (Italy) using debt financing from the same banks (BNP Paribas/Apollo) that are currently litigating this case. The Yahoo account wipe and the Plaintiff's use of Alpaca Securities data are forensic 'cleaning' events designed to protect this multi-billion dollar investment ahead of any legal action taken by the Movant.

Plaintiff's Opposition (Doc. 82) avoids the technical reality of the Apollo Global/Bending Spoons ecosystem. Movant, a forensics professional, alerts the Court that her proprietary R&D data and legal communications were methodically 'laundered' through the following documented corporate actions:

Appx142

**Jurisdictional Data Shift:** Movant's Evernote lab notes and Meetup R&D history (including 3D printing and patent workshop RSVPs) were transferred to Italy following their acquisition by Bending Spoons (2023-2024). These records contain evidence of the physical harassment by 'Randy' aimed at preventing Movant's reduction to practice.

**The Yahoo/Apollo Wipe:** Movant's Yahoo account, owned by Apollo Global Management, was forensicly 'wiped' despite active logins. This destroyed critical evidence of USC Gould School of Law communications regarding the 'Aria' smart glasses project and its connection to Korea.

**Financial Motive for Collusion:** At the time of these data wipes and transfers, Apollo Global Management was negotiating a $35 billion financing package with Meta Platforms. This creates a direct financial incentive for Apollo-backed entities (Yahoo/AOL) to suppress Movant's 2019 priority evidence to protect Meta's 'Project Aria' interests.

**AOL/Meetup Integration:** The recent acquisition of AOL and Meetup by Bending Spoons further consolidates Movant's pre-2012 audio communications and client data into a single, foreign-held repository, effectively 'boxing in' the forensic record ahead of the April 22nd deadline.

Public records (Exhibit L) confirm a $5 billion collaboration between Apollo and BNP Paribas and a $35 billion financing package for Meta led by Apollo. These links prove that the entities controlling Movant's R&D data (Bending Spoons/AOL) and the parties in this case are financially interdependent. This 'Identity of Interest' confirms that Movant's 2019 Aria technology is being suppressed to protect these multi-billion dollar investments ahead of the April 22nd deadline.

Appx143

Movant submits Exhibit L to demonstrate the Identity of Interest between the Plaintiff and Defendants. Forensic analysis reveals that BNP Paribas (via Opera Tech Ventures) and Apollo Global Management are the primary financiers for both the platforms holding Movant's stolen R&D (Bending Spoons/AOL) and the Defendants' $35 billion infrastructure expansion. The strategic partnership between BNP and Apollo proves that the parties are not true adversaries, but are instead colluding to 'launder' Movant's 2019 priority evidence to protect their shared multi-billion dollar investments.

### VIII.   Rebuttal To Plaintiff's Claim Of Immateriality

Plaintiff argues that these financial transactions are unrelated to a patent infringement action. However, in patent law, standing and ownership are the threshold issues. Movant, a Digital Forensics professional, asserts that the Apollo-BNP $5 billion collaboration and the $35 billion Meta financing constitute a 'Strategic Interest Merger.'

If the Defendants and Plaintiff are funded by the same strategic partners (Apollo/BNP/Citadel), their interests are aligned in suppressing a superior, third-party 2019 priority claim. The Yahoo wipe and Bending Spoons/AOL/Evernote data transfer are not 'unrelated matters'; they are the physical destruction and jurisdictional removal of the Chain of Title evidence. To ignore these links is to allow the parties to use the Court to finalize a 'fraudulent standing' defense based on work product stolen from Movant on March 23, 2026.

Plaintiff argues these are unrelated matters, but the BNP/Apollo $5 billion collaboration proves that the entities funding Solos's business interests are the same ones financing Meta's $35 billion smart-glasses expansion. This 'Identity of Interest' confirms that the current litigation is a

Appx144

staged conflict designed to use Movant's stolen research to finalize a 'standing defense' that protects their shared financial stakeholders.

Again, Plaintiff argues these are unrelated matters, but the BNP/Apollo $5 billion collaboration proves that the entities funding Solos's business interests are the same ones financing Meta's $35 billion smart-glasses expansion. This 'Identity of Interest' confirms that the current litigation is a staged conflict designed to use Movant's stolen research to finalize a 'standing defense' that protects their shared financial stakeholders.

## IX.  Standing Defects Due To Omitted Joint Inventorship

Movant asserts that the Defendants' current technology incorporates essential features and commercial logic (specifically 'environmental interaction' and 'bidirectional NLP') conceived by Movant and documented in her 2019 EWC priority evidence. Under U.S. patent law, the contribution to the conception of a single claim constitutes joint inventorship, which grants a presumptive undivided interest in the entire patent.

Consequently, pursuant to the 'all co-owners rule,' the Plaintiff (Solos) lacks standing to maintain this action without Movant's voluntary joinder. Movant has not consented to this lawsuit. Furthermore, to the extent that the Plaintiff's work is a derivative of Movant's 2019 prior art and misappropriated trade secrets, the patents are unenforceable. The Court must review Movant's 2019 Aria video in camera to determine if Movant is an omitted co-inventor, which would necessitate the dismissal of this action for lack of standing, independent of the Defendants' '2009 BlueRadios' theory.

Appx145

## X. Claim Of Ownership And Inventorship Over Subject Patents

Movant asserts a direct claim of ownership and inventorship over the patents currently held by Plaintiff Solos Technology Limited. Based on (but not limited to) the 2019 EWC Priority Evidence, lab notes and Proprietary Audio Research/Studies (MirrorMixing), Movant contends she is the true source of the 'Aria' smart-glasses logic.

Movant's objective is the correction of inventorship and legal title under 35 U.S.C. § 256 for all patents-in-suit. Movant seeks to intervene to establish that the Plaintiff's claimed intellectual property is a derivative of Movant's original work. Recognition of Movant's ownership is necessary to prevent the Plaintiff and Defendants from litigating or settling claims involving technology that forensically belongs to the Movant. Movant does not seek to invalidate the technology, but to be recognized as its rightful legal owner and inventor.

## XI. Notice Of Incapacity, Forced Transfer, And Protected Vetted Status

Movant alerts the Court that the Federal Government maintains a persistent, vetted record of her identity and professional conduct dating back to her 2001 service as a U.S. Senate intern for the former First Lady (Senator Hillary Clinton). This history of high-level security vetting by the Senate Sergeant at Arms establishes Movant's credibility and refutes any attempt by the parties to characterize her forensic findings as speculative.

Movant asserts that the 'Aria' technology was finalized and transferred from Kopin to Solos pursuant to an Asset Purchase Agreement executed on September 30, 2019, and publicly announced on October 7, 2019. This transfer occurred immediately following a documented abduction attempt and blunt-force injury to the Movant in Korea. The Movant was 'extracted' from Korea without undergoing traditional immigration processing on October 7, 2019, during which time her proprietary Aria lab notes were unlawfully harvested.

Appx146

While awaiting departure at the boarding gate, the Movant was called by the airline counter attendant, who inquired whether the Movant wished to retrieve her $100+ battery pack. This inquiry suggests that, despite the Movant's preparation to board, someone was scrutinizing her belongings and may have been attempting to verify her identity or inspect her personal items. It is highly unusual for airline personnel to permit a passenger to return to the security gate for an item as insignificant as a charger, raising questions about the intent behind the inquiry and the handling of her personal effects.

This sequence establishes a Broken Chain of Title involving physical duress and unauthorized access. Movant requests an In Camera Status Conference to present forensic evidence of this 2019 timeline, which proves that the Plaintiff lacks the 'clean hands' necessary to maintain this action. Movant asserts that the Federal Government and select Independent Agencies maintains a persistent, vetted record of her 2019 Aria priority and the documented events in Korea. This federal knowledge 'defeats the purpose' of the Plaintiff's attempt to dismiss Movant's claims. Movant requests an In Camera Threshold Inquiry for the Court to verify these records (IC3/Senate SAA), which establish that the legal title to the Aria technology resides with the Movant, independent of any corporate asset transfer.

### XII. Long-Term Pattern Of Harvesting

Movant alerts the Court that the 'Information Laundering' scheme utilized by the Defendants has roots in the 2007–2010 period. While a vetted former Senate official, Movant was warned of Patriot Act-related software abuse by third parties and unauthorized API harvesting. These warnings coincide with the 2009 BlueRadios date that the Defendants are now using to manufacture a derivative standing defense. This historical awareness proves that Movant's Aria research and case study has been targeted by the Defendants and their affiliates

Appx147

for nearly two decades, utilizing surveillance tools designed for national security to facilitate private intellectual property theft.

**1. The Staged Misappropriation (2017–2026):**

Movant alerts the Court to a multi-stage misappropriation:

Digital Harvesting (April–June 2019): Coinciding with Movant's YouNoodle/EWC submission, her proprietary Acoustic Logic research and case management was subjected to unauthorized digital harvesting while federal authorities and Meta were on high alert.

Physical Seizure (October 2019): Following the Kopin-Solos transfer, Movant was subjected to physical injury in Korea and her physical hardware was seized.

**The Retail Mirroring:** The commercial timeline of Meta's hardware proves a direct mirroring of Movant's stolen R&D, culminating in the September 30, 2025, U.S. launch of the Ray-Ban Display, which finally incorporated the in-lens display and real-time translation Movant reduced to practice in 2017. This commercialization was fueled by a $35.2 billion cumulative commitment ($14.2B agreement in Sep 2025 and a $21B expansion on April 9, 2026) for AI cloud computing capacity through December 2032.

Movant alerts the Court to the definitive 24-hour proximity between the September 30, 2025, commercial launch of the Meta Ray-Ban Display and the announcement of the initial $14.2 billion AI infrastructure agreement. This 'Market-Moving' synchronization proves that the commercialization of Movant's stolen 2017/2019 Aria features (in-lens display and real-time translation) was the primary driver for this multi-billion dollar capitalization. The subsequent $21 billion expansion on April 9, 2026—announced immediately following the Defendants' motion to dismiss—constitutes the 'Final Clean' of the technology's title to facilitate the December 2032 commitment.

2. **The USC Gould School of Law Academic Anchor:**

Movant asserts that her 2019 Aria priority is anchored in her USC Gould School of Law admissions and academic record. This file contains reference to the 2019 Korea travel from the October extraction, medical forensics from a U.S. doctor's office, and explicit references to the tech startup and smart glasses technology in Movant's 2019 admissions essay/resume and disability services request.

Movant alerts the Court that her Yahoo account (Apollo-owned) was forensically wiped to destroy critical evidence, including the email sequence where Movant was unjustly denied disability services after a party falsely claimed her 2019 physical injury was 'fake.' Movant requests an In Camera review of her USC admissions packet and archived emails, which maintain original, unaltered timestamps from 2019, proving that the 'Aria' technology forensically belongs to the Movant and was misappropriated during the course of the Defendants' unlawful actions.

XIII:  INSTITUTIONAL CORROBORATION

Movant further alerts the Court to a verified December 31, 2021, internal data breach at Wells Fargo, where an employee exfiltrated sensitive account data to a personal email account. This breach targeted a highly specific pool of victims—including an incident involving only two targeted individuals—yet Movant was never formally notified of the subsequent class action investigations (e.g., Bacon v. Wells Fargo, Case 3:24-cv-06974).

Movant, a Digital Forensics professional, asserts that this was a targeted exfiltration of her trade secrets and financial records, timed to facilitate the commercialization of the 'Aria' technology. The intentional omission of Movant from the victim notification list (class action), combined with the forensic 'wiping' of her Yahoo/Apollo records, constitutes a coordinated act of

Appx149

Communication Fencing designed to protect the Defendants' multi-billion dollar capitalization. Movant requests an In Camera disclosure of the identity of the terminated Wells Fargo employee to determine his possible links to Solos, or the Apollo/Meta financing web.

Movant alerts the Court that Twilio Inc. is technically and financially integrated into the Atlas ecosystem, which is managed and financed by Apollo Global Management (via ATLAS SP Partners). Movant's Business 2FA (Two-Factor Authentication) was anchored on Twilio's infrastructure, which suffered targeted internal breaches in August 2022 and July 2024 (Exhibit L). Movant asserts that these breaches allowed for the registration of 'rogue devices' within the Apollo-integrated Atlas environment, facilitating the unauthorized access and 're-indexing' of the Aria lab notes currently sitting in the Bending Spoons repositories

Movant alerts the Court to a critical forensic event in late 2020, coinciding exactly with the public announcement of Meta's 'Project Aria.' During this window, Twilio Customer Support informed Movant of several unauthorized API keys active on her business account. Although the support agent initially identified these keys as unauthorized and assisted in their removal, the agent subsequently attempted to retract these statements after Movant identified the connection to the 'Project Aria' launch. Movant maintains a record of this conversation, which proves that the Digital Harvesting of her 'Aria' logic was actively facilitated through unauthorized API access—the exact method Movant was warned about during and after her vetted Senate service.

Movant asserts that these APIs—active during the 2019-2020 harvesting window—were the primary conduit for the exfiltration of her acoustic logic, generative algorithms, natural language processing, mapping and Aria prototypes. This interaction proves the Digital Harvesting phase was aided by internal administrative access or software abuse, necessitating the disclosure of the original, un-redacted support transcripts requested in the Proposed Order.

Appx150

**CONCLUSION**

To protect the integrity of these proceedings from ongoing technical tampering and collusion, and to ensure the rightful owner of the technology is present to maintain the action, Movant respectfully requests leave to file the attached Supplemental Evidence and Proposed Order.

LOCAL RULE 7.1(a)(2) CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), Movant was unable to confer with counsel prior to filing because advance notice would risk the alteration or destruction of relevant evidence. Movant will promptly confer with all parties following filing and will update the Court regarding the parties' positions.

Respectfully submitted,
/s/ Daitona Carter
Daitona Carter
Pro Se Proposed Intervenor
Contact Information: Redacted pursuant to pending Motion to Seal (ECF No. 59) and Motion for Protective Order (ECF No. 60); current contact information has been provided to the Clerk.

Appx151

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2026, a copy of the foregoing was filed via the Court's CM/ECF system, which will send notice of such filing to all counsel of record.


/s/ Daitona Carter
Daitona Carter
Pro Se Proposed Intervenor

**ECF No. 91-4 – Attachment 4: Exhibit Granted Leave to File April 13 —**
*(Proposed) Order Re: Digital Interference And Forensic Integrity*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
*Plaintiff,*

**v.**

**META PLATFORMS, INC., et al.,**
*Defendants.*

**Case No. 1:26-cv-10304-ADB**
Judge Allison D. Burroughs

**In re: DAITONA CARTER**
*Proposed Intervenor.*

Leave to file granted on April 13, 2026

**(PROPOSED) ORDER RE: DIGITAL INTERFERENCE**

**AND FORENSIC INTEGRITY**

**1. Cease and Desist (Technical Interference):** Defendants and their agents, including any third-party collaborators or onsite actors, are strictly prohibited from interfering with the digital integrity of Movant's court filings and internet access. This includes a prohibition on Electronic Filing Tampering (exhibit swapping), Traffic Hijacking (IMSI Catchers/Stingrays), and IP-Based Geofencing.

**2. Prohibition of Algorithmic Shadowing:** Defendants are prohibited from utilizing AI Prompt Injections or Search/Cache Poisoning to distort the forensic record or misrepresent Movant's professional competence. Any manipulation of AI-driven research results related to the "Aria" or "Acoustic Logic" technology is a direct violation of this Order.

**3. Forensic Preservation of Metadata:** Defendants are ordered to preserve all internal metadata and communication logs related to their April 2026 filings. This is to determine if their

Appx154

"2009 BlueRadios Pivot" was a reactive strategy derived from Movant's captured hardware or the documented $35.2 Billion Meta-CoreWeave infrastructure deal.

**4. Mandatory Disclosure of Strategic Financing:** The Court orders the Defendants to disclose all internal records regarding the $35.2 billion cumulative AI cloud commitment. This inquiry is required to determine if an Identity of Interest exists between the Plaintiff and Defendants that would render the current litigation a staged attempt to suppress the Movant's superior 2019 Aria priority and cure standing defects ahead of multi-billion dollar commercial milestones.

**5. Threshold Inquiry into Federal Records:** The Court shall initiate an In Camera Threshold Inquiry into the records of the FBI (IC3) and the U.S. Senate Sergeant at Arms (SAA). This inquiry will verify Movant's 2001 vetted status and her 2023–2026 reports of hardware theft and trade secret misappropriation.

**6. Correction of Inventorship (35 U.S.C. § 256):** Should the in camera review of the 2019 EWC anchor and USC Gould academic records confirm Movant's contribution to the conception of the technology, the Court shall initiate proceedings to correct the patent record and recognize Movant's legal title and ownership interest.

**7. Disclosure of Internal Bank Breaches (Wells Fargo):** The Defendants and Plaintiffs are ordered to disclose any communications with Wells Fargo Bank, N.A. regarding the December 31, 2021, internal data breach. Further, the Court orders the disclosure of the identity of the terminated employee involved in the unauthorized transfer of data to a personal email account. This inquiry is necessary to determine if the exfiltrated data of the 'Targeted Two'

Appx155

victims, or the broader 2021 class, included the Movant's trade secrets or research logic currently being litigated.

**8. Recognition of ADA and Forensic Protocols:** The Court acknowledges Movant's Digital Forensics qualifications and her status as a vetted former Senate official. The Court will accept the 2019 EWC Priority Evidence (Exhibit H) and the Financial Map (Exhibit L) regardless of any malware-driven sequencing errors within the ECF upload.

**9. Disclosure of Communication Interception (Twilio):** The Defendants and Plaintiffs are ordered to disclose any communications with Twilio Inc. regarding unauthorized API keys discovered on Movant's account between January 1, 2019 and December 31, 2020. Further, Twilio is ordered to produce the original, un-redacted transcript and internal logs of the support interaction wherein unauthorized 'keys' were identified and subsequently removed, to determine if these APIs provided the conduit for the misappropriation of the Aria research logic.

**SO ORDERED.**

Dated: April __, 2026

Hon. Allison D. Burroughs, U.S. District Judge

Appx157

**ECF No. 91-5 – Attachment 5: Exhibit Granted Leave to File April 13 —**

Notice Of Authentication (Exhibits G, H, & L)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

    **v.**

**META PLATFORMS, INC., et al.,**
    *Defendants.*

**Case No. 1:26-cv-10304-ADB**
Judge Allison D. Burroughs

**In re: DAITONA CARTER**
    *Proposed Intervenor.*

Leave to file granted on April 13, 2026

**NOTICE OF AUTHENTICATION (EXHIBITS G, H, & L)**

Holding a Master's Degree in Interdisciplinary Studies (Psychology and Management Information Systems) and a Graduate Certificate in Digital Forensics, Proposed Intervenor Daitona Carter ("Movant") hereby authenticates the following supplemental exhibits in support of establishing a 2019 priority date, a broken chain of title, and an identity of interest among the relevant parties.

- **EXHIBIT G (Technical Sketches and Prototypes):**

  Original 2017 diagrams for the "Aria" smart-glasses. These records document USB-C integration, battery placement, and nano-coating, demonstrating physical reduction to practice of features currently being commercialized by Defendants.

- **EXHIBIT H (Entrepreneurship World Cup 2019 Confirmation):**

  A June 15, 2019 third-party confirmation from the Entrepreneurship World Cup (EWC). This independent record establishes that the "Aria" name and its commercial

Appx158

framework were submitted to a global competition nearly one year prior to the public announcement of Defendants' research platform.

- **EXHIBIT L (Forensic Map of Financial Interdependence):**
  Public records documenting the cumulative $35.2 billion infrastructure relationship between Meta and CoreWeave, as well as the strategic acquisition of AOL/Yahoo assets. Exhibit L further identifies the Twilio Inc. communication conduit allegedly utilized for the 2019–2020 API activity reflected in Movant's business records. These materials are offered to support an asserted identity of interest among the parties and the need for a threshold inquiry into Plaintiff's standing.

**Notice Regarding MITM Interference**

Due to documented man-in-the-middle (MITM) interference and traffic hijacking, the digital sequencing of the uploaded PDF exhibits may appear altered or out of order. Movant respectfully requests that the Court rely on the internal timestamps and technical content of the exhibits to assess their forensic authenticity, irrespective of their sequential presentation within the ECF filing.

Respectfully submitted,
/s/ Daitona Carter
Daitona Carter
Pro Se Proposed Intervenor
Contact Information: Redacted pursuant to pending Motion to Seal (ECF No. 59) and Motion for Protective Order (ECF No. 60); current contact information has been provided to the Clerk.

Appx159

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, a copy of the foregoing was served through the Court's CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

/s/ Daitona Carter

Daitona Carter
Pro Se Proposed Intervenor

**ECF No. 91-6 – Attachment 6: Exhibit Granted Leave to File April 13 —**

*Exhibit L: Forensic Map OF Financial Interdependence*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
*Plaintiff,*

**v.**

**META PLATFORMS, INC., et al.,**
*Defendants.*

**Case No. 1:26-cv-10304-ADB**
Judge Allison D. Burroughs

**In re: DAITONA CARTER**
*Proposed Intervenor.*

### EXHIBIT L: FORENSIC MAP OF FINANCIAL INTERDEPENDENCE

Movant submits Exhibit L as forensic proof of the Identity of Interest between the parties and identifies the Twilio Inc. communication conduit allegedly utilized for the 2019–2020 API activity reflected in Movant's business records. These materials are offered to support an asserted identity of interest among the parties and the need for a threshold inquiry into Plaintiff's standing.

**EXHIBIT L: FORENSIC MAP OF FINANCIAL INTERDEPENDENCE**

| Forensic Link | Verified Connection & Event Date | Direct Public Plain-Text URL (Source) |
|---|---|---|
| **Solos & Kopin Corp.** | **Asset Purchase Agreement** (Sept 30, 2019) documenting the spinoff of "Aria" (Solos) and "MirrorMixing/Acoustic Logic" (Whisper Audio) assets. | https://www.sec.gov/Archives/edgar/data/771266/000077126620000008/kopn-20192812xexx1019.htm |
| **Meta & CoreWeave** | **$35.2B Cumulative Commitment**: A ~$14.2B agreement (Sept 2025) and a **$21B expansion** (April 9, 2026) for AI cloud capacity through 2032. | https://investors.coreweave.com/news/news-details/2026/CoreWeave-and-Meta-Announce-21-Billion-Expanded-AI-Infrastructure-Agreement/default.aspx |
| **Apollo & Meta** | Apollo Global Management in talks (Feb 2025) to lead a **$35B financing package** for Meta's U.S. data center expansion. | https://www.reuters.com/technology/meta-talks-raise-35-billion-data-center-financing-led-by-apollo-bloomberg-news-2025-02-27/ |
| **Apollo & BNP Paribas** | Strategic collaboration for **$5 Billion in credit origination** (Sept 2024), bridging the data wipes (Apollo) to the case financiers (BNP). | https://usa.bnpparibas/en/apollos-atlas-sp-and-bnp-paribas-announce-5-billion-strategic-collaboration/ |
| **Bending Spoons (Evernote)** | Bending Spoons acquired Evernote in Jan 2023, moving operations and 11 billion notes to Milan, Italy. | `https://www.willkie.com/news/2023/01/willkie-advises-bending-spoons-in-acquisition` |
| **Bending Spoons (Meetup)** | Bending Spoons acquired Meetup in Jan 2024, securing the record of Movant's 2019-2023 networking and patent workshop logs. | `https://finance.yahoo.com/news/italys-bending-spoons-scoops-social-153103546.html` |
| **BNP & Bending Spoons** | BNP Paribas acted as lead financier for the **$2.8B debt package** used by Bending Spoons to acquire AOL from Apollo-backed Yahoo. | https://pitchbook.com/news/articles/bending-spoons-lines-up-3b-debt-package-backing-aol-buy-from-yahoo |
| **Wells Fargo Breach** | An employee transferred sensitive data for **only two targeted individuals** (Movant confirmed via 2022 letter; likely split profiles) to a personal email on Dec 31, 2021. | https://lebelaw.com/wp-content/uploads/2022/06/Wells-Fargo-Complaint.pdf |

Appx163

**The Meta-Apollo-Twilio Infrastructure Bridge**

| Connection | Documented Link & Verified Facts | Forensic Significance to Movant |
|---|---|---|
| Twilio & Meta | Twilio provides the primary API infrastructure for Meta's WhatsApp Business API and Conversions API. | Links your business 2FA and communication logs directly to Meta's internal surveillance and AI harvesting tools. |
| Apollo & Meta | Apollo Global Management led initial talks for a $35 billion financing package for Meta's AI data centers in Feb 2025. | Establishes Apollo as a primary stakeholder in the success of Meta's smart glasses, creating a motive for Yahoo (Apollo-owned) data wipes. |
| Twilio & Apollo | Apollo (via ATLAS SP) and BNP Paribas (Bending Spoons' financier) have a $5B strategic collaboration. | Connects the "supply chain" of your data directly to the asset managers funding the litigation. |

Appx164

**ECF No. 91-7 – Attachment 7: Exhibit 2009 Prior Work and Research with DSP/Audio**

| | More ⌄ | | | Create Blog   Sign In |

# MirrorMixing Case Study

Case Study performed by Daitona Carter www.daitonacarter.com

## Waves H(ybrid)-Compressor Plugin



It has been a while since I posted my last post and I almost forgot to  publish the following about the new Waves H-Compressor, H stands for Hybrid. Which I had a little to do with.



Taken from the Waves website:

> "**H-Comp** is a brand new dynamics processor that combines the modeled behavior of transformers, tubes, and transistors, together with the power and precision that only a plug-in can provide. The result is a compressor with capabilities that engineers could only dream about back in the day. H-Comp lends a whole new meaning to the concept of THD: Total Harmonic Distinction."

The idea for this plugin came along about a year ago when I was talking to Gilad Keren the co-
founder of Waves. He referred me to his head developer Amir Vinci. We started talking about the concept he was working on and my concept of creating a more musical compressor resulting in the H-Compressor.

**Various issues we resolved in the design were;**

- Parallel Compression (Dry/ Wet)
- Pre-Delay Attack (Punch)
- and my concept to implement more musical release times (Release)

**Parallel Compression:**

Appx166



**Sponsors**

**Endorsement Links**

Focusrite Audio Engineering, Ltd.

KRK Systems, L.l.c.

Novation DMS, Ltd.

Ableton, AG

TL Audio, Ltd.

Full Armour Clothing, L.l.c.

Sonnox Oxford Plugins, Ltd.

**Categories**

1 (3)

1231 (3)

2231 (3)

231 (3)

3 dimensional (3)

about (1)

addictive (3)

advanced (3)

aitken (3)

america (3)

analyzer (6)

antares (3)

anti piracy (3)

ardour (3)

assistant (6)

attack (3)

Parallel Compression is achieved in the compressor by mixing the dry signal (un-compressed) with the wet (compressed) signal using the Dry/ Wet pot.

**Pre-Delay Attack:**
Pre-Delay Attack is a technique I some times apply to create additional "punch" to a kick drum and or snare drum. You achieve this by making a dupe of the original track and slightly delay this with 4 to 10ms, using this as the trigger to the original track. This is now implemented in the plugin as the "Punch"-pot.

**Free, Host & Whole Note Based Release Times:**



This is my very own concept to create a more musical compressor starting of with release times. Its the reverse trick of using a delay calculator as release time calculator as explained many times before on my blog. This is now included for the first time in an actual device, in this case a plugin.

The plugin is definitely some thing to look at for!
http://www.waves.com/Content.aspx?id=9111

Yours truly,

The Surgeon ;-)

at 12:40 AM
Labels: audio engineering, entertainment, mixing, music, waves

# No comments:

# Post a Comment

To leave a comment, click the button below to sign in with Google.

SIGN IN WITH GOOGLE

|  | Home | Older Post |
| --- | --- | --- |

Subscribe to: Post Comments (Atom)

audio engineering (90)

augspurgers (3)

auto tune (3)

automation (6)

barack obama (3)

bargain (3)

beat making (3)

beatboxing (3)

beyonce (6)

billboard (3)

bob (3)

bogard (3)

brandy (3)

britney spears (6)

broadcast (3)

bryan (3)

buss compressor (3)

chart (3)

chris brown (3)

clients (1)

college (6)

compression (9)

console (6)

contact (1)

copy protection (3)

cox (3)

dancer (6)

darkchild (3)

david (3)

DAW (6)

dbx (3)

decay (3)

defjam (3)

digidesign (3)

divi baby (3)

dorrough (3)

dq (3)

drums (3)

Appx167

dx (3)

dynamics (3)

editing (3)

education (3)

effect (3)

efx (3)

electronics (3)

engineering (48)

entertainment (159)

entertainment preparation (3)

entertertainment (3)

entertianment (3)

equalization (9)

equipment (12)

erika (3)

evan (3)

evo (3)

Faders (3)

Flying (3)

focusrite (6)

free (3)

free online music primer course solid
state logic 4000 (2)

frequency (9)

fundamental (3)

fx384 (3)

giles (3)

girl group (3)

group (3)

Guidelines (3)

harmonics (3)

help (16)

horn (3)

hotel (3)

icon (1)

ikonix (3)

imaging (3)

industry (3)

internships (6)

Appx168

jerkins (3)

k west (3)

katz (3)

keri hilson (3)

keyboard (3)

kidd (3)

killa kela (3)

level (6)

liquid mix (6)

Logic Pro (3)

london (3)

los angeles (3)

loudness (6)

m/s technique (9)

magic (6)

major label (9)

mastering (21)

mc divinity (3)

metering (3)

michael (3)

missing (3)

mix (3)

mix engineer (3)

mixing (162)

monitoring (3)

mono (3)

multi (3)

multi platinum (3)

music (192)

new (6)

news (3)

norwood (3)

ns10m (3)

number one (3)

nuri (3)

of (3)

official (3)

over compression (3)

Appx169

Penny (3)

PG (3)

phase (3)

physics (3)

pink (3)

platinum (3)

plugins (3)

pop (6)

presets (6)

president (3)

Pro Tools (16)

pro tools 8 (3)

producer (9)

producing (6)

production (114)

programming (3)

publishing (6)

quines (3)

radio (6)

recording (36)

records (3)

reduced price (3)

releases (3)

remixes (6)

rnb (6)

rodney (3)

rtas (3)

samples (3)

schools (9)

science (3)

scrambler (3)

search (9)

Sequencer (3)

sequencers (3)

shell (3)

shortcuts (3)

side chain (3)

singer (6)

Appx170

Case 26-17304-ADB Document 29-1 Page: 171 04/13/2026 Page 26 of 7

snapshot (3)

software (3)

solid state logic (6)

songs (3)

songwriter (6)

sony bmg entertainment (6)

sound field (3)

stand alone (3)

starting (3)

stereo (6)

stock (3)

studios (3)

surgeon (3)

t-pain (3)

talent (6)

thank you (3)

the (3)

the grinehouse (6)

the writing camp (3)

timbaland (3)

tips (9)

tips and tricks (6)

top 40 (6)

track freeze (3)

tracking (6)

transients (3)

tricks (6)

uk (3)

united states of america (3)

universal (3)

university (3)

update (3)

victoria (3)

videos (1)

vocal (3)

vst (3)

war (6)

waterman (3)

Appx171



**ECF No. 91-8 – Attachment 8: Exhibit 2013 Conception
of Context-Aware AV System**



**ECF No. 91-9 – Attachment 9: Exhibit Conception of AI
Language Translation Device**



**ECF No. 91-10 – Attachment 10: Exhibit Earliest Public Conception of AI Device**

December 1, 2016 at 8:33 AM

Hello to all. I wanted to give you a heads up. I'm wrapping up my digital teaching and cryptography course this week.  I'll be free to meet if anyone wants to pick my brain or collaborate with me on one of my many projects. Projects include: Mil Ro ("robot" for bachelor/ette or lazy people), AI parents (will teach new language), shoe accessory (prevents corns, callus, ridge hammertoe and keeps high heel pumps on your feet), Mash-up of "AI" Personally research assistant and Editor (studies the topic for you and helps edit the final paper), Digital Professor (created a new teaching model/ strategy for "millennial learners" - it can replace OR assist online professors.) 4 offshore business ideas and a start-up idea that supports occupational wellness at other start-ups (LA, SF, and NYC; estimated rev for 1.9M year 1.

daitona.linkedin@gmail.com

**ECF No. 91-11 – Attachment 11: Exhibit Thermal Eye-Tracking STL (M-97)**

| | | | |
|---|---|---|---|
| Screen Shot 2017-10-04 at 7:47:49 AM.png | Oct 4, 2017 at 7:47 AM | 208 KB | PNG image |
| Screen Shot 2017-10-07 at 8:19:11 PM.png | Oct 7, 2017 at 8:19 PM | 83 KB | PNG image |
| Screen Shot 2017-10-08 at 8:32:50 AM.png | Oct 8, 2017 at 8:32 AM | 174 KB | PNG image |
| Screen Shot 2018-11-14 at 4:31:03 PM copy.png | Nov 14, 2018 at 4:31 PM | 261 KB | PNG image |
| Screen Shot 2018-11-16 at 7:52:21 PM copy.png | Nov 16, 2018 at 7:52 PM | 53 KB | PNG image |
| smartglassesUniTrans-F9e65b3cc2d.json | Feb 10, 2018 at 4:29 PM | 2 KB | Plain Text |
| snable.png | Oct 11, 2017 at 10:44 PM | 60 KB | PNG image |
| ThermalEyemap_STL_Files.zip | Feb 1, 2019 at 11:10 AM | 3.1 MB | ZIP archive |
| thing-translator-master.zip | Apr 18, 2019 at 2:38 PM | 68 KB | ZIP archive |
| VRMIXR glasses2blackandwhite.png | Jul 25, 2017 at 10:58 AM | 58 KB | PNG image |

Appx180

**ECF No. 91-12 – Attachment 12: Exhibit Meet Aria - M52-54 (Younoodle EWC Ex H)**

Appx182



Case 1:26-cv-XXXX-ADD   Docu██████ 1   Filed 04/1700   Page 2 of 2

# Features

- **Real-time Translation**
  Audio and visual input/out of text and images.

- **Maps/Walking Guide**
  Turn by turn directions and mass transit directions.

- **Productivity Tools**
  Digital Personal Assistant; call and message alerts, reminders, fitness tracking and more.

- **Cinematic Mode**
  Personal entertainment system, using can view content and play audio without disturbing others.



**ECF No. 91-13 – Attachment 13: Exhibit Meetup.com Patent Meetup Log**



Appx186

**ECF No. 91-14 – Attachment 14: Exhibit Samsung Patent/LinkedIn Outreach**



US010866417B2

## (12) United States Patent
### Sung et al.

(10) Patent No.: **US 10,866,417 B2**
(45) Date of Patent: **Dec. 15, 2020**

(54) **LENS UNIT AND SEE-THROUGH TYPE DISPLAY APPARATUS INCLUDING THE SAME**

(71) Applicants: **SAMSUNG ELECTRONICS CO., LTD.**, Suwon-si (KR); **SEOUL NATIONAL UNIVERSITY R&DB FOUNDATION**, Seoul (KR)

(72) Inventors: **Geeyoung Sung**, Daegu (KR); **Hongseok Lee**, Seoul (KR); **Byoungho Lee**, Seoul (KR); **Changkun Lee**, Seoul (KR); **Seokil Moon**, Seoul (KR); **Jongyoung Hong**, Seoul (KR)

(73) Assignees: **SAMSUNG ELECTRONICS CO., LTD.**, Suwon-si (KR); **SEOUL NATIONAL UNIVERSITY R&DB FOUNDATION**, Seoul (KR)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 285 days.

(21) Appl. No.: **15/788,402**

(22) Filed: **Oct. 19, 2017**

(65) **Prior Publication Data**

US 2018/0107000 A1    Apr. 19, 2018

(30) **Foreign Application Priority Data**

Oct. 19, 2016    (KR) .................. 10-2016-0135926

(51) **Int. Cl.**
$G02B\ 27/01$ (2006.01)
$G02B\ 27/28$ (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ........ **$G02B\ 27/0172$** (2013.01); **$G02B\ 3/10$** (2013.01); **$G02B\ 3/14$** (2013.01); **$G02B\ 5/3083$** (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........... G02B 27/0172; G02B 27/01; G02B 27/0101; G02B 27/0149; G02B 27/017;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

6,816,314 B2    11/2004   Shimizu et al
2004/0108971 A1*   6/2004   Walden .......... G02B 27/0093
345/8
(Continued)

FOREIGN PATENT DOCUMENTS

JP          2002090887 A    3/2002
JP          3413885 B2    6/2003
(Continued)

OTHER PUBLICATIONS

Communication dated Mar. 6, 2018, from the European Patent Office in counterpart European Application No. 17196912.4
(Continued)

*Primary Examiner* — Kristina M Deherrera
(74) *Attorney, Agent, or Firm* — Sughrue Mion, PLLC

(57)          **ABSTRACT**

A see-through type display apparatus includes a see-through type optical system configured to transmit a first image via a first-path light, which is light traveling on a first path, to an ocular organ of a user, and a second image via a second-path light, which is light traveling on a second path, to the ocular organ of the user; and an incident light-dependent lens unit provided between the see-through type optical system and the ocular organ of the user and having different refractive powers according to characteristics of incident light, where the incident light-dependent lens unit has a positive first refractive power with respect to the first-path light and has a second refractive power different from the first refractive power with respect to the second-path light.

**18 Claims, 19 Drawing Sheets**
**(1 of 19 Drawing Sheet(s) Filed in Color)**



**ECF No. 91-15 – Attachment 15: Exhibit Twitter Post Tagging Misappropriation**



**ECF No. 91-16 – Attachment 16: Exhibit Timeline Comparison Chart**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

    **v.**

    **Case No. 1:26-cv-10304-ADB**
    Judge Allison D. Burroughs

**META PLATFORMS, INC., et al.,**
    *Defendants.*

**In re: DAITONA CARTER**
    *Proposed Intervenor.*

## TIMELINE COMPARISON CHART

| Year | Movant Milestone (Key Exhibits) | Solos | Meta |
|---|---|---|---|
| 2013 | Context-aware AV/ad-insertion (M-1) | — | — |
| 2016 | Nurture + public "AI parents" post (M-3, M-76/77) | — | — |
| 2017 | **Full prototype cluster** (Oct 2017): 5-week post with Samsung/Oracle/NAVER viewers (M-88/M-8), optics/Snell's Law (M-74/M-12), frame assembly (M-6/M-50), Discovery/Geo AR (M-17/M-18), Samsung sensor specialist outreach (M-15), Alpha Labs CEO outreach (M-24/M-89), cut-glass experiment (M-102), physical glasses photo (M-32/M-83/M-103), DLP diagram (M-81), public LinkedIn prototype post (M-90) | — | — |
| 2018 | Thermal eye-tracking STL (M-97) | — | — |
| 2019 | "**Meet Aria**" deck + patent meetup (M-52–54, M-98) | — | — |
| 2020 | Samsung patent published (M-100) + LinkedIn outreach | — | Project Aria announced |
| 2021 | Federal notices to Cruz/agencies (M-84–87), Ring logs (M-39), Twitter to Andrew Bosworth (M-59) | — | Ray-Ban Meta collab |
| 2023+ | Ongoing interference documentation | AirGo launches | Consumer Ray-Ban Meta glasses |

Appx192

**ECF No. 91-17 – Attachment 17: Exhibit Evidence Table**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**SOLOS TECHNOLOGY LIMITED,**
    *Plaintiff,*

    **v.**                                                      **Case No. 1:26-cv-10304-ADB**
                                                                Judge Allison D. Burroughs
**META PLATFORMS, INC., et al.,**
    *Defendants.*

**In re: DAITONA CARTER**
    *Proposed Intervenor.*

## EVIDENCE TABLE

| Exhibit No. | Date | Description (Short) | Legal Purpose |
|---|---|---|---|
| M-51 | 2009 | MirrorMixing Case Study – Waves H(ybrid)-Compressor plugin | Prior work and research with DSP/audio |
| **M-1** | **2013-03-17** | "How to add Ads to videos without distorted" (ASR-driven contextual ad insertion) | **Earliest documented conception** of context-aware AV system |
| M-3 | 2016-07-27 | "Nurture by Breaking Barriers" – NLP real-time translation wearable | Conception of AI language translation device |
| M-76/ M-77 | 2016-12-01 | LinkedIn post: "AI parents (will teach new language)" + full project list | Earliest **public** conception of AI language device |
| M-75 | 2016-10-16 | Translation interface (Korean "빵" → "Bread") | Early translation app proof |
| M-78 | 2016–2017 | Translation notes (Korean/English phrases + grammar) | Language feature development |
| M-73 | 2017-01-29 | AI language teaching software ("<3 days") | AI instruction conception |
| M-93 | 2017-02-17 | app.py – Twilio SMS integration code | Communication infrastructure / source code |
| M-92 | 2017-05-02 | pythonOCRimageToText (ocr.py + test images) | Optical character recognition source code |
| M-30/ M-95 | 2017-04-19 | PHP linguistic engine (chinese_nouns.php, grammar, etc.) | Language processing backend |
| M-96 | 2017-07-25 | "Object Detection and Recognition" (YouTube skeletal mapping) | Computer vision / object recognition conception |
| M-80/ | 2017 | Korean Real World Learning | Translation feature development |

| Exhibit No. | Date | Description (Short) | Legal Purpose |
|---|---|---|---|
| M-61 | | spreadsheet (vocabulary phrases) | |
| M-56 | 2017-01-11 | RPi Speech directory (speechAnalyser.py etc.) | Speech processing source code |
| M-88/ M-8 | 2017-10-08 | LinkedIn post: "five weeks to have a working prototype" (979 views; Samsung/Oracle/NAVER viewers) | Public diligence + industry interest |
| M-74/ M-13 | 2017-10-07 | Blog Entry 9 – Snell's Law, lens design, optics video | Optical engineering + public disclosure |
| M-12 | 2017-10-11 | Reflection and refraction notes (Snell's Law) | Optical physics conception |
| M-6 | 2017-10-04 | "Build a frame 3x thickness" (Maker Lab) | Frame engineering |
| M-42 | 2017 | Smart Glasses Bookmarks / Links.txt (OpenCV, RPi) | Software/hardware planning |
| M-79 | 2017-10 | LinkedIn outreach to ODG (Ralph Osterhout) & NAVER Corp | Diligence & industry collaboration |
| **M-15** | **2017** | LinkedIn profile – JeongSu Dennis HAN, Ph.D., Sensor Specialist at Samsung Electronics | **Third-party engagement / potential access** |
| **M-24** | **2017-10-21** | LinkedIn profile – Junhee Lee, CEO of The Alpha Labs Inc (optics/smart glasses) | Industry outreach (smart glasses collaboration) |
| M-89 | 2017-10-21 | Alpha Labs smart-glasses collaboration invitation | Industry engagement |
| M-90 | 2017-10-26 | LinkedIn post with prototype video + lab notes link | Public disclosure of functional prototype |
| M-18/ M-19 | 2017-10-26 | "Geo AR" + Arducam/RPi camera sourcing | Location-based AR + hardware procurement |
| M-17 | 2017-10-23 | "Discovery Mode" (OpenCV object detection + overlay) | Gaze-based recognition |
| M-50/ M-10 | 2017-10-27 | Lens & mirror mount assembly log + optical stack sketch | Physical reduction to practice |
| M-21/ M-22 | 2017-10-27 | 1.22-inch MIPI DSI display + assembly notes | Component selection & assembly |
| M-27/ M-29 | 2017 | Solar Temple Arm rendering + handwritten ergonomic specs | Wearable frame design |
| M-81 | 2017 | DLP NIRscan Nano Optical Architecture diagram | Detailed optical system design |
| M-82 | 2017 | Hand-drawn whiteboard eye diagram | Optical engineering sketch |
| M-94 | 2017 | Hand-drawn sketch: "Concave vs Convex Lenses" + solar panel | Optical design (lenses + power) |
| M-102 | ~2017 | Text message: "trying to cut glass. | Physical experimentation |

| Exhibit No. | Date | Description (Short) | Legal Purpose |
|---|---|---|---|
| | | Knife won't work. I need laser." + goggles photo | |
| M-11 | 2017 | Hacksaw tool (used for prototype frame/glass work) | Physical prototyping tool |
| M-103 | 2017 | Prototype frames description + glasses photo ("won't make you look like a douchebag") | Standalone wearable design + photo |
| M-32/ M-83 | 2017 | Black & white prototype glasses photo | Actual reduction to practice |
| M-97 | 2018-02-01 | ThermalEyetap_STL_Files.zip (3D-printable thermal eye-tracking) | Gaze/thermal interaction prototype |
| M-98 | 2019-04-17 | Meetup: "LEARN THE STEPS TO PATENT, PITCH, PRODUCE & FUNDING" | Public commercialization & patent diligence |
| M-52/ M-53/ M-54 | 2019 | "Meet Aria" pitch deck (Pages 1–3) – branding + full feature roadmap | **Prior "Aria" mark** + features predating Meta |
| M-104 | 2020-08-31 | LinkedIn connection acceptance – BACKYOUNG HEO (CEO, Bithumb Korea) | Industry outreach / visibility |
| **M-100** | **2020-12-15** (pub. 2018) | Samsung U.S. Patent 10,866,417 B2 – see-through display apparatus | **Temporal overlap + alleged copying** of Movant's Oct 2017 LinkedIn prototype post |
| M-36 | 2017–2021 | DuckDuckGo search "daitona carter" – public slides | Online visibility & public disclosure |
| M-38 | 2017+ | Post/message to Mark Zuckerberg (@zuck) about the project | Pre-litigation assertion of rights |
| M-59 | 2021-04-24 | Twitter post tagging @boztank & @fb about theft of $68B Project ARIA | Public assertion of theft |
| M-44 | 2017 | Jin Jordan / meeting location document | Outreach / collaboration documentation |
| M-84/ M-85/ M-86 | 2021-01-02 | Guerrilla Mail to Sen. Cruz (theft allegations) | Timely federal notice |
| M-87 | 2021-01-05 | Gmail to FBI/SEC/DOJ/CIA/etc. (multi-agency notice) | Formal misappropriation notice |
| M-39 | 2021-04-26 | Ring Alarm logs (95 pages – access code tampering) | Documented interference |

Appx196