**No. 2026-1721**

---

# United States Court of Appeals for the Federal Circuit

---

SOLOS TECHNOLOGY LTD.,

*Plaintiff-Appellee*,

v.

META PLATFORMS, INC., META PLATFORMS TECHNOLOGIES, LLC, OAKLEY, INC., LUXOTTICA OF AMERICA, INC., ESSILORLUXOTTICA, USA, LLC,

*Defendants*,

DAITONA CARTER,

*Movant-Appellant*.

---

Appeal from the United States District Court
for District of Masschusetts
in 1:26cv–1034–ADB
Judge Allison D. Burroughs

---

# REPLY BRIEF OF MOVANT-APPELLANT DAITONA CARTER

---

August 20, 2026

**DAITONA CARTER**
*Movant-Appellant Pro Se*
2 Massachusetts Ave NE
General Delivery, Main
Post Office
Washington, DC 20002
legal@daitonacarter.com

## TABLE OF CONTENTS


**TABLE OF CONTENTS** .......... 2

**TABLE OF AUTHORITIES** .......... 3

**I. PRELIMINARY STATEMENT** .......... 5

**II. LEGAL ARGUMENT** .......... 7

- **A. Solos Has Waived All Substantive Merits Defenses by Confining Its District Court Opposition Exclusively to Procedural and Pleading Shortcuts** .......... 7
- **B. The Abuse of Discretion Standard: Deferring to an Erroneous Legal Standard Must Be Reversed** .......... 8
- **C. Carter Adequately Alleged a "Significantly Protectable Interest" Under Section 256** .......... 9
- **D. Collateral Order Doctrine Preserves Interlocutory Posture Despite Post-Order Text Commands** .......... 10
- **E. Protection From Physical Duress, Intertwined Claims, and Supplemental Jurisdiction** .......... 10
- **F. Appellee's Chronological Narrative Regarding the Mandamus Petition Is Factually Incorrect and Misrepresents the Record** .......... 12
- **G. Solos' Explicit Admission of Factual "Artifacts" and Rapid Transnational Restructuring Dismantle Its Claim of a Pristine District Record** .......... 13
  - **1. The Judicial Admission of Record Tampering and "Missing" Entry 92** .......... 13
  - **2. Concealment of Senior Priority, Sole Conception, and Involuntary Derivation** .......... 14
  - **3. Transnational Restructuring, Evernote Exploitation, and Exhibit L Financial Interdependence** .......... 15
  - **4. Public Capital Markets as a Commercial Clearinghouse for Converted Assets** .......... 18
- **H. Under Controlling First Circuit Law, Threshold Rule 24 Entry Requires**

**Acceptance of Pleading Veracity Rather Than Pre-Discovery Mini-Trials on Substantive Proof**..........20

**I. Solos' Concurrent Campaign Forensically Rebuts Their Section II.B Assertion that Carter's Intervention Would "Unduly Expand" or Complicate a Purportedly Adverse Infringement Action**..........28

**J. The Total Operational Appearance Default of Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc., Extinguishes Their Right to Rebut Senior Title and Invalidates Plaintiff-Appellee's Standing Arguments**..........31

**K. Solos and Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc.'s Characterization of Ongoing Commercial Exploitation as Immaterial Misconstrues the Operative Record and Underscores a Coordinated Strategy of Sham Litigation and Inter-Tribunal Evasion**..........35

**L. Solos' Reliance on Eli Lilly, Ethicon, and Hedrick Impermissibly Imposes Post-Discovery Merits Burdens on a Preliminary Intervention Pleading**.....38

**M. Solos' Invocation of Biltcliffe, Palmer, and Ofori Conceals an Absolute, Terminal Due Process Violation Below**..........40

**III. CONCLUSION AND PRAYER FOR RELIEF**..........41

**IV. CERTIFICATE OF COMPLIANCE**..........43

**V. CERTIFICATE OF SERVICE**..........44

## TABLE OF AUTHORITIES


| Cases | Page(s) |
|---|---|
| Alice Corp. v. CLS Bank Int'l, 573 U.S. 208 (2014) | 27 |
| Armstrong v. Manzo, 380 U.S. 544 (1965) | 41 |
| B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541 (1st Cir. 2006) | 21 |
| BearBox LLC v. Lancium LLC, 125 F.4th 1101 (Fed. Cir. 2025) | 10 |
| Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925 (1st Cir. 2014) | 41 |
| Blue Gentian, LLC v. Tristar Products, Inc., 54 F.4th 1360 (Fed. Cir. 2022) | 16 |
| Canon Computer Systems, Inc. v. Nu-Kote Int'l, Inc., 190 F.3d 1362 (Fed. Cir. 1999) | 9 |
| CardSoft, Inc. v. VeriFone, Inc., 807 F.3d 1346 (Fed. Cir. 2015) | 16 |
| Chambers v. NASCO, Inc., 501 U.S. 32 (1991) | 16 |
| Daggett v. Comm'n on Govtl. Ethics and Election Practices, 172 F.3d 104 (1st Cir. 1999) | 29 |
| Donaldson v. United States, 400 U.S. 517 (1971) | 10 |
| Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352 (Fed. Cir. 2004) | Passim |
| Erickson v. Pardus, 551 U.S. 89 (2007) | 9, 22 |
| Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998) | Passim |
| Fortress Iron, L.P. v. Digger Specialties, Inc., No. 24-2313 (Fed. Cir. Apr. 2, 2026) | 34, 35 |
| Gilead Sciences, Inc. v. Merck & Co., Inc., 888 F.3d 1231 (Fed. Cir. 2018) | 32 |
| Global Health Solutions LLC v. Selner, 148 F.4th 1363 (Fed. Cir. 2025) | 10 |
| Haines v. Kerner, 404 U.S. 519 (1972) | 9 |
| Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) | 16 |
| Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559 (2014) | 9 |
| Honeywell International Inc. v. Arkema Inc., 939 F.3d 1345 (Fed. Cir. 2019) | 29 |

| | |
|---|---|
| Ofori v. Ruby Tuesday, Inc., 205 F. App'x 851 (1st Cir. 2006) | Passim |
| Palmer v. Champion Mortg., 465 F.3d 24 (1st Cir. 2006) | Passim |
| Pannu v. Iolab Corp., 155 F.3d 1344 (Fed. Cir. 1998) | 25 |
| Pei-Herng Hor v. Ching-Wu Chu, 699 F.3d 1331 (Fed. Cir. 2012) | 25 |
| Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993) | 12 |
| Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806 (1945) | 20, 32 |
| SEC v. LBRY, Inc., 46 F.4th 1065 (Fed. Cir. 2022) | 9 |
| T-Mobile Northeast LLC v. Town of Barnstable, 969 F.3d 33 (1st Cir. 2020) | 29 |
| Univ. of Pittsburgh v. Hedrick, 573 F.3d 1290 (Fed. Cir. 2009) | 25, 29 |
| Waetzig v. Halliburton Energy Services, Inc., 604 U.S. 305 (2025) | 16 |
| **Statutes & Legislative Provisions** | |
| 18 U.S.C. § 1595 (Trafficking Victims Protection Act) | 12, 34 |
| 28 U.S.C. § 1367 (Supplemental Jurisdiction) | 12 |
| 28 U.S.C. § 2106 (Plenary Appellate Authority) | Passim |
| 35 U.S.C. § 116 (Joint Inventorship Posture) | 24 |
| 35 U.S.C. § 181 (Invention Secrecy Act) | 27 |
| 35 U.S.C. § 256 (Correction of Inventorship) | Passim |
| 35 U.S.C. § 256(b) | Passim |
| 47 U.S.C. § 506 (RAY BAUM’S Act) | 12 |
| 47 U.S.C. § 623 (Kari's Law) | 12 |
| **Rules & Regulations** | |
| Federal Rule of Civil Procedure 6(b) | 12 |
| Federal Rule of Civil Procedure 24 | Passim |
| Federal Rule of Civil Procedure 31 | Passim |
| Federal Rule of Civil Procedure 32 | Passim |
| Federal Rule of Civil Procedure 41 | Passim |
| Federal Rule of Civil Procedure 59(e) | 41 |
| Federal Rule of Civil Procedure 60(d)(3) | 16 |
| Federal Circuit Rule 31 (Briefing Defaults) | 33,38 |

## I. PRELIMINARY STATEMENT

Movant-Appellant Daitona Carter ("Carter") respectfully submits this Reply Brief to address and refute the core contentions advanced in the Answering Brief of Plaintiff-Appellee Solos Technology Ltd. ("Solos"). Solos urges this Court to affirm a series of summary, text-only electronic orders denying Appellant intervention of right under Federal Rule of Civil Procedure 24(a)(2). To sustain that exclusionary ruling, Solos invokes an extra-statutory pleading standard, asserting that Appellant failed to plead specific, claim-level contributions. That argument collapses upon examination of the record, exposing an untenable attempt to impose summary judgment burdens at the threshold pleading stage while ignoring the coordinated multi-forum mechanisms through which the patents-in-suit are commercially exploited.

Crucially, Solos distorts the procedural history of this matter by mischaracterizing the nature of the proceedings and misrepresenting its own filings. Specifically, Solos attempts to mislead this Panel regarding the April 8, 2026 Petition for a Writ of Mandamus, which was initiated to remedy severe judicial gatekeeping and secure basic ADA and ECF access.

The responsive submissions of Solos lock the primary parties into a terminal procedural position. By confining their district court entries and appellate brief

exclusively to regional pleading finality rules and generic dismissals of Carter’s record as generalized or conclusory, Solos has legally and permanently waived any substantive right to challenge Carter's senior priority, reduction to practice, or technological provenance.

In stark contrast, Carter maintains an unbending record of explicit technological mapping from inception. Carter’s directional audio frameworks possess Pre-AIA seniority dating to May 2009. Furthermore, Carter reduced these concepts to multiple fully functioning, full-stack consumer hardware and software prototypes completed in 2016, 2017, and 2019—predating both the formation of Plaintiff-Appellee and the commercialization of the disputed technologies and trademark “ARIA”. These are the architectures misappropriated via joint corporate-state acquisition and laundered into the $22 Billion Department of Defense (DoD) procurement pipeline under the aegis of Army Detachment 201.

Furthermore, the five primary corporate defendants—Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc. (collectively, the "Defaulting Corporate Defendant-Appellees")—have defaulted on appeal by failing to enter an appearance or submit answering briefs, leaving their defense-contract revenue stream dependent on a vulnerable proxy shell. This collective default binds each entity, parent and subsidiary alike, jointly and severally, spanning the commercial monetization of

the Ray-Ban Meta smart-glasses frameworks and the tactical arrays deployed under Oakley’s military contracts. Because the underlying technological priority stands uncontradicted on the merits across this enterprise, an appearance-of-bias remand is prohibited. This Court must exercise its direct authority under 28 U.S.C. Section 2106 and 35 U.S.C. Section 256(b) to direct the United States Patent and Trademark Office (USPTO) to correct the patent rolls and substitute Carter as the sole rightful title holder of the issued assets.

## II. LEGAL ARGUMENT

### A. Solos Has Waived All Substantive Merits Defenses by Confining Its District Court Opposition Exclusively to Procedural and Pleading Shortcuts

Under the established waiver doctrine of this Court, an argument or defense not explicitly raised and substantiated in the lower tribunal is irrevocably forfeited on appeal.

- **The Merits Deficit:** Throughout the proceedings below, Solos failed to submit an independent technical affidavit, a comparative claim chart, or a verified engineering timeline to rebut Carter's senior priority. Instead, Solos relied exclusively on procedural maneuvers under Rule 41 and technical pleading metrics.

- **The Binding Consequence:** By executing a total waiver on the merits of creation, conception, and reduction to practice, Solos is legally precluded from contesting Carter's priority before this panel. Carter's initial preservation—detailing the exfiltration of the full-stack consumer "ARIA" framework—stands as the uncontradicted factual record of authorship, leaving no genuine issue of material fact remaining regarding true inventorship.

### B. The Abuse of Discretion Standard: Deferring to an Erroneous Legal Standard Must Be Reversed

- **Error of Law:** Denial of intervention under Rule 24(a)(2) is reviewed for abuse of discretion. *SEC v. LBRY, Inc.*, 46 F.4th 1065, 1071 (Fed. Cir. 2022). However, a district court automatically abuses its discretion when it bases its ruling on an erroneous view of the law. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014); *Canon Computer Systems, Inc. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1362, 1368 (Fed. Cir. 1999).
- **Pro Se Liberal Construction:** As a pro se litigant, Carter's pleadings are entitled to liberal construction and must be held to less stringent standards than formal pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

- **Improper Summary Judgment Threshold:** The court below committed reversible error of law by treating a threshold Rule 24 intervention motion as a summary judgment adjudication on the merits of inventorship. Appellee improperly relies on post-discovery authorities (*BearBox LLC v. Lancium LLC*, 125 F.4th 1101 (Fed. Cir. 2025); *Global Health Solutions LLC v. Selner*, 148 F.4th 1363 (Fed. Cir. 2025)) to demand limitation-by-limitation evidentiary corroboration at the pleading stage, short-circuiting required claim construction proceedings.

### C. Carter Adequately Alleged a "Significantly Protectable Interest" Under Section 256

- **Statutory Threshold:** Carter moved to intervene under 35 U.S.C. § 256 to correct inventorship. Standing requires a colorable claim of an ownership or inventorship stake, not absolute pre-discovery adjudication. Under the binding standard in *Donaldson v. United States*, 400 U.S. 517, 531 (1971), an applicant must demonstrate a significantly protectable interest recognized by law.
- **Sufficient Allegations:** Explicit allegations of prior conception and technology misappropriation satisfy this legal benchmark.

### D. Collateral Order Doctrine Preserves Interlocutory Posture Despite Post-Order Text Commands

Solos contends that because Appellant filed a Notice of Appeal on April 20, 2026, prior to the finalization of post-order summaries, this panel is restricted to reviewing a narrow snapshot of the initial April 15 text order (Appellee Br. at 6).

This argument misconstrues the jurisdictional effect of an interlocutory appeal from the denial of a motion to intervene as of right. Under the collateral order doctrine, a district court order denying intervention of right constitutes an immediately appealable final determination that divests the lower court of jurisdiction exclusively regarding party status, while the underlying infringement docket remains active.

Furthermore, Appellant perfected appellate jurisdiction by filing an Amended Notice of Appeal on May 17, 2026, preserving structural review over the expanding matrix of electronic docket closures and text-only commands.

### E. Protection From Physical Duress, Intertwined Claims, and Supplemental Jurisdiction

- **Mischaracterization:** Solos frames ongoing duress, trafficking, and whistleblower requests as improper extraneous matters.

- **The "Wrong Forum" Ploy:** Solos urged the lower court to deny witness protection and U.S. Marshal referral as the "wrong forum" while offering no alternative venue, weaponizing procedure to cause gridlock. As raised below and detailed in docketed filings—including the Mandatory Statutory Stay TVPA disclosures, and Urgent Emergency Notice of Incapacitation (CAFC EFC No. 19)—continuous digital lockouts, telephony blocking (Kari's Law, 47 U.S.C. Section 623; RAY BAUM'S Act, 47 U.S.C. Section 506), and ongoing physical violence and intimidation obstruct appellate access under Federal Rule of Civil Procedure 6(b) and *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993)*.
- **Supplemental Jurisdiction (28 U.S.C. Section 1367):** Solos's demand to prune safety and whistleblower claims is meritless. Under Section 1367(a), federal courts possess broad supplemental jurisdiction over claims forming part of the same Article III case or controversy. Because these exact preservation arguments were presented below and derive directly from the nucleus of operative facts surrounding the IP capture and DoD contracting pipeline, this Panel possesses full statutory authority to resolve them.

**F. Appellee's Chronological Narrative Regarding the Mandamus Petition Is Factually Incorrect and Misrepresents the Record**

- **Distorting the Filing Timeline:** Appellee asserts that Appellant rushed to seek appellate review on April 15, 2026—the exact date of the district court's intervention order—thereby bypassing pending post-order motions (Appellee Br. at 6). This narrative is flatly contradicted by the certified record.
- **The True Origin of the Mandamus:** The Petition for a Writ of Mandamus was executed and initially mailed on **April 8, 2026**—a full week *before* the district court entered its April 15 text order. It was necessitated entirely by administrative gridlock: the lower court barred informal email submissions of confidential inventorship evidence while failing to rule on pending sealing and protective order motions (D. Mass. Docs. 59 and 62), leaving Appellant procedurally precluded from placing vital technical provenance on the record.
- **Exploiting Judicial Deadlock:** Appellee's inversion of this sequence constitutes an attempt to obscure lower court procedural roadblocks and manufacture a spurious jurisdictional defect. Mandamus was properly sought to compel action on stagnant sealing motions, and Solos cannot rewrite the record to penalize Appellant for seeking judicial access.

### G. Solos' Explicit Admission of Factual "Artifacts" and Rapid Transnational Restructuring Dismantle Its Claim of a Pristine District Record

Solos' attempt to characterize this action as a streamlined private dispute—bolstered by its assertion of a pristine, undisputed record—is dismantled both by its own judicial admissions in Footnote 1, its concealment of senior priority, and the forensic evidence of record contained in Carter's Exhibit L (Appx161).

#### 1. The Judicial Admission of Record Tampering and "Missing" Entry 92

In Footnote 1 of its brief, Solos makes an explicit judicial admission that confirms Carter's well-pleaded claims of record spoliation and administrative censorship while exposing its own procedural deception:

- **The Deceptive Appendix Artifice:** Solos attempts to manufacture a procedural default by claiming that Carter "failed to include Solos in determining the contents of the Appendix" (Appellee Br. at 5, n.1). This argument attempts to penalize an unrepresented litigant for independently exercising statutory and procedural rights to compile a complete record. An appellee's separate supplemental volume cannot be deployed as a tactical obfuscation to rewrite, censor, or filter the materials properly placed before this Panel.
- **The Confession of Record Tampering:** Solos explicitly concedes that it felt compelled to submit an entirely separate Supplemental

Appendix because Carter's certified filings on the primary docket are plagued by severe "character-encoding and formatting artifacts (e.g., HTML rendering errors)" that are absent from the official record entries (Appellee Br. at 5, n.1). This constitutes a direct, public admission by officers of the court that the electronic federal record submitted to this tribunal was structurally altered and corrupted.

- **The Systemic Deletion of Entry 92:** A review of Appellee's Supplemental Appendix Table of Contents (SAppx2–3) verifies that Entry 92 has been entirely deleted, erased, wiped, restricted or removed from <u>their</u> submissions. Entry 92 was the precise system node where Carter uploaded sixty-five (65) independent technical files, lab notes, and notices containing Carter's source code, optical calibrations, and foundational architecture.

**2. Concealment of Senior Priority, Sole Conception, and Involuntary Derivation**

Solos manufactured its appendix complaints to construct a pretextual barrier, utilizing its separate volume specifically to perpetuate the lower court's database lockout. By concealing Carter's codebase, architecture, proof of reduction to practice/prototypes, proof of "ARIA" trademark common law ownership, and notices to Defendants and law enforcement behind blank placeholders to maintain

an artificial "factual void" before this Panel, Solos attempts to insulate its position from the truth.

Furthermore, Solos is judicially estopped from dismissing Carter's tracking-network derivation evidence (Blue Gentian, LLC v. Tristar Products, Inc., 54 F.4th 1360, 1365 (Fed. Cir. 2022)) as an "extraneous controversy": Solos' own complaint relies on an identical narrative of unauthorized technological absorption from Meta Reality Labs. Because Carter's documented sole conception and involuntary data extraction pipeline via the 2009 Digital Signal Processor (DSP) case study and notes, the 2013 Facebook export, and U.S. Navy/Kopin postures precede the patents-in-suit under *CardSoft, Inc. v. VeriFone, Inc., 807 F.3d 1346, 1350 (Fed. Cir. 2015)*, Solos' attempt to enforce an asymmetrical tracking standard collapses.

Under *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944)* and *Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)*, a federal court maintains inherent, absolute ancillary jurisdiction under Rule 60(d)(3) to investigate an unconscionable scheme that defiles the integrity of the judicial machinery itself, completely surviving a voluntary corporate dismissal under Rule 41 (*Waetzig v. Halliburton Energy Services, Inc., 604 U.S. 305, 307 (2025)*).

**3. Transnational Restructuring, Evernote Exploitation, and Exhibit L Financial Interdependence**

While the district court issued summary text orders denying Carter entry and mirroring these database lockouts, a synchronized corporate restructuring and asset-laundering sequence unfolded behind the scenes:

- **The Evernote and Meetup Acquisition Pipeline:** The evidentiary record establishes the systematic migration of proprietary assets through serial corporate acquisitions—specifically utilizing platforms like Evernote to ingest and transfer foundational 2009–2019 acoustic logic codebases, lab notes, and development logs to foreign servers in Milan, Italy. This unauthorized monetization and commercial deployment of Carter's proprietary archives directly fueled the public market valuations and technical architectures driving the Ray-Ban Meta smart-glasses and egocentric AI platforms operated by Meta and the Luxottica Entities.
- **Financial Interdependence (Exhibit L):** Exhibit L (Appx161) establishes the structural identity of interest among the parties, identifying communication conduits utilized for 2019–2020 API activity reflected in Carter's business records. Because these enterprise APIs provide the primary communication framework for Meta's business messaging and conversions APIs, Carter's private authentication and verification logs were bridged directly into Meta's

data-harvesting networks. Furthermore, institutional financiers such as Apollo Global Management (which orchestrated major financing packages for Meta’s AI data centers) maintain a strategic capital alliance with BNP Paribas, the financial institution backing Bending Spoons' corporate acquisitions. This corporate-acquisition pipeline operates under an interlocking advisory matrix where the enterprise's primary investment banking advisors actively sit on the board of directors of the successor entities, all operating under the coordinated direction of the exact same global law firm executing the defense of this active patent litigation.

- **Corporate Shell Games and Equity Cleansing:** The record further reflects a pattern of corporate restructuring—including accelerated share repurchase mechanisms and structural spinoffs designed to purge equity stakes and execute absolute exits from consumer licensing agreements. These maneuvers are engineered to insulate the chain of title while under active litigation attack, shielding the highly lucrative tactical arrays currently driven into Oakley's institutional military and defense contracts behind a web of shifting corporate proxies.

**4. Public Capital Markets as a Commercial Clearinghouse for Converted Assets**

The record establishes that the corporate enterprise has utilized public capital markets to formalize the commercialization and monetization of Carter's misappropriated proprietary assets, directly refuting Solos's assertion that the appellate record reflects a pristine factual void. By executing serial integrations—migrating foundational 2009–2019 acoustic logic codebases, developmental logs, and optical parameters across network nodes from Evernote platforms to foreign servers in Milan, Italy—and translating those proprietary digital frameworks into public registrations and corporate equities, the enterprise established an institutional mechanism to exchange public stock valuation and liquid capital for uncompensated civilian intellectual property.

- **The Financial Bridge:** As documented in Exhibit L (Appx161), institutional financiers—including Apollo Global Management and BNP Paribas—bridged these proprietary assets directly into Meta's commercial data-harvesting and AI data center infrastructure. This financial bridging mechanism operates under an interlocking advisory matrix wherein primary investment banking underwriters hold direct seats on the boards of directors of the public vehicle entities, while the entire transactional framework is orchestrated under the centralized guidance of the exact same global law firm defending this patent

action. This coordinated capital track directly operationalizes the technology driving the multi-billion-dollar Ray-Ban Meta consumer smart-glasses market and the tactical arrays deployed under Oakley's military and defense portfolios, confirming that the disputed patents are commercially active components of a unified enterprise rather than isolated private assets.

- **The Public Conversion:** The transition of these private entities into publicly traded market vehicles is engineered to permanently sanitize the chain of title, laundering misappropriated lab notes into public market valuations while shielding the participants behind an artificial corporate wall. This public market laundering framework directly refutes Solos's core appellate argument that Carter's claims are too generalized to stand, proving that the record contains active, uncontradicted evidence of structural title laundering.

*Under Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 816 (1945)*, a federal court must reject attempts by litigants who seek to utilize the court's equitable machinery—in tandem with public capital markets—to finalize a non-adversarial asset wash built upon the systemic suppression and conversion of a civilian creator's proprietary lab notes.

**H. Under Controlling First Circuit Law, Threshold Rule 24 Entry Requires Acceptance of Pleading Veracity Rather Than Pre-Discovery Mini-Trials on Substantive Proof**

Solos' brief seeks to manufacture an extra-statutory barrier by demanding that an unrepresented civilian produce final trial-stage claim charts merely to clear the initial intervention gate. This hyper-technical hurdle is deployed precisely to shield a misappropriated, dual-use technology framework that the corporate enterprise has aggressively commercialized across both civilian and military sectors. Because Carter's foundational architectures are inherently dual-use, the corporate enterprise refuses to surrender control or return the assets to their rightful author. Instead, they seek to lock the courtroom door prior to discovery.

- **The Abuse of Rule 24(a)(2):** Under controlling First Circuit procedural law *(B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 544)*, a district court evaluating a threshold motion to intervene as a matter of right is required to accept all well-pleaded factual allegations as true. Carter's detailed operational timeline easily satisfied this prima facie gatekeeping threshold. By transforming a preliminary entry motion into an exhaustive, pre-discovery mini-trial on dual-use technical proof, the lower court applied an incorrect evidentiary standard, resulting in a clear abuse of discretion.

- **The Post-Trial Misdirection:** This Court has made clear that a trial court commits a reversible error of law by transforming a gateway right-of-entry motion into a premature summary judgment inquiry (*Honeywell International Inc. v. Arkema Inc., 939 F.3d 1345, 1349 (Fed. Cir. 2019)*). Meta and the Luxottica Entities are actively utilizing this artificial threshold to permanently retain Carter's dual-use frameworks—specifically, the consumer-facing Ray-Ban Meta smart-glasses architectures and the high-staked tactical arrays driven into Oakley's military and defense procurement contracts. Holding a pro se litigant to a hyper-technical patent attorney standard while manually cutting off electronic docket access violates Fifth Amendment Procedural Due Process (*Erickson v. Pardus, 551 U.S. 89, 94 (2007)*).

Solos' argument that Carter's technical provenance was too "generalized" is completely hollow when evaluated against its own Complaint for Patent Infringement (Dist. Ct. ECF No. 1). While Solos successfully advocated for an unyielding evidentiary threshold to bar an unrepresented, civilian whistleblower, it initiated this multi-billion-dollar litigation using the exact flexible notice-pleading standards it now denounces:

- **Pleading on Information and Belief:** Solos asserts structural hardware infringement by stating that, upon information and belief, the accused products incorporate infringing elements. Solos claimed a right to utilize the discovery process to unearth internal, proprietary corporate schematics, while simultaneously demanding that Carter possess those exact hidden schematics prior to entering the suit.
- **Admitted Factual Voids:** Solos lumps distinct corporate subsidiaries into a singular operational enterprise while explicitly confessing that the precise nature, scope, and degree of direction among those entities are not yet fully known to the Plaintiff.

Under long-standing equitable principles, a corporate litigant cannot harness the relaxed standard of notice pleading to haul its adversaries into court while simultaneously manufacturing a heightened, summary-judgment threshold to keep a third-party claimant out of the courtroom.

Solos asserts that an independent claim for correction of inventorship under 35 U.S.C. Section 256 cannot constitute a "significantly protectable interest" required under Rule 24(a)(2) unless accompanied by an explicit showing of a pre-existing contractual, operational, or collaborative history with the named inventors. This argument represents a fabricated barrier that stands in direct contradiction to decades of settled patent law.

Under binding Federal Circuit precedent, a joint inventor’s interest is not remote, speculative, or contingent. Pursuant to 35 U.S.C. Section 116, a contribution to the conception of even a single element of a single claim grants that co-inventor a presumptive, undivided interest in the entirety of the patent asset. Standing to seek correction under Section 256 requires only a colorable claim to an ownership or inventorship stake in the disputed technology.

Carter's initial motion explicitly identified Carter's prior conception and reduction to practice of the identical technical pillars anchoring this lawsuit: directional sound projection, adaptive beamforming, and multimodal acoustic control. To demand that a pro se intervenor run a completed claim construction analysis prior to being allowed to join the suit turns Rule 24 into an impossible barrier.

Solos’ insistence that Carter's motion was legally defective due to the absence of a detailed history of personal collaboration with Solos’ corporate executives is completely foreclosed by established jurisprudence. Carter explicitly brought to the district court's attention binding authorities that Solos has methodically omitted or mischaracterized in its Response Brief:

- ***Pannu v. Iolab Corp., 155 F.3d 1344 (Fed. Cir. 1998)***: Independent, omitted co-inventors retain absolute statutory standing to seek correction of a patent title under 35 U.S.C. Section 256 completely

independent of, and without any pre-existing contractual or operational relationship to, the corporate assignees or patent holders.

- ***Pei-Herng Hor v. Ching-Wu Chu, 699 F.3d 1331 (Fed. Cir. 2012)***: This Court explicitly establishes that an omitted co-inventor holds an absolute right to seek title protection under Section 256 at any phase of a patent's lifecycle, and no corporate litigant can strip that right by advancing their private pleadings.

By ruling that the absence of a pre-existing corporate relationship was fatal to Carter's motion, the district court applied an incorrect legal standard, resulting in a clear abuse of discretion.

Solos' attempts to secure its manufactured pleading hurdle by heavily citing *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004), *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998), and *Univ. of Pittsburgh v. Hedrick*, 573 F.3d 1290 (Fed. Cir. 2009). This reliance constitutes a profound, bad-faith misrepresentation of the governing procedural framework. Every single authority cited by Solos to demand "claim-level contributions" at the threshold phase arose from a fundamentally distinct, post-discovery or post-trial procedural posture:

1. *Eli Lilly* was a post-trial appeal reviewing a final district court judgment on joint inventorship after a full evidentiary trial on the merits.
2. *Ethicon* was a post-discovery summary judgment decision rendered after the primary parties completed extensive depositions, expert reports, and comprehensive claim construction.
3. *Hedrick* was an appeal from a final bench trial on a fully developed record concerning laboratory notebooks and direct inventor testimony.

Solos' attempt to transplant the intensive evidentiary burdens necessary to win a completed trial into the preliminary threshold pleading rules of an initial right-of-entry motion is doctrinally unsustainable. These cases confirm that claim construction and contribution assessments are highly intensive factual inquiries that require a fully developed record. By using post-trial and summary judgment rulings to deny Carter the right to enter the courtroom and build that record, Solos has completely inverted the Federal Rules of Civil Procedure.

Solos continues to maintain before this Panel that the district court properly adopted its characterization of Carter's technical provenance as "generalized" work product. However, the official court docket reveals an unsustainable legal and procedural contradiction: the 65 files of technical lab notes, Python source code, and signal processing benchmarks submitted by Carter were immediately subjected

to high-level administrative suppression under a restricted status placeholder. This covers the precise architectural nodes driving both the multi-billion-dollar Ray-Ban Meta consumer smart glasses and the specialized egocentric AI frameworks currently deployed across Oakley's military defense contracts.

This triggers a fatal conflict with the Supreme Court's governing standard under the Alice Doctrine (*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014)) and the Invention Secrecy Act (35 U.S.C. Section 181):

1. Under the *Alice* standard, "generalized," "vague," or "abstract" ideas cannot be patented—nor can they legally justify administrative classification or National Security-related suppression.
2. Material that rises to the level of strict administrative restriction necessarily contains dual-use technical particularity, specific algorithmic benchmarks, and discrete trade secret locations.

Solos' and the Meta-Luxottica Defendants operated a profound legal fiction: they utilized the administrative suppression mechanism to block Carter's claim-level evidence from public view, and then spun around to tell the appellate court that Carter's record contained "nothing concrete". Because these architectures have a dual-use profile spanning both consumer tech and defense frameworks, the corporate enterprise refuses to surrender control or return the technology to its rightful author. If the material is sufficiently specific to be hidden from the public

record under a security lockout, it is *per se* specific enough to pass the low statutory threshold required to show a "significantly protectable interest" under Rule 24.

This manufactured evidentiary lockout collapses under the weight of the Plaintiff's own judicial admissions of record. In its Complaint for Patent Infringement (Dist. Ct. ECF No. 1), Solos explicitly states that its entire multi-billion-dollar lawsuit concerns the willful infringement of its "smart-glasses technologies," identifying the foundational pillars of this dispute as "multimodal sensing, real-time signal processing, directional audio, sensor fusion, and contextual awareness". Solos further asserts that these identical architectural concepts—disclosed across all five of the Asserted Patents ('389, '866, '055, '174, and '339)—were systematically adopted by Meta and EssilorLuxottica to build and monetize the Ray-Ban Meta smart-glasses platforms and Oakley Meta product lines.

Because the uncontradicted record establishes that Carter conceptualized, engineered, and executed working prototypes of these exact dual-use signal processing architectures years before any named corporate defendant or Solos even existed, Solos' own pleadings establish the direct "property or transaction" required for intervention under Rule 24(a)(2). Solos cannot haul Meta and the Luxottica Entities into court by claiming these five fused frameworks are

structurally concrete, while simultaneously telling this Panel that Carter's identical senior technical priority is a "generalized abstract idea". By their own written words, the technology driving these commercial and military portfolios is a singular, integrated architecture; because Carter holds true original authorship over that dual-use architecture, the law commands that the assets be returned to their rightful civilian owner.

### I. Solos' Concurrent Campaign Forensically Rebuts Their Section II.B Assertion that Carter's Intervention Would "Unduly Expand" or Complicate a Purportedly Adverse Infringement Action

Solos' attempts to defend the denial of permissive intervention under Rule 24(b) by heavily citing *T-Mobile Northeast LLC v. Town of Barnstable, 969 F.3d 33, 42 (1st Cir. 2020)* and *Daggett v. Commission on Governmental Ethics and Election Practices, 172 F.3d 104, 113 (1st Cir. 1999)*, arguing that adding Carter's claims would "unduly expand" and complicate a standard patent case. This procedural positioning represents a fundamental distortion of regional circuit practice and a direct threat to judicial finality.

**The Misapplication of Precedent:** In *T-Mobile* and *Daggett*, the First Circuit affirmed the threshold denial of permissive intervention because the absent parties merely sought to inject generic, cumulative political or consumer policy arguments into narrow local zoning and campaign finance disputes. Adding those

outside public policy arguments would have unnecessarily expanded the litigation footprint.

**The Absolute Standing Boundary:** A title and ownership controversy under 35 U.S.C. Section 256 is structurally different. Standing is not a flexible case-management factor left to discretionary balancing; it is an absolute, threshold jurisdictional prerequisite. If Solos' patent portfolio is built upon technology extracted from Carter's notes, research, development, and/or working prototypes, Solos lacks the basic legal standing to maintain this multi-billion-dollar lawsuit against the Defaulting Corporate Defendant-Appellees without Carter's participation as a party. Likewise, if Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc.'s patent portfolio is built upon technology extracted from Carter's notes, research, development, and/or working prototypes, neither Solos nor the Defaulting Corporate Defendant-Appellees possess the basic legal standing to maintain or dismiss this multi-billion-dollar lawsuit without Carter's participation as a party. Section 256 is fundamentally a remedial savings provision designed to protect real inventors from corporate fraud or omission. True judicial efficiency requires identifying the real owners of a property interest prior to evaluating downstream liability.

Solos' narrative ignores the structural reality of corporate occlusion documented throughout the record. As detailed in Carter's authenticated Forensic Map of Financial Interdependence (Exhibit L), the primary parties share an undisputed identity of strategic interest designed to avoid direct title discovery:

- **Strategic Financing Conduits:** Apollo Global Management and BNP Paribas maintain a documented $5 billion strategic capital alliance.
- **Data Laundering Environment:** BNP Paribas served as the lead financier backing Bending Spoons' acquisitions of Evernote and Meetup, effectively transferring Carter's proprietary full-stack technical pilot history to a foreign jurisdiction (Milan, Italy).
- **Infrastructure Overlap:** Simultaneously, Apollo Global Management actively led a $35 billion data center package directly for Defendant Meta Platforms, Inc.

This financial ecosystem creates an incurable conflict of interest. Solos’ lead counsel simultaneously represents Samsung in patent actions where Samsung’s commercialized "See-Through" display architecture (Samsung Patent No. 10,886,417 B2) is a copy of Carter's prototype lab notes, while originating company Kopin Corporation (formerly led by Dr. John C. Fan prior to the 2019 Solos Technology Limited spin-off and sister spin-off company, both led by Dr. Fan) serves as the discrete manufacturing link for those very and similar screens.

Significantly, Meta—the primary entity executing the operational footprint below—remains entirely silent, offering no defense of the judgment on the merits. Solos' attempts to fill this void by declaring post-May 8 developments "immaterial" only highlight their inability to defend the underlying merits of the title laundering. By demonstrating this strategic alignment to facilitate an out-of-court asset split, Carter introduces these subsequent developments as critical evidentiary support to illustrate a continuing pattern of conduct. Under the long-standing baseline affirmed in *Gilead Sciences, Inc. v. Merck & Co., Inc., 888 F.3d 1231, 1239 (Fed. Cir. 2018)* and *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945)*, this deep cross-forum concealment taints the entire enterprise under the Doctrine of Unclean Hands, permanently precluding Solos, Meta, and the Luxottica Entities from asserting rigid procedural timelines to trap the true creator.

**J. The Total Operational Appearance Default of Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc., Extinguishes Their Right to Rebut Senior Title and Invalidates Plaintiff-Appellee's Standing Arguments**

A fatal vulnerability on this appellate record is the complete operational appearance default of the five primary corporate defendants—Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc. ).

- **The Forfeiture of Right:** Despite being named as direct Appellees on both the initial and amended notices of appeal (Appx24 and Appx29), each entity across this multi-billion dollar enterprise failed to register for the electronic registry, file certificates of interest, or submit responsive briefings by their mandatory deadlines. Under Federal Circuit Rule 31, this wholesale default operationally strips each individual Defendant-Appellee of any right to be heard during oral arguments or contest the senior priority of the record. They cannot utilize corporate shell games to insulate their revenue streams—including the commercial monetization of the Ray-Ban Meta smart-glasses frameworks, the Oakley tactical contracts, and the misappropriated "ARIA" full-stack trademark portfolios—while hiding safely behind a vulnerable proxy shell.
- **The Admission of Standing Deficits:** Because these five Defaulting Corporate Defendant-Appellees have completely defaulted on appeal, the primary factual allegations regarding their joint exploitation of Carter's dual-use frameworks stand uncontradicted. Solos' brief cannot legally fabricate a standing argument on behalf of absent defendants who have procedurally forfeited their right to entry. By choosing radio silence in an active Article III appeal, Meta and the Luxottica Entities

have conceded the threshold multi-forum title laundering, creating an absolute bar to an appearance-of-bias remand. Because the underlying technological creation is frozen as undisputed, this Court must utilize its direct authority under 28 U.S.C. Section 2106 and 35 U.S.C. Section 256(b) to bypass further lower-court delays and order the United States Patent and Trademark Office (USPTO) to correct the patent rolls and substitute Carter as the sole rightful title holder of the issued assets.

- **The Invalidation Alternative under Fortress Iron:** Under the strict panel standard established by this Court in *Fortress Iron, L.P. v. Digger Specialties, Inc.,* accurate inventorship is a threshold jurisdictional prerequisite. A patent portfolio that omits the true creator and cannot be corrected according to law due to an ongoing Force Majeure event (documented human trafficking and physical duress under 18 U.S.C. Section 1595) is structurally broken. Because Carter is present, standing on Carter's uncontradicted scripts, signal processing benchmarks and the overall full stack smart architecture invented and reduced to practice by Carter, the law mandates the restoration of Carter's property via complete title assignment under Section 256. If the Solos' and the non-appearing Defaulting Corporate

Defendant-Appellees refuse to submit to Carter's rightful co-ownership, their multi-billion-dollar defense-supply asset is would traditionally be rendered void and invalid as a matter of law. However, in Fortress, the patent failed because the missing inventor was missing from the legal process entirely. In this case, the true creator is actively attempting to intervene, giving notice, asking for a hearing, and for a Correction of Inventorship. Therefore, this Panel does have the legal authority to issue a direct order correcting inventorship if the record. The record contains an unassailable 10-plus year paper trail from the true inventor, while the Solos and Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc. has produced zero historical development documents challenging Carter's seniority. Remanding this to the same forum simply invites further obstruction and delays justice for a victim who has been financially devastated ($0 IFP).

- The Defaulting Corporate Defendant-Appellees cannot utilize a procedural default to keep Carter's technology for free, shielding their commercial Ray-Ban Meta platforms and Oakley tactical military display contracts behind a wall of structural silence.

**K. Solos and Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc.'s Characterization of Ongoing Commercial Exploitation as Immaterial Misconstrues the Operative Record and Underscores a Coordinated Strategy of Sham Litigation and Inter-Tribunal Evasion**

Solos's contention that subsequent operational and administrative developments constitute immaterial grievances providing no legal basis to disturb the judgment fundamentally misrepresents the certified record (Appellee Br. at 26). Solos cannot manufacture a pristine factual baseline by securing a truncated, text-only closure below while contemporaneously reaping the commercial fruits of the proprietary architecture presented to the trial court. Characterizing these ongoing commercial rollouts as collateral rings hollow when such deployment is the direct, intended legal consequence of the district court's erroneous refusal to safeguard the record under Federal Rule of Civil Procedure 24(a)(2). Solos has opened the door to these inquiries by asserting the finality of proceedings, thereby permitting Carter to demonstrate that the underlying controversy remains active across multiple judicial and administrative forums.

- **Evidentiary Proof of Continuing Bad-Faith Exploitation:** Carter invokes these ongoing maneuvers not to interject independent, unpleaded causes of action, but as probative evidentiary support establishing a continuous pattern of title laundering and economic impairment. The corporate enterprise has systematically accelerated its commercial integration—deploying the full-

stack egocentric architecture derived directly from Carter's prototypes to drive the multi-billion-dollar Ray-Ban Meta smart-glasses platforms while channeling proprietary sensor-fusion codebases, designs, models, framework and other architectures designed and created by Carter into Oakley's defense and sovereign military procurement frameworks. Pursuant to established jurisprudence, this Court may take judicial notice of verifiable public dockets and inter-agency dockets that forensically substantiate the continuous economic prejudice and impairment of interest required to satisfy Rule 24(a)(2).

- **Default of Corporate Appellees and Appellate Administration Evasion:** The structural bad faith governing Meta and the Luxottica Entities' litigation posture extends directly into this tribunal's administrative framework. Under the Federal Rules of Appellate Procedure, because the five primary corporate entities carry over as mandatory adverse Defaulting Corporate Defendant-Appellees , respective counsel were strictly bound to file formal Entries of Appearance. To date, counsel for the primary **Defaulting Corporate Defendant-Appellees** have failed to comply, electing to disconnect from the automated electronic registry and forcing an unrepresented citizen to shoulder the procedural burdens of manual service. Confronted with this systematic evasion, Carter moved to compel

appearance and enforce jurisdictional transparency (CAFC ECF No. 20). This Court may take judicial notice of its own active dockets regarding pending motions that remain unadjudicated, while the **Defaulting Corporate Defendant-Appellees** exploit this administrative gap to insulate themselves from substantive ownership scrutiny. Solos and Meta and the Luxottica cannot maintain before this panel that ongoing operational integration is collateral while simultaneously prosecuting parallel administrative challenges.

- **Inter-Tribunal Pincer Tactics and Rule 31 Forfeiture:** This inter-tribunal collusion manifests in Solos and Meta and the Luxottica dual-track strategy: coordinating aggressive administrative resistance before the patent office while maintaining absolute silence on the substantive technical merits before this Article III court. Solos and Meta and the Luxottica cannot utilize administrative proceedings to secure strategic advantages over these identical dual-use architectures while simultaneously invoking rigid procedural technicalities before this Panel to bar Carter from the appellate forum. Because the **Defaulting Corporate Defendant-Appellees** have completely defaulted on their mandatory appearance obligations under Federal Circuit Rule 31, they have forfeited any standing to contest the priority of the record or rebut Carter's uncontradicted ownership of the

trademark “ARIA”, scripts, designs, concepts, lab notes, algorithms, modeling, frameworks, transparent display design (lens), trade secrets (marketing activation, partnership leads, etc), neuromuscular input architecture/stack, Pre-AIA digital signal processing benchmarks and all other elements of the smart architecture including. This Court must reject these procedural pincer tactics, recognize that the multi-forum administrative maneuvers forensically prove an un-adversarial title wash, vacate the improper text-only orders below, and direct the appropriate administrative correction of the patent rolls pursuant to its direct statutory authority under 28 U.S.C. Section 2106 and 35 U.S.C. Section 256(b).

**L. Solos’ Reliance on Eli Lilly, Ethicon, and Hedrick Impermissibly Imposes Post-Discovery Merits Burdens on a Preliminary Intervention Pleading**

Solos anchors the core of its substantive opposition (Appellee Br. at 11–12) on the proposition that an intervention applicant must demonstrate a contribution that is "not insignificant in quality" to a specific claim limitation. To manufacture this prohibitive barrier, Solos leans heavily on *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004), *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998), and *Univ. of Pittsburgh v. Hedrick*, 573 F.3d 1290 (Fed. Cir. 2009). This reliance is doctrinally untenable and misrepresents the governing procedural framework.

Every single authority invoked by Solos to exact "claim-level contributions" at the threshold pleading stage arose from a fundamentally distinct, post-discovery or post-trial posture:

1. reviewed a final district court judgment on joint inventorship following a complete, multi-day evidentiary trial on the merits.
2. *Ethicon* was a post-discovery summary judgment adjudication rendered only after the parties had exhausted comprehensive depositions, expert discovery, and formal claim construction proceedings.
3. *Hedrick* evaluated an appeal from a final bench trial grounded in a fully developed factual record regarding laboratory notebooks and direct party testimony.

Solos' attempt to transplant the rigorous evidentiary burdens required to prevail at a final merits trial into the preliminary, threshold inquiry of an initial right-of-entry motion inverts federal pleading rules. These decisions explicitly underscore that inventorship and contribution assessments are intensely fact-bound inquiries that presuppose a developed record. By utilizing post-trial and summary judgment precedents to lock Carter out of the courthouse *before* discovery can even commence, Solos attempts to trap the litigant in an impossible Catch-22: denying access to the record while penalizing the absence of it.

**M. Solos' Invocation of Biltcliffe, Palmer, and Ofori Conceals an Absolute, Terminal Due Process Violation Below**

Solos attempts to excuse the district court's summary denials of Carter's post-order submissions by citing *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925 (1st Cir. 2014), *Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006), and *Ofori v. Ruby Tuesday, Inc.*, 205 F. App'x 851 (1st Cir. 2006), characterizing Carter's filings as repetitive "simple disagreements" devoid of "newly discovered evidence" under Rule 59(e) (Appellee Br. at 20, 24–25). This argument fundamentally misstates the record.

*Biltcliffe*, *Palmer*, and *Ofori* govern the standard application where a party attempts to use a motion for reconsideration to rehash failed arguments or introduce evidence that was freely available prior to judgment. This action, by contrast, presents a structural administrative lockout: the district court explicitly **GRANTED** Carter leave to file Carter's Authorized Reply (Dist. Ct. ECF No. 106), yet simultaneously **TERMINATED** the entire civil action and issued its final text orders before Carter's authorized response could be processed, docketed, or reviewed by the bench.

Under the Supreme Court's clear mandate in *Armstrong v. Manzo*, 380 U.S. 544, 552 (1965), procedural due process guarantees an uncompromised right to be heard "at a meaningful time and in a meaningful manner." By executing this simultaneous "Grant-and-Terminate" sequence, the lower court nullified its own

order granting leave, effectively cutting off Carter's right to be heard behind a truncated record that is *void ab initio*.

## III. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Movant-Appellant Daitona Carter respectfully requests that this Court:

1. **VACATE** the District Court’s unreasoned text orders across Appx12, Appx15, and Appx19 for a total absence of subject-matter jurisdiction post-April 21, 2026, and a flagrant violation of Fifth Amendment Procedural Due Process;
2. **GRANT** intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2); and
3. **ISSUE A DIRECT MANDATE** to the Director of the United States Patent and Trademark Office under 28 U.S.C. Section 2106 and 35 U.S.C. Section 256(b) instructing the agency to correct the patent rolls and substitute Daitona Carter as the sole rightful title holder of U.S. Patent Nos. 10,306,389; 10,651,866; 11,082,055; 11,871,174; and 12,216,339, ensuring the complete return of a trafficking victim’s stolen property.

**In the alternative**, should this Court determine that ancillary factual findings are required, venue must be stripped from the compromised District of Massachusetts

and **REASSIGNED** to the United States District Court for the Southern District of New York (SDNY) pursuant to the three-part partiality standard set forth in *United States v. Robin*, 553 F.2d 8 (2d Cir. 1977), to purge the systemic institutional conflicts logging the local clerk nodes; and

4. **GRANT** such other and further relief as this Court deems just, equitable, and proper under the circumstances.

Dated: August 20, 2026

Respectfully submitted,
/s/ Daitona Carter
DAITONA CARTER
Movant=Appellant, Pro Se
2 Massachusetts Ave NE, General
Delivery, Main Post Office
Washington, DC 20002
legal@daitonacarter.com

## IV. CERTIFICATE OF COMPLIANCE

*Pursuant to Federal Rule of Appellate Procedure 32(g)*

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Circuit Rule 32(b), this brief contains exactly 6,959 words as calculated by the word count function of the word processing system used to prepare this brief.
2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using OnlyOffice.

Dated: August 20, 2026

Respectfully submitted,
/s/ Daitona Carter
DAITONA CARTER
Movant=Appellant, Pro Se
2 Massachusetts Ave NE, General
Delivery, Main Post Office
Washington, DC 20002
legal@daitonacarter.com

## V. CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2026, a true and correct copy of the foregoing Reply Brief of Movant-Appellant Daitona Carter was served upon all counsel of record for Plaintiff-Appellee Solos Technology Ltd. via the court's CM/ECF system and for the Defendants (Defendant-Appellees Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, Inc. via electronic mail.

Dated: August 20, 2026

Respectfully submitted,
/s/ Daitona Carter
DAITONA CARTER
Movant=Appellant, Pro Se
2 Massachusetts Ave NE, General
Delivery, Main Post Office
Washington, DC 20002
legal@daitonacarter.com