26-1721

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

SOLOS TECHNOLOGY LIMITED,
Plaintiff-Appellee

v.

META PLATFORMS, INC.,META PLATFORMS TECHNOLOGIES, LLC, OAKLEY, INC.,LUXOTTICA OF AMERICA, INC., ESSILORLUXOTTICA, USA, LLC,

Defendants

DAITONA CARTER,
Movant-Appellant

---

Appeal from the United States District Court for the Massachusetts in No. 1:26-cv–10304–ADB, Judge Allison D. Burroughs

---

**SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE OF IPR2027-00019**

---

Movant-Appellant Daitona Carter hereby moves this Court to take supplemental judicial notice of the following fact, which supplements the Motion for Judicial Notice filed October 28, 2026 (Doc. No. 63):

On **October 26, 2026**, Meta Platforms, Inc. filed a **sixth IPR petition** (Case No. **IPR2027-00019**) before the Patent Trial and Appeal Board, targeting **U.S. Patent No. 10,306,389** (head-wearable two-stage noise cancellation). The petition relies on prior art references Schevciw (2011), Yu (2004/2006), and Li (2012). The petition is in the public PTAB record.

This fact is not subject to reasonable dispute. It is verifiable in the public PTAB docket.

The filing of IPR2027-00019 expands the PTAB challenge to **six patents** covering the full scope of the smart eyewear architecture at issue in this appeal, and is material to the Court's assessment of irreparable harm and the inadequacy of remand as set forth in Doc. No. 63.

On **October 30, 2026**, Movant-Appellant filed a Supplemental Notice of Related Matters with the PTAB in all six active IPR dockets, including a summary table (Appendix A) mapping each IPR petition to the specific stale prior art, the

true inventor's priority evidence, and the commercially exploited products at issue.

A copy of that notice is attached hereto as Attachment 1.

October 30, 2026

Respectfully submitted,
/s/ Daitona Carter
Daitona Carter
Movant-Appellant, Pro Se
2 Massachusetts Ave NE
General Delivery, Main Post Office
Washington, DC 20002
legal@daitonacarter.com

**Attachment 1: Copy of the USPTO Supplemental Notice filed October 30, 2026 (including Appendix A table)**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**PATENT TRIAL AND APPEAL BOARD**

**TO:**
The Director, United States Patent and Trademark Office
Chief Administrative Patent Judge
All Assigned PTAB Judges, Case Nos. IPR2026-00376, IPR2026-00412, IPR2026-00413, IPR2026-00420, and [5th IPR docket number]

**VIA EMAIL THIS DATE — HARD COPY TO FOLLOW VIA MAIL**

**FROM:**
Daitona Carter
legal@team.daitonacarter.com

**RE:**
Supplemental Notice of Related Matters, Disclosure Deficiencies, and Constitutional Limitations on Agency Action

Case Nos. IPR2026-00376, IPR2026-00412, IPR2026-00413, IPR2026-00420, IPR2026-00512 and IPR2027-00019.

**DATE:** October 30, 2026

## I. PURPOSE AND BASIS

This is a supplemental notice updating the prior notice filed in the above-referenced proceedings. It is filed pursuant to 37 C.F.R. § 42.8(a)(3) (notice of change in related matters) and 37 C.F.R. § 42.11(a) (duty of candor and good faith).

This notice does not request relief. It does not re-argue any matter pending in any other forum. It does not seek intervention in these proceedings. It places facts on the record, identifies deficiencies in the parties' mandatory disclosures, and states the constitutional and statutory limitations on the Board's authority to proceed.

The Board is notified that the facts set forth below are **publicly verifiable** through SEC filings, SAM.gov contract records, USPTO patent publications, corporate newsroom announcements,

and product release records. The evidence referenced in this notice exists in the **public commercial record** and cannot be deleted, altered, or suppressed.

The undersigned is filing this notice through the USPTO electronic filing system because all of the undersigned's other communication channels are compromised. Specifically: phone calls are blocked, spoofed, or rerouted; her phone account went missing; emails are blocked, spoofed, or rerouted outside of related Forums; chats are intercepted; and her physical mail is routinely mishandled, including being opened, reviewed, rerouted, delayed, lost, or stolen. The undersigned's communication with the courts and agencies via the CM/ECF and USPTO email is the only channel that has not been intercepted or compromised. The docket record is the only reliable record of the sequence of events. The undersigned files this notice through the court system because it is the only communication channel is operative.

## II. THE PRIOR ART DOES NOT RENDER THE CLAIMS NON-NOVEL (PETITION-BY-PETITION MISMATCH)

The IPR petitions rely on prior art references that are, in material part, old, outdated, stale, and completely unrelated to the specific integrated hardware and software micro-architecture at issue in the Solos patents. Meta and its affiliates are executing an artificial administrative illusion—analogous to the flawed structural patterns they deployed in the *BlueRadio* litigation—by weaponizing ancient, single-purpose components to pretend that a highly specialized, real-time spatial computing framework does not exist.

The patentable subject matter of the asserted claims is not any individual component (Bluetooth, WiFi, camera, microphone, processor) in isolation. The patentable subject matter is the **specific architecture**—the particular combination, integration, and merging of digital component variables in a manner that produces an automated, lightweight spatial result not achievable by the individual components separately.

The prior art identified by the petitioners does not disclose this architecture. It discloses individual components. The individual components are not the claims. The combination is the claim.

The specific prior art mismatches across the filed petitions break down as follows:

1. **Case No. IPR2027-00019 (Targeting U.S. Patent No. 10,306,389 – Two-Stage Noise Cancellation)**
   - *Stale References Leveraged:* Schevciw (2011) and Yu (2004/2006).
   - *The Architectural Mismatch:* The Petitioners deploy a decades-old "stale card" by pulling basic acoustic equations from early cellular phone headsets and stationary desktop setups. These references completely fail to disclose or instruct an engineer on how to manage the real-time processing, power-management, and

multi-sensor fusion grids required to run a wearable, open-ear AI system on a frame temple. A static single-channel telephone earpiece cannot teach or anticipate the spatial noise-rejection loop of an active computing frame.

2. **Case Nos. IPR2026-00512, IPR2026-00412, & IPR2026-00420 (Targeting U.S. Patent Nos. 10,651,866 & 11,082,055 – Digital Beamforming)**
   - *Stale References Leveraged:* Moquin (2014, with priority tracking back to 2010).
   - *The Architectural Mismatch:* The Petitioners rely on static, linear fractional delay filters derived exclusively from low-power, ambient hearing-aid technology. The public engineering record of **blogspot.com (2009)** regarding the core architecture of the *Waves H-Compressor (Hybrid)* plugin directly refutes this timeline. True functional implementation of this technology requires an architecture that integrates modeled hardware behaviors with dynamic, host-calculated variables (including note-based dynamic signal release and 4-10ms micro-delay execution triggers). Stale hearing aid math does not possess the structural capacity or algorithmic framework to manage real-time edge computing streams, handle thermal constraints, or synchronize modern AI agentic loops. When this integration was actively brought to the market, top-tier industry developers explicitly stated it achieved "capabilities that engineers could only dream about back in the day," demonstrating that the technology is completely non-obvious under 35 U.S.C. § 103.
3. **Case No. IPR2026-00413 (Targeting U.S. Patent No. 11,871,174 – Audio Chamber Architecture)**
   - *Stale References Leveraged:* Ono (1990) and Matsunari/Sony (2016).
   - *The Architectural Mismatch:* The Petitioners weaponize a **36-year-old analog reference (Ono)** describing a bulky, external parabolic sound mirror. Physical integration into modern smart glasses requires hidden inner-temple acoustic chambers and specialized digital attenuation. If a person of ordinary skill attempted to scale down and physically hammer Ono's 1990 parabolic mirror geometry into an ultra-thin frame temple (such as the *Ray-Ban Meta Gen 2/3* or *Oakley Meta HSTN*), it would cause immediate structural failure, lens misalignment, and render the device physically unwearable. The prior art is structurally non-analogous and physically incompatible.
4. **Case No. IPR2026-00376 (Targeting U.S. Patent No. 12,216,339 – Open-Ear Visual Framework)**
   - *Stale References Leveraged:* Asukai/Sony (2009, tracking to 2006 data).
   - *The Architectural Mismatch:* The Petitioners rely on a 17-year-old, impractical media player display mockup. This stale reference completely lacks the power-distribution arrays, real-time spatial software loops, and edge AI tracking components that define modern smart eyewear. It provides zero technical instructions on how to integrate micro-components into a socially viable,

operational computing environment. A summary table mapping each IPR petition to the specific stale prior art, the true inventor's priority evidence (with D. Mass docket exhibit references), and the commercially exploited products at issue is attached hereto as Appendix A.

The architecture at issue was developed by the undersigned. The evidence establishing this is in the public record and in the docket of **Solos Technology Limited v. Meta Platforms, Inc., No. 1:26-cv-10304-ADB (D. Mass.)**, including ECF No. 83 (filed April 10, 2026), which contains: a **June 15, 2019 YouNoodle Aria Entrepreneurship World Cup confirmation email**; **photos of early smart-glasses prototypes** (frame construction, glass-cutting, design sketches); and **screenshots of private video titles** ("Aria Smart Glasses" and "Aria Smart Glasses Pitch").

The undersigned is not a party to these proceedings. The undersigned does not seek intervention in these proceedings. The undersigned is notifying the Board of the following:

If the Board proceeds to invalidate the asserted claims based on prior art that does not disclose the specific architecture at issue, the Board will be confirming that the architecture belongs to a party who is not the patent owner, that the patent owner's chain of title is defective (no assignment, no license, no purchase agreement exists between the undersigned and any party in these proceedings), and that the Board is acting with **actual notice** of the conditions under which the underlying work was produced, as described in Section V.

This is a notification. It is not a request for relief. The decision to proceed is the Board's. The consequences of proceeding with actual notice are the Board's.

The IPR petitions are not independent challenges. With the exception of the first non-conclusory statement, the arguments in the petitions **mirror the positions of the patent owner, Solos Technology Limited.** The petitioners are not acting as independent prior art challengers. They are acting in coordination with the patent owner.

The corporate structure: **Kopin Corporation** is a defense supplier. **Solos Technology Limited** is a spin-off of Kopin (Asset Purchase Agreement, September 30, 2019). Meta Platforms, Inc. and its affiliates (Oakley, Inc., Luxottica of America, Inc., EssilorLuxottica USA, LLC) are the **commercial users** of the technology. Meta does not publicly conduct business with defense suppliers. Solos is the **intermediary entity** through which the defense-connected patents are held and asserted, insulating Meta's commercial products from direct association with a defense contractor.

The sequence: (a) the technology was commercialized by Meta and affiliates; (b) a lawsuit was filed (Solos Technology Limited v. Meta Platforms, Inc.) to assert patent rights over the commercialized technology; (c) IPR petitions were filed by the same entities that are the commercial users, targeting the same patents that are the subject of the lawsuit. Meta Platforms,

Inc. and its affiliates **dominated the commercial market** for the product category before the IPRs were filed. They have filed their own patent applications (including US 2026/0244794 A1, August 20, 2026). The invalidation of the Solos patents through the IPRs is not a prior art challenge. It is a **market consolidation** mechanism: eliminate the competing patent claims after the market is already captured and after the petitioners have filed their own applications.

## III. THE D. MASS RECORD: EVIDENCE LOCATION AND THE COURT'S FAILURE TO EVALUATE IT

The evidence establishing the undersigned's priority timeline — DSP mathematics before 2010, elements for modern smart glasses architecture as early as 2013, and completed prototypes in 2016, 2017, and 2019 — is contained in the docket of *Solos Technology Limited v. Meta Platforms, Inc.*, No. 1:26-cv-10304-ADB (D. Mass.).

The Board is notified of the following regarding that record:

1. The 65 exhibits (ECF No. 92) were maintained at **-1** (hidden from the public docket) by the clerk until about **June 5, 2026**, when the docket was transmitted to CAFC Appeal No. 26-1721.
2. On **March 30, 2026**, the Clerk of the District Court, Caetlin McManus, sent the following email to the undersigned:

> "Given your statement of hardship I have made an exception and docketed the Motion to Intervene and related filings that were received Friday and one from Saturday which was not in the earlier email (motion for leave to file electronically). Please review the docket entries below. **Please refrain from emailing more documents to the Court until your motion to intervene has been ruled upon and, if intervention is allowed, your motion to e-file will also be ruled upon.**"

The clerk's instruction created a **procedural blockade**. The undersigned was barred from submitting any further materials until: (a) the motion to intervene was ruled upon, AND (b) intervention was allowed, AND (c) the motion to e-file was ruled upon. Three conditions, all within the court's control. The email also acknowledges the undersigned's **statement of hardship** — the clerk made "an exception" to docket the motion. The court was on notice of the condition.

3. On **March 27, 2026**, the undersigned filed four protective motions: ECF No. 59 (Protective Order, Leave to File Redacted Documents, Motion to Seal), ECF No. 60 (Protective Order for Witness Protection and Technical Safeguards), ECF No. 62 (In

Camera Review), and, on April 10, 2026, ECF No. 80 (Proposed Motion for Status Conference to Resolve the Pending Sealing Motions). The purpose of these motions was to allow the court to evaluate the undersigned's exhibits **in camera, under seal, with protective orders**, so that trade secrets and sensitive technical material would not be exposed publicly.

4. On **April 10, 2026**, the undersigned filed ECF No. 83, a Supplemental Affidavit containing eight exhibits, including: a February 2017 LinkedIn profile ("Tech Lab 2017 – started July 2016"); a July 2017 LinkedIn post ("Public Notes for AR/VR Development"); May 2017 Tesseract OCR / computer vision code; October 2017 audio files and Python script; an early 2019 LinkedIn export; a **June 15, 2019 YouNoodle Aria Entrepreneurship World Cup confirmation email**; **photos of early smart-glasses prototypes** (frame construction, glass-cutting, design sketches); and **screenshots of private video titles** ("Aria Smart Glasses" and "Aria Smart Glasses Pitch").

On **April 13, 2026**, the undersigned filed ECF No. 84, a Motion for Leave to File Supplemental Evidence, containing: 2017 Technical Sketches and Aria Prototypes; a **June 2019 EWC Third-Party Priority Confirmation**; and a Forensic Map of Financial Interdependence. The court **granted** leave to file ECF Nos. 84 and 85 on April 13, 2026.

5. On **April 15, 2026**, Judge Allison Dale Burroughs entered an order denying the motion to intervene. The order stated: **"all her other pending motions are DENIED AS MOOT."** This single sentence disposed of: the in camera review motion (ECF 62); the protective order motions (ECF 59, 60); the proposed status conference to resolve the sealing motions (ECF 80); and the supplemental evidence for which leave had been granted (ECF 84, 85). **The court never conducted an in camera review. The court never issued a protective order. The court never resolved the sealing motions. The exhibits are now public on the docket.** The trade secrets the undersigned sought to protect through in camera review and sealing were exposed as a direct result of the court's refusal to rule on the protective motions before denying the intervention.

The denial was based on the assertion that the undersigned's filings "contain non-conclusory allegations suggesting that she contributed to the formation of a definite and permanent idea as to every feature of the subject matter claimed in the asserted patents." The order cited **ECF Nos. 70, 72, 73, 77, 78, 79, and 83** — filings made **after** the clerk's March 30, 2026 instruction to "refrain from emailing more documents" — as evidence of the alleged conclusory nature of the claims. The 65 exhibits in ECF No. 92, which contained the specified contributions, were **not evaluated** by the court.

6. The undersigned **asserted** in the D. Mass proceedings that proof of **Northrop Grumman** was in her **Facebook exports from 2013**, and that the record referenced what

appears to be **black budgets and black operations using the stock market to launder the work of the movant** (specifically, the film *Meta Materials*, a now-dissolved entity, which is the exact material the undersigned sourced and used in her **2017 prototype**). The undersigned made repeated requests for **in camera review** and **redactions** to protect sensitive material. **The judge ignored all such requests.** The judge then **denied, mooted, and terminated** the proceeding without evaluating the exhibits or addressing the assertions.

The statement in item 6 was made in the same period as the **Intelligence Community transitions** documented in the public record. **Walter Jay Clayton** held positions at the **SEC**, **Apollo Global Management**, the **U.S. Attorney's Office, Southern District of New York**, and the **Office of the Director of National Intelligence**, where he was confirmed as **Director of National Intelligence**. Clayton is present at every event affecting the undersigned and her family as documented in the public record. His confirmation to oversee the IC occurred in temporal proximity to the events described in this item.

The connection is verifiable through the following public records:

- **SEC filings** and the departure of Clayton from the SEC, which occurred in the same window as the events described below;
- **Apollo Global Management** corporate records;
- **U.S. Attorney, Southern District of New York** employment and departure records;
- **ODNI** records;
- The **AI Czar (DoD/IC)** appointment;
- **Alpaca Securities** (a Fireblocks partner): **over $100 million in unaccounted funds** missing (not covered by the FINRA and SEC investigative windows into Citadel and Alpaca Securities), in which the undersigned is a party in subject matter exceeding **$80 million**, in the **exact window** that Clayton held his position at the SEC and subsequently exited;
- The undersigned's **LinkedIn account** (linkedin.com/in/daitonacarter), which contained **direct evidence** of all of the foregoing, was noticed **restricted about three days before the FTC v. Facebook antitrust action was announced** and **remains restricted** as of the date of this notice.

The D. Mass docket shows that Meta Platforms, Inc. filed its Rule 12(b)(7) Motion to Dismiss (ECF No. 49), relying on the 2004–2009 GoldenEye/BlueRadios timeline, **two days after** the undersigned and child was no longer confined to the hotel(s). The undersigned **rewrote the motion to intervene from scratch** because the original was on the taken hard drive, and served it on all parties before day's end. The original motion and drafts have not been returned.

7. The undersigned's **hard drive was taken**. The hard drive contained the original motion to intervene and supporting legal notes and drafts. The taking occurred during a period in which the undersigned was being moved across **ten (10) hotels and twelve (12) rooms in 2026** as part of the involuntary servitude and indentured servitude described in Section V. The D. Mass docket shows that Meta Platforms, Inc. filed its Rule 12(b)(7) Motion to Dismiss (ECF No. 49), relying on the 2004–2009 GoldenEye/BlueRadios timeline, **two days after** the hard drive was taken. The undersigned **rewrote the motion to intervene from scratch** because the original was on the taken hard drive, and served it on all parties before day's end. The original motion and drafts have not been returned.

The undersigned is unable to independently verify the communication sequence surrounding these events. All of the undersigned's communication channels are compromised. Specifically: phone calls are blocked, spoofed, or rerouted; her phone account went missing; emails are blocked, spoofed, or rerouted outside of related Forums; chats are intercepted; and her physical mail is routinely mishandled, including being opened, reviewed, rerouted, delayed, lost, or stolen. The undersigned's communication with the courts and agencies via the CM/ECF and USPTO email is the only channel that has not been intercepted or compromised. The docket record is the only reliable record of the sequence of events. The undersigned files this notice through the court system because it is the only communication channel is operative.

The undersigned was **given the appearance of free movement**. The ability to file, to seek counsel, and to appear in court was **permitted**, not granted. The filings themselves serve the mission of the parties against the undersigned: they create the record that is later characterized as "re-arguing," "conclusory," or "improper," and they document the undersigned's continued engagement with the legal system in a manner that reinforces the narrative of instability. The undersigned files this notice with that understanding.

The D. Mass court is **not** a neutral source for the timeline. The evidence is in the docket. The court that was supposed to evaluate it refused to do so, ignored all in camera and redaction requests, made no finding on the assertions, and directed the undersigned to appeal. The Board is notified of the **location** of the evidence and the **circumstances** under which it was withheld from evaluation.

## IV. META PLATFORMS AND AFFILIATES CONTINUE TO RELEASE THE TECHNOLOGY

While these IPR proceedings are pending, Meta Platforms, Inc. and its affiliated entities (including Oakley, Inc., Luxottica of America, Inc., and EssilorLuxottica USA, LLC) **continue to manufacture, market, sell, and deploy** products and research platforms incorporating the technology at issue in these proceedings. The complete timeline is as follows:

- **September 16, 2020:** Meta officially unveils **Project Aria Gen 1**, establishing its foundational egocentric research hardware and partnering globally with academic and corporate institutions to gather data for machine perception and spatial computing. The **ARIA** mark — the undersigned's common law trademark — is the name of Meta's research platform.
- **September 9, 2021:** Ray-Ban Stories released in partnership with EssilorLuxottica.
- **October 17, 2023:** Ray-Ban Meta Gen 1 released.
- **November 4, 2024:** Meta expands its **Llama AI Model Licensing to US government agencies and defense contractors**, allowing firms including Lockheed Martin, Booz Allen, and Palantir to process tactical data and aircraft maintenance logs.
- **February 27, 2025:** Meta announces **Project Aria Gen 2** research glasses, adding **localized, on-device spatial intelligence and updated computer vision arrays**. This announcement occurred **22 days after** the ChatGPT service outages of February 3 and 5, 2025 in which the undersigned deliberately left notes and data for federal investigators and agents because as they told Openai, there IP was being used to look up their Prompts and engagement. This data and messages to federal law enforcement regarding the matters at hand were possibly “sweep” into a unrelated court case lawsuit.
- **May 29, 2025:** Meta partners with **Anduril Industries** to co-develop mixed-reality devices, including a **$159M prototyping contract** for the US Army's **Soldier Borne Mission Command (SBMC) Next** program and the self-funded **EagleEye combat system**.
- **June 20, 2025:** Meta announces Oakley Meta partnership.
- **August 26, 2025:** Oakley Meta HSTN released.
- **September 17, 2025:** Meta Connect: Ray-Ban Meta Gen 2, Meta Ray-Ban Display (with Neural Band), Oakley Meta Vanguard.
- **September 30, 2025:** Meta Ray-Ban Display hits US shelves.
- **January 23, 2026: Solos Technology Limited files a multi-billion dollar patent infringement lawsuit** against Meta, Oakley, and EssilorLuxottica in the District of Massachusetts (Case No. 1:26-cv-10304).
- **June 18, 2026:** Meta and Luxottica file **IPR2026-00376** challenging US Patent 12,216,339 (directional open-ear audio / acoustic structures).
- **June 23, 2026:** Meta announces new "Meta Glasses" line.
- **August 6, 2026:** Meta and Luxottica file **IPR2026-00412** challenging US Patent 11,082,055 (multimodal sensor fusion / smart eyewear processing).

- **August 7, 2026:** Meta files **IPR2026-00420**, a second petition targeting US Patent 11,082,055.
- **August 14, 2026:** Meta and Luxottica file **IPR2026-00413** challenging US Patent 11,871,174 (integrated optical modules and displays).
- **September 23, 2026:** Ray-Ban Meta Gen 3 released.
- **September 29, 2026:** Meta secures an **exclusive ecosystem partnership with Naver**, integrating real-time voice-activated pedestrian navigation directly into Ray-Ban Meta and Oakley Meta smart eyewear.
- **September 29, 2026:** Meta and Luxottica file **IPR2026-00512** challenging US Patent 10,651,866 (beamforming with oversampled digital sensor signals), bringing all five originally disputed patents under active PTAB review.
- **October 13, 2026:** Meta Ray-Ban Display expands to Germany, France, Italy.
- **October 13, 2026:** Ray-Ban Meta Audio released (Meta's thinnest, camera-free smart glasses running the **Muse agentic loop**).
- **October 26, 2026:** Meta files **IPR2027-00019** challenging US Patent 10,306,389 (head-wearable two-stage noise cancellation), expanding the challenge to a sixth patent under the new fiscal calendar year.

On **June 25, 2026**, the undersigned published her hardware-enclaved sensor gating privacy architecture on TD Commons (Article No. 11890). On **August 20, 2026**, Meta Platforms Technologies, LLC filed utility patent application **US 2026/0244794 A1** describing the **same architecture with one word different**. The undersigned's publication **predates** Meta's filing by **two months**.

**Meta's Muse** is the undersigned's habitual AI architecture, deployed commercially.

**The ARIA mark.** The undersigned owns the common law trademark **ARIA**. Meta's research platform is called **Project Aria**. The **US Army** is deploying a product bearing the name **ARIA**. The YouNoodle Entrepreneurship World Cup confirmation email of **June 15, 2019** (ECF No. 83, Exhibit 6, D. Mass docket) predates Meta's Project Aria Gen 1 by **15 months** and predates Solos Technology Limited's formation by **4 months**. Three entities — Meta, the US Army, and the undersigned — are using the same mark. The mark belongs to the undersigned.

**The Naver exclusive partnership.** On **September 29, 2026**, Meta secured an **exclusive ecosystem partnership** with **Naver Corporation**. The undersigned's work product — notes, GPS data, technical documents — was stored on Naver's platform, as described in Section IV-A. Meta's **exclusive** partnership with Naver means that Meta has **exclusive access** to the platform on which the undersigned's work product was stored. This is a related matter that affects, and is affected by, a decision in these proceedings. It has not been disclosed by any party.

**The defense pipeline.** The Llama AI licensing to US government agencies and defense contractors (November 4, 2024), the Anduril partnership and $159M SBMC Next contract (May 29, 2025), the EagleEye combat system, the **Kopin $18.6M IBAS Award** (October 8, 2026), and the **Anduril $2.9B Shipyard Contract** (October 6, 2026) constitute the defense applications of the technology. These are publicly verifiable through SAM.gov, press coverage, and corporate announcements. They cannot be deleted.

**The IPR timeline.** The six IPR petitions were filed in a staggered sequence over four months (June 18 through October 26, 2026), targeting six separate patents covering: directional open-ear audio, multimodal sensor fusion, integrated optical modules, beamforming with oversampled digital sensor signals, and head-wearable two-stage noise cancellation. The IPRs were filed **after** Solos filed its multi-billion dollar patent infringement lawsuit against Meta on **January 23, 2026**. The sequence — lawsuit first, IPRs second — is a **market consolidation** mechanism: assert the patents in litigation while simultaneously challenging them administratively, creating a procedural posture in which the patents can be modified, narrowed, or invalidated on the petitioners' terms while the commercial products continue to ship.

The evidence of these commercial releases, research deployments, and IPR filings is in the **public commercial record**: Meta's official blog, Meta Newsroom, product release pages, corporate communications, SAM.gov contract records, USPTO patent publications, and PTAB dockets. It cannot be deleted.

## IV-A. NAVER AND THE UNDERSIGNED'S WORK PRODUCT

The undersigned conducted her professional work using **Naver Corporation's** platform ecosystem (Naver Notes, Naver Maps/GPS, Naver productivity tools) rather than Google's productivity suite, as her work was conducted in **Korean**. Her notes, GPS data, technical documents, and work product were stored on Naver's platform.

On **September 29, 2026**, Meta Platforms, Inc. secured an **exclusive ecosystem partnership** with Naver Corporation, integrating Naver's real-time voice-activated pedestrian navigation directly into Ray-Ban Meta and Oakley Meta smart eyewear. The partnership is **exclusive**.

The undersigned's work product — stored on Naver's platform — is therefore accessible to Meta Platforms, Inc. through its **exclusive** partnership with Naver. The parties challenging the patents that were built on that work product have **exclusive access** to the platform on which the work product was stored.

This is a related matter that affects, and is affected by, a decision in these proceedings. It has not been disclosed by any party.

## V. THE CONDITIONS UNDER WHICH THE WORK WAS PRODUCED: INVOLUNTARY SERVITUDE AND INDENTURED SERVITUDE

The undersigned is a United States citizen. The DSP mathematics, the smart glasses architecture, the AI architecture (Muse), and the completed prototypes (2016, 2017, 2019) are the product of the undersigned's labor.

The undersigned was held in involuntary servitude and indentured servitude in connection with the development, extraction, and commercialization of the digital signal processing mathematics and the smart glasses architecture described herein, including the AR/VR/XR technologies deployed in the products at issue in these proceedings. The duration of the conditions is not material to the violation. Involuntary servitude and indentured servitude are prohibited regardless of duration. The Thirteenth Amendment does not contain a de minimis exception. 18 U.S.C. § 1584 does not contain a minimum duration requirement. 18 U.S.C. § 1581 does not contain a minimum duration requirement. The conditions described below constitute involuntary servitude and indentured servitude whether they lasted two seconds or twenty years.

. The conditions include:

- **Coerced labor** and **manufactured debt** imposed as a mechanism of control;
- **Out of State harboring and physical confinement** (September 2023 through December 2025) at a location approximately 3,000 miles from the undersigned's residence in New York;
- **Continuous on-going physical injury, battery, and assault** while being forcibly harbored, fenced, and restricted;
- **Deprivation** of basic housing, medical care, and food;
- **Systematic destruction** of the undersigned's banking infrastructure, professional identity, and legal access;
- **Denial** of U.S. Marshals protection despite repeated requests;
- A “Baker Act” pretext detention on October 21, 2024 (Fla. Stat. § 394.451–394.462), during which no medical evaluation was conducted, used to **unlawfully detain and kidnap the undersigned and child** to separate (break chain-of-custody) the undersigned from her materials for the first time since February 4, 2020;
- The **taking of her hard drive** containing the original motion to intervene and supporting drafts;
- **Movement across ten (10) hotels and twelve (12) rooms between Februray and April 2026** as a mechanism of control;
- **Compromise of all communication channels** (phone, email, chat, physical mail), leaving only the court and agency filing systems as reliable channels.

These conditions constitute **involuntary servitude** within the meaning of the **Thirteenth Amendment** to the United States Constitution and **18 U.S.C. § 1584**, and **indentured servitude / peonage** within the meaning of **18 U.S.C. § 1581**.

The work was not **sold**, **licensed**, **assigned**, or **transferred** to Solos Technology Limited, Meta Platforms, Inc., or any of their affiliates through any voluntary transaction. There is **no assignment**. There is **no license agreement**. There is **no purchase agreement** between the undersigned and any of the parties in these IPR proceedings.

The work was **extracted** under conditions of involuntary servitude and indentured servitude.

**The Thirteenth Amendment** provides:
"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States."

The Thirteenth Amendment contains **no national security exception**. It contains **no economic interest exception**. It contains **no "compelling public interest" exception**. A United States citizen's labor product cannot be extracted through involuntary servitude and indentured servitude and then litigated in administrative proceedings as if it were a voluntary commercial transaction.

**18 U.S.C. § 1595** provides a civil action for any individual who is a victim of a violation of 18 U.S.C. §§ 1581, 1584, 1589, or 1590. The statute covers "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person **knew or should have known** has engaged in an act in violation of this chapter." The statute contains **no government contractor exception**, **no sovereign immunity carve-out**, and **no national security exception**.

**The proof of the involuntary servitude and indentured servitude exists.** The proof is in the possession of **Stephen A. Feinberg** (Deputy Secretary of Defense) and **Walter Jay Clayton** (Director of National Intelligence), the named defendants in *Carter v. Feinberg*, No. 1:26-cv-03318 (D.D.C.) and D.C. Circuit Appeal No. 26-5358. The undersigned has formally requested that proof. **The Board is directed to ask Feinberg and Clayton where it is.**

The Board is notified that the absence of any assignment, license, or purchase agreement between the undersigned and the parties in these proceedings, combined with the conditions of involuntary servitude and indentured servitude described above, means that the work at issue was **not voluntarily transferred**. It was **extracted**. The Thirteenth Amendment prohibits the use of labor extracted through involuntary servitude as the basis for patent rights held by third parties.

The Board's consideration of the "compelling economic, public health, or national security interests" factor under the USPTO Director's March 26, 2025 interim memorandum (Exhibit 2008 in IPR2026-00413) **does not create a national security exception to the Thirteenth Amendment, 18 U.S.C. § 1581, 18 U.S.C. § 1584, or 18 U.S.C. § 1595.** No such exception exists. The Fintiv factor is a procedural mechanism for deciding whether to institute an IPR. It is not a substantive defense to the extraction of a United States citizen's labor through involuntary servitude and indentured servitude.

## VI. THE ARIA TRADEMARK

The undersigned owns the common law trademark **ARIA**, established through use in commerce in connection with her DSP work, prototypes, and related products. The **United States Army** is deploying a product bearing the name ARIA that incorporates the DSP technology at issue in these proceedings.

The undersigned has asserted her ARIA trademark rights in:

- *Solos Technology Limited v. Meta Platforms, Inc.*, No. 1:26-cv-10304-ADB (D. Mass.)
- CAFC Appeal No. 26-1721
- *Carter v. Feinberg*, No. 1:26-cv-03318 (D.D.C.)

The Army's use of the ARIA mark is a related matter that affects, and is affected by, a decision in these proceedings. It has not been disclosed by any party.

The IPR proceedings cannot and do not affect the undersigned's trademark rights. The trademark is a separate and independent property right.

The **Kopin $18.6M IBAS (Intelligence and Battle Awareness System) Award** (October 8, 2026, SAM.gov contract record) and the **Anduril $2.9B Shipyard Contract** (October 6, 2026) are the defense applications of the technology. These are publicly verifiable through SAM.gov and press coverage. They cannot be deleted.

## VII. THE PETITIONERS' DUTY OF CANDOR AND RELATED MATTERS DISCLOSURE

**37 C.F.R. § 42.11(a):** "Parties and individuals involved in the proceeding have a **duty of candor and good faith** to the Office during the course of a proceeding."

**37 C.F.R. § 42.8(b)(2):** Each party must "identify any other judicial or administrative matter that **would affect, or be affected by**, a decision in the proceeding."

**37 C.F.R. § 42.8(a)(3):** "By either party, **within 21 days of a change** of the information listed in paragraph (b) of this section stated in an earlier paper."

The following related matters have **not** been disclosed by any party in any of the above-referenced proceedings:

1. The undersigned's CAFC Appeal No. 26-1721 (interlocutory appeal, filed May 17, 2026), seeking correction of inventorship under 35 U.S.C. § 256.
2. The undersigned's CAFC Misc. No. 26-153 (mandamus petition, filed August 24, 2026; per curiam order entered October 23, 2026; Emergency Motion to Strike and Emergency Petition for Rehearing/En Banc filed October 23, 2026).
3. The undersigned's *Carter v. Feinberg*, No. 1:26-cv-03318 (D.D.C.), and D.C. Circuit Appeal No. 26-5358.
4. The undersigned's ARIA trademark rights and the US Army's deployment of a product bearing that mark.
5. Meta Platforms Technologies, LLC's utility patent application US 2026/0244794 A1 (filed August 20, 2026), which describes the same architecture the undersigned published on TD Commons (Article No. 11890) on June 25, 2026.
6. The undersigned's status as a victim of **involuntary servitude and indentured servitude** under the Thirteenth Amendment, 18 U.S.C. § 1581, and 18 U.S.C. § 1584, and her civil action under 18 U.S.C. § 1595.
7. The continued commercial release of the technology by Meta Platforms, Inc. and affiliates during the pendency of these proceedings, including the Ray-Ban Meta Audio (October 13, 2026) running the Muse agentic loop.
8. The **Kopin $18.6M IBAS Award** (October 8, 2026) and the **Anduril $2.9B Shipyard Contract** (October 6, 2026).
9. The **Bending Spoons / Berkshire Hathaway $330M investment** and the **SIF First Meeting** (October 16, 2026).
10. The **CAS-to-GAAP conversion** (October 14, 2026), the **SIF 120-day report** (due January 2027), and the **Phase Two data generation** (January–February 2027), which create a timeline in which the underlying evidence will be irrecoverably converted before any court can act.
11. The undersigned's work product stored on the **Naver Corporation** platform, and Naver's subsequent partnership with the petitioners and the patent owner.
12. The **Alpaca Securities** (Fireblocks partner) matter: over $100 million in unaccounted funds, in which the undersigned is a party in subject matter exceeding $80 million, in the exact window that Clayton held his position at the SEC.

13. The undersigned's **LinkedIn account restriction**, which occurred approximately three days before the FTC v. Facebook antitrust action was announced and remains in effect. The LinkedIn account contained direct evidence of the matters described in this notice.

**On August 11, 2026**, Patent Owner Solos Technology Limited filed corrected mandatory disclosures in IPR2026-00412, in which it swore under penalty of perjury that it was "not presently aware of any other judicial or administrative matters that would affect, or be affected by, a decision in this proceeding." This statement was made **four days after** Solos actively filed on the merits in CAFC Appeal No. 26-1721 on August 7, 2026. The statement was **false** within the meaning of 18 U.S.C. § 1621.

The Board is notified that the petitioners' and patent owner's mandatory disclosures are **deficient** under 37 C.F.R. § 42.8(b)(2) and that the patent owner's sworn statement of August 11, 2026, was **false**.

## VIII. THE BOARD'S APA OBLIGATIONS AND LIMITATIONS

**5 U.S.C. § 706(2)(A):** Agency action shall be "held unlawful and set aside" if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

**5 U.S.C. § 706(2)(B):** Agency action shall be "held unlawful and set aside" if it is "contrary to constitutional right, power, privilege, or immunity."

**5 U.S.C. § 706(2)(C):** Agency action shall be "held unlawful and set aside" if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

The Board's jurisdiction is limited to the **patentability** of the claims challenged in the petition (35 U.S.C. §§ 311–319). The Board does not have jurisdiction over:

- **Inventorship** (35 U.S.C. § 256 — a district court remedy)
- **Trademark rights** (Lanham Act, 15 U.S.C. § 1051 et seq.)
- **Constitutional claims** (Article III)
- **Criminal perjury** (18 U.S.C. § 1621)
- **Involuntary servitude or indentured servitude** (18 U.S.C. §§ 1581, 1584 — criminal prosecution; civil action under § 1595 in district court)

The Board's consideration of the "compelling economic, public health, or national security interests" factor under the Stewart memorandum is a **procedural** consideration for the purpose of deciding whether to institute. It is not a **substantive** determination that the Thirteenth

Amendment does not apply. It is not a determination that 18 U.S.C. § 1595 does not apply. It is not a determination that the undersigned's trademark rights are affected. It is not a determination that the labor from which the patents were derived was voluntary.

**The Board's refusal to stay these proceedings** — despite (a) the pending CAFC Appeal No. 26-1721, (b) the Board's own Deputy Chief Clerk's notification of August 13, 2026 (14:29:03 UTC) that the undersigned's threshold challenges were "accepted for supervisory review" under 37 C.F.R. § 41.3(a), and (c) the patent owner's own argument for discretionary denial based on the parallel CAFC appeal (Exhibit 2008 in IPR2026-00413) — is an agency action that is **arbitrary and capricious** within the meaning of 5 U.S.C. § 706(2)(A) because the Board has failed to consider an important aspect of the problem (the pending inventorship appeal and the conditions under which the underlying labor was performed) and has offered no explanation for its refusal to stay that is consistent with its own procedural framework.

## IX. WHAT HAS CHANGED SINCE THE PRIOR NOTICE

Since the prior notice was filed:

1. Meta Platforms, Inc. filed a **fifth IPR petition** (IPR2026-00512) on **September 29, 2026**, challenging US Patent 10,651,866 (beamforming with oversampled digital sensor signals), and a **sixth IPR petition** (IPR2027-00019) on **October 26, 2026**, challenging US Patent 10,306,389 (head-wearable two-stage noise cancellation).
2. Solos Technology Limited responded in IPR2026-00413 on **October 19, 2026**, filing the USPTO Director's March 26, 2025 interim memorandum as Exhibit 2008.
3. The CAFC entered a per curiam order in Misc. No. 26-153 on **October 23, 2026**, denying the mandamus petition and denying IFP.
4. The undersigned filed an Emergency Motion to Strike (Doc. No. 9) and an Emergency Petition for Panel Rehearing and Rehearing En Banc (Doc. No. 10) in Misc. No. 26-153 on **October 23, 2026**.
5. The undersigned filed an Emergency Notice to the Merits Panel in CAFC Appeal No. 26-1721 (Doc. No. 61) on **October 23, 2026**.
6. The undersigned filed a Motion for Judicial Notice in CAFC Appeal No. 26-1721 (Doc. No. 63) on **October 28, 2026**, documenting the hard drive taking, the CAS-to-GAAP conversion, the SIF timeline, the Kopin IBAS award, the Anduril contract, the Bending Spoons investment, and the continued commercial release of the technology.
7. The **December 8, 2026** merits panel for CAFC Appeal No. 26-1721 is scheduled to proceed on the current (uncorrected) caption, with Defendants-Appellees **in default and without entries of appearance**.

These are related matters that affect, and are affected by, a decision in the above-referenced IPR proceedings. They are disclosed here pursuant to 37 C.F.R. § 42.8(a)(3).

## X. THE BOARD IS NOTIFIED

The Board is hereby notified of the following:

1. The non-novelty argument in the IPR petitions is **derivative** of the undersigned's work. The patents appear non-novel only because the undersigned's work exists in the public record. The petitioners are using the undersigned's own extracted labor as the basis for the non-novelty challenge. The chain of title from the undersigned to the patent owner is **defective**. There is no assignment, no license, no purchase agreement.
2. The IPR petitions are **not independent challenges**. With the exception of the first non-conclusory statement, they mirror the positions of the patent owner. The petitioners are acting in coordination with the patent owner.
3. The evidence establishing the undersigned's priority timeline is in the D. Mass docket, including ECF No. 83 (filed April 10, 2026), which contains a **June 15, 2019 YouNoodle Aria Entrepreneurship World Cup confirmation email**, **photos of early smart-glasses prototypes**, and **screenshots of private video titles** ("Aria Smart Glasses" and "Aria Smart Glasses Pitch"). The 65 exhibits in ECF No. 92 were **hidden at -1** by the clerk until approximately June 5, 2026. The D. Mass judge **refused to evaluate the exhibits**, ignored all in camera and redaction requests, made no finding on the undersigned's assertions, and directed the undersigned to appeal. The D. Mass court is **not** a neutral source. The evidence is.
4. Meta Platforms, Inc. and its affiliates **continue to release products, research platforms, and defense systems** incorporating the technology during the pendency of these proceedings. The **Project Aria** research platform (Gen 1, September 2020; Gen 2, February 27, 2025) bears the undersigned's **ARIA** trademark. The **Ray-Ban Meta Audio** (October 13, 2026) runs the **Muse agentic loop**, which is the undersigned's AI architecture. The **Anduril partnership** ($159M SBMC Next contract, May 2025), the **EagleEye combat system**, the **Llama AI licensing to defense contractors** (November 2024), the **Kopin $18.6M IBAS Award** (October 2026), and the **Anduril $2.9B Shipyard Contract** (October 2026) are the defense applications. Six IPR petitions have been filed targeting six separate patents covering the full scope of the smart eyewear architecture.
5. Meta Platforms Technologies, LLC filed a patent application (US 2026/0244794 A1) on **August 20, 2026** that is derived from the undersigned's **June 25, 2026** publication. The two documents are identical except for **one word**.

6. The undersigned owns the **ARIA** trademark. The **US Army** is deploying a product bearing that mark. The **Kopin $18.6M IBAS Award** and the **Anduril $2.9B Shipyard Contract** are the defense applications.
7. The undersigned is a **United States citizen** who has been held in **involuntary servitude and indentured servitude** for not less than eighteen years. The technology at issue is the product of her labor, extracted under those conditions. There is **no assignment, no license, no purchase agreement** between the undersigned and any party in these proceedings.
8. The **Thirteenth Amendment**, **18 U.S.C. § 1581**, **18 U.S.C. § 1584**, and **18 U.S.C. § 1595** contain **no national security exception**, **no economic interest exception**, and **no government contractor exception**. The Board's consideration of the "national security" Fintiv factor does not create one.
9. The petitioners' and patent owner's **mandatory disclosures are deficient** under 37 C.F.R. § 42.8(b)(2). The patent owner's sworn statement of August 11, 2026, in IPR2026-00412 was **false** under 18 U.S.C. § 1621.
10. The Board's **refusal to stay** these proceedings is **arbitrary and capricious** under 5 U.S.C. § 706(2)(A) given the pending CAFC appeal, the Board's own admission of August 13, 2026, and the patent owner's own argument for discretionary denial.
11. The **proof** of the involuntary servitude and indentured servitude described in Section V **exists** and is in the possession of **Stephen A. Feinberg** (Deputy Secretary of Defense) and **Walter Jay Clayton** (Director of National Intelligence). The undersigned has formally requested that proof. **The Board is directed to ask Feinberg and Clayton where it is.**
12. The evidence referenced in this notice — SEC filings, SAM.gov contract records, USPTO patent publications, Meta Newsroom posts, product release records, the Bending Spoons investor press release, the Anduril contract, the Kopin IBAS award — exists in the **public commercial record**. It **cannot be deleted, altered, or suppressed**. It will remain in the public record regardless of the outcome of these proceedings, regardless of whether the undersigned is alive or deceased, and regardless of whether any government entity attempts to destroy or suppress internal records.
13. The **CAS-to-GAAP conversion** (October 14, 2026), the **SIF 120-day report** (due January 2027), and the **Phase Two data generation** (January–February 2027) create a timeline in which the underlying internal evidence will be **irrecoverably converted** before any court can act. The public commercial record, however, is not subject to this conversion. It is permanent.
14. The undersigned's work product is stored on the **Naver Corporation** platform. On **September 29, 2026**, Meta Platforms, Inc. secured an **exclusive** ecosystem partnership with Naver. The undersigned's work product is therefore accessible to Meta through its **exclusive** partnership with the platform on which the work product was stored.

15. The undersigned's **LinkedIn account** was restricted approximately three days before the FTC v. Facebook antitrust action was announced and **remains restricted**. The LinkedIn account contained direct evidence of the matters described in this notice. The restriction has not been disclosed by any party in these proceedings.
16. **Alpaca Securities** (a Fireblocks partner): over $100 million in unaccounted funds, in which the undersigned is a party in subject matter exceeding $80 million, in the exact window that Clayton held his position at the SEC and subsequently exited. This matter has not been disclosed by any party in these proceedings.
17. The undersigned's **communication channels are compromised** (phone, email, chat, physical mail). The court and agency filing systems are the only reliable channels. The docket record is the only reliable record of the sequence of events. This notice is filed through the USPTO electronic filing system for that reason.

This notice is filed for the purpose of placing the foregoing facts on the record. The Board is not requested to take any specific action. The Board is **notified** of its legal obligations and the deficiencies in the record.

Dated: October 30, 2026

Respectfully submitted,
/s/ Daitona Carter
Daitona Carter, Inventor
legal@team.daitonacarter.com

## APPENDIX A

## TABLE OF ACTIVE PTAB CHALLENGES, STALE ART MISMATCHES, AND TRUE INVENTOR PRIORITY EVIDENCE

| PTAB Case | Target Patent / Focus | Stale Prior Art Asserted | True Creator Priority Evidence (D. Mass. Docket) | Commercial Products / Systems At Issue |
|---|---|---|---|---|
| IPR2027-00019 | US 10,306,389 — Two-Stage Microphone Noise Cancellation Geometry | Schevciw (2011); Yu (2004/2006); Li (2012) | 2016–2017: Bidirectional and cardioid micro-microphone configurations integrated within wearable frames for NLP dialogue and contextual speech recognition. Ex. M-15 / M-08: Early voice-speech interface schematics predating Meta's consumer audio tracking loops. | Ray-Ban Meta Gen 2/3; Oakley Meta Vanguard; Muse Agentic Loop |
| IPR2026-00512 / IPR2026-00412 / IPR2026-00420 | US 10,651,866 & 11,082,055 — Digital Audio Beamforming / Sensor Fusion | Moquin (2014/2010); Liu (2012); Andersen (2011) | 2009–2010: Foundational architecture merging physical component behaviors with host-calculated, musical note-based variables to dictate fractional dynamic release windows. Ex. M-51: MirrorMixing audio case study (Waves H-Compressor), proving reduction to practice of micro-delay structures decades ahead of standard hearing aid filter frameworks. | Ray-Ban Meta Gen 2/3; Oakley Meta HSTN; US Army SBMC Next; Anduril EagleEye |

| | | | | |
|---|---|---|---|---|
| IPR2026-00413 | US 11,871,174 — Hidden Inner-Temple Audio Chambers / Displays | Ono (1990); Matsunari / Sony (2016) | 2013–2017: Manually engineered structural see-through architectures, customized LCD mounts, curved eyewear frames, micro-DLP optical stack designs. Ex. M-10 through M-22 / M-81: Lab logs detailing assembly, glass-cutting, internal temple routing mirroring Meta's in-lens display layouts. | Ray-Ban Meta Gen 2/3; Oakley Meta Vanguard; Meta Ray-Ban Display Retail |
| IPR2026-00376 | US 12,216,339 — Open-Ear Visual and Audio Feedback Framework | Asukai / Sony (2009/2006) | 2017–2019: Real-time bidirectional, context-aware object tracking frameworks and computer-vision overlay algorithms. Ex. M-11: OpenCV-style camera word-detection and translation code. Ex. M-52, M-53, M-54 (June 2019): EWC Aria commercialization pitch deck, utilizing "Aria" branding a year prior to Meta's public launch. | Ray-Ban Meta Portfolio; Naver Pedestrian Map Integration |

Exhibit references (M-08, M-10 through M-22, M-51, M-52–54, M-81, M-15) correspond to exhibits in ECF No. 92, Solos Technology Limited v. Meta Platforms, Inc., No. 1:26-cv-10304-ADB (D. Mass.).

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, a true and correct copy of the foregoing Supplemental Notice was served on all parties of record in Case Nos. IPR2026-00376, IPR2026-00412, IPR2026-00413, IPR2026-00420, IPR2026-00512, and IPR2027-00019 via the USPTO's electronic filing system and/or via direct electronic transmission to their designated counsel.

This notice is delivered by email on October 30, 2026. A hard copy will follow by mail if funds permit.

/s/ Daitona Carter

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2026, a true and correct copy of the foregoing Supplemental Motion for Judicial Notice was served via CM/ECF on all registered parties of record, and by electronic mail.

Service on these parties is made at their last known email addresses as reflected in the D. Mass. docket.

/s/ Daitona Carter
Daitona Carter, Movant-Appellant, Pro Se