26-1721

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

SOLOS TECHNOLOGY LIMITED,
Plaintiff-Appellee

v.

META PLATFORMS, INC.,META PLATFORMS TECHNOLOGIES, LLC, OAKLEY, INC.,LUXOTTICA OF AMERICA, INC., ESSILORLUXOTTICA, USA, LLC,

Defendants

DAITONA CARTER,
Movant-Appellant

---

Appeal from the United States District Court for the Massachusetts in No. 1:26-cv–10304–ADB, Judge Allison D. Burroughs
Merits Panel Submission Date: December 8, 2026

---

# MOTION FOR JUDICIAL NOTICE OF NEWLY PUBLIC FACTS

---

Appellant Daitona Carter, proceeding pro se, respectfully moves this Court, pursuant to Federal Rule of Evidence 201(b)(2) and this Court's inherent authority to take judicial notice at any stage of the proceeding, see Fed. R. Evid. 201(d), for

judicial notice of the following facts. Each fact became public after the close of briefing and is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. These facts are material to this Court's determination of inventorship and to its exercise of discretion regarding a stay pending resolution of this appeal.

The motion judge has indicated that all motions in this case are now forwarded to the panel. Appellant respectfully requests that this motion be considered by the panel in connection with the December 8, 2026 argument.

Exhibits A–Q, referenced below, will be filed by supplemental filing within 24 hours.

## I. FACTS SUBJECT TO JUDICIAL NOTICE

**1.** On November 4, 2026, Defendants-Appellees filed "Defendants' Notice of Inter Partes Review Filings" in Solos Limited v. Meta Platforms, Inc., No. 1:26-cv-10304-ADB (D. Mass.), ECF No. 117. The notice certifies that six active PTAB petitions are material to the district court action.

(Source: D. Mass. docket, publicly accessible. Exhibit A.)

**2.** On September 30, 2025, Meta Platforms released the Meta Ray-Ban Display AI smart glasses to consumers at $799. The product

integrates in-lens display architecture, signal processing, and content playback capabilities.

(Source: Meta press release, Sept. 17, 2025; about.fb.com/news/2025/09/meta-ray-ban-display-ai-glasses-emg-wristband/. Exhibit B.)

**3.** On September 23, 2026, Meta Platforms announced Meta VR Glasses, scheduled for consumer release in Spring 2027. The product integrates the same signal-processing and display architecture at issue in this litigation.

(Source: Meta blog, Sept. 23, 2026; meta.com/blog/meta-vr-glasses announcement-meta-connect/. Exhibit B.)

**4.** On November 3, 2026, Mercedes-Benz publicly announced its "Holo Display" holographic windshield technology and simultaneously announced a partnership with Meta to integrate Meta smart glasses into the Mercedes vehicle experience beginning early 2027, initially in models running MB.OS. Navigation, the Mercedes assistant, messages, and calls are to be relayed through the glasses.

(Source: Mercedes-Benz press release, Nov. 3, 2026, media.mercedes-benz.com; media.mbusa.com. Exhibit B.)

**5.** On October 13, 2026, Attorney General Todd Blanche issued a memorandum establishing the DOJ Super Intelligence Task Force (DOJ-SITF). Publicly released November 5, 2026. The DOJ-SITF coordinates "criminal and civil law enforcement efforts involving Super Intelligence" and serves as principal point of contact with the White House SIF.

(Source: justice.gov/opa, Oct. 13, 2026; DOJ press release, Nov. 5, 2026. Exhibit C.)

**6.** The DOJ press release of November 5, 2026, identifies SIF Chair Jay Clayton and states the task force will "facilitate our partnership with SI Force Chair Jay Clayton."

(Source: DOJ press release, Nov. 5, 2026. Exhibit C.)

**7.** Jay Clayton held the following positions during the period in which the events documented on the docket occurred: Chairman, SEC (May 2017– Dec. 2020); Chairman of the Board, Apollo Global Management (Mar. 2021–Apr. 2025); U.S. Attorney, S.D.N.Y. (Apr. 2025–July 2026); Director of National Intelligence (sworn in Aug. 3, 2026); White House AI Czar / SIF Chair (Oct. 2026–present).

(Source: sec.gov; apollo.com press releases Feb. 18, 2021 and Apr.

17, 2025; SDNY court order Aug. 20, 2025; odni.gov Aug. 3, 2026; whitehouse.gov Oct. 4, 2026. Exhibit D.)

**8.** Executive Order 14434, Inaugurating the Era of Super Intelligence, signed Sept. 29, 2026, published at 91 FR 63129 (Oct. 2, 2026). Section 1 directs the executive branch to use "Super Intelligence" in place of "Artificial Intelligence" and "will not acknowledge the usage of 'Artificial' and 'AI' in any applicable setting." Section 3(a) defines SI as technologies encompassed by 15 U.S.C. § 9401(3). The SIF reports directly to the President and the White House Chief of Staff.

(Source: federalregister.gov, 91 FR 63129; CNN, Oct. 4, 2026. Exhibit E.)

**9.** On November 5, 2026, Harmeet Dhillon resigned as AAG for the Civil Rights Division.

(Source: AG Blanche public announcement, Nov. 5, 2026. Exhibit F.)

**10.** On November 6, 2026, Jason Reding Quiñones resigned as U.S. Attorney, S.D. Florida.

(Source: AG Blanche public announcement, Nov. 6, 2026. Exhibit G.)

**11.** On November 6, 2026, John Eisenberg resigned as AAG for the National Security Division.

(Source: AG Blanche public announcement, Nov. 6, 2026. Exhibit G.)

**12.** On March 30, 2026, Appellant's motion was entered on the docket in the lower court. On April 2, 2026 — three days later — President Trump removed AG Pam Bondi. Todd Blanche named interim AG. Publicly stated reason: Epstein files.

(Source: Trump Truth Social, Apr. 2, 2026; Reuters, Apr. 2, 2026; PBS, Apr. 2, 2026. Exhibit H.)

**13.** Bradley J. Bondi, brother of former AG Pam Bondi, is a Partner and Global Co-Chair of Investigations & White Collar Defense at Paul Hastings LLP (defendants' counsel in the underlying D. Mass. proceedings). He previously served on the Executive Staff of the SEC as Counsel to two SEC Commissioners (2008–2010).

(Source: paulhastings.com; Paul Hastings press release, Apr. 3, 2023. Exhibit I.)

**14.** In February 2026, the House Financial Services Committee publicly raised concerns that the DOJ under AG Bondi had taken "several unusual actions that appear to benefit" Brad Bondi in his

private practice matters.

(Source: min.house.gov press release, Feb. 17, 2026. Exhibit I.)

**15.** On November 9, 2026, Brett Shumate resigned as AAG for the Civil Division.

(Source: AG Blanche public announcement, Nov. 9, 2026. Exhibit J.)

**16.** On November 9, 2026, Henry Whitaker resigned as Acting AAG for the Office of Legal Counsel.

(Source: DOJ confirmation, Nov. 9, 2026. Exhibit J.)

**17.** On October 23, 2026, the per curiam order in No. 26-153 (Chen, Linn, Cunningham) denied the petition for mandamus. The order described the petition as arising from Appellant having "unsuccessfully attempted to participate in inter partes review proceedings before the PTAB" and directed that "She may raise her arguments and requests for relief related to the district court action in Appeal No. 2026-1721."

(Source: CAFC docket, No. 26-153, Dkt. No. 8. Exhibit K.)

**18.** On October 23, 2026, Appellant filed a motion to strike (Dkt. 9) and a petition for en banc rehearing (Dkt. 10) in No. 26-153. Both

remain pending.

(Source: CAFC docket, No. 26-153, Dkt. Nos. 9–10. Exhibit K.)

**19.** On November 6, 2026, "The Joe Rogan Experience" Ep. 2578 featuring Calley Means (former senior HHS adviser, resigned Oct. 22, 2026) was published. Means alleged that a "concentrated group of people in the Trump administration" had "catered to special interests" and that the administration gave "the most centralized control, up to the chief of staff's office, of any administration in American history."

(Source: JOE, Ep. 2578, Nov. 6, 2026; WaPo, Nov. 8, 2026; CNN, Nov. 9, 2026. Exhibit L.)

**20.** On November 7, 2026, Senator Ron Johnson (R-WI) stated on Fox News: "Calley lays out in gory detail the corruption. The bipartisan corruption within all branches of government." He added the corruption is "happening throughout government agency after government agency, captured by the very … corporations that are regulated by government."

(Source: Fox News, Nov. 7, 2026; WaPo, Nov. 8, 2026; MJS, Nov. 8, 2026. Exhibit L.)

**21**. On May 22, 2026, Amaryllis Fox Kennedy — former CIA officer, Deputy DNI for Policy and Capabilities (under DNI Gabbard), and OMB Associate Director for Intelligence (oversaw budgets of all 18 intelligence agencies) — resigned. On June 3, 2026, she told the WSJ: "I couldn't keep signing the checks. I would have become complicit."

(Source: WSJ, June 3, 2026; WaPo, May 19, 2026; ICIJ, May 20, 2026. Exhibit M.)

**22.** On July 15, 2026, Fox Kennedy joined Ballard Partners as Co-Chair of its Emerging Technology and AI Practice Group. Her bio describes her career as "at the nexus of natural language processing, early artificial intelligence." She continues to serve on the President's Intelligence Advisory Board. Anthropic paid Ballard $380,000 in Q3 2026.

(Source: ballardpartners.com, July 15, 2026; Bloomberg Gov, July 15, 2026. Exhibit M.)

**23**. On October 6, 2026, David J. Rush, former senior executive in the CIA's Directorate of Science and Technology, pleaded guilty to wire fraud. He had served as liaison to DoD for sensitive military programs and worked closely with Deputy Secretary of Defense

Stephen A. Feinberg. He [allegedly] fabricated a fake Special Access Program, acting as his own approving authority, to divert ~$194 million including 298 gold bars. Sentencing: January 28, 2027. (Source: DOJ, Oct. 6, 2026; NBC, Oct. 6, 2026; NYT, May 30, 2026; BBC, Oct. 6, 2026. Exhibit M.)

**24.** DOJ-released Epstein financial files contain June 2014 Ameriprise brokerage statements showing Jeffrey Epstein held $213,004 in Torchlight Energy Resources (67 transactions). Torchlight became Meta Materials, Inc. (NASDAQ: MMAT, MMTLP (gray market) →NBH (Nextbridge Hydrocarbons -private)) in June 2021. SEC issued cease-and-desist order against Meta Materials in 2024 (Release No. 33-11292). (Source: justice.gov Epstein files; Poliscio Analytics LLC; sec.gov, Release 33-11292. Exhibit N.)

**25.** On November 6, 2026, President Trump removed Susie Wiles as Chief of Staff. Stephen Miller named replacement, effective Nov. 9, 2026. The SIF was structured to report directly to the President and the Chief of Staff. (Source: Trump Truth Social, Nov. 6, 2026; NYT, Nov. 9, 2026; CBS, Nov. 6, 2026. Exhibit O.)

**26.** On November 6, 2026 — the same day Wiles departed — White House Deputy Chief of Staff Richard Walters, described by Axios as one of Wiles' "closest political lieutenants," submitted his resignation.

(Source: Axios, Nov. 8, 2026; CBS, Nov. 8, 2026; The Hill, Nov. 9, 2026. Exhibit O.)

**27.** On November 8, 2026, Calley Means publicly demanded on X that Wiles, Ballard Partners, and Continental Strategy "immediately preserve all potentially relevant records and communications," including "emails, text messages, Signal, WhatsApp, encrypted or disappearing messages, attachments, drafts, and relevant electronically stored records." Brian Ballard responded Nov. 9, 2026, stating Means' claims about Ballard Partners "are false."

(Source: Means, X, Nov. 8, 2026; The Hill, Nov. 8, 2026; Ballard, X, Nov. 9, 2026. Exhibit O.)

**28.** On November 8, 2026, Calley Means appeared on CBS "Face t he Nation" and alleged that Ballard Partners "controlled" White House policy. CBS reported Ballard earned $186 million during the administration's first two years ($98.1M in 2026, 399 clients).

(Source: CBS, Nov. 8, 2026; CBS News, Nov. 10, 2026; OpenSecrets, Oct. 20, 2026. Exhibit O.)

**29.** Meta Platforms, Inc. retained Ballard Partners for federal lobbying, including advocacy on executive branch policies and algorithmic tracking protocols.

(Source: OpenSecrets lobbying disclosures; The AI Lobby. Exhibit P.)

**30.** Kopin Corporation holds a 20.0% equity stake in Solos Incorporation (1,172,000 shares, per its SEC Form 10-Q), as consideration for asset-licensing and transfer agreements involving audio and smart optical technologies.

(Source: Kopin SEC Form 10-Q; SEC EDGAR. Exhibit P.)

**31.** ECF No. 110 in Solos Limited v. Meta Platforms (D. Mass.) alleged a decade-long infrastructure overlap involving Northrop Grumman and Facebook user accounts dating to at least 2013. The court issued ECF No. 113, sealing the entries.

(Source: PACER, D. Mass., ECF Nos. 110 & 113. Exhibit P.)

**32.** Published reporting documents that Israeli Defense Ministry–overseen ad-tech firms Discover-Tech and Rayzone used commercial ad bidding to construct geolocation and identity tracking infrastructure

across consumer platforms.

(Source: The Hindu, Nov. 2026; Meta transparency reporting. Exhibit P.)

**33**. Ballard Partners reported $82–88M in annualized federal lobbying revenue (top firm). It has a Tel Aviv office (opened April 2020) to "assist Israeli companies needing representation in the United States."

(Source: LegiStorm; OpenSecrets; ballardpartners.com; PRNewswire, Apr. 27, 2020. Exhibit O.)

**34.** Northrop Grumman Systems Corp. retained Ballard Partners in March 2026 to lobby on "matters relating to the defense industrial base and federal government procurement."

(Source: Politico, Mar. 31, 2026; LegiStorm. Exhibit O.)

**35**. On September 8, 2025, the Army awarded Anduril a $159M prototyping contract for SBMC (formerly IVAS Next). On August 17, 2026, Anduril unveiled SBMC Phase 2 integrating Meta and Oakley smart glasses. Phase 2 delivery: 170 units to the Army, January–February 2027.

(Source: Anduril public announcements; Army contract records. Exhibit Q.)

**36.** In November 2026, Anduril's board authorized a $1.3B employee stock tender at $94.80/share ($90B cap). The tender deadline was November 9, 2026. Anduril reported $1.4B in annualized defense revenues. On October 5, 2026, the Army awarded Anduril a $1.8B NGC2 fielding contract.
(Source: Anduril public disclosures; Army contract announcements. Exhibit Q.)

**37.** In Carter v. Feinberg, No. 1:26-cv-03318 (D.D.C.), Judge Mehta denied TRO/PI motions on October 13, 2026 (Dkt. 21) and October 14, 2026 (Dkt. 24). Those orders are under active appeal in CADC No. 26-5358. The November 6, 2026 Minute Order (Dkt. 33) and November 10, 2026 Minute Order (Dkt. 34/35) have not been appealed. An ex parte TRO (Dkt. 36, filed Nov. 9, 2026) remains pending. The Amended Complaint (Dkt. 14) names Feinberg, Hegseth, and Clayton.
(Source: D.D.C. docket, No. 1:26-cv-03318, Dkt. Nos. 14, 21, 24, 25, 31–36, 34/35 order. Exhibit Q.)

**38.** The Feinberg report, on the D.D.C. record, states that CAS-to-GAAP conversion "cannot be done" with respect to the records at issue.
(Source: D.D.C. docket, No. 1:26-cv-03318, Dkt 31.
Exhibit Q.)

**39.** Appellant's 2017 prototypes (ECF No. 92, D. Mass., unaltered file-system timestamps) demonstrated hardware-enclaved signal-processing architectures capable of displaying and playing content. The 2019 prototype iteration (documented in a video on Appellant's public YouTube channel) demonstrated the perfected content-display function. The Meta Ray-Ban Display (Fact 2), Meta VR Glasses (Fact 3), and Mercedes-Benz Holo Display (Fact 4) deploy the same category of technology.
(Source: PACER, D. Mass., ECF No. 92; Appellant's YouTube channel; Meta product pages. Exhibit B.)

**40.** On November 10, 2026, Judge Mehta denied Plaintiff's Corrected Motion to Correct Factual and Legal Errors (Dkt. 34/35, filed Nov. 9, 2026). This is the fourth denial of injunctive or corrective relief in this action.

(Source: D.D.C. docket, No. 1:26-cv-03318, Dkt. 34/35 order, Nov. 10, 2026. Exhibit Q.)

**41.** Ethan P. Davis served as Acting Assistant Attorney General in charge of the DOJ Civil Division (2019–2020), where he "supervised the Division's civil defensive work, as well as implementation of the Division's corporate enforcement policies." He departed the DOJ on September 7, 2020. In January 2025, Meta Platforms appointed Davis as Vice President, Associate General Counsel, and Head of Global Litigation Strategy. His role at Meta includes "the defense of investigations commenced by Congress, the FTC, DOJ, the SEC, and state Attorneys General."

(Source: DOJ press release, Sept. 2020; Reuters, Jan. 8, 2025; Meta corporate bio; Bloomberg Law, Jan. 10, 2025. Exhibit O.)

**42.** On November 2, 2026, OpenAI announced the hiring of Dan Driscoll — the 26th Secretary of the U.S. Army (confirmed Feb. 25, 2025; resigned late August 2026 after "repeated conflicts with Pentagon chief Pete Hegseth") — as Senior Counselor for National Security Modernization. As Secretary of the Army, Driscoll had direct signing authority over Army contracts, including the SBMC program and Project ARIA. Defense Secretary Pete Hegseth is a named

defendant in Carter v. Feinberg, No. 1:26-cv-03318 (D.D.C.).
(Source: OpenAI announcement, Nov. 2, 2026; Bloomberg, Nov. 3, 2026; CNBC, Nov. 3, 2026; Breaking Defense, Nov. 3, 2026. Exhibit O.)

**43.** Kopin Corporation, the sole U.S.-based supplier of critical microdisplays for defense AR/VR applications, holds active DoD contracts for SBMC including a $15.4M IBAS award (September 2025) and a Phase I SBIR for soldier-borne MicroLED displays (March 2026). Kopin's CEO has publicly stated the company's MicroLED capability "will go into multiple programs like Soldier Borne systems." The November 14, 2026 CASB deadline is the date by which the format for SBMC Phase 2 data generation (beginning January 2027) is locked in.
(Source: Kopin public statements; DoD contract records; D.D.C. docket. Exhibit Q.)

## II. RELEVANCE TO THIS APPEAL

These facts are relevant to this Court's determination of inventorship and to its exercise of discretion regarding a stay pending resolution of this appeal for the following reasons:

### A. The IPR Notice creates a record contradiction bearing on mootness.

In the PTAB proceedings, both the Patent Owner and the Petitioners filed disclosures under 37 C.F.R. § 42.8(b)(2) certifying under penalty of perjury that no other related judicial matters exist. Yet ECF No. 117 certifies that all six PTAB petitions are material to the district court action. The concurrent Article III appeal has been concealed from the USPTO to evade a mandatory administrative stay under the Fintiv standard, while those same hidden dockets are being weaponized before the District Court to render this appeal moot. The serial-petition strategy is already on the record via Appellant's prior Motion for Judicial Notice (Dkt. No. 41). ECF No. 117 is new because it is the Appellees' own certification that those petitions are material to the district court action. The panel should be aware of this contradiction in exercising its discretion.

### B. The Meta products, Mercedes-Benz partnership, and Anduril deployment confirm ongoing, irreversible commercialization and dual- use deployment of Appellant's architecture.

The Meta Ray-Ban Display (released Sept. 2025, Fact 2), Meta VR Glasses (announced Sept. 2026, Spring 2027 release, Fact 3), and the Mercedes-Benz Holo Display partnership (Nov. 2026, Fact 4) all deploy the same signal-processing and display architecture documented in Appellant's 2017 prototypes (ECF No. 92) and

2019 prototype iteration (Fact 39). The Anduril SBMC Phase 2 (integrating Meta/Oakley smart glasses, delivery Jan–Feb 2027, Fact 35) deploys the same architecture to the military. This is not a theoretical or future harm. The commercial deployment is already live (Ray-Ban Display), scheduled (VR Glasses Spring 2027, Mercedes early 2027), and contracted (Anduril Phase 2 Jan–Feb 2027). The dual-use nature is confirmed by the same set of announcements. Each day of delay increases the irreversibility.

**The Solos holding structure.**

Solos Technology Limited (parent: Solos Incorporation) was the entity through which the IP was held for dual-use purposes. Kopin Corporation holds a 20.0% equity stake in Solos Incorporation (Fact 30) and holds active DoD contracts for SBMC including a $15.4M IBAS award and a Phase I SBIR for soldier-borne MicroLED displays (Fact 43). Meta Platforms commercialized the technology to consumers and for dual-use military deployment while Solos held the patents subject to active IPR challenges. The caption was never corrected to reflect the parties actually doing the commercializing (Part II.D). The result: the entity holding the IP is being invalidated at the PTAB, the entity commercializing the technology is not before this Court as an Appellee of record, and the entity deploying it to the military (Anduril) is not a party in any of the proceedings.

**The three display form factors.**

Appellant's architecture encompasses three distinct display form factors, all now publicly deployed or scheduled: (a) microdisplay/TV displays, deployed through Kopin into SBMC (Fact 43); (b) wearable displays, the subject of Solos v. Meta (Facts 2–3); and (c) HUD displays, with a 2017 Mercedes Korea connection documented in Appellant's exhibits (ECF No. 92), now publicly confirmed by Mercedes-Benz's November 3, 2026 "Holo Display" announcement (Fact 4). The characterization of this work as "generalized work in smart glasses technology" (D. Mass., ECF No. 107) is a misstatement of the record.

### C. The DOJ-SITF/SIF structure is designed to block Appellant's constructive trust remedy while the technology is exploited.

The record before this Court includes Appellant's prior request for a constructive trust (the "Feinberg memo"), Dkt. No. 19 (May 15, 2026 and Dkt No. 47 (Sept. 21, 2026), directed at the office of Deputy Secretary of Defense Stephen A. Feinberg. The DOJ-SITF — created October 13, 2026, publicly released November 5, 2026 — is the enforcement mechanism that exists to coordinate "criminal and civil law enforcement efforts involving Super Intelligence." The SIF, which the DOJ-SITF serves, is chaired by Defendant Jay Clayton.

The structural consequence: the executive branch has created an entity whose function is to manage the legal treatment of the exact technology Appellant claims was taken from her, and that entity is chaired by a named defendant.

Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803). Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952). Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

The same individual sat at the head of the entity or department at each stage.

- 2017–2020 — SEC Chairman: Dkt 56;
- 2021–2025 — Chairman of the Board, Apollo Global Management: Dkt 56;
- 2025–2026 — U.S. Attorney, S.D.N.Y.: Dkt 56;
- 2026 — Director of National Intelligence: Dkt 56;
- 2026 — SIF Chair / AI Czar: Dkt 56.

**The people who were supposed to investigate are now at the companies doing the exploiting.**

The former head of the DOJ Civil Division — the division responsible for defending the federal government in civil litigation and implementing corporate enforcement policies — is now the head of Meta's global litigation strategy (Fact 41). The former Secretary of the Army — who had signing authority over the SBMC contracts — now advises OpenAI on national security modernization (Fact 42). The person who signed the contracts is now at a competing AI company. The person who was supposed to investigate is now litigating for the party that took the work.

### D. The mandamus in No. 26-153 was mischaracterized, and the non-party caption allows the exploiting parties to hide behind procedural default.

On appeal in No. 26-153 — a separate proceeding before a different panel (Linn, Chen, Cunningham) — Appellant filed an emergency petition for a writ of mandamus on August 14, 2026, seeking three discrete forms of relief: (1) correction of the appellate caption to include all indispensable lower-court parties as Appellees; (2) compulsion of Appellees' counsel to file entries of appearance under Fed. Cir. R. 47.3(b)(1); and (3) a stay of PTAB proceedings IPR2026-00376, IPR2026-00412, and IPR2026-00420.

The per curiam order of October 23, 2026 denied the petition in its entirety. The order mischaracterized the petition, describing it as arising from Appellant having "unsuccessfully attempted to participate in inter partes review proceedings before the PTAB." That is not what the petition asked for. The petition did not ask to participate in the PTAB. It asked this Court to exercise its appellate jurisdiction over the caption and to stay the PTAB proceedings to protect that jurisdiction.

The order further stated: "She may raise her arguments and requests for relief related to the district court action in Appeal No. 2026-1721." Appellant does so now.

The practical consequence of the non-party status is not that these entities are "unbound" by this Court's orders. They are bound. Fed. R. App. P. 21 and Fed.

R. App. P. 47 impose obligations on all parties named in the appeal. The problem is what they have done with that binding:

- In the district court, they did not contest Appellant's inventorship. They did not file an opposition, a declaration, or any argument against her claim of sole independent invention. They could not, because to do so would be to swear under penalty of perjury to a falsehood. Their silence is on the docket.
- In this Court (No. 26-1721), they have failed to appear. They have not filed a brief, a response, or any document. Their absence is on the docket.

The result is not that they are free of the Court's jurisdiction. The result is that they are inside the Court's jurisdiction, bound by its rules, and using their silence as a shield. The caption correction in No. 26-153 was the mechanism that would have forced their hand — making them Appellees of record with an affirmative obligation to respond, file SDO reports, and comply with FAR 52.22 reporting obligations that attach to parties of record in proceedings involving dual-use technology and federal contracts.

Appellant filed a motion to strike the petition, to recuse, and to expedite (Dkt. 9), and a petition for en banc rehearing (Dkt. 10) in No. 26-153 on October 23, 2026. Both remain pending.

The confirmation of the SIF Chair despite the docket record.

The docket in this matter was placed before the Senate Select Committee on Intelligence (SSCI) prior to the confirmation of Jay Clayton as Director of National Intelligence and SIF Chair. The SSCI record, which is on the docket in this case, identifies Clayton as a "witness" in the stream of issues and allegations presented to this Court, and notes that a TRO would be requested if any actions were taken that would directly affect Appellant's pathway to exercising her constitutional rights. Despite that record, the Senate confirmed Clayton on July 28, 2026, and he was sworn in on August 3, 2026.

The confirmed SIF Chair is the same individual who now chairs the entity (DOJ-SITF/SIF) whose stated purpose is to coordinate law enforcement efforts involving the technology at issue in this appeal. The docket record that was before the confirming body has not been addressed, corrected, or acted upon.

This panel must determine the stay and inventorship questions on the independent facts noticed in this motion, not on the legal conclusions of another court.

The D.D.C. orders referenced in this motion present two distinct problems:

1. **The "no new circumstances" finding is contradicted by the face of the motion it addressed.**

The November 6, 2026 Minute Order (D.D.C. Dkt. 33) denied Dkt. 31 (filed November 4, 2026) on the ground that "no new circumstances warrant reconsideration of the court's prior denials." Dkt. 31 contained the following facts, all of which post-date the October 14, 2026 order on which that finding relies:

- November 2, 2026: OpenAI announced the hiring of Dan Driscoll, former Secretary of the Army with signing authority over the SBMC contracts;
- November 2–3, 2026: Mercedes-Benz announced the Holo Display and Meta smart glasses partnership;
- November 4, 2026: DOJ publicly released the DOJ-SITF memorandum;
- November 5, 2026: AAG Dhillon resigned;
- November 6, 2026: AAG Eisenberg and U.S. Attorney Quiñones resigned.

The finding that "no new circumstances" existed is contradicted by the motion to which it was directed. This panel is not being asked to decide whether Judge Mehta erred. This panel is being asked to notice that the finding is contradicted by the record before the court that made it, and to determine the stay question on the forty-three independent facts noticed in this motion.

**2. The preservation duty is independent of the TRO.**

The Feinberg report, on the D.D.C. record, states that CAS-to-GAAP conversion "cannot be done" (Fact 38). The CASB deadline is November 14, 2026 (Fact 43). If the format is locked by that date, Phase 2 cost-segregation records will never be created in the native format used for Phase 1. This is not a "new circumstance" that requires a TRO. It is a basic preservation issue. Under Fed. R. Civ. P. 37(e) and the court's inherent authority to protect the integrity of its proceedings, a court has an independent obligation to prevent the destruction or permanent inaccessibility of records in pending litigation, regardless of whether a TRO or preliminary injunction is granted. No preservation order, litigation hold, or record-management directive was issued by the D.D.C. before the CASB deadline. The ex parte TRO (Dkt. 36, Nov. 9, 2026) — which included a proposed litigation hold — remains pending.

**3. The unappealed orders are interlocutory and the case is unserved.**

The November 6 (Dkt. 33) and November 10 (Dkt. 34/35) orders are not on appeal. They are interlocutory orders in a case where the defendants have not been served (service deadline: December 22, 2026). The October 13 (Dkt. 21) and October 14 (Dkt. 24) orders are under active appeal in CADC No. 26-5358. Orders under active appellate review are not settled law. Unappealed interlocutory orders in an unserved case are not "judicial currency."

**4. The 26-153 per curiam is the product of a different panel and is under challenge.**

The per curiam in No. 26-153 (Chen, Linn, Cunningham) is not binding on this panel. Its characterization of the mandamus petition is the subject of a pending motion to strike (Dkt. 9) and petition for en banc rehearing (Dkt. 10).

Nothing in this motion asks this Court to treat the reasoning of any other court or panel as precedential or binding. This motion presents forty-three new, independently verifiable facts for this panel's own determination.

### E. The "collaboration" through which the IP was held and commercialized was forced. The Thirteenth Amendment and TVPA civil framework establish the involuntary nature of the inventorship transfer.

The Thirteenth Amendment abolishes "slavery" and "involuntary servitude." U.S. Const. amend. XIII, § 1. The Supreme Court defined involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 948 (1988).

As a matter of judicial notice and legal authority, modern coercive systems operate independently of the penal system through structural transformation. As explained by Prof. Michele Goodwin in *The Thirteenth Amendment: Modern Slavery, Capitalism, and Mass Incarceration*, 74 Cornell L. Rev. (2019):

> *"These various types of slaveries transformed from one to another and back again. Debt peonage morphed into convict labor, convict labor turned into convict leasing, and these transformed to chain gangs."*

Goodwin further demonstrated that modern subjugation relies on evolving mechanisms rather than traditional confinement:

> *"The modern masks of slavery: mass incarceration, pay to play probation, modern chain gangs, and the exploitation of cheap*

*labor emerge along the color line just as Antebellum slavery was anchored in the same."*

This transformation applies to extrajudicial, private conditions of forced confinement, restriction of movement, surveillance, and compelled extraction of labor or intellectual property entirely outside of prison walls. **Movant-Appellant, Daitona Carter, has never been a prisoner, a convict, arrested, jailed, or imprisoned at any time; the coercion applied herein operates through extrajudicial and civil control mechanisms rather than criminal sentencing.**

The Trafficking Victims Protection Act, 18 U.S.C. § 1595, provides a civil cause of action. 18 U.S.C. § 1591(e)(2) defines "forced labor" to include "recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, by any means, for the purpose of exploitation through the exercise of any form of coercion." The TVPA civil claim does not require a criminal conviction.

**The application to this appeal:**

This is a patent infringement case where the missing inventor/creator, the Movant-Appellant, Carter, attempts to intervened and reclaim inventorship and owenership. This Court is the only court with jurisdiction to hear the patent claims. The "collaboration" through which the IP was held (Solos) and commercialized

(Meta, Oakley, Anduril, Mercedes-Benz, etc.) was not voluntary. The record establishes:

- Appellant's work was taken while she was physically detained, and both physically and digitally confined and harbored (the docket documents the period);
- Solos (via Kopin) was used as the vehicle for dual-use purposes;
- The parties did not contest inventorship (they could not, without swearing to a falsehood);
- The Defendant parties failed to appear in this Court;
- The caption was never corrected (No. 26-153, Dkt. 8);
- The enforcement chain was severed (Facts 9–11, 15–16);
- The entity that would investigate is chaired by a named defendant (Fact 6);
- The financial trail is made permanently inaccessible (Fact 38);
- The CASB deadline (Nov. 14, 2026) will lock in Phase 2 data format, preventing future records from ever existing in native format (Fact 43);
- The insiders cashed out (Fact 36);

- The technology is deployed to consumers (Facts 2–4) and the military (Fact 35);
- The former head of the DOJ Civil Division now heads Meta's litigation (Fact 41);
- The former Secretary of the Army who signed the SBMC contracts now advises OpenAI (Fact 42).

The "collaboration" was forced. The chains are replaced by the corporate holding structure. The “plantation” is replaced by the dual-use deployment pipeline. The coercion is not solely the defamation, physical and financial abuse, but also the legal process itself — the IPRs, the caption manipulation, the TRO denials, the CAS-to-GAAP inaccessibility, mischaracterization of requests/arguments and timelines, the CASB deadline.

This Court does not need to adjudicate federal criminal violations. What this Court needs to recognize, in determining inventorship, is that the transfer was not a voluntary assignment or collaboration. It was forced. The 13th Amendment and the TVPA civil cause of action are the legal framework that establishes the involuntary nature of the "collaboration." The inventorship claim and the involuntary servitude claim are the same claim viewed from different angles.

### F. The 60-day EO 14434 deadline and the CASB deadline.

Section 3(b) of EO 14434 requires proposed federal definitional language for "Super Intelligence" within 60 days (approximately November 28, 2026). The SIF's 120-day mandate runs to February 12, 2027. The CASB deadline is November 14, 2026 — three days after this motion was filed. If the CAS-to-GAAP transition is implemented by that date, Phase 2 cost-segregation records will never be created in the native format used for Phase 1. The irreparable harm is both the destruction of the past record and the prevention of the future record.

### G. The removal of the Attorney General three days after Appellant's motion was docketed.

The timeline is not coincidental:

- March 30, 2026: Appellant's motion entered on the docket in the lower court.
- April 2, 2026: AG Bondi removed from office. Todd Blanche named interim AG.
- The publicly stated reason: Epstein files. The Carter case is not publicly linked to the Epstein matter, but involves the same network and the same countries.

- ECF No. 41 in this proceeding — which contains excerpts of Senator Wyden's report — was deferred to this panel. The panel has had that material before it since the deferral.

The individual who now serves as interim AG (Blanche) is the same individual who issued the DOJ-SITF memorandum (Fact 5). The brother of the removed AG (Brad Bondi) is a partner at defendants' counsel of record (Paul Hastings) and previously held a senior position at the SEC during the period relevant to Appellant's case (Fact 13). The DOJ under Bondi took actions that Congress publicly identified as benefiting Brad Bondi's practice (Fact 14). The AG was removed three days after Appellant's motion was docketed.

These facts were raised in the lower court in basic terms. The specific dates, the SEC temporal overlap, and the congressional finding (Fact 14) are presented to this panel for the first time.

The SIF to which the DOJ-SITF reports was structured to report to the Chief of Staff whose former firm lobbies the very parties named in this case. That Chief of Staff and her Deputy Chief of Staff were both removed within three days of each other (Facts 25–26). A formal preservation demand was issued targeting the records of the office that controlled the SIF (Fact 27).

### H. The severed enforcement chain spans five days and five senior officials.

Appellant filed reports with the DOJ and other federal agencies between 2021 and 2025 ECF No. 92 Attachment No. 63, *Solos v. Meta*, 1:26-cv-10304 (D. Mass.) show early reports prior to the physical containment and abuse. Those reports predate the creation of the DOJ-SITF by more than four years of institutional inaction. The officials who received those reports have now resigned (Facts 9–11, 15–16). The entity that now controls how the technology at issue is handled by the executive branch (DOJ-SITF) was created in October 2026 — after the reports were filed, after the technology was commercialized, and after the panel in No. 26-153 denied relief. The institutional response to Appellant's reports, over a period of more than four years, has been inaction followed by the departure of every official with knowledge of them.

Within five days (November 5–9, 2026), five senior DOJ officials resigned: the AAG for Civil Rights, the AAG for National Security, the U.S. Attorney for S.D. Florida, the AAG for the Civil Division, and the Acting AAG for the Office of Legal Counsel. The DOJ has lost control of its civil litigation function, its legal counsel function, and both investigative divisions with jurisdiction over Appellant's reports — simultaneously.

The structural pattern is now publicly confirmed by a sitting U.S. Senator.

On November 7, 2026 — two days after the DOJ-SITF was publicly released and one day after the Calley Means podcast — Senator Ron Johnson stated on Fox News that government corruption is "happening throughout government agency after government agency, captured by the very … corporations that are regulated by government." That is the precise structural condition described in this motion. The public confirmation of the pattern does not adjudicate this case. It confirms that the panel is being asked to exercise jurisdiction in a system where the structural bar is now a matter of public record.

I. **The paper trail connects the technology at issue to the intelligence community's science and technology division, the Pentagon's deputy secretary, the financial vehicle that now holds the IP, and the budget official who now lobbies for AI companies.**

The docket in this case documents Appellant's dual-use DSP/beamforming (audio capture/signal processing) frameworks, display form factors (microdisplay/TV/transparent display and materials, wearable, HUD – includes liquid crystal/ OLED crystallization modifications), AI agentic frameworks, visual sensors, eye-tracking, thermal imaging, AR overlays, real time audio-visual NLP translation, spatial mapping/directions (turn-by-turn/walking), sensor fusion, spatial processing, ARIA trademark configurations, developed before the commercial smart glasses market existed. The public record establishes the following chain:

**1.** The technology is the type the CIA's DS&T develops. Rush worked in the CIA's Directorate of Science and Technology — the division that "develops technology for intelligence operations" (BBC, Oct. 6, 2026) — and served as liaison to the Department of Defense for sensitive military programs (NBC, Oct. 6, 2026). The technology at issue in this appeal (dual-use signal processing, beamforming, display form factors, AI agentic frameworks, visual sensors, eye-tracking, thermal imaging, AR overlays, real time audio-visual NLP/translation, spatial mapping/directions (turn-by-turn/walking), sensor fusion, spatial processing and other smart technology architectures) is the same category of technology that DS&T develops and deploys.

**2.** The Pentagon connection is Feinberg. Rush worked closely with Deputy Secretary of Defense Stephen A. Feinberg on classified programs (NYT, May 30, 2026; NBC, Oct. 6, 2026). Appellant's prior request for a constructive trust (the "Feinberg memo," Dkt. No. 19 and 47 was directed at Feinberg's office. The same individual who was Rush's Pentagon counterpart is the office to which Appellant directed her restitution request.

**3.** The financial vehicle is Torchlight → Meta Materials. The DOJ-released Epstein files contain June 2014 Ameriprise brokerage statements showing Epstein held $213,004 in Torchlight Energy Resources (67 transactions). Torchlight became Meta Materials, Inc. in June 2021. The SEC issued a cease-and-desist order against Meta Materials in 2024. Appellant's IP is on the docket as having been taken and commercialized. The corporate vehicle through which the technology was restructured is publicly documented.

**4.** The budget control was Fox Kennedy, who now lobbies for AI companies. Fox Kennedy oversaw the budgets of all eighteen intelligence agencies at OMB. Her career is described by her own firm as being "at the nexus of natural language processing, early artificial intelligence." She resigned in May 2026, told the WSJ she "couldn't keep signing the checks," and in July 2026 joined Ballard Partners to co-lead its Emerging Technology and AI Practice Group. She still sits on the President's Intelligence Advisory Board. Anthropic paid Ballard $380,000 in Q3 2026. The person who controlled the intelligence budget for the type of technology at issue in this case now lobbies for the companies building that technology.

**5.** The person now in charge was confirmed during the crisis. Clayton was confirmed as DNI on July 28, 2026 — six weeks after Fox Kennedy's WSJ interview, six weeks after Rush's arrest, and two weeks after Fox Kennedy joined Ballard Partners. He was sworn in August 3, 2026. He is now SIF Chair. The DOJ-SITF he oversees was created October 13, 2026. The EO 14434 terminology ban he administers was signed September 29, 2026.

**6.** The SIF gatekeeper and her deputy were both removed, and the firm she led is the top lobbying firm in the country. The SIF reported directly to Chief of Staff Susie Wiles (CNN, Oct. 4, 2026). Wiles was removed November 6, 2026 (Fact 25). Her Deputy Chief of Staff, Richard Walters, resigned the same day (Fact 26). The firm Wiles previously led (Ballard Partners) earned $186 million in multi-year revenue, is the #1 lobbying firm in the country(399 clients, 2026), retained Northrop Grumman in March 2026 for defense procurement (Fact 34), has a Tel Aviv office open since 2020 for Israeli companies (Fact 33), and its Emerging Technology and AI Practice Group is co-chaired by the former OMB intelligence budget official who told the WSJ she "couldn't keep signing the checks" (Fact 22). Meta Platforms retained Ballard Partners for federal lobbying on

algorithmic tracking protocols (Fact 29). A formal preservation demand was issued targeting the records of the office that controlled the SIF (Fact 27). The client roster of the two firms connected to the SIF's former gatekeeper is the exact set of entities exploiting the technology at issue in this appeal.

**7.** The sealed docket entry and the ad-tech infrastructure confirm the tracking architecture. ECF No. 110 — sealed by ECF No. 113 — alleges that Northrop Grumman had been embedded in Facebook user accounts since at least 2013 (Fact 31). The sealing removed the only public record connecting the defense contractor to the commercial platform. Published reporting confirms that Israeli Defense Ministry–overseen ad-tech companies (Discover-Tech, Rayzone) were using commercial ad bidding to extract location data, phone numbers, and social media identifiers across consumer platforms without user interaction (Fact 32). The technology at issue in this appeal — signal processing, beamforming, other hardware architectures — is the same category of technology that enables both the defense-embedded tracking alleged in ECF No. 110 and the ad-tech extraction confirmed in the November 2026 reporting.

**8**. The ownership structure of the patent entity is publicly documented. Kopin Corporation holds a 20.0% equity stake in Solos Incorporation (1,172,000 shares, per its SEC Form 10-Q) (Fact 30). Kopin operates in the same smart optical hardware and augmented reality space as the technology at issue. The ownership structure connects the patent entity to a publicly traded defense-adjacent technology company.

**9.** The TRO denials, the CAS-to-GAAP finding, the CASB deadline, and the Anduril deployment create a permanent evidentiary gap. The Feinberg report states CAS-to-GAAP conversion "cannot be done" (Fact 38). Judge Mehta denied four successive motions (Facts 37, 40). The CASB deadline is November 14, 2026 (Fact 43). Anduril's SBMC Phase 2 delivers Jan–Feb 2027 (Fact 35). The $1.3B tender closed November 9, 2026 (Fact 36). The former head of the DOJ Civil Division now heads Meta's litigation (Fact 41). The former Secretary of the Army who signed the SBMC contracts now advises OpenAI (Fact 42). If this Court does not stay judgment, the sequence is: (1) CASB locks in Phase 2 format (Nov. 14), (2) Anduril delivers Phase 2 to the field (Jan–Feb 2027), (3) the SIF mandate expires (Feb. 12, 2027), (4) the PTAB invalidations

proceed, and (5) the financial trail is permanently unauditable. A stay is the only mechanism that interrupts this sequence.

The structural result: the technology was developed by a civilian, taken, restructured through a corporate vehicle with Epstein financial origins, managed by the CIA's science and technology division in coordination with the Pentagon's deputy secretary, budgeted by an official who now lobbies for AI companies, and is now under the operational control of a task force chaired by the individual who held leadership positions at every node of the taking. The enforcement chain is not merely severed. It is the apparatus.

## III. LEGAL STANDARD

Under Fed. R. Evid. 201(b)(2), a court may take judicial notice of a fact that is "not subject to reasonable dispute" because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Each fact identified above is drawn from: (a) a court docket entry; (b) a corporate press release; (c) a published federal government memorandum or press release; (d) the Federal Register; (e) a congressional press release; (f) a publicly verifiable professional bio; (g) a DOJ-released financial document; (h) an SEC filing; (i) a nationally broadcast television interview; (j) a major news

publication; or (k) a publicly accessible product page. None is subject to reasonable dispute.

Under Fed. R. Evid. 201(d), a court may take judicial notice "on its own" and "at any stage of the proceeding." See In re Lisse, 726 F.3d 923, 928 (7th Cir. 2013).

## IV. REQUESTED RELIEF

Appellant respectfully requests that this Court:

**(a)** Take judicial notice of the forty-three facts set forth in Part I;

**(b)** Incorporate those facts into the record on appeal;

**(c)** Correct the caption in this proceeding to reflect Meta Platforms, Inc., Meta Platforms Technologies, LLC, Oakley, Inc., Luxottica Of America, Inc., Essilorluxottica, Usa, LLC, and Solos Technology Limited as Appellees of record, so that they are subject to the affirmative obligations of Fed. R. App. P. 28 (briefing) and all reporting obligations attaching to parties of record;

**(d)** In determining inventorship, recognize that the "collaboration" through which the IP was held and commercialized was involuntary under the 13th Amendment and TVPA civil framework (Part II.E);

**(e)** In light of the confirmed commercialization and dual-use deployment (Facts 2–4, 35), the structural bar created by the DOJ-SITF/SIF/Clayton interlock (Facts 5–8), the non-party caption and docket mischaracterization (Part II.D), the severed enforcement chain (Facts 9–11, 15–16), the Bondi removal and conflict (Facts 12–14), the intelligence community crisis and Feinberg/Rush connection (Facts 21–23), the SIF gatekeeper removal and preservation demand (Facts 25–27), the involuntary nature of the inventorship transfer (Part II.E), the CASB deadline (Fact 43), and the DOJ/Army personnel now at the exploiting companies (Facts 41–42), exercise its discretion to stay judgment pending resolution of this appeal; and

**(f)** Grant such other relief as the Court deems just.

Dated: November 11, 2026

Respectfully submitted,

Daitona Carter, Movant-Appellant Pro Se
General Delivery, Main Post Office
2 Massachusetts Ave NE
Washington, DC 20002
legal@daitonacarter.com

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on November 11, 2026, a true and correct copy of the foregoing **Motion For Judicial Notice Of Newly Public Facts** was served upon the following participants through the Court's electronic NextGen CM/ECF system and/or via direct electronic transmission to their designated legal counsel emails:

November 11, 2026

Respectfully submitted,

/s/Daitona Carter
Daitona Carter, Plaintiff, Pro Se
General Delivery, Main Post Office
2 Massachusetts Ave NE
Washington, DC 20002.
legal@daitonacarter.com